JAMES R. MacAYEAL (D.C. Bar # 474664)
jamie.macayeal@usdoj.gov
DAVID ROSSKAM (D.C. Bar # 359846)
david.rosskam@usdoj.gov
VALERIE K. MANN (D.C. Bar # 440744)
valerie.mann@usdoj.gov
DEBORAH A. GITIN (Mass. Bar # 645126)
deborah.gitin@usdoj.gov
BONNIE A. COSGROVE (Wis. Bar # 1061555)
bonnie.cosgrove@usdoj.gov
Environmental Enforcement Section
Environment and Natural Resources
        Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Telephone:   (202) 616-8777
Facsimile:    (202) 514-2583

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CITY OF COLTON, a California municipal corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>AMERICAN PROMOTIONAL EVENTS, INC., et al.<br><br>        Defendants. | Case No. ED CV 09-01864PSG (SSx)<br><br>[Consolidated with Case Nos. CV 09-06630 PSG (SSx), CV 09-06632 PSG (SSx), CV 09-07501 PSG (SSx), CV 09-07508 PSG (SSx), and CV 10-00824 PSG (SSx)]<br><br>**NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF DISMISSALS WITH PREJUDICE OF CLAIMS OF THE UNITED STATES**<br><br>Judge: Hon. Philip S. Gutierrez<br><br>Date:  November 1, 2010<br>Time:  1:30 p.m.<br>Courtroom:  880 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on November 1, 2010 at 1:30 p.m. or as soon as thereafter as counsel may be heard, the United States will appear in the Courtroom of the Honorable Philip S. Gutierrez, Room 880, 255 E. Temple Street, Los Angeles, California  90012, and will move pursuant to Local Rule 7-18 for reconsideration of the order of August 10, 2010 dismissing with prejudice the claims in the United States' complaint, and the counterclaims in its answer, in the above consolidated action, against Goodrich Corporation ("Goodrich"); Black and Decker, Inc., West Coast Loading Corporation; Kwikset Locks, Inc.; American Hardware Corporation; Emhart Industries, Inc.; Pyro Spectaculars, Inc. ("PSI"); and Ken Thompson, Inc. (hereinafter the "Dismissed Defendants").  In support of this motion, the United States respectfully submits the following Memorandum of Points and Authorities.

This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3 which took place on August 25, 2010.  The parties were unable to resolve their differences through the conference.

WHEREFORE, the United States respectfully requests that this Court reconsider its order of August 10, 2010 and deny the motions to dismiss.


Dated:   September 9, 2010          IGNACIA S. MORENO
                                    Assistant Attorney General
                                    Environment & Natural Resources
                                    Division

                                       /s/ James R. MacAyeal
                                    JAMES R. MacAYEAL
                                    DAVID ROSSKAM
                                    VALERIE K. MANN
                                    DEBORAH A. GITIN
                                    BONNIE A. COSGROVE
                                    Environmental Enforcement Section
                                    U.S. Department of Justic

Of Counsel:
MICHELE BENSON
United States Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, CA 94105

Attorneys for Plaintiff UNITED STATES

MICHAEL C. AUGUSTINI
ROCHELLE L. RUSSELL
LESLIE M. HILL
Environmental Defense Section
U.S. Department of Justice

Attorneys for Defendant UNITED
STATES OF AMERICA, ON BEHALF
OF THE UNITED STATES
DEPARTMENT OF DEFENSE

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNITED STATES' MOTION TO RECONSIDER THE COURT'S DISMISSAL OF THE UNITED STATES COMPLAINT AS TO CERTAIN DEFENDANTS

## TABLE OF CONTENTS

ARGUMENT ...................................................................................................... 1

   A. NO SECTION 107 CLAIM WAS ASSERTED AGAINST THE UNITED STATES IN THE 2005 COLTON ACTION, SO NO COMPULSORY COUNTERCLAIM OBLIGATION WAS TRIGGERED. .................................................. 1

   B. THE 2005 COLTON CASE IS STILL PENDING ........................................... 4

   C. BECAUSE THE CLAIMS AGAINST DoD IN 2005 COLTON ACTION WERE DISMISSED WITHOUT PREJUDICE AS TO PARTIES OTHER THAN THE CITY OF COLTON, NO WAIVER OF CLAIMS APPLIES ......................... 7

   D. RULE 13's COMPULSORY COUNTERCLAIM OBLIGATION WAS NOT TRIGGERED BY THE DEEMED DENIAL UNDER THE CASE MANAGEMENT ORDER IN THE 2005 COLTON ACTION, SINCE NO ACTUAL ANSWER WAS SERVED ....................................................... 8

   E. ANY UNITED STATES' CLAIMS FIRST ARISING AFTER THE 2005 ANSWER COULD NOT HAVE BEEN COMPULSORY ......................................................... 11

   F. RCRA SECTION 7003 INJUNCTIVE CLAIM IS BASED ON CURRENT CONDITIONS AND IS NOT COMPULSORY ........................... 14

   G. IN RESPONSE TO THE COURT'S COMMENT, THE UNITED STATES WAITED TO ASSERT ITS SECTION 107 CLAIMS IN ACCORDANCE

WITH CERCLA'S PROVISIONS AND POLICIES ......................................16

CONCLUSION ................................................................................................17

# TABLE OF AUTHORITIES

### Cases

Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461,

81 L.Ed. 617 (1937), rehearing denied,

300 U.S. 687, 57 S.Ct. 667, 81 L.Ed. 889 (1937) ......................................  3

Arch Mineral Corp. v. Lujan, 911 F.2d 408 (10th Cir. 1990) ...................... 12

Bernstein v. IDT Corp.,

582 F. Supp. 1079 (D. Del. 1984)........................................................ 11

Biomedical Patent Management Corp. v. California, Dept. of Health,

2006 WL 1530177 (N.D. Cal. 2006), aff'd, 505 F.3d 1328 (Fed. Cir. 2007),

cert. denied, 129 S.Ct. 895, 173 L.Ed. 106 (2007)  .....................................  8

Boeing Co. v. Cascade Corp., 207 F.3d 1177 (9th Cir. 2000) ....................  3

Bluegrass Hosiery, Inc. v. Speizman Industries, Inc.,

214 F.3d 770 (6th Cir. 2000) ............................................................9-10

Brenner v. Mitchum, Jones & Templeton, Inc.,

494 F.2d 881 (9th Cir. 1974) ............................................................. 11

Caribbean Const. Corp. v. Kennedy Van Saun Mfg. & Eng. Corp.,

13 F.R.D. 124 (S.D.N.Y. 1952) ...........................................................  9

City of Colton v. American Promotional Events, Incorporated-West,

2006 WL 5939685 (C.D. Cal. 2006), vacated in part, City of Colton v. American

Promotional Events, Inc.-West, 2010 WL 3006434 (9th Cir. 2010), and

aff'd in part, 2010 WL2991399 (9th Cir. 2010), petition for cert. filed,

(No. 10-284 August 23, 2010) .............................................................  7

City of Colton v. American Promotional Events, Inc.-West,

2010 WL 3006434 (9th Cir. 2010) ...................................................... 11-12

Chicago Freight Car Leasing Co. v. Martin Marietta Corp.,

66 F.R.D. 400 (N.D. Ill.1975)..............................................................  2

Cox v. City of Dallas, Texas, 256 F.3d 281 (5th Cir. 2001). .......................................15

Dragor Shipping Corp. v. Union Tank Car Co.,

378 F.2d 241 (9th Cir 1967) ........................................................................ 5

Hall v. General Motors Corp., 647 F.2d 175 (D.C. Cir. 1980) ................................. 2

Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082 , 22 L.Ed. 281 (1969),

rehearing denied, 394 U.S. 1025, 89 S.Ct. 1623, 23 L.Ed. 50 (1969).........................11

Hartford Accident & Indemnity Co. v. Levitt & Sons, Inc.,

24 F.R.D. 230 (E.D. Pa. 1959)....................................................................... 2

Holmes v. MTD Products, Inc.,

2009 WL 1118771 (E.D. Cal. 2009)............................................................... 2

ICD Holdings S.A. v. Frankel, 976 F. Supp. 234 (S.D.N.Y. 1997) ........................... 10

Interfaith Community Organization v. Honeywell Intern., Inc.,

263 F. Supp.2d 796 (D.N.J. 2003), aff'd, 399 F.3d 248 (3rd Cir. 2005),

cert. denied, 545 U.S. 1129, 125 S.Ct. 2951, 162 L.Ed. 869 (2002) ......................... 3

Jonhson v. Con-Vey/Keystone, Inc., 856 F. Supp. 1443 (D. Or. 1994)..................... 12

Kane v. Magna Mixer Co., 71 F.3d 555 (6th Cir. 1995),

cert. denied, 517 U.S. 1220, 116 S. Ct. 1848, 134 L.Ed. 949 (1996)......................... 2

Kirkcaldy v. Richmond County Bd. of Educ.,

212 F.R.D. 289 (M.D.N.C. 2002)................................................................... 2

Magnesystems, Inc. v. Nikken, Inc.,

933 F. Supp. 944 (C.D. Cal. 1996) ............................................................... 12

Martino v. McDonald's System, Inc., 598 F.2d 1079 (7th Cir. 1979),

cert. denied, 444 U.S. 966, 100 S. Ct. 455, 62 L.Ed. 379 (1979)..........................10-11

Meghrig v. KFC Western, Inc., 516 U.S. 479, 116 S. Ct. 1251 (1996) ..................... 15

Pakootas v. Teck Cominco Metals, Ltd.,

452 F.3d 1066 (9th Cir. 2006), cert. denied, 552 U.S. 1095,

128 S. Ct. 858, 169 L.Ed. 722 (2008)...............................................................16

Paramount Aviation Corp. v. Agusta,

178 F.3d 132 (3rd Cir. 1999), cert. denied, 528 U.S. 878,

120 S. Ct. 188, 145 L.Ed. 158 (1999) .................................................. 2

Price v. United States Navy, 39 F.3d 1011 (9th Cir. 1994) .................................... 14-15

Rainbow Mgmt. Group, Ltd. v. Atlantis Submarines Hawaii, L.P.,

158 F.R.D. 656 (D. Haw. 1994) ................................................ 2

Raytheon Aircraft Co. v. United States,

532 F. Supp. 2d. 1316 (D. Kan. 2008) .................................................. 7, 12

Santa Clara Valley Water Dist. v. Olin Corp.,

 655 F. Supp. 2d 1066 (N.D. Cal. 2009) ................................................ 3

SDMS, Inc. v. Rocky Mountain Chocolate Factory, Inc.,

2008 WL 4838557 (S.D. Cal. 2008) ................................................ 6

Sega of America, Inc. v. Signal Apparel Co., Inc.,

1997 WL 414196 (N.D. Cal. 1997) ................................................ 6-7

Southern Const. Co. v. Pickard,

371 U.S. 57, 83 S.Ct.108, 9 L.Ed. 31 (1962) ................................................ 5-6

United States v. Northeastern Pharm. & Chem. Co.,

810 F.2d 726 (8th Cir. 1986), cert. denied, 484 U.S. 848,

108 S. Ct. 146, 98 L.Ed. 102 (1987) ................................................ 14

United States v. Waste Industries, Inc.,

734 F.2d 159 (4th Cir. 1984) ................................................ 14

Federal Statutes

42 U.S.C. § 9607(a) ................................................ 2, 11-14

42 U.S.C. § 9613(g)(2) ................................................ 3, 11-13

42 U.S.C. § 9628 ................................................ 16

42 U.S.C. § 6973 ................................................ 14

Federal Regulations and Rules

40 C.F.R. § 300.425(b)(1) ................................................ 16

Fed.R.Civ.P. 7(a) ................................................ 8-9

vi

Fed.R.Civ.P. 13(a) .................................................................................. 9

Fed. R.Civ. P. 13(e) ............................................................................... 2

Fed. R.Civ. P. 15 ................................................................................... 7

Advisory Committee Notes to 2009 Amendments ................................ 7

<u>State  Rules</u>

Cal.Civ.Proc.Code § 426.30(a) .............................................................. 1

ARGUMENT

A. <u>NO SECTION 107 CLAIM WAS ASSERTED AGAINST THE UNITED
STATES IN THE 2005 COLTON ACTION, SO NO COMPULSORY
COUNTERCLAIM OBLIGATION WAS TRIGGERED.</u>

In dismissing the United States' claims against all Moving Defendants (except
Rialto Concrete Products), the Court relied on the premise that the Dismissed
Defendants asserted CERCLA Section 107 claims against the United States in the
2005 Colton Action, thus triggering the United States' obligation to counterclaim.
<u>Civil Minutes, Doc. # 482</u>, at 14 (hereinafter "<u>Mem. Opinion</u>").  Specifically, the Court
found that in the 2005 Colton Action, the Dismissed Defendants sued the United States
*under Section 107 of CERCLA* pursuant to the second case management order of
March 2006 (Exhibit 11, Doc. 322-12), which allowed "defendants" to assert deemed
claims against other defendants under Section 107.  The Court's premise is not correct.
The second case management order provided that "[e]ach defendant (*but no cross-
defendant*) (emphasis added)," shall have deemed 107 claims against "each separately
represented defendant".  (Exhibit 11, Doc. 322-12, at 231).  The Department of
Defense ("DoD") was not a "defendant" in the 2005 Colton Action (the City of Colton
did not sue DoD); DoD was a cross-defendant based on PSI's lawsuit.  (Exhibit 6,
Doc. 322-7; Exhibit 9, Doc. 322-10, at 184).[1]  Thus, no Section 107 claims were
asserted against DoD pursuant to the deemed claims procedure.  (Exhibit 29, Doc. 322-
30, at 573-75.)  In fact, Goodrich stipulated (and PSI agreed) to this fact in their appeal
of Judge Walter's dismissal in the 2005 Colton Action.  <u>City of Colton v. American
Promotional Events, Inc.-West,</u> 2010 WL 3006434, 1 n. 2 (9th Cir. 2010) ("Both
Goodrich and PSI agree that they asserted no cost recovery claims against the United

---

[1]     Consistent with California procedure, the parties used the terms "cross-claims"
to include third-party complaints.  <u>See</u> Cal.Civ.Proc.Code § 426.30(a).  Because
Colton did not sue DoD, when PSI sued DoD, DoD was a third-party defendant.

1

States Department of Defense, which is therefore not a proper party to this appeal."); see also (Exhibit 29, Doc. 322-30, at 573-75).

The only claims asserted against DoD were deemed claims for *contribution* pursuant to the *first* case management order of October 2005, which applied to future appearing "cross-defendants," such as DoD.  (Exhibit 8, Doc. 322-9, at 180-81.)  This is significant here because, to the extent no Section 107 claim was asserted against DoD, the United States had no obligation to assert a compulsory counterclaim in the 2005 Colton Action.   Under Rule 13 of the Federal Rules of Civil Procedure, a contribution or implied indemnity claim is contingent on the primary claim, and does not require the assertion of compulsory counterclaims.  Holmes v. MTD Products, Inc., 2009 WL 1118771, 4 (E.D. Cal. 2009); Rainbow Mgmt. Group, Ltd. v. Atlantis Submarines Hawaii, L.P., 158 F.R.D. 656, 660 (D. Haw. 1994); see also Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 146 n. 11 (3rd Cir. 1999) (dicta), cert. denied, 528 U.S. 878 , 120 S. Ct. 188, 145 L.Ed. 158 (1999); Hall v. General Motors Corp., 647 F.2d 175, 184 (D.C. Cir. 1980); Chicago Freight Car Leasing Co. v. Martin Marietta Corp., 66 F.R.D. 400, 402-03 (N.D. Ill.1975); Hartford Accident & Indemnity Co. v. Levitt & Sons, Inc., 24 F.R.D. 230, 232 (E.D. Pa. 1959).

Only a substantive claim (not contribution or implied indemnity) such as a claim under Section 107 of CERCLA, 42 U.S.C. § 9607, makes a co-party defendant an "opposing party" within the language of Rule 13, requiring the assertion of a compulsory counterclaim.  Rainbow Mgmt. Group, 158 F.R.D. at 660 (co-defendants become opposing parties once substantive cross-claim is filed by one co-defendant against the other, and contribution and indemnification are not substantive claims); accord Kirkcaldy v. Richmond County Bd. of Educ., 212 F.R.D. 289, 297-98 (M.D.N.C. 2002); cf. Kane v. Magna Mixer Co., 71 F.3d 555, 562 (6th Cir. 1995) (in business acquisition, parties to the transaction gave mutual *contractual* indemnities, and assertion of *contractual* indemnity claim by one party to the transaction required

the other to assert complementary indemnity claim), cert. denied, 517 U.S. 1220, 116 S. Ct. 1848, 134 L.Ed. 949 (1996).

The question whether a contribution or implied indemnity claim asserted against a co-defendant or third-party defendant requires the assertion of a counterclaim arising out of the same transaction or occurrence has not been addressed by the Court of Appeals in this Circuit. The rule that only a substantive claim, and not a contribution or implied indemnity claim, triggers the compulsory counterclaim rule was persuasively articulated within this Circuit (in the District of Hawaii) in Rainbow Mgmt Group, and that decision is consistent with and has been followed by other courts. See Paramount Aviation Corp., 178 F.3d at 146 n. 11; Holmes, 2009 WL 1118771 at 4; Kirkcaldy, 212 F.R.D. at 297-98.[2]

Because the Court mistakenly concluded that Section 107 claims for cost recovery were asserted against the United States, but in fact only deemed *contribution*

---

[2]     The first case management order in the 2005 Colton Action also specified that the deemed claims included not only contribution claims but also for declaratory relief for the contribution claims. (Exhibit 8, Doc. 322-9, at 181.) The assertion of deemed claims for declaratory relief does not change the analysis. CERCLA only requires a court to enter a declaratory judgment on liability for future costs in connection with a Section 107 claim. 42 U.S.C. § 9613(g). Although courts have allowed a contribution plaintiff to seek a declaratory judgment, Boeing Co. v. Cascade Corp., 207 F.3d 1177, 1191 (9th Cir. 2000) ("The statute is silent on whether declaratory judgments are authorized in contribution actions. It does not prohibit them."), the declaratory judgment adds no substantive rights to a contribution claim. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937) (the Declaratory Judgment Act is procedural only), rehearing denied, 300 U.S. 687, 57 S. Ct. 667, 81 L.Ed. 889 (1937); Santa Clara Valley Water Dist. v. Olin Corp., 655 F. Supp. 2d 1066, 1080 (N.D. Cal. 2009) ("The claims for declaratory relief rise and fall with the District's other substantive claims."); Interfaith Community Organization v. Honeywell Intern., Inc., 263 F. Supp.2d 796, 871 (D.N.J. 2003) ("The Court further concludes that because Honeywell cannot sustain its burden on its substantive RCRA, CERCLA and Spill Act claims against the Grace Defendants, as set forth above, Honeywell is not entitled to a declaratory judgment."), aff'd, 399 F.3d 248 (3rd Cir. 2005), cert. denied, 545 U.S. 1129, 125 S.Ct. 2951, 162 L.Ed. 869 (2002).

1  claims were asserted, the Court should therefore reconsider and deny the motion to

2  dismiss the United States' complaint and counterclaims.

3      B.  <u>THE 2005 COLTON CASE IS STILL PENDING.</u>

4         Even if the Court were to decide that the assertion of a contribution claim does

5  require a co-party to assert a compulsory counterclaim, the dismissal should be

6  reconsidered for additional grounds.  In dismissing the claims of the United States with

7  prejudice, the Court relied on its finding that the 2005 Colton Action had closed, and

8  the United States could therefore never seek leave to assert a counterclaim by

9  amendment in that action.  <u>Mem. Opinion</u>, at 19.  This premise is also not accurate.

10  Goodrich and PSI appealed the dismissal in the 2005 Colton Action, and on August 2,

11  2010, just prior to the Court's August 10 ruling, the United States Court of Appeals for

12  the Ninth Circuit reversed Judge Walter's 2006 dismissal without prejudice of the

13  CERCLA Section 107 claims asserted by Goodrich and PSI in the 2005 Colton Action,

14  and ordered those claims remanded to the District Court.  <u>See</u> <u>City of Colton v.</u>

15  <u>American Promotional Events, Inc.-West</u>, 2010 WL 3006434, 1 (9th Cir. 2010).  Once

16  the Ninth Circuit's mandate issues, the 2005 Colton Action will be pending again

17  before Judge Walter.  The Section 107 claims of Goodrich and PSI will go forward in

18  the 2005 Colton Action, and under the deemed claims procedure in that action, the

19  Section 107 defendants will have deemed *contribution* claims against each other and

20  all other defendants, including DoD.  (Exhibit 8, Doc. 322-9, at 181.) [3]  Because a

21

22  _____

23  [3]      Under the first case management order in the 2005 Action, the term "Defendant"
included "[e]ach defendant, cross-defendant or third party defendant" and specified

24  that each such Defendant had a contribution "cross-claim" as to any complaint,
including the Plaintiff's operative complaint, any cross-complaint or any third-party

25  complaint.  (Exhibit 8, Doc. 322-9, at 180-81.)  Thus, any Defendant sued by
Goodrich had and will have a contribution claim against the other Defendants, and

26  those Defendants will have a contribution claim against Goodrich and any
Defendants (third party defendants included) such as DoD.  Goodrich and DoD will

27  have deemed contribution claims against each other.  If the deemed claim order does

28  [Footnote continued on next page]

4

premise of the Court's dismissal with prejudice of the United States Section 107 claim – namely that the 2005 Colton Action was closed – is no longer valid, the Court should reconsider and vacate its decision dismissing the United States' Section 107 claims in this action.

As a result of the Ninth Circuit's reversal of Judge Walter, and upon issuance of the mandate, an additional case will be pending against DoD in which a counterclaim could be asserted.  When two cases are pending in which a defendant may file a compulsory counterclaim, the defendant may file in either of the cases.  Southern Const. Co. v. Pickard, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed. 31 (1962).  As the Ninth Circuit has stated: "[a]n exception to rule 13(a) is made where a defendant is confronted with a choice as to which of two pending suits should be resorted to for the assertion of a compulsory counterclaim common to both."  Dragor Shipping Corp. v. Union Tank Car Co., 378 F.2d 241, 244 n. 3 (9th Cir 1967).  In Southern Const. Co. v. Pickard, Southern, a contractor, performed construction work for the United States at Fort Campbell, Tennessee, and Fort Benning, Georgia.  371 U.S. at 60, 83 S.Ct. at 110. Pickard, a subcontractor, sued Southern for money owed under the subcontract pursuant to the Miller Act, but split the lawsuit into two cases:  one in Georgia and one in Tennessee.  Southern, as a defendant, had a compulsory counterclaim that could have been asserted in either case.  The Supreme Court rejected the idea that the compulsory counterclaim had to be brought in the first filed case.  As the Court explained:

> The fragmentation of these claims, therefore, was compelled by federal law, and the primary defendant in both actions was thus for the first time

---

[Footnote continued from previous page]

not apply to DoD with respect to Goodrich's Section 107 claims, then it never applied to Colton's 107 claims either, providing an additional ground for the Court to vacate its dismissal if the Court concludes that contribution claims are sufficient to require the assertion of a counterclaim.

> confronted with the choice of which of the two pending suits should be
> resorted to for the assertion of a counterclaim common to both.  Under
> these circumstances, we hold that Rule 13(a) did not compel this
> counterclaim to be made in whichever of the two suits the first responsive
> pleading was filed.

371 U.S. at 60-61, 83 S.Ct. at 110.  The Court also noted that "[o]f course once this counterclaim has been adjudicated in one of the actions it cannot be reasserted in the other."  371 U.S. at 61 n. 3, 83 S.Ct. at 111 n.3.

Here the counterclaim of the United States was never adjudicated in the 2005 Colton Action.  Because the 2005 Action and the present action are both pending against DoD, the counterclaim does not have to be asserted in the 2005 Colton Action but may be asserted in the above-captioned case.

At a minimum, if the Court does not reconsider dismissal of the United States' claims, it should reconsider dismissal with prejudice, and dismiss instead without prejudice to allow the United States to seek leave to counterclaim by amendment in the 2005 Action.  When two cases are pending in parallel proceedings, under the "first filed rule," any dismissal in the present action should be without prejudice, to allow the other court (Judge Walter) to consider amendment.  SDMS, Inc. v. Rocky Mountain Chocolate Factory, Inc.,  2008 WL 4838557, 3 (S.D. Cal. 2008) ("In co-pending actions, the bar does not take effect in the later-filed matter until the claim or issue is determined by the court in the first-filed case, or until the first action concludes without the plaintiff raising the compulsory counterclaim."); Sega of America, Inc. v. Signal Apparel Co., Inc., 1997 WL 414196, 1 (N.D. Cal. 1997)

(under first filed rule, court dismissed second action without prejudice with leave to plead the complaint as a counterclaim before other federal court).[4]

C. BECAUSE THE CLAIMS AGAINST DoD IN 2005 COLTON ACTION WERE DISMISSED WITHOUT PREJUDICE AS TO PARTIES OTHER THAN THE CITY OF COLTON, NO WAIVER OF CLAIMS APPLIES.

A third reason that the United States did not waive its CERCLA claims in the 2005 Colton Action is that any alleged waiver occurred in connection with claims that were dismissed without prejudice. The Court found there was no waiver by the United States of its counterclaims based on the 2004 Rialto/2006 Colton Consolidated Action, because that action was dismissed without prejudice, thus "leaving the situation as if the action never had been filed." Mem. Opinion, at 15. The contribution claims against DoD in the 2005 Colton Action were not adjudicated and were therefore dismissed by Judge Walter in the 2005 Colton Action without prejudice. City of Colton v. American Promotional Events, Incorporated-West, 2006 WL 5939685, 1-3 (C.D. Cal. 2006), vacated in part, City of Colton v. American Promotional Events, Inc.-West, 2010 WL 3006434 (9th Cir. 2010), and aff'd in part, 2010 WL2991399 (9th Cir. 2010), petition for cert. filed, (No. 10-284 August 23, 2010). As Judge Walter stated in denying Goodrich's motion for reconsideration:

---

[4]     This Court noted that in Raytheon Aircraft Co. v. United States, 532 F. Supp. 2d. 1316 (D. Kan. 2008), the United States sought leave to amend an answer to add an omitted counterclaim under Rule 13(f) of the Federal Rules of Civil Procedure. Mem. Opinion, at 19 n. 9. The Court then noted that Rule 13(f) has since been abrogated. Id. If the Court concluded that the United States would not be able to amend its answer in Judge Walter's case to add an omitted counterclaim, that conclusion is incorrect. The 2009 amendments abrogating Rule 13(f) "establishes Rule 15 as the sole rule governing amendment of a pleading to add a counterclaim." Adv. Comm. Notes to 2009 Amendments to Fed.R.Civ.P. 15. The traditional liberal standards for amendment still apply. See Fed.R.Civ.P. 15(a)(2) ( "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.").

> Because Goodrich did not allege a claim for cost recovery pursuant to §
> 107(a) in its Counterclaims, Cross-claims or "deemed" Cross-claims, the
> Court did not adjudicate any such claim.  Consequently, should Goodrich
> wish to assert a claim for cost recovery pursuant to § 107(a), neither the
> Court's October 31, 2006 Order nor the November 1, 2006 Judgment
> would have a preclusive effect on such a claim.

Id. at 3.  Any dismissal without prejudice, whether voluntary or involuntary, has the
same result -- the claim is treated as if it had never been brought.  Biomedical Patent
Management Corp. v. California, Dept. of Health, 2006 WL 1530177, 4 (N.D. Cal.
2006) ("Courts and commentators have consequently interpreted a dismissal without
prejudice under Rule 41(b), like a dismissal without prejudice under Rule 41(a), to
'leave[ ] the situation as if the action never had been filed.'"), aff'd, 505 F.3d 1328
(Fed. Cir. 2007), cert. denied, 129 S.Ct. 895, 173 L.Ed. 106 (2007).  Therefore, the
contribution lawsuits against DoD in the 2005 Colton Action, having been dismissed
involuntarily and without prejudice, should be treated as if they were never filed, just
as the Court recognized as to the claims asserted in the 2004 Rialto/2006 Colton case.
Thus, no waiver applies to any counterclaim the United States could have asserted in
response.  Biomedical Patent Management Corp., 2006 WL 1530177 at 5 ("The court
therefore finds that DHS has not waived its sovereign immunity in this suit solely
because it waived immunity in the 1997 lawsuit, which was dismissed without
prejudice.").

D. RULE 13's COMPULSORY COUNTERCLAIM OBLIGATION WAS NOT
   TRIGGERED BY THE DEEMED DENIAL UNDER THE CASE
   MANAGEMENT ORDER IN THE 2005 COLTON ACTION, SINCE NO
   ACTUAL ANSWER WAS SERVED.

Rule 7 of the Federal Rules of Civil Procedure authorizes only specific
responsive pleadings, including an answer to a cross-claim and an answer to a third
party complaint.  See Fed.R.Civ.P. 7(a).  The only actual responsive pleading ever

8

served in the Colton 2005 Action by DoD was the answer to the PSI cross-complaint. (Exhibit 9, Doc. 322-10).  The Court, in discussing the deemed claim procedure in the first case management order in the 2005 Colton Action, stated in the memorandum opinion that "defendants were also deemed to have denied these cross-claims in their respective answers."  Mem. Opinion, at 4.  Based on this statement, the Court may have incorrectly concluded that DoD served an answer in the Colton Action as a cross-defendant and that this answer was deemed to deny claims asserted by other parties, meaning that DoD served an answer to claims of other Dismissed Defendants besides PSI.  In fact, Judge Walter's first case management order in the 2005 Colton Action dispensed with the need to serve an answer to deemed contribution claims.  (Exhibit 8, Doc. 322-9, at 181.)  The order stated that claims of contribution were not only deemed made, but the claims were also deemed denied.  (Exhibit 8, Doc. 322-9, at 181.)  Any defenses in a party's answer were also deemed asserted as to the deemed claims.  (Exhibit 8, Doc. 322-9, at 181.)  "No further responsive pleading by a Defendant to a deemed cross-claim shall be required."  (Exhibit 8, Doc. 322-9, at 181.) Because there was no answer to deemed claims, there was no service of an answer to the deemed claims.

The Federal Rules of Civil Procedure are designed to function as an integral whole.  Caribbean Const. Corp. v. Kennedy Van Saun Mfg. & Eng. Corp., 13 F.R.D. 124, 127 (S.D.N.Y. 1952).  By dispensing with the simple requirement to serve an answer, the case management order rendered inoperative a portion of Rule 13.  Rule 13 plainly states that the cut-off for determining whether a counterclaim is compulsory is when an answer is served on the opposing party.  Fed.R.Civ.P. 13(a).

Under these unusual circumstances, there was no obligation by the United States to file compulsory counterclaims, except arguably as to PSI.  It is the position of the United States that, if for whatever procedural reason, an actual answer is not served, there is simply no trigger for the compulsory counterclaim.  Bluegrass

Hosiery, Inc. v. Speizman Industries, Inc., 214 F.3d 770, 772-73 (6th Cir. 2000); ICD Holdings S.A. v. Frankel, 976 F. Supp. 234, 237 n.2 (S.D.N.Y. 1997).

In ICD Holdings S.A. v. Frankel, 976 F. Supp. 234 (S.D.N.Y. 1997), for example, the plaintiffs sought to recover on a promissory note and guarantee under New York law, but the plaintiffs were allowed to file a summary judgment motion instead of a complaint with their summons.  Id. at 237.  The defendants did not file an answer but simply responded to the summary judgment motion.  Id.  The United States District Court for the Southern District of New York refused to find that the judgment in favor of plaintiffs barred a compulsory counterclaim because no actual answer was ever served.  Id.  As the Court explained:

> Fed.R.Civ.P. 7(a) provides that there shall be a complaint, an answer and, insofar as is relevant here, "[n]o other pleading."  Fed.R.Civ.P. 12(b) provides, with exceptions not here relevant, that "[e]very defense, in law or fact, to a claim for relief *in any pleading* . . . shall be asserted in the responsive pleading thereto if one is required. . . ." (Emphasis added)  Fed.R.Civ.P. 13(a) provides that "[a] *pleading* shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against the opposing party . . ." (Emphasis added)  As there was no complaint, no answer was required.  As no answer was required, the compulsory counterclaim rule did not have its usual effect of requiring the defendants to assert any claims they might have had against the plaintiffs which arose out of the transaction or occurrence that was the subject matter of the plaintiffs' action.

Id. at 237 n. 2.[5]

---

[5]   If a case promptly settles before an answer is filed but the plaintiff's claims are adjudicated, such as by a dismissal with prejudice, the lack of a served answer will not avoid preclusion of the defendant's compulsory counterclaim.  See Martino v.

[Footnote continued on next page]

The Court may have concluded that the United States was required to file a standalone counterclaim under the deemed claim procedure, but a counterclaim must be set forth in an answer.  Bernstein v. IDT Corp., 582 F. Supp. 1079, 1089 (D. Del. 1984).  Absent the need to follow a contrary intent expressed by Congress in legislation, courts have no authority to rewrite the Federal Rules of Civil Procedure. Harris v. Nelson, 394 U.S. 286, 298, 89 S.Ct. 1082, 1090 , 22 L.Ed. 281 (1969) ("We have no power to rewrite the Rules by judicial interpretations."), rehearing denied, 394 U.S. 1025, 89 S.Ct. 1623, 23 L.Ed. 50 (1969).  The case management order dispensed with a requirement of the Rules, and whether intended or not, the compulsory counterclaim rule was rendered inoperative.   Rule 13(a), therefore, did not require the United States to assert a Section 107 counterclaim in the 2005 Colton Action.

E.   ANY UNITED STATES' CLAIMS FIRST ARISING AFTER THE
     2005 ANSWER COULD NOT HAVE BEEN COMPULSORY.

Section 107 of CERCLA, 42 U.S.C. § 9607, does not create a claim for relief for the recovery of future costs.  The United States is allowed to recover only "costs of removal or remedial action incurred."  42 U.S.C. § 9607(a)(4)(A) (emphasis added). The statute directs a court to enter a declaratory judgment on liability as to costs incurred that will be binding on liability for future costs that will be proven recoverable.  42 U.S.C. § 9613(g)(2); see City of Colton v. American Promotional

_____

[Footnote continued from previous page]

McDonald's System, Inc., 598 F.2d 1079, 1083 (7th Cir. 1979) (even in absence of answer making Rule 13 inapplicable, res judicata establishes a narrowly defined class of "common law compulsory counterclaims."), cert. denied, 444 U.S. 966, 100 S. Ct. 455, 62 L.Ed. 379 (1979); Brenner v. Mitchum, Jones & Templeton, Inc., 494 F.2d 881, 882 (9th Cir. 1974) (no answer served, but prior to filing of any responsive pleadings in first action, action was settled and dismissed with prejudice, so counterclaim was still barred).  In the present action, the claims asserted against DoD in the 2005 Action were not settled or adjudicated.  As shown above, Judge Walter dismissed the claims against DoD without prejudice.  Goodrich and PSI have reasserted those claims in the above-captioned case.  The absence of an answer served on certain of the Dismissed Defendants is therefore material.

Events, Inc.-West, 2010 WL 2991399, 4-5 (9th Cir. 2010) ("In section 113(g)(2),
Congress specified a mechanism whereby a declaration of liability for costs already
incurred has preclusive effect in future proceedings as to costs yet to be incurred.")
Here, the answer served by DoD was served on December 22, 2005.  (Exhibit 9, Doc.
322-10).  To the extent any claims for CERCLA response costs are barred by Rule 13
as compulsory counterclaims, the only costs that would be subject to the rule would be
costs incurred prior to December 22, 2005.  Claims arising after the service of an
answer are not compulsory, but are permissive.  Arch Mineral Corp. v. Lujan, 911 F.2d
408, 412 (10th Cir. 1990); Johnson v. Con-Vey/Keystone, Inc., 856 F. Supp. 1443,
1450 (D. Or. 1994).  Similarly, claims arising after the filing of an answer could be
deemed "after-acquired" such that they are permitted under Rule 13(e) of the Federal
Rules of Civil Procedures, which permits a party to "file a supplemental pleading
asserting a counterclaim that matured or was acquired by the party after serving an
earlier pleading."  See Raytheon Aircraft Co. v. United States, 532 F. Supp.2d 1316,
1323 (D. Kan. 2008) ("Under Rule 13(e), the United States would have been entitled to
simply file its claim for cost recovery in a separate action-just as if it were a permissive
claim."); see also Magnesystems, Inc. v. Nikken, Inc., 933 F. Supp. 944, 947 (C.D.
Cal. 1996).[6]

If the United States proves that it can recover costs arising after December 22,
2005, the Court may enter a money judgment for those costs and a declaratory
judgment on liability as to future costs.

Treating subsequently incurred costs as after-acquired claims is also in accord
with CERCLA.  Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), has two

---

[6]     The only pleading that would require supplementation would be a pleading in
the 2005 Action, such as an answer filed by DoD.  The complaint and counterclaims
in the above-captioned action already seek costs incurred by EPA after the date DoD
served the answer to PSI's third-party complaint.  For that reason, the Court should
not have dismissed the entire complaint.

provisions regarding future costs.  First, it provides for the entry of a declaratory judgment in an action for liability for costs that will be binding in any subsequent action or actions to recover further response costs.  42 U.S.C. § 9613(g)(2).  Second, Section 113(g)(2) provides that "[a] subsequent action or actions under section [107] . . . for further response costs . . . may be maintained at any time during the response action" provided the action is commenced no later than 3 years after the completion of all response actions.  42 U.S.C. § 9613(g)(2).

Thus, CERCLA expressly contemplates sequential actions, with separate claims for response costs as they are incurred.  Even if Rule 13(a) were to preclude the United States from pursuing its claims for costs incurred prior to or during the pendency of the 2005 Colton Action, the Court should not read CERCLA's express provision for subsequent actions out of the statute.  Nothing in the subsequent-action language of Section 113(g)(2) requires that the United States prevail in the initial action on its claim for "costs . . . incurred" *or* even that it obtain a declaratory judgment on liability in that action as a condition to bringing a subsequent action.  There could be reasons why the United States would not prevail in the initial action but still could prevail in a subsequent action for costs.  A court might find, for example, that the costs sought in the initial action were inconsistent with the National Contingency Plan or (as asserted here) that the claim for those costs is barred by the Federal Rules of Civil Procedure.  But nothing in Section 113(g)(2) conditions the pursuit of further costs in subsequent actions on the United States' prevailing in the initial action.  While judicial efficiency might be reduced by sequential actions without the benefit of a liability or declaratory judgment from the initial action, CERCLA's plain language allows the United States nonetheless to pursue separate claims for subsequently incurred costs in subsequent actions.  Rule 13(a) does not bar the United States from pursuing such claims in this action, and the Court should clarify its order, if not vacated, to allow the United States to pursue costs incurred after December 22, 2005.

F.  THE RCRA SECTION 7003 INJUNCTIVE CLAIM IS BASED ON
CURRENT CONDITIONS AND IS NOT COMPULSORY.

The United States' request for injunctive relief pursuant to Section 7003 of RCRA,
42 U.S.C. § 6973, is not a claim arising out of the same transaction or occurrence as the
parties' CERCLA claims relating to past costs.  CERCLA Section 107(a) claims for past
costs arise out of a previous transaction where costs or damages were incurred.  See 42
U.S.C. § 9607(a).  In contrast, Section 7003 of RCRA, 42 U.S.C. § 6973, expressly grants
the EPA Administrator on behalf of the United States the power to abate an imminent and
substantial endangerment that is ongoing.  A request for injunctive relief under RCRA
Section 7003 focuses on present conditions and future threats.  Section 7003 of RCRA
"focuses on the abatement of conditions threatening health and the environment. . . ."
United States v. Northeastern Pharm. & Chem. Co., 810 F.2d 726, 740 (8th Cir. 1986),
cert. denied, 484 U.S. 848, 108 S. Ct. 146, 98 L.Ed. 102 (1987); 42 U.S.C. § 6973(b).
Section 7003(a) authorizes action upon evidence that disposal of solid waste *may* present
an imminent and substantial endangerment to health or the environment.  United States v.
Waste Industries, Inc., 734 F.2d 159, 164 (4th Cir. 1984).

Unlike the CERCLA claim which focuses on past activity and is subject to statutes
of limitations, RCRA's request for injunctive relief focuses on the threat of present and
future harms with no statute of limitations to the filing of an action.  The Ninth Circuit has
elaborated on the standard in Price v. United States Navy, 39 F.3d 1011, 1019 (9th Cir.
1994):

> A finding of "imminency" does not require a showing that actual
> harm will occur immediately so long as the risk of threatened harm is
> present: "An 'imminent hazard' may be declared at any point in a chain of
> events which may ultimately result in harm to the public."  Environmental
> Defense Fund, Inc. v. Environmental Protection Agency, 465 F.2d 528,
> 535 (D.C.Cir.1972) (quoting EPA Statement of Reasons Underlying the
> Registration Decisions).  Imminence refers "to the nature of the threat

14

rather than identification of the time when the endangerment initially arose." United States v. Price, 688 F.2d 204, 213 (3d Cir.1982) (quoting H.R.Committee Print No. 96-IFC 31, 96th Cong., 1st Sess. at 32 (1979)).

Moreover, a finding that an activity may present an imminent and substantial harm does not require actual harm. United States v. Waste Industries, Inc., 734 F.2d 159 (4th Cir.1984). Courts have also consistently held that "endangerment" means a threatened or potential harm and does not require proof of actual harm. United States v. Ottati & Goss, Inc., 630 F.Supp. 1361, 1394 (D.N.H.1985); United States v. Vertac Chemical Corp. 489 F.Supp. 870, 885 (E.D.Ark.1980). See also Ethyl Corp. v. EPA, 541 F.2d 1, 13 (D.C. Cir.) (en banc), cert. denied, 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976) ("[c]ase law and dictionary definition agree that endanger means something less than actual harm"). 39 F.3d at 1019.[7] Further, an endangerment is imminent if there is a present threat even though "the impact of the threat may not be felt until later." Meghrig v. KFC Western, Inc., 516 U.S. 479, 485-86, 116 S. Ct. 1251 (1996) (quotations omitted).

The Court should not view the exercise of equitable abatement powers under Section 7003 of RCRA as equivalent to a CERCLA claim relating to past response costs. A request for injunctive relief is to abate present conditions and future threats. In any case, to the extent that the United States can show that an imminent and substantial endangerment now exists, the injunctive claim cannot be barred as a compulsory claim from an earlier action. Otherwise, the Court will be depriving EPA of the power to

---

[7]    In Price, the Ninth Circuit was construing Section 7002 (a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), which provides a citizen suit against any person "who has contributed to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." This language mirrors the language of RCRA section 7003(a), 42 U.S.C. § 6973(a). See Cox v. City of Dallas, Texas, 256 F.3d 281, 294 n. 22 (5th Cir. 2001).

exercise express statutory remedies to hazards that threaten public health or the environment, effectively annulling Section 7003 of RCRA, 42 U.S.C. § 6973.

G.  IN RESPONSE TO THE COURT'S COMMENT, THE UNITED STATES WAITED TO ASSERT ITS SECTION 107 CLAIMS IN ACCORDANCE WITH CERCLA'S PROVISIONS AND POLICIES.

The Court noted that the United States did not explain in its opposition "why it waited until 2010 to assert the subject claims." Mem. Opinion, at 14.  One reason the United States did not offer any explanation of why it did not assert a Section 107 claim on behalf of EPA in 2005 is procedural:  The United States was responding to a motion to dismiss, and not seeking leave to amend an answer to add an omitted counterclaim. In the instant motion to dismiss, the United States instead focused its briefing on the applicability of the compulsory counterclaim rule based on the allegations in the complaint.  The circumstances relating to delay may be material to amending an answer, but have no bearing on the instant motions to dismiss.  Nevertheless, to respond to the Court's comment, there were good reasons the United States did not file its claims on behalf of EPA in December 2005 when DoD filed an answer in the 2005 Colton Action.

CERCLA contemplates that state response programs will function in harmony with federal response actions.  See, e.g., 42 U.S.C. § 9628.  For example, where a site is being addressed under a state response program, EPA may have limited authority to take a judicial enforcement action to recover response costs under CERCLA 107(a). Id.  In addition, under the Superfund program, EPA can only use Superfund money to perform remedial actions with respect to Sites on the NPL.  Pakootas v. Teck Cominco Metals, Ltd., 452 F.3d 1066, 1069 n.4 (9th Cir. 2006), cert. denied, 552 U.S. 1095,128 S.Ct. 858, 169 L.Ed. 722 (2008); 40 C.F.R. § 300.425(b)(1).

From 2002 until about 2008, including at the time of the 2005 Colton Action, the California Regional Water Quality Control Board, Santa Ana Region, and not EPA, was the lead agency for investigation and cleanup efforts at the Site.  (Exhibit 27, Doc.

19-10, at 522.)  Although EPA assisted the State in 2003 by issuing an investigation order to Goodrich and Emhart for some testing of soil and groundwater (Exhibit 26, Doc. 19-9), the State continued to lead the larger investigation and cleanup.  (Exhibit 27, Doc. 19-10, at 522.)  EPA did not add the Site to the Superfund National Priorities List ("NPL") or begin leading cleanup efforts at the Site until September 2009. (Exhibit 27, Doc.19-10, at 519, 522).  In January 2010, EPA completed a Remedial Investigation and Feasibility Study Report and released it to the public for comment along with a Proposed Groundwater Cleanup Plan.  (Exhibit 28, Doc.19-10; Exhibit 27, Doc.19-10).  In the instant case, the B.F. Goodrich Site was a state lead site up until the Site was placed on the NPL in September 2009.  Although the United States could have asserted a Section 107 claim for costs in 2005, it was after the Site was listed on the NPL in 2009 and EPA was the lead agency that it was most appropriate for the United States to file its Section 107 claim to recover past costs and obtain a declaratory judgment for the substantial costs that will be incurred in the future. Similarly, asserting a RCRA Section 7003 claim for a judicial remedy was most appropriate after the State was no longer lead.

## CONCLUSION

WHEREFORE, the United States respectfully requests that this Court reconsider its order of August 10, 2010 and deny the motions to dismiss.

Dated:     September 9, 2010

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division


By:   /s/ James R. MacAyeal
    JAMES R. MacAYEAL
    DAVID ROSSKAM
    VALERIE K. MANN
    DEBORAH A. GITIN
    BONNIE A. COSGROVE
    Environmental Enforcement Section
    U.S. Department of Justic

Of Counsel:
MICHELE BENSON
United States Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, CA 94105

Attorneys for Plaintiff UNITED STATES OF AMERICA, ON BEHALF OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

MICHAEL C. AUGUSTINI
ROCHELLE L. RUSSELL
LESLIE M. HILL
Environmental Defense Section
U.S. Department of Justice

Attorneys for Defendant UNITED STATES OF AMERICA, ON BEHALF OF THE UNITED STATES DEPARTMENT OF DEFENSE

**PROOF OF SERVICE**

***City of Colton v. American Promotional Events, Inc., et al.,***
**United States District Court, Central District of California**
**Case No.:  ED CV 09-01864 PSG (SSx)**
[Consolidated with Case Nos. CV 09-06630 PSG (SSx),
CV 09-06632 PSG (SSx), CV 09-07501 PSG (SSx), and CV 09-07508 PSG (Ssx)
CV 10-00824 PSG (SSx)]

I am an attorney at the United States Department of Justice, in the Environmental Enforcement Section.  My business address is 601 D Street, N.W., Washington, D.C.  20004.  I am over the age of 18 years, and not a party to this action.

On September 9, 2010, following ordinary business practice, I served on counsel of record the foregoing document, described as:

by transmitting same via LexisNexis File and Serve, Inc. on LexisNexis File and Serve, Inc. website.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 9, 2010.

/s/ James R. MacAyeal
James R. MacAyeal