LINK TO DOCS. 288, 335 & 354

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | EDCV 09-1864 PSG (SSx) | Date | December 21, 2010 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | | |
|---|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):     Attorneys Present for Defendant(s):

Not Present     Not Present

**Proceedings:** **(In Chambers) Order Denying Emhart's Motion for Summary Judgment, or in the Alternative Summary Adjudication, Denying Goodrich's Motion for Partial Summary Judgment, and Denying Pyro Spectacular's Motion for Partial Summary Judgment**

Pending before the Court is Emhart Industries, Inc. Motion for Summary Judgment, or in the Alternative Summary Adjudication, Goodrich Corporation's Motion for Partial Summary Judgment, and Pyro Spectacular, Inc.'s Motion for Partial Summary Judgment. The Court held a hearing on the matters on August 27, 2010. After considering all the moving and opposing papers, the Court DENIES all the motions.

I.     Background

The consolidated actions *City of Colton v. American Promotional Events, Inc. et al.*, Case No. 09-1864 PSG (SSx) (the "2009 Colton Action"), *United States v. Goodrich Corporation et al.*, Case No. 10-0824 PSG (SSx) (the "United States Action"), *City of Rialto et al. v. United States Department of Defense et al.*, Case No. 09-7501 PSG (SSx) (the "2009 Rialto Action"), *Goodrich Corporation v. Chung Ming Wong et al.*, Case No. 09-6630 (the "2009 Goodrich Action"), *County of San Bernardino et al. v. Tung Chun Co. et al.*, Case No. 09-6632 (the "San Bernardino Action"), and *Emhart Industries, Inc. v. American Promotional Events, Inc.-West et al.*, Case No. 09-7508 (the "Emhart Action") (collectively, the "Consolidated Actions"), are the latest in a long series of federal cases concerning the perchlorate and trichloroethylene

**LINK TO DOCS. 288, 335 & 354**
**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | December 21, 2010 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

contamination of the Rialto-Colton Groundwater Basin. This litigation dates back to early 2004.

In October 2009, the City of Rialto ("Rialto"), the City of Colton ("Colton"), Goodrich Corporation ("Goodrich") and the County of San Bernardino ("San Bernardino") filed complaints in this Court alleging that Emhart Industries, Inc. ("Emhart") is liable for costs they have incurred or will incur to investigate and clean up the contaminated drinking water wells in the Rialto/Colton Groundwater Basin and a 160-acre site where hazardous substances were allegedly stored and disposed of beginning in the 1940's (the "sites").[1] In response to the complaints, Emhart filed its own complaint seeking recovery for costs incurred to investigate the soil and groundwater at the sites between 2004 and 2009.

Kwikset Locks, Inc. ("KLI") was a California corporation that designed, manufactured, assembled and sold residential lock sets. In 1952, Adolf Schoepe, President and founder of KLI incorporated West Coast Loading Company ("WCLC") as a KLI wholly-owned subsidiary to load and assemble munitions for the United States Army in the war effort. In the same year, WCLC entered into a five-year lease with an option to purchase the 160 acre site where its facilities were built. WCLC's operations were closed down in February of 1957 because of a slow down in the award of government munitions contracts.

The American Hardware Corporation ("AHC") was a Connecticut corporation primarily in the business of locks, door closers, sash hardware, door and window fittings and other hardware. Early in 1957, AHC approved a tender offer whereby AHC would acquire all of the capital stock of KLI. On March 11, 1957, KLI's board of directors approved AHC's offer and AHC declared the offer successful on July 1, 1957. On the same day, WCLC, whose operations had since shut down, was merged with KLI pursuant to California Corporations Code § 4124. As a result of the statutory merger, KLI assumed all of WCLC's liabilities and took title to the 160 acre site.

After the tender offer, KLI operated as a division of AHC. Just over a year after the tender offer, KLI was dissolved and AHC authorized its officers to enter into a liability assumption agreement ("Assumption Agreement") with KLI. That Assumption Agreement

---

[1] The facts in this background section are based on the complaints and the papers submitted in connection with the present motions. They are not in dispute.

**LINK TO DOCS. 288, 335 & 354**

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | December 21, 2010 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

cannot be located by the parties to this case. On June 30, 1958, KLI executed a Certificate of Dissolution and then filed it with the California Secretary of State on July 1, 1958. On June 29, 1964, AHC merged with Emhart Manufacturing Company, which became Emhart Industries, Inc. in 1976.

The parties filing complaints against Emhart seek, *inter alia*, contribution for clean up costs incurred under CERCLA and similar California law provisions on the theory of corporate successor liability. On March 26, 2010, Emhart filed a motion for summary judgment, or in the alternative summary adjudication, in this Court seeking to establish that it did not assume any environmental liabilities when it completed the asset transfer with KLI. On May 6, 2010, Goodrich filed its own motion for partial summary judgment seeking to conclusively establish that Emhart did assume the environmental liabilities of KLI that are contested in this case. Finally, Pyro Spectaculars, Inc. ("PSI"), another party against whom, *inter alia*, contribution is sought, filed a motion for partial summary judgment on May 8, 2010 on the narrower issue of whether Emhart assumed KLI and WCLC's CERCLA liabilities. Those motions are now before the Court.

II. <u>Legal Standard</u>

Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, and "may not rest upon mere allegations or denials of his pleading." *See id*. at 248, 257 (citations omitted).

A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Such an issue of fact is a genuine and material issue if it cannot be reasonably resolved in favor of either party and may affect the outcome of the suit. *See Anderson*, 477 U.S. at 248, 250-51.

**LINK TO DOCS. 288, 335 & 354**
O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | December 21, 2010 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

If the moving party seeks summary judgment on a claim or defense for which it bears the burden of proof at trial, the moving party must use affirmative, admissible evidence. Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. *See* Fed. R. Civ. P. 56(e).

III.  Discussion

    A.  Emhart and Goodrich's Motions for Summary Judgment

Emhart and Goodrich both seek summary judgment on the issue of Emhart's succession to all of KLI and WCLC's liabilities. In brief, Emhart contends that it did not assume any of KLI and WCLC's "future-arising…environmental liabilities." *Emhart Mot.* 1:22-23. As a result, Emhart is seeking summary judgment releasing Emhart from the claims asserted against it under the following federal and state laws: (1) CERCLA, 42 U.S.C. § 9601 *et seq.*, Pub. L. No. 96-510, 94 Stat. 2767 (1980); (2) RCRA, 42 U.S.C. § 6973, Pub. L. No. 94-580, 90 Stat. 2826 (1976); (3) 28 U.S.C. §§ 2201, 2202; (4) California Water Code §§ 13000-13365, Cal. Stats. 1969, c. 482, § 18 (1969); (5) California Health and Safety Code § 25360 *et seq.*, Cal. Stats. 1981, c. 756 § 2 (1981); (6) California Code of Civil Procedure § 1060; and (7) state law tort claims for negligence, nuisance, public nuisance, trespass equitable indemnity, contribution and declaratory relief.

Goodrich filed a cross-motion for partial summary judgment seeking a ruling that, as a matter of law, Emhart, via AHC, expressly assumed all of the liabilities of KLI, including the environmental liabilities at issue in this case. *See Goodrich Mot.* 2:15-17. Defendants Schulz, PSI, Colton, API, San Bernardino and Robertson all joined Goodrich's motion and the United States and Rialto filed oppositions to Emhart's motion. All are collectively referred to as the Emhart Adverse Parties unless otherwise noted.

        1.  There is a Genuine Issue of Material Fact as to Emhart's Express or Implied Assumptions of Kwikset and West Coast Loading Company's Liabilities

Emhart bases its motion for summary judgment on the argument that when it acquired KLI through tender offer, it only assumed "all debts, liabilities and obligations of [KLI], *in*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | December 21, 2010 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

*existence on the date of such distribution and transfer of its assets and business*, contingent or otherwise known or unknown." *Emhart Mot.* 6:16-19 (emphasis added). Goodrich, in its cross-motion for partial summary judgment, argues that the evidence conclusively shows that Emhart expressly assumed all of KLI's liabilities, including environmental liabilities. *Goodrich Mot.* 2:15-16. If the parties and the Court had the advantage of examining the Assumption Agreement outlining the transfers of liabilities between the parties at the time of asset transfer, the Court would look only to it and determine, as a matter of law, which liabilities Emhart assumed. The Assumption Agreement, however, is missing and the parties offer conflicting, admissible evidence about the true contents of the Assumption Agreement. Because neither moving party—Emhart or Goodrich—is able to carry its burden and demonstrate that there is no genuine issue of material fact, summary judgment is not appropriate as to whether Emhart expressly or impliedly assumed all or only some of KLI's liabilities at the time of asset transfer.[2]

      a.  <u>Emhart's Offered Evidence</u>

  Emhart argues that there are only two pieces of admissible evidence that prove the contents of the original Assumption Agreement: a resolution passed by AHC's board of directors in 1958, and KLI's dissolution certificate.

  First, it is undisputed that AHC's board of directors passed a resolution on June 5, 1958 authorizing its officers to execute an agreement with KLI assuming all obligations and liabilities

---

[2] Federal Rule of Evidence 1002 requires that, "[t]o prove the content of a writing…the original writing…is required, except as otherwise provided in these rules or by Act of Congress." Fed. R. Evid. 1002. Rule 1001 defines a writing as "letters, words, or numbers, or their equivalent, set down by handwriting, trypewriting, printing…or other form of data compilation." Fed. R. Evid. 1001. Rule 1004 qualifies the general requirement that the original writing be produced and allows for the admission of other evidence to prove the contents of a writing if, among others, "[a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." Fed. R. Evid. 1004. At oral argument, the parties did not dispute that the original Assumption Agreement has been lost—not due to bad faith—and that extrinsic evidence should be admitted to prove its contents. The trier of fact will consider the evidence related to the true contents of the Assumption Agreement and determine whether all or only some of KLI's liabilities were assumed.

**LINK TO DOCS. 288, 335 & 354**
**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | December 21, 2010 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

"in existence on the date of such distribution and transfer of its assets and business, contingent or otherwise known or unknown." Joint Appendix ("J.A.") at 265-267, Ex. 31. Emhart's objection that evidence offered by the Adverse Parties lacks sufficient foundation may equally apply to the board resolution offered here, as it is impossible for a voting member of the board of directors to have personal knowledge about the contents of a writing not yet in existence. This does not mean, however, that the board resolution does not shed any light on the content of the later agreement, as it was supposed to direct AHC's officers when creating the Assumption Agreement with KLI. *Emhart Mot.* 12:12-16. The language of the board resolution, namely that AHC would assume liabilities then "*in existence*" might suggest that AHC only assumed those liabilities existing and known at the time of the asset transfer as Emhart suggests. Nevertheless, it is only one piece in the evidentiary puzzle.

Second, on June 30, 1958, KLI executed a Certificate of Winding Up and Dissolution, which states that "the American Hardware Corporation assumed and became responsible for all debts and liabilities of said corporation remaining unpaid as of June 30, 1958." J.A. at 306-309, Ex. 35. The Emhart Adverse Parties argue that the language "*all* debts and liabilities" reflects the meaning of the missing Assumption Agreement, whereas Emhart contends that the language reflects only the debts and liabilities that were required to be assumed by the California Corporations Code at the time: known debts and liabilities. *Emhart Mot.* 13:3-4. Once again, while this evidence is relevant, it is by no means conclusive as a matter of law and is but another piece in the puzzle.

b. <u>Adverse Parties' Offered Evidence</u>

The Emhart Adverse Parties reject Emhart's contentions and offer evidence that AHC's assumption of KLI's liabilities in the Assumption Agreement was not modified by the phrase "in existence." *See US Mot.* 6:19-7:3. Instead, the Emhart Adverse Parties contend that AHC assumed "all" liabilities, which includes environmental liabilities. *Id*. AHC's 1958 Annual Report, and its IRS and SEC filings, among others, are offered as proof of the contents of the

**LINK TO DOCS. 288, 335 & 354**
**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | December 21, 2010 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

Assumption Agreement by the Emhart Adverse Parties.[3] Both establish genuine issues of material facts.

First, the President of AHC stated in the 1958 Annual Report of the company that "in order to simplify the corporate structure, Kwikset Locks, Inc. (a wholly-owned subsidiary) was dissolved as of June 30, 1958, and all of its assets and liabilities transferred to the parent company." J.A. at 349-350, Ex. 40. The report went on to say that "Kiwkset Locks, Inc. was liquidated and all its assets and liabilities were transferred to [AHC]." *Id*. Like the evidence offered by Emhart, this Annual Report does not necessarily conclusively establish that AHC assume *all* of KLI's liabilities, but it does contradict Emhart's evidence. Though it may not fit neatly into the puzzle started by Emhart, it is one piece of evidence that may help a finder of fact determine the actual contents of the missing Assumption Agreement.

Similarly, the Emhart Adverse Parties offer financial documents filed under oath with the IRS and SEC to establish that the Assumption Agreement provided for assumption of all liabilities, not just known and existing liabilities. For example, AHC filed for a tax refund of KLI's corporate income taxes in 1961, stating to the IRS that "[o]n June 30, 1958, Kwikset Locks, Inc. was dissolved. All the assets and liabilities were transferred to the parent corporation, and operations were continued as Kwikset Division of the American Hardware Corporation." J.A. at 629-23, Ex. 49. In addition, AHC and its parent company, B.S.F. Company, filed documents with the SEC stating that "[a]s of June 30, 1958, Kwikset Locks, Inc. was liquidated and all its assets and liabilities were transferred to the Company." J.A. at 447-619, Exs. 46-48.

The admissible evidence offered by Emhart and the Emhart Adverse Parties tends to contradict the positions taken by each as to the actual contents of the missing Assumption Agreement. Having considered that the Assumption Agreement is not available to examine and that the admissible evidence creates a factual dispute not capable of reasonable resolution at this stage in the litigation, the Court DENIES both Emhart and Goodrich's motions for partial

---

[3] The Adverse Parties offer additional evidence supporting their position, but because the evidence considered by the Court is sufficient to establish a genuine issue of material fact, the Court need not address that evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | December 21, 2010 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

summary judgment or summary adjudication on the issue of express or implied assumption of all or only some of KLI's liabilities.

        2.        <u>There Exists a Genuine Issue of Material Fact as to Whether the De Facto Merger Doctrine Applies</u>

Because a genuine dispute of material fact exists about the scope of AHC's assumption of KLI's liabilities, the Court cannot rule as a matter of law that the "de facto merger" doctrine does or does not apply to the facts of this litigation.[4]

Generally, an asset transfer, compared to a complete merger, does not expose the buying company to the selling company's liabilities. *Marks v. Minnesota Min. & Mfg. Co.*, 187 Cal. App. 3d 1429, 1435 (1986). The de facto merger doctrine supplies an exception to the general rule "where the assets of one corporation are transferred without consideration which can be made available to satisfy claims or where the consideration consists wholly of shares of the purchaser's stock which are promptly distributed to the seller's shareholders in conjunction with the shareholder's liquidation." *Id.* California courts have used five factors to determine whether an asset sale should be treated as a formal merger for equitable purposes: "(1) was the consideration paid for the assets solely stock of the purchaser or its parent; (2) did the purchaser continue the same enterprise after the sale; (3) did the shareholders of the seller become shareholders of the purchaser; (4) did the seller liquidate; and (5) did the buyer assume the liabilities necessary to carry on the business of the seller?" *Id.* at 1436.

Generally, the critical factor in determining whether an asset sale should be treated as a de facto merger is the adequacy of consideration provided in the exchange of assets. *Franklin v. USC Corp.*, 87 Cal. App. 4th 615, 625, 105 Cal. Rptr. 2d 11 (2001). While assumption of liabilities "alone may constitute consideration for the transfer of assets," it is "appropriate to examine successor liability [agreements] on their own unique facts." *CenterPoint Entergy, Inc. v. Super. Court*, 157 Cal. App. 4th 1101, 1122, 69 Cal. Rptr. 3d 202 (2007) (holding that

---

[4] The Asset Transfer and Dissolution at issue were done under California law and California law therefore governs this issue. None of the parties have contested this point. *See Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1094 n. 6 (1991) ("state law will govern the internal affairs of the corporation" (internal citation omitted)).

**LINK TO DOCS. 288, 335 & 354**
**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | December 21, 2010 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

assumption of liabilities was adequate consideration because "[n]either CenterPoint nor New Reliant was left undercapitalized because of the restructuring, and both could theoretically have responded to creditors").

Given the absence of the Assumption Agreement and the disagreement between the parties as to the contents of it, the Court cannot make a determination on the issue of whether the asset transfer meets the requirements of the de facto merger doctrine. To base a determination on the unique facts of the case as California law requires, the Court must resort to the contents of the Assumption Agreement between AHC and KLI. Emhart concedes that the consideration for the asset transfer between AHC and KLI was the assumption of liabilities, along with the stock transfer itself. *Emhart Mot.* 30 n.32. But without an understanding of the true nature of the Assumption Agreement, the Court can not determine whether the assumption of liabilities was adequate consideration under the de facto merger doctrine. As a result, there is a genuine issue of material fact as to the applicability of the de facto merger doctrine.

B. PSI's Motion for Partial Summary Judgment

In response to Emhart's motion on the issue of successor liability, PSI filed a cross-motion for partial summary judgment and asserted that Emhart assumed KLI and WCLC's CERCLA liabilities. *See PSI Mot.* 13, 16. Schulz, Colton, API, San Bernardino and Robertson all joined PSI's cross-motion for summary judgment. The Court notes that unlike Goodrich and Emhart's motions on the assumption of all liabilities, PSI's motion is limited only to the question of Emhart's CERCLA liabilities.

As discussed, Emhart maintains that when it acquired KLI through tender offer, it only assumed "all debts, liabilities and obligations of [KLI], *in existence* on the date of such distribution and transfer of its assets and business, contingent or otherwise known or unknown." *Emhart Mot.* 6:16-19 (emphasis added). Reading this narrowly, Emhart contends that it, through AHC, only assumed those liabilities of KLI which were (1) in existence at the time of the asset transfer, and (2) actually known. *Id.* 12:5-13:12. As a result, Emhart argues that it cannot be liable under CERCLA and that PSI's motion for partial summary judgment cannot be granted.

1. The Meaning of the Assumption Agreement as Offered by Emhart

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | December 21, 2010 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

Assuming, *arguendo*, that the contents of the Assumption Agreement are as Emhart states them to be, AHC still assumed KLI and WCLC's CERCLA liabilities if such liabilities are established. Emhart contends that the Assumption Agreement provided that AHC would assume "all obligations and liabilities of [KLI] in existence on the date of such distribution and transfer of its assets and business, contingent or otherwise known or unknown." *Emhart Mot.* 12:9-11. Emhart's assertion that this included only those liabilities known to AHC at the time of the asset transfer cannot be correct. Under California law, contracts are interpreted as to give meaning to each word and phrase of the contract.[5] *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *Cole v. Low*, 81 Cal. App. 633, 637, 254 P. 676 (1937)(" A contract shall be so construed as to give force and effect, not only to every clause, but to every word in it, so that no clause or word may become redundant, unless such construction would be obviously repugnant to the intention of the parties, to be collected from its terms, or would lead to some absurdity.").

To accept Emhart's interpretation of the language that it posits accurately reflects the missing Assumption Agreement would strip the words of their independent and cohesive force and effect. For example, the language offered by Emhart includes liabilities both "known and unknown," yet Emhart suggests this only includes those liabilities actually "known." Emhart cannot properly argue that this is the true language of the Assumption Agreement, but that it does not mean what it plainly says. The language offered by Emhart, if correct, would expose it to the fewest liabilities, as compared with the language offered by the other parties. Accepting, for the purpose of argument only that Emhart is correct, Emhart assumed those liabilities both known and unknown at the time of asset transfer.[6]

---

[5] The Assumption Agreement is a contract formed in California, governed by California state law principles. *See Comedy Club, Inc. v. Improv West Associates*, 553 F.3d 1277 (9th Cir. 2009).

[6] Emhart also offered the dissolution certificate of KLI as evidence that AHC assumed only *known* liabilities. *See Mot.* 6:27-7:12. The certificate provides that KLI's "*known* debts and liabilities have been actually paid or adequately provided for *by the assumption of all unpaid debts and liabilities* . . . pursuant to [the Assumption Agreement] between [KLI] and [AHC] by virtue of which [AHC] *assumed and became responsible for all of the debts and liabilities of [KLI] remaining unpaid as of June 30, 1958*." J.A. at 307, Ex. 35 (emphasis added). Just

LINK TO DOCS. 288, 335 & 354

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | December 21, 2010 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

      Emhart next argues that CERCLA liabilities cannot be included in the Assumption Agreement of 1958 because CERCLA was not enacted until 1980. An assumption agreement executed prior to the enactment of CERCLA, however, will still include CERCLA liabilities so long as the language of the agreement is "broad enough to allow us to say that the parties intended to transfer either contingent environmental liability, or all liability." *United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1233, 1241 (E.D. Cal. 1997); *see also Long Beach Unified School Dist. V. Dorothy B. Goodwin California Living Trust, et al.*, 32 F.3d 1364, 1366 (9th Cir. 1994) (CERCLA applies retroactively). Moreover, "clear and specific language" must be used "to effect the exclusion of unknown or contingent liabilities," *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 310 (3d Cir. 1985), and broad language like "all liabilities" or "contingent or otherwise known or unknown" is sufficient to include CERCLA liabilities, *Ford Motor Co. v. United States*, 378 F.3d 1314 (Fed. Cir. 2004) (contract term allowing for reimbursement for costs "not now known" covered future CERCLA claims). *See also GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615 (7th Cir. 1995) (agreement to assume "all obligations and liabilities of any nature (whether accrued, absolute, contingent or otherwise)…incurred…prior to the effective date" was broad enough to transfer CERCLA liabilities); *Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 16 (2d Cir. 1993) ("all liabilities, absolute or contingent" was broad enough to include CERCLA liabilities); *A-C Reorganization Trust v. E.I. Dupont De Nemours & Co.*, No. 94-C-574, 1997 WL 381962, *5 (E.D. Wis. March 10, 1997) (agreement to assume "all debts…liabilities…of any kind, character or description, whether accrued, absolute, contingent or otherwise" included CERCLA liabilities).

      The language that Emhart offers as that in the Assumption Agreement is broad enough for AHC, and therefore Emhart, to assume KLI's CERCLA liability. Specifically, Emhart says that AHC assumed "all debts, liabilities and obligations," which were "contingent or otherwise

---

because the dissolution certificate indicates that known liabilities had been assumed does not mean that unknown liabilities had not been. Moreover, Emhart itself asserts that "there is no evidence that [AHC's] Board of Directors ever modified" the Board Resolution—which directed the assumption of KLI's liabilities "in existence on the date of [transfer], contingent or otherwise known or unknown"—or that it was not followed when the Assumption Agreement was signed. *Emhart Mot.* 6:11-26. Thus, there is no genuine dispute as to Emhart's own offered language or interpretation of that language.

**LINK TO DOCS. 288, 335 & 354**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | December 21, 2010 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

known or unknown." The only qualifying language in the agreement that Emhart can point to as limiting the liabilities of AHC is "in existence." Like the case law suggests, this is not clear or specific enough to remove environmental liabilities from the package of liabilities that the Assumption Agreement purportedly included. This does not mean, however, that "in existence" is a term without meaning. Having established that the Assumption Agreement language offered by Emhart is broad enough to include environmental liabilities, the question becomes whether CERCLA liabilities were "in existence" at the time the Assumption Agreement was made. If so, Emhart assumed KLI and WCLC's CERCLA liabilities through AHC.

California law is clear: "A liability may be absolute or contingent; it may be unconditional or limited; it may be presently enforceable by action, or there may be time given for its performance; but, whatever its character, it is created by the consummation of the contract, act, or omission by which the liability is incurred." *Hunt v. Ward*, 99 Cal. 612, 615, 34 P. 335 (1893). Stated somewhat differently, a liability is "in existence" at the time the act giving rise to liability is consummated. Because CERCLA liability is retroactive, and under California law a liability exists at the time the act occurs, Emhart's proclaimed assumptions of liabilities "in existence" at the time of the asset transfer includes those liabilities retroactively imposed by CERCLA if CERCLA's requirements are met. The final question then becomes whether PSI has established that the requirements to impose liability under CERCLA are met as a matter of law.

  2. <u>CERCLA Liability</u>

CERCLA liability is imposed "when three conditions are satisfied: (1) the site at which there is an actual or threatened release of hazardous substances is a 'facility' under § 9601(9); (2) a 'release' or 'threatened release' of a 'hazardous substance' from the facility has occurred, § 9607(a)(4); and (3) the party is within one of the four classes of persons subject to liability under § 9607(a)." *Pakootas v. Teck Cominco Metals, Inc.*, 452 F.3d 1066, 1073-74 (9th Cir. 2006). Emhart does not dispute the first or third elements of this test, arguing instead that the second element has not been met with respect to the alleged release of perchlorate and trichloroethene ("TCE"). *See Emhart Reply* 33:7-13. Specifically, Emhart contends that perchlorate is not a hazardous material under CERCLA, and that there is no evidence that TCE was ever "used and disposed of" at the Goodrich site. *See Emhart Reply* 36:25-26.

  a. <u>"Release" of a "Hazardous Substances"</u>

**LINK TO DOCS. 288, 335 & 354**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | December 21, 2010 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

Emhart provides the results of soil samples tested by a consulting firm hired to investigate locations where the EPA and California Regional Water Quality Control Board suspected that WCLC used and deposited TCE. *Id.* 37:1-5; *Wyatt Decl.* ¶ 7, Ex. 4. Moreover, Emhart provides evidence tending to show that the TCE came from "burn pits" installed by Goodrich within the facility. *Id.* This evidence contradicts PSI's deposition testimony from former employees of WCLC with knowledge of the operations at the facility. *See Wyatt Decl.*, Exs. 6, 7, 9, 11. As both parties present evidence from which a finder of fact can conclude that there was a release or threatened release of TCE at the site, summary judgment is inappropriate as to Emhart's CERCLA liability for WCLC's alleged TCE release.

Similarly, there is a genuine dispute of material fact as to whether perchlorate is a "hazardous substance" within CERCLA's reach. Emhart correctly points out that perchlorate has not been listed as a hazardous substance in the Code of Federal Regulations, *see* 40 C.F.R. § 302.4, and that the EPA has not made any determinations regarding perchlorate's status as either a CERCLA hazardous substance or a RCRA hazardous waste, *see* Wyatt Decl. ¶ 5, Ex. 2. On the other hand, PSI relies on the fact that included as hazardous substances under CERCLA are those things that meet the definition of a hazardous solid waste under the Solid Waste Disposal Act as amended by RCRA. *See* 42 U.S.C. § 9601(14). Hazardous solid waste under RCRA has one of the following four properties: ignitability, corrosivity, reactivity, or toxicity. 40 C.F.R. § 261(C). PSI offers evidence that perchlorate meets the reactivity requirement of RCRA, and therefore is a hazardous waste by incorporation in CERCLA.[7] *See Mroz Decl.*, ¶ 35, Ex. 13 (a 1956 letter from the WCLC Plant Manager explaining their pyrotechnic materials). Both parties offer evidence as to the status of perchlorate. This factual dispute is material and summary judgment is therefore inappropriate here as well.

Based on the evidence presented by both PSI and Emhart, the Court finds that there is a genuine issue of material fact as to Emhart's succession to WCLC and KLI's perchlorate and TCE CERCLA liabilities. Judgment as a matter of law is not warranted.

V.   Conclusion

---

[7] The Court notes that PSI only offered evidence related to RCRA hazardous solid waste properties in the Reply to Emhart's Opposition and that Emhart did not have a full opportunity to offer its own rebuttal evidence.

LINK TO DOCS. 288, 335 & 354

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | December 21, 2010 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

    Based on the foregoing, the Court DENIES Goodrich's Motion for Partial Summary Judgment, DENIES Emhart's Motion for Summary Judgment or in the alternative Summary Adjudication, and DENIES PSI's Motion for Partial Summary Judgment.

    **IT IS SO ORDERED.**