**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CITY OF COLTON,<br><br>  Plaintiff,<br><br>  v.<br><br>AMERICAN PROMOTIONAL EVENTS, INC., ET AL.,<br><br>  Defendants.<br><br>AND RELATED CONSOLIDATED ACTIONS | NO. EDCV 09-01864 PSG (SSx)<br>[Consolidated with Case Nos. CV 09-06630 PSG (SSx), CV 09-06632 PSG (SSx), CV 09-07501 PSG (SSx), CV 09-07508 PSG (SSx), and CV 10-00824 PSG (SSx)]<br><br>**MEMORANDUM AND ORDER DENYING PLAINTIFF UNITED STATES OF AMERICA'S MOTION FOR REVIEW OF SPECIAL MASTER'S REPORT** |

**I.**

**INTRODUCTION**

On March 11, 2011, the Honorable Venetta S. Tassopoulos (Ret.), in accordance with her designation as the Special Master in the above-captioned matter (see Dkt. No. 278), conducted a hearing to resolve certain discovery disputes. (See Report of Special Master[1] at 2). One

---

[1] This Report does not appear to be separately filed with the Court. However, the Report was included in the exhibits submitted by the United States. The Court notes that the exhibits attached to the mandatory chambers copy do not necessarily correspond or match the

such dispute involved Plaintiff United States of America (the "United States") and Defendant Goodrich Corporation ("Goodrich"). The dispute involved Goodrich's request for production of documents and privilege logs from the United States. (Id.). At the hearing, the Special Master set a production schedule for the United States as a resolution of the dispute before her. Neither party requested that the Special Master memorialize her ruling in a written order.

The Special Master set a detailed schedule for the United States. (Id. at 5). The schedule required the United States to produce documents on a rolling basis in batches of 25,000 documents every week, with corresponding privilege logs to follow within ten days of each production. (Id.).

On March 22, 2011, the United States filed a motion for reconsideration with the Special Master, seeking reconsideration of the schedule. (Id. at 6). In its motion, the United States requested clarification concerning the number and type of documents required to be produced at each stage of the process. (Id.). The Special Master, in a written report, granted the motion for reconsideration in part, and explained that "the total number of documents for each production should be the sum of all documents actually produced, all documents listed on the corresponding privilege log, and all documents processed, reviewed and found to be non-responsive to any request." (Id. at 7).

---

exhibits submitted with the electronically filed copies.

On April 11, 2011, the United States filed the instant motion with this Court for review of the Special Master's order granting the motion for reconsideration in part. (Dkt. No. 646, Plaintiff United States' Motion For De Novo Review ("Motion for Review") at 1-2). In the Motion for Review, the United States objects to the Special Master's order on three grounds:

> (1) The Order erroneously compelled the production of documents because there was no motion to compel production before the Special Master;
>
> (2) The Special Master's Order ignores the terms of the Court's Case Management Order; and
>
> (3) The schedule is unduly burdensome.

(Id. at 2).

At the Court's May 31, 2011 hearing on the Motion for Review, counsel for the United States clarified this objection to the Special Master's order, arguing that the order compelled the United States to produce a privilege log that it was specifically not required to produce under the terms of the operative Case Management Order ("CMO").[2] The

---

[2] The case at bar is governed by the CMO entered on February 15, 2011. (Dkt. No. 601). Among other things, the CMO's provisions were intended to refine the scope of discovery in the current case because of its particularly complex nature. The provisions of the CMO relevant to this Order include paragraphs 6(d) through 6(j), discussed in more detail in Part II(B), infra.

3

United States also contended that, because the Special Master did not provide the United States the opportunity to object on that ground, failure to produce either documents or the log according to the schedule would unfairly expose the United States to sanctions.

The United States seeks an order vacating the Special Master's order on the grounds that the order exceeds the Special Master's authority and that the order conflicts with the CMO. The United States also seeks relief from the Special Master's schedule for production of documents and logs on the ground that the schedule is unduly burdensome. The Court has conducted a <u>de novo</u> review of the Special Master's ruling. For the reasons set forth below, the Motion for Review is DENIED.

## II.

## DISCUSSION

**A.** **<u>The Special Master Had Authority To Issue The Scheduling Order</u>**

The United States' first contention is that the Special Master exceeded the scope of her authority by entering an order which required the United States to produce documents and privilege logs according to a particular schedule. (<u>See</u> Motion for Review at 7, 9). The Court disagrees with this contention. The Special Master did not exceed her authority because the Special Master enjoys the same authority as the Court itself to set limitations on or alter the sequence of discovery, as established by the Federal Rules of Civil Procedure and this Court's Order delegating that authority to the Special Master. Furthermore, a schedule for production of documents and issuance of privilege logs was

4

a reasonable resolution to the discovery dispute placed before the Special Master by the parties.

Rule 26 of the Federal Rules of Civil Procedure allows the Court flexibility in controlling discovery, including provisions that allow the Court to change limitations on discovery as well as the sequence of discovery. See Fed. R. Civ. P. 26(b)(1); 26(d)(2). The authority to manage discovery in the present case has been delegated to the Special Master under the Order Re-Designating (Dkt. 278), and the terms of the CMO. (CMO at 7, ¶ 7). Under this authority, the Special Master may properly issue orders requiring the production of documents and the issuance of privilege logs on a particular schedule.

Moreover, Rule 53 allows the Special Master to perform all duties consented to by the parties. Fed. R. Civ. P. 53(a)(1)(A). Here, the parties squarely placed the issue of scheduling before the Special Master. First, Goodrich moved to compel the production of a privilege log, claiming that one was due immediately, while the United States argued that the log should be due ten days after document production was completed in its entirety. (Motion for Review at 11). This motion required the Special Master to determine exactly when the United States would be required to produce a privilege log. Her scheduling order was thus a reasonable resolution to the discovery dispute before her.

Second, the United States also requested that the Special Master delay depositions until the document production phase of discovery was complete. (Id. at 8-9). In fact, the United States admits in the Motion for Review that in doing so, the United States requested the

Special Master's assistance in setting a phased schedule of production in order to prevent the burden of reopened depositions. (Id.). Therefore, the United States itself placed the issue of timing with respect to the production of documents before the Special Master, and the issue was entirely within her authority to resolve. (See id.); (see also Report of Special Master at 5) ("Mr. MacAyeal [counsel for the United States], on behalf of the United States acknowledged the Special Master's authority to set this schedule."). The Court, therefore, rejects the United States' argument that the Special Master exceeded her authority when she set a schedule for the production of documents and privilege logs.

**B.    The Special Master's Order Does Not Conflict With The CMO**

The United States further argues that the Special Master's order ignored the CMO's provisions because the order required the United States to produce a privilege log identifying documents that the CMO specifically exempted from the logging requirement. However, the two orders, read in conjunction, do not conflict. The Court therefore does not interpret the Special Master's order as requiring the United States to log privileged documents exempted by the CMO.

The relevant provisions of the CMO are as follows:

6. PRIVILEGE LOGS

[. . .]

d. The parties are not required to include or identify in their privilege logs otherwise responsive documents generated on or after April 1, 2002 that contain attorney-client communications generated by or addressed to counsel for the responding party in connection with the prosecution or defense of the Consolidated Actions . . .

e. The parties are not required to include or identify in their privilege logs otherwise responsive documents subject to a common interest, joint defense protection or joint prosecution protection generated on or after April 1, 2002, that contain attorney-client communications in connection with the defense or prosecution of this litigation [or] the Consolidated Actions . . .

[. . .]

g. The parties are not required to include or identify in their privilege logs otherwise responsive documents generated on or after April 1, 2002, that contain attorney work product generated at the direction of counsel for the responding party in connection with the prosecution or defense of this action [or] the Consolidated Actions . . .

h. The parties are not required to include or identify in their privilege logs otherwise responsive documents generated on or after April 1, 2002, that contain attorney work product subject to a common interest privilege, joint prosecution

protection or joint defense protection in connection with the prosecution or defense of this action [or] the Consolidated Actions . . .

[. . .]

j. Notwithstanding any other provision of this Order, if in response to a request for the production of documents covered by Paragraph 6.a. through 6.i., above, responsive documents are not produced on the ground that they are protected by the attorney-client privilege and/or the attorney work product doctrine, the responding party shall so state in its response to the request for production of documents and shall identify the grounds upon which such documents have been withheld. If the requesting party inquires further regarding the withheld documents, the responding party shall provide the requesting party with the information (e.g., the general nature of the withheld documents (emails, letters, internal memoranda), the time range of the documents, the identity of any non-party recipients, and the number of documents withheld) which is reasonably necessary to allow the requesting party to determine whether to file a motion to compel production of the privilege log described in Paragraph 7 [i.e., with the Special Master].

(CMO at 4-7). In sum, the CMO exempts the parties from providing privilege logs with respect to certain types of privileged documents postdating April 1, 2002. It further requires that if the parties

desire logs for such documents, they must make a formal request. (See CMO at 6-7, ¶ 6(j)). At the May 31, 2011 hearing, counsel for both parties described this mechanism as a system for limiting the scope of discovery in order to eliminate document production they deemed at the outset to be largely unnecessary.[3]

As noted above, the Special Master's scheduling order required that the United States produce responsive documents in batches of 25,000 and also produce privilege logs ten days after each production. In response to the United States' request for clarification on this point, the Special Master explained that "[s]imply put, the total number of documents for each production should be the sum of all documents actually produced, all documents listed on the corresponding privilege log, and all documents processed, reviewed and found to be non-responsive to any request." (Report of Special Master at 7).

This clarification did not, as the United States argues, require the United States to produce a privilege log identifying documents generated after April 1, 2002, that were already exempted from production under the CMO. The Special Master's order addressed three categories of documents: produced documents, nonresponsive documents and documents subject to logging for privilege under the CMO (i.e., documents generated before April 1, 2002 or documents generated after

---

[3] Indeed, in some ways, this provision seems to rely on the principle of "mutually assured destruction." Once a party invoked paragraph 6(j) and requested a privilege log with respect to the post-April 1, 2002 documents, counsel explained at the hearing, the other party would likely file a matching request, forcing both to expend a much larger amount of time and money on document production.

9

1  April 1, 2002 for which no applicable privilege is claimed).  The order
2  did not address a fourth category of documents: documents that are not
3  subject to logging for privilege under the CMO (i.e., documents
4  generated after April 1, 2002 for which certain privileges, as described
5  in the CMO, are claimed).

7  The Special Master's order required the United States to produce
8  25,000 documents in each stage of production, but was not required to
9  include documents that the CMO specifically exempted.  In order to
10 obtain a privilege log describing such documents, Goodrich or any other
11 party must still make a further inquiry as contemplated by paragraph
12 6(j) of the CMO.  (See CMO at 6-7).  If the party deems it necessary,
13 it may then file a motion to compel their production before the Special
14 Master.  (See id.).

16 Accordingly, because the Special Master's order did not require the
17 United States to produce a privilege log with respect to the privileged
18 post-April 1, 2002 documents, it did not conflict with the CMO.

20 **C.  The United States Has Failed To Demonstrate That The Scheduling**
21 **    Order Is Unduly Burdensome**

23 Finally, in the Motion for Review, as it did in its motion to the
24 Special Master for reconsideration of the scheduling order, the United
25 States complains that the schedule for production is "overly
26 burdensome." (See Report of Special Master at 9, Motion for Review at
27 13-16).  The United States has failed to satisfy this Court that the
28 schedule is unduly burdensome.

While the Court, like the Special Master, recognizes that there is a certain degree of burden placed upon the United States in responding to Goodrich's requests for production, the Court must balance the burden of an aggressive production schedule on the United States versus the prejudice of a slower production schedule on Goodrich and the other defendants in this case, who are subject to a discovery cut-off date of February 29, 2012. (See CMO at 7). In addition to requiring time to analyze the produced documents and privilege logs to determine whether to file requests for or motions to compel additional documents, the defendants must receive relevant documents in time to prepare for and conduct depositions. Notably, the United States has objected to proceeding with depositions before the completion of document production. (See Motion for Review at 9).

Moreover, the Special Master already granted the United States a modification of the document production schedule. The modified schedule required the United States to produce 25,000 documents on March 24, 2011; 25,000 documents on April 8, 2011; 30,000 documents on April 25, 2011; and all remaining responsive documents on May 9, 2011. (Report of Special Master at 10-11). At the May 31, 2011 hearing, counsel for the United States conceded that the United States has complied with this document production schedule. The United States' remaining objection is to the production of corresponding privilege logs, which the scheduling order and CMO require to be produced within ten days of each document production.

The United States has failed to present persuasive evidence that it could not meet the schedule for production of the privilege logs.

In the Motion for Review, the United States sets forth an array of arguments as to why it would be overly burdensome to require the United States to produce the privilege logs according to schedule. (<u>See</u> Motion for Review at 13-15). These arguments lack evidentiary support, however, and are undermined by the fact that the United States has already produced all responsive documents, i.e., it appears that the United States has at least reviewed all responsive documents for privilege concerns.

Objections that discovery is overly burdensome generally fail unless the objecting party supports the burdensomeness contention with adequate declarations or affidavits. <u>See, e.g.</u>, <u>A. Farber & Ptnrs., Inc., v. Garber</u>, 234 F.R.D. 186, 188 (C.D. Cal. 2006). Here, the United States attached the declarations of Valerie Mann and Danny Hambrick II to the Motion for Review. (Motion for Review, Tab 4 at 14-17, 166-69).[4] The Mann and Hambrick declarations describe the steps required to process documents electronically, as well as the manpower which the United States devoted to the production effort. However, neither declaration states that it would be impossible to meet the deadlines imposed by the Special Master, particularly as those deadlines pertained to the production of privilege logs. These declarations do not show that the schedule was unduly burdensome. Accordingly, the Court declines to afford relief from the Special Master's schedule.

\\

\\

\\

---

[4] The Court refers to the pages of this exhibit as if they were paginated consecutively.

# III.

## CONCLUSION

The United States' Motion for Review of the Special Master's order, to the extent that it objects to the order and requests that it be vacated, is DENIED. To the extent that the Motion for Review requests relief from the schedule set forth in the Special Master's order, it is also DENIED.

If Goodrich now intends to invoke paragraph 6(j) and formally request the United States to provide a privilege log for the post-April 1, 2002 documents, it shall notify the United States forthwith. (See CMO at 6-7). The United States shall respond to that request within a reasonable amount of time, and the parties shall meet and confer on the issue. If no agreement can be reached, the issue shall be presented to the Special Master. (See id. at 7, ¶ 7).

IT IS SO ORDERED.

DATED: June 7, 2011         _____/S/_____
                            SUZANNE H. SEGAL
                            UNITED STATES MAGISTRATE JUDGE