O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#778

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (In Chambers) Order Denying Whittaker Corporation's Motion for Partial Summary Judgment

    Pending before the Court is Whittaker Corporation's Motion for Partial Summary Judgment. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having read and considered the moving and opposing papers, the Court DENIES the motion.

I.   Background

    In 2008, the City of Rialto (the "City" or "Rialto") filed this Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and Resource Conservation and Recovery Act ("RCRA") lawsuit against, among others, Whittaker Corporation ("Whittaker"). The lawsuit was consolidated with other cases pending before this Court, all of which are identified as *City of Colton v. American Promotional Events, Inc.*, No. EDCV 09-1864. The consolidated cases have a litigation history dating back to 2003, but a factual history dating back to World War II. Generally speaking, the cases are concerned perchlorate and Trichloroethylene ("TCE") contaminated groundwater and soil (the "contamination") in the Rialto-Colton Groundwater Basin in San Bernardino County, California.[1]

    The contamination is allegedly the result of operations within the Rialto Ammunition Storage Point ("RASP"), which was used during World War II by the United States Army as a rail depot and staging area for shipping ammunition to the Port of Los Angeles for the War in the

---

[1] This background section is comprised of facts not reasonably in dispute in this Motion.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#778

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

Pacific. After World War II ended, the RASP area was subdivided into four areas that are the subject of this litigation: (1) the "160 Acre Site" (also referred to as the "B.F. Goodrich Site") on the eastern side of the Rialto-Colton Basin; (2) the "Bunker Complex," which is a collection of 20 Quonset huts or bunkers used, among other things, to store, manufacture and dispose of fireworks; (3) the "Stonehurst Site," which is a five-acre site immediately south of the Bunker Complex; and (4) a 15 acre site to the north of the Bunker Complex used to test explosives known as the "Test Range." As a former munitions staging area, a number of entities made use of the subdivided RASP area to, among other things, manufacture, store and test fireworks, and to dispose of hazardous materials. Such activities allegedly contributed to the environmental contamination at issue in these consolidated cases. It is important to note that there are two relevant "plumes" of contamination: the eastern plume of contamination related to the 160 Acre Site, and the western plume related to the Test Range, Bunker Complex and Stonehurst Sites.

In 2004, Rialto filed a similar lawsuit against Whittaker and other parties. The lawsuit was consolidated with other RASP contamination litigation, but in June of 2008, the parties to the consolidated lawsuit voluntarily dismissed their claims to pursue a global settlement agreement. That proved to be wishful thinking, however, and the parties refiled the bulk of the cases in 2009. Since then, the parties have filed a number of motions, including Whittaker's Motion for Partial Summary Judgment now pending before the Court.

II. Legal Standard

Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, and "may not rest upon mere allegations or denials of his pleading." *See id.* at 248, 257 (citations omitted).

A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Such an issue of fact is a genuine and material issue if it cannot be reasonably resolved in favor of either party and may affect the outcome of the suit. *See Anderson,* 477 U.S. at 248, 250-51.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#778

## CIVIL MINUTES - GENERAL

| Case No. | EDCV 09-1864 PSG (SSx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

If the moving party seeks summary judgment on a claim or defense for which it bears the burden of proof at trial, the moving party must use affirmative, admissible evidence. Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. *See* Fed. R. Civ. P. 56(e).

III.   Discussion

Whittaker's motion for partial summary judgment as to Rialto's RCRA claim is premised on three central arguments: first, "[t]he RCRA claim fails as a matter of law because the EPA has [already] commenced and is diligently prosecuting an action under RCRA and CERCLA;" second, "Rialto's RCRA claim also fails because there is no relief that the Court may grant under RCRA . . . that is not duplicative of existing orders . . . or remedial actions;" and third, Rialto's RCRA claim fails because "Rialto failed to give proper notice of its claim as required under RCRA, 42 U.S.C. § 6972(b)(2)(A)." *Mot.* 1:3-17. The Court addresses each.

   A.   EPA's Clean-Up Efforts

In pertinent part, RCRA provides that a party cannot sue under the statute if the EPA "has commenced and is diligently prosecuting an action under section 6973 of this title or under section 106 of [CERCLA]," 42 U.S.C. § 6972(b)(2)(B)(I), or if the EPA "has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 of [CERCLA] and is diligently proceeding with a remedial action under that Act," 42 U.S.C. § 6972(b)(2)(B)(iii). Congress enacted these provisions "[t]o ensure [that] citizen suits are not duplicative or disruptive of EPA or state remediation efforts . . . where the EPA or a state has acted to address the alleged endangerment." *Miami-Dade County v. United States*, 345 F. Supp. 2d 1319, 1352 (S.D. Fla. 2004) (citations omitted). Based on this, Whittaker asserts that Rialto's RCRA claim is barred because the EPA is "diligently prosecuting an action pursuant to RCRA § 7003 . . . [and] has incurred costs in preparing a Remedial Investigation and Feasibility Study pursuant to CERCLA with respect to the 160 Acre Site." *Mot.* 9:19-22. The Court disagrees.

It is true that the EPA is currently involved in litigation against a number of potentially responsible parties with respect to the 160 Acre Site. *See United States v. Goodrich Corp.*, No. CV 10-00824 PSG (SSx) (First Amended Complaint filed May 20, 2011). Though not dispositive, Whittaker is notably absent from the EPA's lawsuit. What is dispositive, however, is the fact that the EPA is focused entirely on a different source and area of contamination.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

#778

## CIVIL MINUTES - GENERAL

| Case No. | EDCV 09-1864 PSG (SSx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

As Whittaker itself recognizes, "[i]t is true that EPA's complaint is focused on the eastern portion of the Rialto-Colton groundwater basin, commonly known as the 'eastern plume.'" *Mot.* 10:12-13; *see also Reply* 10:3-5 ("Rialto characterizes EPA's investigation as 'expressly' and 'unequivocally' limited to the 160 Acre Site and the plume emanating from it. Whittaker could not agree more."). But it is the "western plume" originating at or around the Stonehurst Site that Rialto's RCRA claim is based on, not the "eastern plume" emanating from the 160 Acre Site that the EPA is concerned with. *Request for Judicial Notice* 2, Ex. 2 at 1-3 (EPA Fact Sheet, Jan. 2010). And it is clear from the statute itself that RCRA only operates to bar a citizen suit where the EPA is acting consistent with those actions in § 6972(b)(2)(B) to "restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the *alleged endangerment*." 42 U.S.C. § 6972(b)(2)(B) (emphasis added). The parties do not dispute that the EPA has narrowed its focus to the 160 Acre Site and had not addressed the alleged danger caused by "western plume." Thus, the citizen suit bar of § 6972(b)(2)(B) does not apply. *See Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 10 (1st Cir. 2009) (adopting and applying the principal that "[w]here the government has enforced against some, but not all of such [RCRA] violations alleged by the citizen, it has foregone its opportunity to foreclose the citizen from enforcing against the violations the government chose to ignore." (citation omitted)).

If that were not enough, however, the Court also notes that Whittaker, as the moving party, has wholly failed to meet its burden of showing "diligence" on the part of the EPA, which is necessary before applying the citizen suit bar discussed above. *See Merry v. Westinghouse Electric Corp.*, 697 F. Supp. 180, 182 (M.D. Pa. 1988) ("Since Westinghouse, as the movant, has the burden of showing diligence on the part of the EPA, and since it has not done so, the court will deny its summary judgment motion with respect to [plaintiff's RCRA] claims."). Whittaker, in its reply brief, attempts to downplay its failure to present even a single piece of "diligence" evidence in support of the EPA's efforts by suggesting that Rialto "concedes that the EPA has, in fact, been diligent." *Reply* 8:23-24 (citing Rialto's Opposition at 12:18-24). All that Rialto says there is that the 160 Acre B.F. Goodrich Site is the subject of an EPA superfund listing and that the EPA has expressly stated that its actions are limited to that 160 Acre Site. *Opp'n* 12:18-24. It is unclear that Rialto's statement in opposition concedes anything, let alone satisfies *Whittaker's* burden of establishing diligence.[2]

---

[2] Of course, this is not to say that the EPA has not, in fact, been diligent in its efforts related to the 160 Acre Site. It is only to say that Whittaker has not met its summary-judgment burden of showing diligence.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#778

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

B.  Whether the Court Can Grant Any Relief

Whittaker also claims that Rialto cannot pursue its RCRA claim because there is no action that this Court could require Whittaker to take that is not duplicative of action already being taken. *Mot.* 11:15-16.

RCRA is unlike CERCLA in that, rather than effectuating the cleanup of toxic waste or compensating those who have worked to remediate environmental hazards, RCRA's primary concern is "to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated 'so as to minimize the present and future threat to human health and the environment.'" *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483, 116 S. Ct. 1251, 134 L. Ed. 2d 121 (1996) (quoting 42 U.S.C. § 6903(b)). To that end, RCRA "authorizes district courts '*to restrain* any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste . . . , *to order such person to take such other action as may be necessary*, or both." *Id.* at 484 (quoting 42 U.S.C. § 6972(a)) (emphasis in original). In other words, a court can issue "a mandatory injunction, *i.e.*, one that orders a responsible party to 'take action' by attending to the cleanup and proper disposal of toxic waste," or a court can issue "a prohibitory injunction, *i.e.*, one that 'restrains' a responsible party from further violating RCRA." *Id.* What is not available, however, is "the award of past cleanup costs, whether these are denominated as 'damages' or 'equitable restitution.'" *Id.* at 484-85 (explaining that Congress included certain remedies in CERCLA—such as cost recovery and contribution—but omitted such remedies from RCRA).

The parties seemingly agree that a prohibitory injunction is not the appropriate remedy in Rialto's case against Whittaker because "Whittaker has no further presence at the Stonehurst Site or anywhere else overlying the Rialto-Colton basin," and is therefore not *continuing* to violate RCRA such that it can be ordered to stop. *Mot.* 11:12-14. Thus, the question is whether a Court-issued mandatory injunction would be entirely duplicative of remedial steps already being taken, and if so, whether that prevents any relief as a matter of law.

Whittaker presents evidence that on April 30, 2004, the California Regional Water Quality Control Board, Santa Ana Region ("Water Board") held a hearing on a proposed Cleanup and Abatement Order ("CAO") requiring that Whittaker and others take action to "investigate and, as appropriate, clean up" contamination at the Stonehurst Site. *See SSUF* No. 24. The Water Board issued that CAO on the same day. *SSUF* No. 25; *Johnson Decl.*, Ex. V. In addition, Whittaker presents undisputed evidence that the County of San Bernardino

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#778

CIVIL MINUTES - GENERAL

| Case No. | EDCV 09-1864 PSG (SSx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

commenced the operation of a Ground Water Treatment System ("GWTS") in June of 2006 to remove perchlorate and other contamination stemming from the western plume, which is understood to encompass "(1) the Mid-Valley Sanitary Landfill, (2) the Former Bunker Area, and (3) the Stonehurst Site." *SSUF* Nos. 26, 28. Finally, Whittaker offers evidence of a purported good-faith settlement entered into between Rialto and the County of San Bernardino, which provides that the County of San Bernardino "will continue to implement the response action" it has already undertaken. *SSUF* Nos. 29-31. It should be noted, however, that the terms of this settlement agreement are entirely contingent upon the Court's approval of the County of San Bernardino's Good Faith Settlement Motion, set for hearing later this year. *See Johnson Decl.*, Ex. I § 5.1. With this evidence, Whittaker argues that because it has been ordered to investigate and clean up the Stonehurst Site, and because the County has tentatively agreed to continue operation of the perchlorate GWTS, all that can be done is being done and there is nothing further that the Court can order Whittaker to do. The Court disagrees.

Whittaker's argument that a Court is powerless to issue a mandatory injunction under RCRA when that injunction might be duplicative of actions already being taken is based on a single case from outside the Ninth Circuit. Specifically, Whittaker repeatedly cites to *87th Street Owners Corp. v. Carnegie Hill-87th Street Corp.*, 251 F. Supp. 2d 1215 (S.D.N.Y. 2002), to support its argument. In that case, the District Court for the Southern District of New York entered summary judgment on a plaintiff's RCRA claim because the plaintiff was unable to identify a single action that the court could order the defendant to take that had not yet been undertaken by third parties. *87th Street Owners Corp.*, 251 F. Supp. 2d at 1220-22. But the notion that the Court cannot order a defendant to participate in a remediation simply because another third party has already started such an effort conflicts with authority within the Ninth Circuit.

In *Express Car Wash Corp. v. Irinaga Bros., Inc.*, 967 F. Supp. 1188 (D. Or. 1997), the District Court for the District of Oregon held that damages were unavailable under RCRA and that injunctive relief was unavailable after remediation was complete. *Express Car Wash*, 967 F. Supp. at 1192. The court went on to note, however, that "if a plaintiff who had begun remediation at a site sued to have defendants install additional remediation systems or perform different required activities than plaintiff had already undertaken, *or if a plaintiff sought to have defendants completely take over responsibility for completing a remediation that plaintiff had begun*," then a RCRA citizen suit would likely continue to be "viable." *Id.* at 1194 n.5 (emphasis added). That latter situation is precisely what is at issue here and the Court agrees that it can issue a mandatory injunction requiring "Whittaker to assume responsibility of remediation efforts at the western source areas," as proposed by Rialto. *Opp'n* 21:21-23.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#778

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

Additionally, even if Whittaker's position was the correct one, Rialto, in the Complaint, alleges both groundwater *and* soil contamination, *see Compl.* ¶ 107, which the CAO does not address beyond the Stonehurst Site, and which the GWTS system does not address because it is only concerned with water treatment. *See SSUF* Nos. 25-33. Whittaker, as the moving party, offered no evidence in its Motion for Summary Judgment addressing those aspects of Rialto's Complaint, and has therefore failed to show that the Court cannot issue a non-duplicative mandatory injunction. Accordingly, Whittaker's Motion for Summary Judgment with respect to available relief must fail.

    C.    <u>RCRA's Notice Requirement</u>

RCRA requires that a party provide notice of an imminent and substantial endangerment to the EPA, to the state in which the alleged endangerment exists, and to the alleged violator at least ninety days before filing a RCRA lawsuit. 42 U.S.C. § 6927(b)(2)(A). RCRA's notice requirement "could not be clearer," and lawsuits commenced before the end of the statutorily proscribed period are "prohibited." *Hallstrom v. Tillamook County*, 493 U.S. 20, 26, 110 S. Ct. 304, 107 L. Ed. 2d 237 (1989) (discussing the plain meaning of RCRA's sixty day notice period for lawsuits concerning the violation of any permit, standard, or the like). The notice requirement is to be "strictly construed." *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354 (9th Cir. 1995) (analyzing an almost identical notice requirement in the Clean Water Act by examining Supreme Court RCRA precedent). Whittaker claims that Rialto failed to provide such notice. To determine the merits of Whittaker's position, it is necessary to briefly examine the history of this litigation.

As discussed above, this litigation dates back to 2004 and beyond. In fact, Rialto served Whittaker and other parties with a Notice of Intent to Sue (the "2003 Notice") 141 days before filing a RCRA action on January 21, 2004.[3] *See Johnson Decl.*, Ex. BB. To promote settlement, however, that case was voluntarily dismissed without prejudice in June 2008, but only after the parties entered into a Memorandum of Understanding ("MOU"). *See Sommer Decl.*, Ex. 1; *City of Rialto v. United States Department of Defense*, No. CV 04-79, Dkt. #1540 (June 13, 2008 Order dismissing Rialto's claims without prejudice). In that MOU, the parties—including Whittaker and Rialto—agreed to the following:

---

[3] Whittaker does not challenge the sufficiency of Rialto's 2003 Notice, as it applied to Rialto's 2004 complaint.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#778

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

> To preserve the parties' respective rights and obligations as they currently exist, the parties agree to cooperate to put the litigation in the same position as currently exists to the maximum extent possible. Among other things, the parties stipulate as follows: . . .
>
> (ii) To the extent any notice or presentment of a claim hereto has been provided by a party to any other party before or during the [litigation] *such notice or presentment shall apply to the refiled claims to the same extent*, where such notice or presentment was a required jurisdictional component of that claim *under RCRA*, CERCLA . . . or any other statute.

*MOU*, *Sommer Decl.*, Ex. 1, §1(b) (emphasis added). Moreover, the parties agreed that they would serve a thirty-day notice before refilling this litigation. *Id.* Though procedurally different, the MOU essentially provides that the parties would stay the case and resume it "in the same position" if settlement talks were unsuccessful. *Id.* Needless to say, settlement talks were unsuccessful and Rialto refiled its lawsuit in 2009 after giving the parties 66 days notice. *See generally, Compl.*; *see also Whittaker's Separate Statement of Uncontroverted Facts* ("*SSUF*") No. 45.

It is undisputed that Rialto unwaveringly followed the parties' agreed-upon MOU when refiling this case, but Whittaker still challenges Rialto's RCRA claims based on failure to provide adequate notice as required under 42 U.S.C. § 6972(b)(2)(A). Specifically, Whittaker claims that, "[i]n the absence of any new notice, Rialto appears to be relying entirely on the 2003 Notice that it served 2,234 days—six years and one month—prior to filing this action," which is allegedly insufficient for purposes Rialto's 2009 Complaint. *Mot.* 15:25-16:2.

The Court starts with the language of the statute. Section 6972(b)(2)(A) provides as follows:

> (b)(2)(A) No action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment to—
>
> (I) the Administrator;
> (ii) the State in which the alleged endangerment may occur; [and]
> (iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#778

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

(a)(1)(B) of this section . . .

42 U.S.C. § 6972(b)(2)(A). There is no dispute that 2003 Notice was adequate with respect to Rialto's "western plume" claims in the January 2004 complaint, nor is there any dispute that the 2003 Notice was provided more than 90 days before this lawsuit was refiled in 2008. Under both the MOU and the plain text of § 6972(b)(2)(A), Rialto provided adequate notice of its "western plume" RCRA claim "at least" 90 days before filing suit. *See Hallstrom*, 493 U.S. at 25-27 (strictly construing RCRA's notice provision and explaining that RCRA plaintiffs "have full control over the timing of their suit: they need only give notice to the appropriate parties and refrain from commencing their action for *at least* 60 days" (emphasis added)).

Perhaps recognizing that Rialto technically satisfied RCRA's notice requirement by informing the appropriate parties of the alleged violation at least 90 days before filing suit, Whittaker takes the argument a step further and contends that Rialto's notice is "stale" in light of the purpose of the notice requirement. *Mot.* 14:18-15:10, 18:7. In *Hallstrom*, the Supreme Court explained that RCRA's notice functions serves two distinct purposes. "First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits," and "[s]econd, notice gives the alleged violator 'an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit.'" *Hallstrom*, 492 U.S. at 29 (quoting *Gwaltney of Smithfield, Inc. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 60, 108 S. Ct. 376, 383, 98 L. Ed. 2d 306 (1987)).

To the extent that the two distinct notice-provision purposes identified by the Supreme Court are to be considered in determining whether a RCRA citizen-suit notice is "stale," the facts of this case cut against Whittaker's position.[4] The EPA, Whittaker, and other potentially responsible parties were notified over six years ago that Rialto wanted to correct the western plume contamination. Yet, despite such notice and ample time to take action, neither the EPA nor Whittaker took any steps that would "obviate[] the need for [a] citizen suit[]." *Hallstrom*, 429 U.S. at 29. The litigation remains the same with respect to the "western plume," and only the number of named defendants is different. Despite Whittaker's argument, the Court is unable

---

[4] The Court is unaware of any decision of a federal court addressing if and when the amount of time between a providing a statutorily-required notice of suit and the filing of a lawsuit becomes so great as to render the otherwise valid notice "stale." Whittaker, the moving party, cites to no case in support of its argument and the Court is left to consider the merits of Whittaker's position in light of related authority.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#778

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 09-1864 PSG (SSx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | City of Colton v. American Promotional Events, Inc., *et al.* | | |

to conclude that Rialto's notice is somehow "stale" such that summary judgment is warranted. *Cf. K-7 Enters. v. Jester*, 562 F. Supp. 2d 819, 832 (E.D. Tex. 2007) (declining to grant summary judgment in favor of defendant where a RCRA plaintiff provided notice then waited three years to file the lawsuit).

Finally, Whittaker argues that under the doctrine of laches, Rialto cannot benefit from a six-year-old RCRA notice. *Mot.* 17:1-2. In environmental cases, district courts have discretion when invoking the doctrine of laches and should do so only "sparingly." *Preservation Coalition, Inc. v. Pierce*, 667 F.2d 851, 854 (9th Cir. 1982). Though there is no authority in this circuit on whether laches applies to the time between providing RCRA notice and filing of a RCRA lawsuit, at least one federal court has considered the application of laches in a similar circumstance. *See K-7 Enters.*, 562 F. Supp. 2d at 832 (holding that the doctrine of laches did not warrant summary judgment based on a three year notice-to-suit delay).

Generally, application of laches in this circuit requires both "(a) lack of diligence by the party against whom the defense is asserted, and (b) prejudice to the party asserting the defense." *Preservation Coalition, Inc.*, 667 F.2d at 854. Neither is present here as Rialto diligently provided notice of and filed a RCRA lawsuit in 2003 and 2004, respectively, temporarily dismissed that litigation to improve settlement prospects, then refiled the suit when settlement talks broke down. This is certainly not a lack of diligence warranting summary judgment. Moreover, the MOU signed by Whittaker agreeing to keep the parties in each of their respective positions through settlement discussions and beyond, *see Sommer Decl.*, Ex. 1 §1(b), vitiates any attempt by Whittaker to feign prejudice. Thus, Whittaker's motion for summary judgment based on the doctrine of laches lacks merit.

IV.     Conclusion

Based on the foregoing, the Court DENIES Whittaker's Motion for Partial Summary Judgment with respect to the City of Rialto's claim for injunctive relief under RCRA. In addition, the parties are reminded of their Federal Rule of Civil Procedure 11 obligations; the parties' ability to pay attorneys' fees may be limitless, but the Court's resources are not.

**IT IS SO ORDERED.**