1 | **GIBSON, DUNN & CRUTCHER LLP**
JEFFREY D. DINTZER, SBN 139056
2 | JDintzer@gibsondunn.com
MATTHEW C. WICKERSHAM, SBN 241733
3 | MWickersham@gibsondunn.com
DANA LYNN CRAIG, SBN 251865
4 | DCraig@gibsondunn.com
333 South Grand Avenue
5 | Los Angeles, California 90071-3197
Telephone: (213) 229-7000
6 | Facsimile: (213) 229-7520

7 | Attorneys for GOODRICH CORPORATION

8 | JAMES R. MacAYEAL (D.C. Bar # 474664)
9 | jamie.macayeal@usdoj.gov
DAVID ROSSKAM (D.C. Bar # 359846)
10 | david.rosskam@usdoj.gov
11 | VALERIE K. MANN (D.C. Bar # 440744)
valerie.mann@usdoj.gov
12 | DEBORAH A. GITIN (Mass. Bar # 645126)
13 | deborah.gitin@usdoj.gov
BONNIE A. COSGROVE (Wis. Bar # 1061555)
14 | bonnie.cosgrove@usdoj.gov
15 | RICHARD GLADSTEIN (D.C. Bar #362404)
Richard.gladstein@usdoj.gov
16 | RACHEL A. KAMONS (M.D. Bar)
17 | Rachel.Kamons@usdoj.gov
Environmental Enforcement Section
18 | Environment and Natural Resources Division
19 | United States Department of Justice    P.O. Box 7611
20 | Washington, D.C.  20044-7611
Telephone:  (202) 514-1711
21 |
22 | Attorneys for the United States
23 |
24 | UNITED STATES DISTRICT COURT
25 | CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION
26 |
27 | CITY OF COLTON, a California | CASE NO. ED CV 09-01864PSG (SSx)
28 | | [Consolidated with Case Nos. CV 05-

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH
CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

municipal corporation,

        Plaintiff,

        v.

AMERICAN PROMOTIONAL
EVENTS, INC., et al.

        Defendants.

AND CONSOLIDATED ACTIONS

01479 PSG (SSx), CV 09-6630 PSG (SSx), CV 09-06632 PSG (SSx), CV 09-07501 PSG (SSx), CV 09-07508 PSG (SSx), and CV 10-824 PSG (SSx)]

**DISCOVERY MATTER**
**(Referred to Special Master)**

**NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH CORPORATION'S MOTION TO COMPEL THE UNITED STATES' DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS**

[*Declarations of Neven Kresic and Jeffrey D. Dintzer in support of Goodrich's Position and Declarations of Wayne Praskins and Tomas Perina in support of United States' Position filed concurrently herewith*]

Date:       August 24, 2011
Time:       10:00 a.m.
Location:   First Resolution
              633 W. Fifth Street
              28th Floor
              Los Angeles, CA 90017
Judge:      Hon. Venetta Tassopulos

Discovery Cut-Off:  February 29, 2012
Trial Date:         March 25, 2013

Gibson, Dunn & Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that, on August 24, 2011, Goodrich Corporation

3    ("Goodrich") will move the Court for an Order compelling the United States of

4    America ("United States") to produce all documents responsive to Goodrich's Request

5    for Production of Documents to the United States of America, Set Five, served March

6    24, 2011, and to provide substantive, non-evasive responses in good faith to

7    Goodrich's Second Set of Interrogatories to the United States of America, also served

8    on March 24, 2011.

9         This Motion is made following a meet and confer teleconferences with the

10   United States' counsel pursuant to Rule 37-1 of the Local Rules of the United States

11   District Court for the Central District of California, which took place on May 9, 2011

12   and did not resolve the issues underlying this Motion.

13        This Motion is based upon this Notice, the attached written Joint Stipulation of

14   Contentions and Points and Authorities pursuant to Local Rule 37-2, the Declarations

15   of Jeffrey D. Dintzer and Neven Kresic (and exhibits attached to those declarations),

16   the pleadings and other papers on file in this action, and such other evidence as may

17   be presented at or prior to the hearing on this matter.

18   Dated:  August 1, 2011              Respectfully submitted,

19

20                                       GIBSON, DUNN & CRUTCHER LLP

21

22                                       By:  _____/s/ Jeffrey D. Dintzer_____
                                                 Jeffrey D. Dintzer
23                                       Attorneys for GOODRICH CORPORATION

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTORY STATEMENTS ................................................................. 1

   A.   GOODRICH'S INTRODUCTORY STATEMENT ................................ 1

   B.   UNITED STATES' INTRODUCTORY STATEMENT ......................... 4

II.   STATEMENTS OF FACTS ........................................................................ 5

   A.   GOODRICH'S STATEMENT OF FACTS ....................................... 5

     1.   The United States Has Destroyed Evidence Which It Was Ordered To Produce By A United States District Court And Which Exonerates Goodrich. .................................................... 5

     2.   Testimony From Numerous EPA Officials Demonstrate The Apparent Spoliation Of Evidence By The United States. .............. 8

     3.   Specific Discovery Requests at Issue ..................................... 10

       a.   *Document Requests 355, 356, 358, 359:  Requests seeking copies of litigation hold letters.* ........................... 11

       b.   *Document Requests 357, 360:  Requests seeking information regarding the United States' search for responsive documents.* .......................................... 13

       c.   *Interrogatories No. 6, 7, 8:  Interrogatories seeking identity of persons involved in drafting litigation hold letters.* .............................................................. 15

   B.   UNITED STATES' STATEMENT OF FACTS ................................ 18

     1.   No Sim Files Were Destroyed. .............................................. 18

     2.   A Model Simulation Will Not Exonerate Goodrich .................... 20

     3.   EPA Employees Did Not Spoliate Documents ........................... 22

III.   ARGUMENTS ..................................................................................... 25

   A.   GOODRICH'S AND PSI'S ARGUMENT ...................................... 25

     1.   Legal Standard ................................................................. 25

     2.   The United States Had An Obligation To Issue Litigation Holds And Preserve Documents In This Case. ........................... 26

     3.   Where Spoilation Has Occurred Any Attorney-Client Privilege Or Work Product Protection For Litigation Holds Is Abrogated. .................................................................. 29

i

Gibson, Dunn & Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

**Table of Contents**
**(Continued)**

Page

a.   The United States spoliated evidence by destroying the vadose zone model exonerating Goodrich. .................29

b.   EPA officials recently testified to numerous other instances where EPA has potentially spoliated relevant evidence. .................................................................31

4.   Even In The Absence Of Spoliation, The Majority Of Goodrich's Discovery Requests Are Not Protected By The Attorney Client Privilege Or Work Product Protection. .............33

5.   Even If The United States Were Justified In Withholding Documents In Response To Goodrich's Fifth Set of RFPs, It Has Provided No Privilege Log, Nor Any Further Information Permitting Goodrich To Assess Its Claims Of Privilege As Required By CMO No. 1. .........................................36

B.   UNITED STATES' ARGUMENT ........................................................38

IV.   REQUESTS FOR RELIEF ..............................................................................41

A.   GOODRICH'S REQUEST FOR RELIEF ..............................................41

# JOINT STIPULATION OF CONTENTIONS AND POINTS AND AUTHORITIES

## I.   INTRODUCTORY STATEMENTS

### A.   GOODRICH'S INTRODUCTORY STATEMENT

Over the past six months, the United States' continued failure to provide discovery responses in compliance with its obligations under the Federal Rules of Civil Procedure has become a running theme of these Consolidated Actions. However, as this Court is already aware, the United States' apparent disregard for its duty to comply with such discovery obligations actually dates much further back than the events of earlier this year.

Indeed, between 2007 and 2009, the United States withheld, and then subsequently allowed for the wrongful destruction of, evidence that is not only critical in this case, but actually *exonerates* Goodrich Corporation ("Goodrich"). This evidence, a vadose zone model[1] generated by United States Environmental Protection Agency ("EPA") contractor CH2M Hill ("EPA Vadose Zone Model"), effectively demonstrates that Goodrich's activities in Rialto, California at the 160 Acre Site could not have caused the contamination currently found in the groundwater in the Rialto-Colton Groundwater Basin ("Rialto-Colton Basin"). However, while this evidence was the subject of a lawful request made pursuant to the Freedom of Information Act ("FOIA") by Goodrich, and was subsequently *ordered to be produced by a United States District Judge*, the United States did not produce the complete EPA Vadose Zone Model, but allowed for the destruction of key input or ".sim" files necessary to

---

[1] A vadose zone model allows for the quantification of the basic physical and chemical processes affecting waterflow and pollutant transport into the vadose zone, which is the portion of the Earth's strata extending from the top of the ground surface to the water table. Vadose zone modeling is critical in understanding the manner in which a particular contaminant can have migrated to the groundwater. (*See* Declaration of Neven Kresic in Support of Goodrich's Motion to Compel Production of Litigation Holds Discovery ("Kresic Decl."). ¶ 11.)

Gibson, Dunn &
Crutcher LLP

1

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH
CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1  make the Model usable.  Without the .sim files, it is not possible for Goodrich, nor any

2  other party the United States is pursuing claims against in these Consolidated Actions,

3  to understand the assumptions EPA used in running its Vadose Zone Model.  (*See*

4  Kresic Decl., ¶¶ 17, 20.)  For example, if the EPA Vadose Zone Model assumed that

5  perchlorate was disposed of at the 160-Acre Site *before* Goodrich began operations

6  there, and the perchlorate still never made its way to the groundwater under EPA's

7  Model, that evidence would be devastating to the government's enforcement action

8  against Goodrich.  Goodrich's inability to fully rely on the EPA Vadose Zone Model

9  obviously severely prejudices defendants in this litigation, in which the United States

10  government seeks to extract *hundreds of millions of dollars*.

11      In light of the evidence of what this Court has recognized as "EPA's failure to

12  retain potentially crucial evidence," on March 24, 2011, Goodrich propounded written

13  discovery on the United States, seeking information relating to the United States'

14  drafting and dissemination of litigation hold letters, and protocol for searching for

15  electronically-stored information in response to previous Requests for Production of

16  Documents made by Goodrich.  (*See* Declaration of Jeffrey D. Dintzer in Support of

17  Goodrich Corporation's Motion to Compel the United States' Discovery Responses

18  Relating to Litigation Holds ("Dintzer Decl."), Ex. A, at 27:17; Ex. P (Request for

19  Production of Documents to the United States, Set Five ("Fifth Set of RFPs")); Ex. Q

20  (Second Set of Interrogatories to the United States ("Second Set of Interrogatories")).)

21  It is critical that the United States respond to such discovery in order that Goodrich

22  may evaluate the necessity of moving forward with a forensic analysis of information

23  that has been destroyed by the United States, and, if necessary, a motion to terminate

24  the United States' claims for improper conduct.

25      Indeed, this Court has already recognized that, in light of the United States

26  conduct in destroying Model sim files, it was appropriate that the United States

27  respond to discovery requests by Goodrich regarding EPA's handling of Goodrich's

28  FOIA request regarding the EPA Vadose Zone Model:

Gibson, Dunn & Crutcher LLP

1   Given this evidence of a failure to retain information which would have
2   been relevant to the present action and which, according to Keith Takata,
3   in a declaration filed in the FOIA action, the United States intended to
4   use in litigation, along with Mr. Takata's deposition testimony that there
5   were other documents requested by Goodrich in the same FOIA action
6   that should have been, but were not produced [citation omitted], *the*
7   ***Special Master finds that Goodrich should be given an opportunity to***
8   ***obtain the information sought in the requests about the FOIA***
9   ***production***.

10  (Dintzer Decl., Ex. A, at 28:1-7 (emphasis added).)

11      Additionally, recent testimony by senior United States Environmental
12  Protection Agency ("EPA") officials has revealed that the United States' very
13  ***preservation*** and ***collection*** of potentially responsive documents is ***fundamentally***
14  ***flawed***.  In particular, over the past months, high-ranking EPA officials have testified
15  on multiple occasions that they:  (1) have destroyed potentially responsive documents,
16  (2) have been provided with minimal instruction on the collection of potentially
17  responsive information, and (3) may have never been provided with any notice that
18  documents relevant to the litigation of these Consolidated Actions should even be
19  preserved.

20      However, in its April 26 responses, the United States ***refused to provide a***
21  ***single substantive response*** to Goodrich's Fifth Set of RFPs or Second Set of
22  Interrogatories.  (*See* Dintzer Decl., Exs. R, S.)  As set forth above, and in further
23  detail below, in light of the clear evidence of the United States' misconduct in the
24  spoliation of evidence not only related to these Consolidated Actions, but ***exonerating***
25  ***Goodrich***, it is critical that the United States provide substantive responses to this
26  discovery such that Goodrich may evaluate the next steps necessary in obtaining
27  access to all relevant information in this litigation.  Goodrich thus respectfully
28  requests an order from this Court compelling the United States to respond in good

1   faith to Goodrich's legitimate discovery requests, and provide substantive responses to

2   Goodrich's Fifth Set of RFPs and Second Set of Interrogatories no later than August

3   31, 2011.

4   **B.    UNITED STATES' INTRODUCTORY STATEMENT**

5           Goodrich Corporation continues to complain that the United States has been

6   slow to fulfill its discovery obligations, despite the fact that the United States was

7   required to gather and review under a very aggressive schedule over 225,000

8   documents in response to discovery requests that basically asked for every document

9   in EPA's files.  After the government devoted massive resources (over 80 attorneys –

10  more than half the entire Environmental Enforcement Section) to the review effort and

11  produced the massive quantities of documents requested, Goodrich complained that

12  the documents are too many and demanded that they be labeled so that Goodrich can

13  avoid conducting its own electronic searches.  Further, despite exempting itself from

14  any obligation through the case management order to produce a privilege log for

15  certain documents generated on or after April 1, 2002, Goodrich successfully forced

16  the United States to devote additional massive resources to the task of preparing a

17  privilege log for certain EPA documents in a matter of weeks.  After the United States

18  provided the best log that it could for approximately 15,000 documents by the short

19  deadline, Goodrich's response is that the log is not good enough and that the United

20  States should therefore forfeit all privileges.  Far from being dilatory, the United

21  States has acted in good faith to comply with Goodrich's discovery requests and this

22  Court's orders.

23          Now, Goodrich contends that the United States has engaged in wholesale

24  document spoliation.  Goodrich seeks to frame this issue in terms of a demand for

25  litigation hold letters and similar communications from EPA.  The communications

26  are privileged.  Goodrich contends that with evidence of spoliation, it can obtain

27  otherwise privileged communications.  Goodrich's motion is without merit and should

28  be denied.  Goodrich's claims of spoliation are speculative and unsupported.

    Therefore, Goodrich is not entitled to the EPA litigation hold documents.  In any case,

Gibson, Dunn &
Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH
CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1  United States has already put the litigation hold documents on its privilege log of EPA

2  documents and the normal procedures for attempting to obtain privileged documents

3  on the log, such as an in camera inspection, should be followed.

## II. STATEMENTS OF FACTS

### A.   GOODRICH'S STATEMENT OF FACTS

6  **1.   The United States Has Destroyed Evidence Which It Was Ordered**

7  **To Produce By A United States District Court And Which**

8  **Exonerates Goodrich.**

9  On July 14, 2003, the United States Environmental Protection Agency ("EPA")

10  issued Unilateral Administrative Order 2003-11 ("2003 UAO") to both Goodrich and

11  Emhart Industries, Inc. ("Emhart"), pursuant to Section 106(a) of the Comprehensive

12  Environmental Response, Compensation, and Liability Act ("CERCLA"). The UAO

13  ordered Goodrich and Emhart to conduct a Remedial Investigation ("RI") for

14  hazardous substances, pollutants and contaminants in and adjacent to a 160 acre area

15  formerly operated by West Coast Loading Corporation and B.F. Goodrich in Rialto,

16  California. (Dintzer Decl., ¶ 5, Ex. B.)

17  In preparation for potential enforcement litigation relating to its 2003 UAO,

18  EPA developed a computerized vadose zone model of the area underneath the Site in

19  Rialto, California. (Dintzer Decl., Exs. I, J.) Vadose zone modeling is an important

20  aspect of tracking the course of potential contaminants through the vadose zone (the

21  level of the Earth's strata from the ground surface to the top of the water table), and

22  examining the impact of such contaminants on human health and the environment.

23  (Kresic Decl., ¶ 11.) Jorge Leon of the California Regional Water Quality Control

24  Board ("Regional Board") informed counsel for Goodrich that EPA had prepared such

25  a Model in 2006, and indicated that the model contained exculpatory evidence that

26  would exonerate Goodrich pertaining to the time it took for substances to travel

27  through the vadose zone in the Rialto-Colton Basin and reach the groundwater.

28  Dintzer Decl., ¶ 6.)

5

Gibson, Dunn &
Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH
CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1   After learning that EPA had prepared such a model in December of 2007,

2   Goodrich made a FOIA request of the United States, seeking the following

3   documents:

> 4   Copies of any and all groundwater models and/or vadose zone models,
>
> 5   prepared by or on behalf of the U.S. EPA, regarding the perchlorate
>
> 6   and/or trichloroethylene contamination in the Rialto/Colton Groundwater
>
> 7   Basin, in particular any models that relate to contamination from the
>
> 8   property bounded approximately by Casa Grande Park Avenue on the
>
> 9   north, Locust Avenue on the east, the extension of Alder Avenue on the
>
> 10   west, and the extension of Summit Avenue on the south, in the City of
>
> 11   Rialto, San Bernardino County (also known as the '160 acre parcel').

12   (Dintzer Decl., ¶ 8, Ex. D.)  After requesting a belated extension of time in which to

13   respond to Goodrich's FOIA request, the EPA denied Goodrich's request on March 4,

14   2008, refusing to produce to Goodrich any such documents.  (Dintzer Decl., ¶ 9, Ex.

15   E.)  Goodrich immediately appealed EPA's determination, filing an administrative

16   appeal to EPA on April 2, 2008.  (Dintzer Decl., ¶ 11, Ex. F.)  On September 12, 2008,

17   again belatedly, EPA denied Goodrich's appeal and Goodrich filed suit in the District

18   Court for the District of Columbia on September 19, 2008, with District Judge John D.

19   Bates presiding.  (Dintzer Decl., ¶ 12-13, Exs. G, H.)

20   Goodrich's Complaint with the District of Columbia, among other things,

21   sought Declaratory and Injunctive Relief relating to EPA's refusal to produce its

22   Vadose Zone Model.  The parties filed cross-motions for summary judgment in

23   November of 2009, and on January 16, 2009, Judge Bates entered an Order

24   recognizing that EPA had waived any claim of privilege which it had over the EPA

25   Vadose Zone Model.  (Dintzer Decl., ¶¶ 16-17 , Exs. K, L.)  In connection with the

26   cross-motions, EPA filed a declaration of Keith Takata (then Chief of the Region 9

27   Superfund Unit) in which he declared:

28

Gibson, Dunn & Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH
CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

[r]elease of the Vadose Zone Model would disclose information relating to EPA's litigation preparations, prematurely revealing EPA's evidence or strategy in future CERCLA enforcement proceedings at the Site. (Dintzer Decl., Ex. I, at ¶ 17; *see also* Ex. J, at ¶ 4 (Project Manager for Rialto-Colton Basin declaring in FOIA Action that "[t]o assist the Office of Regional Counsel *in evaluating potential enforcement litigation at the Site* and to potentially assist the Regional Board in its enforcement efforts, I directed EPA's contractor (CH2M Hill) to develop a computer model simulating the downward movement of perchlorate through the vadose zone at the Site . . . .") (emphasis added).)

Judge Bates recognized that "withholding of the model [was] neither necessary to maintain[ing] a healthy adversary system nor consistent with the purpose of the work product doctrine." (*Id.*, Ex. L.) The Court thus ordered that the entire Model was to be produced to Goodrich in response to the company's December 2007 FOIA request.

Three months later EPA finally produced the Vadose Zone Model, yet failed to produce key input, or ".sim" files, as well as all model runs, with the Vadose Zone Model, which were necessary to understand EPA's analysis of its Model. Mr. Praskins himself declared that these files were "include[d]" in the EPA Vadose Zone Model. (Dintzer Decl., Ex. J, at ¶ 5 ("The vadose zone model includes the publicly-available model code, *confidential input and output files* developed by EPA and its contractor, and a confidential spreadsheet created to serve as a groundwater mixing model.") (emphasis added).) Goodrich repeatedly requested that EPA produce such files, but in June of 2009 were informed that these files were destroyed. (Dintzer Decl. Ex. M [4/30/09 Russell Ltr.]; Ex. N [5/24/11 M. Murphy Ltr.]; Ex. O [6/5/09 Russell Ltr.].)

To date, Goodrich has not received the .sim files or the model runs, and EPA has recognized on numerous occasions that those files were destroyed by EPA, despite Judge Bates's January 16, 2009 Order. Most recently, David Towell, of CH2M Hill

1 (creators of the model for EPA) testified that the "sim" files had in fact been destroyed

2 and that they could not be recovered.  (*See* Dinter Decl., Ex. V, at 234:24-236:3.)  Mr.

3 Towell also testified that the EPA had not instructed CH2M Hill to retain the "sim"

4 files, despite their obvious import.  (*Id.*, at 236:4-22.)

5        **2.**      **Testimony From Numerous EPA Officials Demonstrate The**

6               **Apparent Spoliation Of Evidence By The United States.**

7       Goodrich's need for discovery related to the United States' process of

8 preserving and collecting documents relating to the Consolidated Actions became

9 even more necessary in light of alarming testimony proffered by multiple EPA,

10 Region IX, officials during their recent depositions.

11       For example, during his deposition on March 24, 2011, the Deputy Regional

12 Administrator for EPA, Mr. Keith Takata, could not recollect whether he had ever

13 been provided, by any agency of the United States, with a litigation hold letter

14 directing that he preserve documents relevant to these Consolidated Actions:

15       Q:  Did the lawyers in your offices – you've got a lot of them here,

16       you've got a lot of lawyers at Region 9, did they issue a litigation hold?

17       *A:  I don't know.*

18       Q:  Do you know whether anybody at headquarters issued a litigation

19       hold?

20       *A:  I don't know.*

21       Q:  Did anyone at [the Department of Justice] issue a litigation hold?

22       *A:  I don't know.*

23 (Dintzer Decl., Ex. T, at 215:13-21 (emphases added).)  Mr. Takata then went on to

24 testify that he destroyed documents relating to the litigation that would have been

25 responsive to certain of Goodrich's earlier requests for production to the United

26 States.

27       Q:  Do you ever write notes on these [briefing papers]?

28       A:  Occasionally.

Gibson, Dunn & Crutcher LLP

8

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1    Q: And do you throw those away?

2    A: *Occasionally*.

3  (*Id.*, at 216:19-22 (emphasis added).)  Counsel for the United States did not raise any

4  objection to this line of questioning during Mr. Takata's deposition, and never

5  instructed Mr. Takata not to answer on the basis of any attorney-client privilege or

6  potential work product protection.

7        Nor did counsel for the United States object to similar questions directed to

8  Kathleen Salyer, Assistant Director of the Superfund Division, California Site

9  Cleanup Branch.  Ms. Salyer also testified to destroying potentially responsive

10  documents by deleting relevant emails during the pendency of this litigation:

11   Q: Would you say that you've kept every single e-mail you've gotten

12      since 2002 that's come through your system?

13   A: I have not kept every e-mail that's come through the system.

14   Q: So you delete some e-mails?

15   A: Yes.

16   Q: Why do you delete them?

17   A: If I don't feel I need them.

18   Q: Is there a particular criteria you use or is that rather subjective?

19   A: *It's subjective*.

20   Q: Can you sit here and tell me that you haven't deleted any e-mails from

21      2002 to 2007 that relate to the Rialto-Colton basin under oath.

22   A: *No*.

23   Q: Do you know how many documents fall within that category?

24   A: *No*.

25  (Dintzer Decl., Ex. U, at 134:2-20 (emphases added).)

26        And EPA officials also testified to the haphazard nature in which the United

27  States has collected documents from officials at the Region IX offices.  For example,

28

Gibson, Dunn & Crutcher LLP

9

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1   while Mr. Takata testified that he produced email communications, he was unable to

2   testify as to whether the emails he produced included any attachments to those emails.

3       Q:  So if you had e-mails that had draft documents or other documents

4       attached, when you copied those e-mails and put them in the database,

5       were the documents attached to the e-mails attached?

6       A:  *I don't know*.

7   (Dintzer Decl., Ex. T, at 37:15-16 (emphasis added).)  And perhaps even more

8   alarming still, Ms. Salyer testified that Region IX attorneys provided her only with

9   "suggested search criteria," by which to run her searches for electronically-stored

10  information, revealing that the United States has followed no uniform document

11  collection protocol in providing responsive documents.  And Ms. Salyer, who selected

12  which searches to run, could provide little information regarding the parameters of

13  those searches.  Indeed, Ms. Salyer testified that she arbitrarily decided how to

14  conduct her personal search for electronically-stored information:

15      Q:  Well, who was the final decider as to what your criteria were versus

16      let's say Wayne[ Praskins]'s?

17      A:  *Me*.

18      Q:  So you took the list from the lawyers, used some of that; you took the

19      list from Wayne, used some of that; and you just kind of decided what

20      you would use and what you wouldn't use; right?

21      A:  *Yes*.

22  (*Id*., Ex. U, at 545:4-11 (emphasis added).)  Indeed, Ms. Salyer testified that she could

23  not even remember which search terms she had employed.  (*Id.* at 546:13-18.)

24      **3.**    **Specific Discovery Requests at Issue**

25      Immediately upon Mr. Takata's alarming testimony on March 24, Goodrich

26  served its Fifth Set of RFPs and Second Set of Interrogatories to the United States,

27  requesting that the United States provide further detail regarding its search for

28  responsive documents, including the document preservation methods it had taken to

Gibson, Dunn &
Crutcher LLP

1  preserve documents relating to these Consolidated Actions. (Dintzer Decl., Exs. P, Q.)

2       The United States served its responses to both Goodrich's Fifth Set of RFPs, and

3  Second Set of Interrogatories, on April 26, 2011. (Dintzer Decl., Exs. R, S.)  In

4  response to each Request for Production, the United States indicated it would "not

5  permit inspection of any documents." (*See e.g.,* Dintzer Decl., Ex. R, at 4:10.)  And the

6  United States refused to provide a single substantive response to any of Goodrich's

7  Interrogatories, listing only objections, primarily on the grounds of privilege, and work

8  product protection. (*See e.g.,* Dintzer Decl., Ex. S, at 2:12-23.)

9       The text of each of Goodrich's Fifth Set of RFPs and Second Set of

10 Interrogatories is set forth in full below, along with the United States' response.

11        a.    *Document Requests 355, 356, 358, 359:  Requests seeking copies*

12              *of litigation hold letters.*

13      First, Goodrich sought the production of documents from the United States

14 which would relate or refer to any litigation hold letters the United States drafted or

15 sent out relating to the Rialto-Colton Basin.  Each of these Requests were narrowly

16 tailored in scope to the date of the first testing of elevated TCE levels in the Rialto-

17 Colton Basin, requesting only litigation hold letters drafted between January 1, 1997

18 and the present day.

19    • **Request No. 356**:  All DOCUMENTS that REFER OR RELATE TO any

20      LITIGATION HOLD LETTER sent between January 1, 1997 to the present day

21      that REFER OR RELATE TO the RIALTO/COLTON BASIN and that were

22      generated by the UNITED STATES, including any of its agencies or

23      departments, including, but not limited to the United States Environmental

24      Protection Agency, the United States Department of Defense, the United States

25      Department of Justice, the United States Customs Service, the Army Corps of

26      Engineers, and the United States Geological Survey.

27    • **Request No. 356**:  All COMMUNICATIONS that REFER OR RELATE TO

28      any LITIGATION HOLD LETTER sent between January 1, 1997 to the present

11

Gibson, Dunn & Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

day that REFER OR RELATE TO the RIALTO/COLTON BASIN and that
were generated by the UNITED STATES, including any of its agencies or
departments, including, but not limited to the United States Environmental
Protection Agency, the United States Department of Defense, the United States
Department of Justice, the United States Customs Service, the Army Corps of
Engineers, and the United States Geological Survey.

- **Request No. 358**:  All LITIGATION HOLD LETTER(S) that RELATE TO the
  RIALTO/COLTON BASIN prepared between January 1, 1997 and the present.

- **Request No. 359**:  All drafts of LITIGATION HOLD LETTER(S) that
  RELATE TO the RIALTO/COLTON BASIN prepared between January 1, 1997
  and the present.

The United States declined to produce any documents responsive to these
Requests, making the following, near identical responses:

> **Response to Request Nos. 355, 356, 358, 359**:[2]  The United States
> objects to the above interrogatory on the grounds that it is outside the
> scope of discovery under Rule 26 of the Federal Rules of Civil Procedure.
> Rule 26(b) of the Federal Rules of Civil Procedure authorizes discovery
> of any nonprivileged matter that is relevant to any party's claim or
> defense.  The production of documents relating to litigation hold letters is
> not relevant to a claim or defense and is not calculated to lead to
> admissible evidence.  The United States also objects to the request

---

[2]  The United States' responses to each of these Requests for Production are nearly
identical, with the exception that the third sentence of each response contains
minor differences.  (*See* Dinter Decl., Ex. R (Response to RFP No. 356 ("The
***production of communications about*** litigation hold letters is not relevant to a
claim or defense and is not calculated to lead to admissible evidence."); Response
to RFP No. 358 ("The ***production of litigation hold letters*** is not relevant to a
claim or defense and is not calculated to lead to admissible evidence."); Response
to RFP No. 359 ("The ***production of drafts of litigation hold letters*** is not relevant
to a claim or defense and is not calculated to lead to admissible evidence.")
(emphases added).)

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH
CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

because it seeks the production of information privileged under the attorney client privilege or protected from disclosure under the work product doctrine. A litigation hold letter, as well as any document relating to such litigation hold letter, comes into existence when litigation is anticipated. Work product contained in a litigation hold letter is not subject to discovery. Such documents also would constitute attorney work-product to the extent they reveal mental impressions of counsel or other information related to case preparation. Advice from an attorney for the sole purpose of assuring compliance with discovery procedures that may be required in litigation is privileged. The United States will not permit inspection of any documents.

> b.    *Document Requests 357, 360:  Requests seeking information regarding the United States' search for responsive documents.*

In addition to requesting documents relating to the United States' drafting and distribution of litigation hold letters, Goodrich also sought the production of documents relating to the United States' search for responsive documents in its electronically-stored information.

- **Request No. 357**:  All DOCUMENTS that were distributed to any individuals at the UNITED STATES, including any of its agencies or departments, including, but not limited to the United States Environmental Protection Agency, the United States Department of Defense, the United States Department of Justice, the United States Customs Service, the Army Corps of Engineers, and the United States Geological Survey, to assist in the search of electronic files, including emails and any other electronically-stored information, relating to the RIALTO-COLTON BASIN.

- **Request No. 360**:  All COMMUNICATIONS within the UNITED STATES, including any of its agencies or departments, including, but not limited to the United States Environmental Protection Agency, the United States Department

13

Gibson, Dunn & Crutcher LLP

of Defense, the United States Department of Justice, the United States Customs Service, the Army Corps of Engineers, and the United States Geological Survey, that REFER OR RELATE TO the search of electronic files, including emails and any other electronically-stored information, relating to the RIALTO-COLTON BASIN.

The United States again refused to produce any documents responsive to these Requests:

**Response to Request Nos. 357**: The United States objects to the above interrogatory on the grounds that it is outside the scope of discovery under Rule 26 of the Federal Rules of Civil Procedure. Rule 26(b) of the Federal Rules of Civil Procedure authorizes discovery of any nonprivileged matter that is relevant to any party's claim or defense. The United States objects to the request because it seeks the production of information privileged under the attorney client privilege or protected from disclosure under the work product doctrine. The statements of attorneys giving legal advice in connection with the production of documents in response to document requests is privileged under the attorney client privilege. Statements made regarding the litigation by attorneys working on the case that reflect mental impressions of the case are protected from disclosure under the work product doctrine. The United States will not permit inspection of any documents.

**Response to Request No. 360**: The United States objects to the above interrogatory on the grounds that it is outside the scope of discovery under Rule 26 of the Federal Rules of Civil Procedure. Rule 26(b) of the Federal Rules of Civil Procedure authorizes discovery of any nonprivileged matter that is relevant to any party's claim or defense. The United States objects to the request because it seeks the production of information privileged under the attorney client privilege or protected

from disclosure under the work product doctrine.  The statements of
attorneys giving legal advice in connection with the production of
documents in response to document requests is privileged under the
attorney client privilege.  Statements made regarding the litigation by
attorneys working on the case that reflect mental impressions of the case
are protected from disclosure under the work product doctrine.  The
United States will not permit inspection of any documents.

     c.    *Interrogatories No. 6, 7, 8:  Interrogatories seeking identity of persons involved in drafting litigation hold letters.*

Finally, Goodrich also propounded its Second Set of Interrogatories on the United States, requesting that the United States identify the names of individuals who drafted any litigation hold letter relating to the Rialto-Colton Basin, as well as any individuals who received such litigation hold letters, and the dates of all such litigation hold letters that the United States drafted regarding the Rialto-Colton Basin.

- **Interrogatory No. 6**:  Identify the names of all individuals at the UNITED STATES, including any of its agencies or departments, including, but not limited to the United States Environmental Protection Agency, the United States Department of Defense, the United States Department of Justice, the United States Customs Service, the Army Corps of Engineers, and the United States Geological Survey, who participated in the drafting of any LITIGATION HOLD LETTER sent between January 1, 1997 to the present and that REFERS OR RELATES TO the RIALTO-COLTON BASIN.

- **Interrogatory No. 7**:  Identify the names of all individuals or entities who received any LITIGATION HOLD LETTER drafted by any individual at the UNITED STATES, including any of its agencies or departments, but not limited to the United States Environmental Protection Agency, the United States Department of Defense, the United States Department of Justice, the United States Customs Service, the Army Corps of Engineers, and the United States

15

Geological Survey, sent between January 1, 1997 to the present that REFERS OR RELATES TO the RIALTO-COLTON BASIN.

- **Interrogatory No. 8**: Identify the dates of all LITIGATION HOLD LETTERS drafted by any individual at the UNITED STATES including any of its agencies or departments, but not limited to the United States Environmental Protection Agency, the United States Department of Defense, the United States Department of Justice, the United States Customs Service, the Army Corps of Engineers, and the United States Geological Survey, sent between January 1, 1997 to the present and that REFERS OR RELATES TO the RIALTO-COLTON BASIN.

In response to each of these Interrogatories, the United States asserted a near identical response:

> **Response to Interrogatory No. 6**: The United States objects to the above interrogatory on the grounds that it is outside the scope of discovery under Rule 26 of the Federal Rules of Civil Procedure. The identities of individuals that helped draft letters with instructions to preserve documents is not relevant to a claim or defense and is not calculated to lead to admissible evidence. The United States also objects to the above interrogatory to the extent it seeks the production of information privileged under the attorney client privilege or protected from disclosure under the work product doctrine. A litigation hold letter comes into existence when litigation is anticipated. Such documents would constitute attorney work-product to the extent they reveal mental impressions of counsel or other information related to case preparation. Advice from an attorney for the sole purpose of assuring compliance with discovery procedures that may be required in litigation is privileged.

16

Gibson, Dunn & Crutcher LLP

(Dintzer Decl., Ex. S, at 2:12-23.)[3,4]  The United States thus asserted objections to the Interrogatories that they were beyond the scope of permissible discovery, overbroad and unduly burdensome, and protected by the attorney-client privilege and work product doctrine.

In response to each individual request for production, then the United States refused to produce responsive documents, and failed to provide a substantive response to any of Goodrich's interrogatories.  On May 4, 2011, Goodrich served a letter on all parties, requesting that the United States meet and confer regarding its failure to provide substantive responses to Goodrich's Fifth Set of RFPs and Second Set of Interrogatories.  (Dintzer Decl., Ex. W.)  The parties met and conferred regarding the United States' failure to provide substantive documents on May 9, but were unable to reach resolution   (Dintzer Decl., Ex. X, at 14-16.)

---

3  The United States' response to Interrogatory No. 7 reads that, "[t]he United States objects to the above interrogatory on the grounds that it is outside the scope of discovery under Rule 26 of the Federal Rules of Civil Procedure.  The identities of individuals that received letters with instructions to preserve documents is not relevant to a claim or defense and is not calculated to lead to admissible evidence.  The United States objects to the above interrogatory to the extent it seeks the production of information privileged under the attorney client privilege or protected from disclosure under the work product doctrine.  The United States also objects to the above interrogatory on the grounds that it is overly broad and unduly burdensome.  Goodrich purports to require the United States to list the name of each individual that received a litigation hold letter.

4  The United States' response to Interrogatory No. 8 reads that, "[t]he United States objects to the above interrogatory on the grounds that it is outside the scope of discovery under Rule 26 of the Federal Rules of Civil Procedure.  The dates of letters with instructions to preserve documents is not relevant to a claim or defense and is not calculated to lead to admissible evidence.  The United States also objects to the above interrogatory to the extent it seeks the production of information privileged under the attorney client privilege or protected from disclosure under the work product doctrine.  A litigation hold letter by its nature comes into existence when litigation is anticipated.  Advice from an attorney for the sole purpose of assuring compliance with discovery procedures that may be required in litigation is privileged.  Such documents also would constitute attorney work-product to the extent they reveal mental impressions of counsel or other information related to case preparation.

Gibson, Dunn & Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

**B.     UNITED STATES' STATEMENT OF FACTS**

    **1.     No Sim Files Were Destroyed.**

In 2006, Wayne Praskins, EPA's project manager for the cleanup, asked CH2M HILL to conduct an evaluation of the fate of perchlorate in connection with the operations of West Coast Loading Corporation ("WCLC") at the Site.  See Declaration of Wayne Praskins, at ¶10 (hereinafter "Praskins Dec.").  WCLC operated at the Site prior to Goodrich and ceased operations in about 1956.  The amended complaint alleges that the Emhart Parties are the successors to WCLC.

As part of the evaluation, CH2M HILL used a publicly available VS2D vadose zone model and an Excel mixing model to simulate the downward movement of perchlorate through the soil from the surface to the groundwater (i.e., through the "vadose zone").  See Declaration of Tomas Perina at ¶¶ 13-16 (hereinafter "Perina Dec."); Praskins Dec. at ¶11.  Computer models such as VS2D solve mathematical equations that describe groundwater and contaminant movement according to the laws of physics.  Id.  The VS2D model is distributed by the U.S. Geological Survey and is available on their website.  Id.

The model requires the user to create input files that reflect the conditions at the Site.  Id.  The input files for the VS2D model specify numeric values for the hydraulic conductivity of the soil in the vadose zone, the amount of rainfall or other water that infiltrates into the soil, and other factors that affect the speed at which water, and any contaminant such as perchlorate dissolved in the water, move through the vadose zone.  Id.

One of the goals in directing CH2M HILL to conduct an evaluation of the fate of perchlorate was to determine if perchlorate discharged at the surface could travel through the vadose zone and reach the drinking water zone in a period of roughly 50 years (from 1955 to 2005.)  Id. at ¶12.  The report concluded that perchlorate released in the 1950s could in fact have moved downward 420 feet and contaminated the groundwater by 2005.  Id.

18

Gibson, Dunn & Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1    Significantly, after the report was created, the Emhart Parties conducted

2    subsurface sampling that showed perchlorate concentrations in the area where Emhart

3    operated at 330 feet below ground surface.  Id. at ¶16.

4    The results of the VS2D model are contained in one or more electronic "output"

5    files.  Perina Dec. at ¶15.  When running the model, the user can select one of several

6    options specifying the type of output file or files to be generated.  Id. at ¶15.  The

7    default option for the VS2D model is not to create output files at all, but there are

8    several choices that allow a user to create either smaller output files (for example, with

9    the filename extensions DAT, OUT or FIL) or to create a type of file known as a "sim"

10   file.  Id.  When CH2M HILL ran the VS2D model for the EPA project it did not create

11   sim files because of their size, and user-unfriendly format (binary format).  Id.  The

12   sim files, if generated, are typically tens of megabytes in size, and one file is generated

13   per simulation.  Id.

14   Thus, in 2006, CH2M HILL did not generate sim files for the EPA modeling

15   project, but instead generated output files that have other filename extensions such as

16   DAT, OUT, and FIL.  Id.  These output files contained all of the information needed

17   for the November 2006 report, and they were provided to Goodrich.  CH2M HILL did

18   not destroy any sim files because they were never created in the first place.  Perina

19   Dec. at ¶16.

20   When Goodrich asked for the sim files in a letter, EPA responded that the files

21   could be easily generated with the input data EPA had already provided to Goodrich.

22   In addition, Beverly Russell, the attorney at the United States Attorney's office in the

23   District of Columbia who handled the FOIA litigation, sent a letter to Goodrich dated

24   April 30, 2009.  The letter informed Goodrich that because CH2M HILL did not keep

25   backup tapes, any sim files would not have been retained.  In fact, the sim files were

26   never generated, and thus they were not destroyed.

27   Nevertheless, as EPA informed Goodrich at the time, the modeling input files

28   allow the user of the model to easily generate the sim output files.  Perina Dec. at

Gibson, Dunn & Crutcher LLP

19

1    ¶¶16-18.  In July 2011, CH2M HILL located the input files used in the 2006 EPA

2    project that were previously provided to Goodrich in connection with the FOIA

3    request and re-ran the 17 simulations that were run in 2006 using the VS2D model.

4    Id.  This time, the option in the model to generate sim files was selected.  These sim

5    files are identical to the files that would have been created in 2006 if CH2M HILL had

6    chosen to generate them.  Id.  If Goodrich wants the newly created sim files, they will

7    be made available.

8         Goodrich has submitted the Kresic Declaration to support its arguments that

9    other documents were destroyed.  Dr. Kresic did not inform the Court in his

10   declaration that the sim files are easily re-created from the output files previously

11   provided.  Dr. Kresic also contends that contaminant concentrations reported in

12   several of the graphs in the November 2006 report did not match the values listed in

13   the output files.  CH2M HILL compared the numbers in several of the graphs to those

14   in the output files and did not find any differences.  Id. at ¶20.  Dr. Kresic also

15   commented that he did not have four other files that were referenced in a file that EPA

16   had provided.  The files are named obsPoints-a.xls, obsPoints-i.xls, obsPoints-b.xls,

17   and rech1kz5.xls.  These files are related to conversion of output data into graphs and

18   spreadsheets and do not include any data not contained in the output files themselves.

19   Id. at ¶21.

20        In summary, in July, 2011, EPA requested that its contactor CH2M Hill create

21   the sim files for the 2006 model.  EPA is prepared to provide the sim files to Goodrich.

22   There was no spoliation here because EPA never created sim files until July, 2011.

23   Further, Goodrich has always been able to generate its own sim files based upon the

24   model provided by EPA to Goodrich.

25        **2.    A Model Simulation Will Not Exonerate Goodrich**

26        Goodrich is free to attempt to prove that based on the computer model it is

27   impossible that perchlorate or TCE contamination from Goodrich's operations could

28   reach groundwater, but the scientific evidence is to the contrary.  There is nothing in

Gibson, Dunn & Crutcher LLP

20

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1    the 2006 report that exonerates Goodrich.  In fact the weight of the evidence is clear

2    that Goodrich's activities led to contamination.

3            The United States recently responded to Goodrich's motion for summary

4    judgment on the United States' claims under Section 7003 of RCRA.  The United

5    States submitted a Statement of Disputed Facts and Additional Undisputed Facts.  The

6    United States has asked Judge Gutierrez to make findings of undisputed fact pursuant

7    to Rule 56(d) of the Federal Rules of Civil Procedure.  The evidence shows that the

8    only waste at the plant that went off-site for disposal was office waste.  All other

9    waste, including perchlorate containing waste and TCE, was sent to the Goodrich Pit

10   for disposal.  Goodrich is the only entity that used the Goodrich pit.  Also, Goodrich

11   employees have testified that Goodrich disposed of its waste in a pit on site.

12           In subsurface investigations that EPA supervised, sampling within the footprint

13   of the former Goodrich disposal pit has detected the presence of perchlorate and TCE

14   to the greatest depth tested.  Praskins Dec. at ¶18.  In one of several borings completed

15   within the footprint of the former Goodrich disposal pit, perchlorate was detected at

16   every depth tested (9, 14, 27, 38, 42, 58, 62, 80, 87, and 94 feet below ground

17   surface).  Id.  In the same boring, TCE was detected at every depth tested

18   (approximately 25, 50, 75, and 100 feet below ground surface).  Id.  Testing of

19   groundwater immediately down-gradient of the former Goodrich disposal pit has

20   detected the highest concentrations of TCE and perchlorate measured in groundwater

21   anywhere at the Site.  Id.  TCE and perchlorate have also been detected down-gradient

22   of other locations where Goodrich conducted operations.  Id.

23           Based on the law that was previously submitted to the Special Master on the

24   elements of CERCLA liability in connection with the United States' motion for a

25   protective order to limit the scope of the First Request for Production of Goodrich and

26   PSI, and the overwhelming evidence of disposal during Goodrich's period of

27   ownership, a model simulation cannot possibly exonerate Goodrich.

28

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH
CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

### 3.   EPA Employees Did Not Spoliate Documents

Goodrich argues that Keith Takata, the Deputy Regional Administrator of Region 9, and Kathleen Salyer, the Associate Director of the Superfund Division at Region, admitted to destroying relevant documents.  The testimony does not support that allegation.

Q.  Do you typically keep notes of conversations?

A. [Mr. Takata]  Phone conversations?  No.

Q.  Do you typically take notes at all?

A.  I do occasionally.

Q.  What usually prompts you to take notes?

A.  If it's something I want to remember or I want to let other people know about.

Q.  Did you search your records for notes related to the Rialto-Colton groundwater basin litigation?

A.  Search my notes?

Q.  Did you search for notes?

A.  I searched for electronic documents that I had and then whatever notes I retained were in the folder that I left in my old office.

Q.  So you have not taken any notes with respect to the Rialto-Colton groundwater basin since you became deputy regional administrator?

A.  That's correct.

Q.  So any notes you took relevant to the Rialto-Colton basin situation would be in your file that you left in your office when you were promoted from director?

A.  Yes.

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1    Q.  Did you give that file to counsel?

2    A.  No.

3    Q.  Do you know if anyone at EPA has given the

4    file you left in your office at the time you were

5    director to counsel for production in this case?

6    A.  I do not know.

7    Q.  When you got the request to search your

8    e-mail, did you tell anyone at EPA or the office of

9    regional counsel that there was a file in your office

10   in your former office that had documents related to

11   the discovery request?

12   A.  Yes.

13   Q.  Who did you tell?

14   A.  I don't recall.  Probably Steven.

15   Q.  Steven?

16   A.  Berninger.

17   Q.  Do you think you told him verbally or in an

18   e-mail?

19   A.  Verbally.

20  Takata Deposition, Vol. I, at 34-36.  The above transcript, in fact, shows that Mr.

21  Takata kept his notes, and when he left his position, he left his files for his successor.

22      Goodrich relies on the following additional testimony to prove destruction of

23  evidence.  However a plain reading of the transcript shows that the testimony does not

24  substantiate any such allegation because nowhere in the testimony is there evidence

25  that the handwritten notes on a duplicate agenda contained any material information or

26  even referred to the Site or this case:

27      Q.  How many documents have you gotten from

28      Mr. Praskins in the last year that you've kept?

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH
CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1    A. [Mr. Takata]  In the last year?

2    Q.  Yes, sir.

3    A.  None.

4    Q.  He's not sent you one document in the last

5    year related to Rialto?

6    A.  He may have but it's not my practice to keep

7    them.  I give them back to him.  When I'm briefed, I

8    generally, unless there's some reason I need to keep

9    it personally, I give it back to the people.

10    Q.  You never throw it away?

11    A.  No unless like it's a duplicate copy, like an

12    agenda for example, duplicate copies.

13    Q.  Do you ever write notes on these things?

14    A.  Occasionally.

15    Q.  And do you throw those away?

16    A.  Occasionally.

17    Id. at 199-200.  Based upon this testimony there is no foundation that the "occasional"

18    handwritten notes have any relationship to the Site let alone any material relevance to

19    this case.

20            Similarly, the transcript citations to Kathleen Salyer do not show that any

21    material emails relating to the Site were deleted. Ms. Salyer testified that she only

22    deleted email documents when "I don't feel I need them."  Ms. Salyer testified that she

23    used a "subjective" criteria.  Counsel for Goodrich never questioned  Ms. Salyer on

24    what subjective factors she would consider in deleting an email.  He never inquired if

25    she only deleted emails that she knew were copies maintained in EPA's Superfund

26    Record Center for the public to review or were emails she knew were maintained by

27    other members of her staff.  In Ms. Salyer's deposition, counsel for Goodrich failed to

28    establish any foundation that she deleted original documents relevant to the case that

24

Gibson, Dunn &
Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH
CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

were not being maintained by other members of her staff or publicly available.  In addition, counsel for Goodrich failed to establish that any deleted emails were material to any discoverable issue in this litigation.  Counsel for Goodrich never questioned her about the subject matter of any deleted email.  He never inquired about the date range, who the email might have been addressed to, or from, or whether the emails contained any information  specifically about the B.F.Goodrich Superfund Site.  He simply asked her, " Can you sit here and tell me that you haven't deleted any e-mails from 2002 to 2007 that relate to the Rialto-Colton basin under oath."  (Dintzer Decl., Ex.U, at 122:14-25).  When she said "NO," counsel moved on without obtaining further detail on relevance.  Accordingly, both the deposition testimony of Mr. Takata and Ms. Salyer do not support the allegations of spoliation on the part of EPA.

### III.

### ARGUMENTS

A.   **GOODRICH'S AND PSI'S ARGUMENT**

   1.   **Legal Standard**

A party may move for an order compelling discovery with respect to the responding party's objections or other failure to respond to requests to produce documents.  Fed. R. Civ. P. 37(a)(3)(B), 34(b).  Upon a showing of good cause, parties may obtain discovery regarding any matter that is not privileged and is relevant to the claim or defense of any party.  Fed. R. Civ. P. 26(b)(1).  "Under the liberal discovery principles of the Federal Rules defendants [are] required to carry a heavy burden of showing why discovery was denied."  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).  The district court has broad discretion to order parties to comply with their discovery obligations, including ordering parties to produce documents in response to requests for production and imposing sanctions on parties who fail to do so.  *See Valley Engineers Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1059 (9th Cir.1998) (noting the district court's broad authority under Federal

Gibson, Dunn & Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

Rule of Civil Procedure 37(b)(2) to "make such orders in regard to [a discovery] failure as are just," including dismissal).

## 2.  The United States Had An Obligation To Issue Litigation Holds And Preserve Documents In This Case.

A party's obligations with respect to the preservation of evidence are clear: "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).  The duty to preserve documents arises "when a party should have known that the evidence may be relevant to future litigation." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998).  Moreover, "a party's discovery obligations do not end with the implementation of a litigation hold. . . . Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce relevant documents." *Major Tours, Inc. v. Colorel*, No. 05-3091 (JBS/JS), 2009 U.S. Dist. LEXIS 68128, at *9 (D.N.J. Aug. 4, 2009).[5]

The United States thus clearly has had a duty to preserve documents related to the present litigation.  Indeed, the United States has arguably had such a duty to preserve documents dating back to 1997, and the United States certainly had an obligation to preserve documents in 2003, when it issued a Unilateral Administrative Order ("UAO") pursuant to CERCLA Section 106(a) to Goodrich and Emhart

---

[5] *See also* Moore's Federal Practice, § 37A.56 ("The duty to preserve evidence arises when a party knows or should know that the evidence may be relevant to litigation that has been commenced or is imminent. [citation omitted.]  If litigation is imminent or has commenced, destruction of evidence can lead to severe sanctions – even if it is destroyed in accordance with an established record retention and disposition policy.  When litigation has commenced or is imminent, a party should either suspend its records destruction altogether or impose a selective litigation hold, preserving the records of all individuals (key players) who may have relevant information.  The steps taken by the party to preserve evidence that it knows or should know is relevant in the case is a key factor in determining its culpability.  Judge Scheindlin of the Southern District of New York has concluded that a failure to issue a written litigation hold to preserve evidence constitutes gross negligence.").

Gibson, Dunn & Crutcher LLP

1   Industries, Inc. (*See* Dintzer Decl., Ex. L, at 7 (Judge Bates citing ***EPA's argument*** in
2   the FOIA Action that the EPA Vadose Zone Model was prepared in anticipation of
3   litigation "[b]ecause EPA issued a UAO ordering Goodrich and other companies to
4   remediate the Site and because the EPA often resorts to litigation to enforce UAOs,
5   the argument goes, EPA prepared the model in anticipation of litigation.") (citing EPA
6   Reply Memorandum in Support of Its Motion for Summary Judgment ("EPA Rep.") at
7   8-9).)
8        But it cannot be in dispute that the United States "reasonably anticipate[d]
9   litigation" at the time of the generation of the EPA Vadose Zone Model in 2006 since
10  ***two EPA officials declared to a federal district court to exactly this fact***.  Indeed,
11  both Mr. Takata and the Project Manager for the Rialto-Colton Site, Mr. Wayne
12  Praskins, declared that the EPA Vadose Zone Model was developed specifically for
13  enforcement litigation in two separate declarations submitted to the District of
14  Columbia District Court:

15  - [Mr. Takata:]  "EPA instructed CH2M Hill to develop the model to assist
16      EPA Region 9's Superfund Program and Office of Regional Counsel
17      ("ORC") in evaluating the fate of a spill or other releases of perchlorate
18      ***related to potential enforcement litigation*** under [CERCLA] . . . ."  (Dintzer
19      Decl., Ex. I, at ¶ 16.)

20  - [Mr. Praskins:]  "To assist the Office of Regional Counsel ***in evaluating***
21      ***potential enforcement litigation at the Site*** and to potentially assist the
22      Regional Board in its enforcement efforts, I directed EPA's contractor
23      (CH2M Hill) to develop a computer model simulating the downward
24      movement of perchlorate through the vadose zone at the Site . . . ."  (Dintzer
25      Decl., Ex. J, at ¶ 4.)

26  Thus it is not in dispute that the EPA Vadose Zone Model was prepared "when [EPA]
27  should have known that the [Model] may be relevant to future litigation."  *Kronisch*,
28  150 F.3d at 126.

Gibson, Dunn & Crutcher LLP

Mr. Takata also testified in his deposition that at the time the UAO was issued in July 2003 that he was aware that potential litigation between the United States and Goodrich may ensue. (*See* Dintzer Decl., Ex. T, at 212:22-213:13 ("Q: But there's always a chance, depending upon what happens and what you decide, that litigation will ensue if the party is noncompliant; right?  A:  There's a chance. . . . Q:  So there's always that litigation that could happen; right?  Right?  A:  Yes.").)

Yet the lead project manager at CH2M Hill, the EPA contractor which created the EPA Vadose Zone Model testified that at the time EPA created the model he could not remember being told by EPA to preserve the Model, including the Model's critical input files. (*See*  Dinter Decl., Ex. V, at 236:4-22 ("[Mr. Dintzer:]  No one at EPA came to you and said, hey, look, you know, those model outputs on the vadose zone model might be really important later on to some of the parties, us , the Court.  Save everything in a format that we can, you know, produce it later on to the other parties?  They never did that?  [Mr. Towell:]  ***We never had any discussions that – at all related to anything about that.***") (emphasis added).)  Indeed, there is no indication that the United States has been following a routine document retention and preservation policy even as recently as October of 2009, when Goodrich (among other parties) named the United States as a defendant in certain of these Consolidated Actions.  In fact, EPA's document preservation efforts are in doubt as to February 2010, when the United States (as it would have it, "on behalf of EPA"), filed its own complaint against Goodrich and others.  The United States should clearly have a document retention policy in place, and, as discussed in further detail below, in light of the overwhelming evidence that the United States has caused the spoliation of relevant evidence in this case, Goodrich is entitled to discover the particulars of those document preservation and collection efforts.

Gibson, Dunn & Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

### 3.   Where Spoliation Has Occurred Any Attorney-Client Privilege Or Work Product Protection For Litigation Holds Is Abrogated.

Where there has been a preliminary showing of spoliation of evidence, "most applicable authority from around the country provides that litigation hold letters should be produced." *Major Tours*, 2009 U.S. Dist. LEXIS 68128, at *15; *see also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 425 n.15-16 (S.D.N.Y. 2004) (*Zubulake V*) (disclosing details of attorney's litigation hold communication after discovering at least one e-mail had never been produced); *Cache La Poudre Feeds, LLC v. Land O'Lakes Farmland Feed, Inc.*, 244 F.R.D. 614, 634 (D. Colo. 2007) (permitting deposition of party to explore the procedures defendant's counsel took "to identify, preserve and produce responsive documents" after finding that defendants expunged the hard drives of several former employees after the litigation had begun).

### a.   The United States spoliated evidence by destroying the vadose zone model exonerating Goodrich.

As set forth above, the United States has already destroyed documents essential to Goodrich's defense in this litigation, which a United States District Court has ruled were discoverable, and should have been produced.

Indeed, in furtherance of its prosecution of litigation relating to the Rialto-Colton Basin, EPA developed a computerized vadose zone model of the area underneath the Site in Rialto, California. (Dintzer Decl., Exs. I, J.) Vadose zone modeling is an important aspect of tracking the course of potential contaminants through the vadose zone (the level of the Earth's strata from the ground surface to the top of the water table), and examining the impact of such contaminants on human health and the environment. (Kresic Decl., ¶ 11.) For almost a year, however, EPA unlawfully withheld this model, refusing to provide it to Goodrich in response to Goodrich's FOIA requests. (Dintzer Decl., ¶¶ 9-12, Exs. E; G.)

Goodrich eventually had to file suit against EPA in District Court for the District of Columbia to remedy the improper withholding of the model and, in January

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1   of 2009, United States District Court Judge John D. Bates, determined EPA's

2   withholding of the vadose zone model was unlawful.  Judge Bates thus ordered EPA

3   to produce the model to Goodrich.  (Dintzer Decl., Exs. K, L [1/16/09 Order and

4   Memorandum in the case of *Goodrich Corp., et al. v. U.S. E.P.A.*, Case No. 1:08-cv-

5   01625-JDB (D.D.C.)] at 1-3, 14 (granting summary judgment and ordering disclosure

6   of vadose zone model withheld by EPA in response to FOIA requests).)  When EPA

7   finally produced the model it was discovered that CH2M Hill had destroyed all of the

8   model runs, although the documents had b¶een specifically requested and ordered to

9   be produced, including additional "sim" files generated in conjunction with the model.

10  (Dintzer Decl. Ex. M [4/30/09 Russell Ltr.]; Ex. N [5/24/11 M. Murphy Ltr.]; Ex. O

11  [6/5/09 Russell Ltr.].)  Therefore, Goodrich never received the EPA vadose-zone

12  model runs.  These "sim" files are critical to ensuring that a subsequent independent

13  reviewer can duplicate the results or perform a postapplication assessment using the

14  documentation.  (Kresic Decl., ¶¶ 15, 17.)

15       Ninth Circuit law is explicit that "[a] party's destruction of evidence qualifies as

16  willful spoliation if the party has some notice that the documents were *potentially*

17  relevant to the litigation before they were destroyed."  *Leon v. IDX Sys. Corp.*, 464

18  F.3d 951, 959 (9th Cir. 2006) (emphasis in original; internal quotation marks and

19  citation omitted).  In fact, in *IDX Systems*, the Ninth Circuit affirmed the district

20  court's dismissal of the plaintiff's claims based on the plaintiff's deletion of email

21  files given the "obvious relevance of [deleted] files to the litigation and the harm to

22  [defendant] caused by [plaintiff's] destruction of th[o]se files."  *IDX Sys.*, 464 F.3d, at

23  960-61.

24       Here, it is undisputed that the United States was aware that the vadose zone

25  model was "potentially relevant" to litigation.  Indeed, both Mr. Takata and the Project

26  Manager for the Rialto-Colton Site, Mr. Wayne Praskins, declared that the vadose

27  zone model was developed specifically for enforcement litigation in two separate

28

Gibson, Dunn &
Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH
CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1   declarations submitted to the District of Columbia District Court. (*See* Dintzer Decl.,

2   Ex. I, at ¶ 16; Ex. J, at ¶ 4.)

3      Moreover, once EPA produced the vadose zone model (even without the

4   destroyed sim files), it was apparent *why* EPA had attempted to conceal it – **because**

5   **the EPA generated vadose zone model  exonerates Goodrich**.  Indeed, as apparent

6   from a 2006 presentation prepared by EPA contractor CH2M HILL for EPA, the

7   vadose zone model makes clear that there is no evidence that sufficient conditions

8   existed for the alleged releases by Goodrich to have impacted groundwater. (Dintzer

9   Decl., Ex. C.)  However, Goodrich's expert, Dr. Neven Kresic, indicated that he is

10  unable to confirm that EPA's Vadose Zone Model runs reach the same conclusions

11  because of the lack of any related discussion by EPA and because the ".sim" files that

12  EPA generated have never been produced to him.  (Kresic Decl., ¶ 20.)  Clearly then,

13  the United States' destruction of the sim files may have caused immeasurable harm to

14  Goodrich, as the basis for exonerating evidence has been destroyed.  *IDX Sys.*, 464

15  F.3d, at 960-61.

16     The United States has already produced one document reflecting its untimely

17  request for preservation of documents to its contractor, CH2M Hill, for documents

18  relating to the CH2M Hill-generated vadose zone model. (Dintzer Decl., Ex. Z.)

19  Given the overwhelming evidence that *exonerating evidence* was *destroyed* by the

20  United States or its contractor, CH2M Hill, Goodrich should be entitled to seek the

21  production of litigation holds relating to the Rialto-Colton Basin.

**b.    EPA officials recently testified to numerous other instances**

**where EPA has potentially spoliated relevant evidence.**

24     Moreover, recent testimony from numerous EPA officials demonstrate that, not

25  only have relevant (and exculpatory) documents been destroyed, but the United States'

26  efforts at document preservation and collection appear severely lacking.  For example,

27  Mr. Takata's testimony that he does not recall *ever receiving a litigation hold* from

28  EPA's Region IX attorneys, from EPA Headquarters, or from the Department of

31

Gibson, Dunn &
Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH
CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1   Justice. (*See* Dintzer Decl., Ex. T, at 215:13-21 (Q:  Did the lawyers in your offices –

2   you've got a lot of them here, you've got a lot of lawyers at Region 9, did they issue a

3   litigation hold?  A: *I don't know*.  Q:  Do you know whether anybody at headquarters

4   issued a litigation hold?  *A:  I don't know*.  Q:  Did anyone at [the Department of

5   Justice] issue a litigation hold?  *A:  I don't know*.  (emphases added)).)  This failure to

6   adequately advise its key personnel of pending litigation then resulted in their cavalier

7   attitude towards retaining key documents.  (*Id.*, at 216:19-22 (Mr. Takata testifying

8   that he "occasionally" disposed of documents potentially relevant to the litigation).)

9          This apparent lack of formal process in the preservation of documents relating

10   to the Rialto-Colton Basin is reflected in the cavalier attitude that both Mr. Takata and

11   Ms. Salyer took towards producing responsive documents.  Both testified that they

12   may have destroyed or thrown away relevant evidence in recent years.  (*See* Dintzer

13   Decl., Ex. U, at 134:7-17 ("Q:  So you delete some e-mails?  A:  Yes.  Q:  Why do you

14   delete them?  A:  If I don't feel I need them.  Q:  Is there a particular criteria you use

15   or is that rather subjective?  A: *It's subjective*.  Q:  Can you sit here and tell me that

16   you haven't deleted any e-mails from 2002 to 2007 that relate to the Rialto-Colton

17   basin under oath.  A: *No*" (emphasis added)); Ex. T, at 216:19-22 ("Q:  Do you ever

18   write notes on these [briefing papers]?  A:  Occasionally.  Q:  And do you throw those

19   away?  A: *Occasionally*." (emphasis added).)

20          In this case then, where Goodrich has clearly demonstrated the potential for

21   spoliation of potentially responsive information, the United States' claimed assertion

22   of privilege rings hollow.  Case law is virtually uniform that, where a party has made

23   a preliminary showing of spoliation, there exists no attorney-client privilege or work

24   product protection.

25

26

27

28

Gibson, Dunn &
Crutcher LLP

32

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH
CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

**4.**     **Even In The Absence Of Spoliation, The Majority Of Goodrich's Discovery Requests Are Not Protected By The Attorney Client Privilege Or Work Product Protection.**

While two of Goodrich's Fifth Set of RFPs seek the production of any of the United States' recent litigation hold letters relating to the Rialto-Colton Basin, the majority of the discovery requests at issue seek more general information relating to the United States' practice of document preservation and collection in this case. Courts widely agree that such information is not protected by the attorney-client privilege. Indeed, recently, in *In re eBay Seller Antitrust Litig.*, No. C 07-01882 JF (RS), 2007 U.S. Dist. LEXIS 75498, at *7 (N.D. Cal. Oct. 2, 2007), California's Northern District held that the United States' position here, that Goodrich is not entitled to seek *any* information regarding the drafting and dissemination of litigation hold letters, is simply "not tenable." Therefore, the majority of the discovery requests at issue, which seek information relating to the identities of the drafters, recipients, and dissemination dates of the litigation hold letters, (*see* Dintzer Decl., Ex. Q (Interrogatories No. 6, 7, 8)) and information regarding the United States' preservation of electronically-stored information, (*id.*, Ex. P (RFP Nos. 357, 360)), are clearly appropriate and discoverable, even absent an¶¶y *evidence* of spoliation.

In *In re eBay*, plaintiff sought extensive discovery from defendant company regarding the company's efforts to ensure that relevant evidence in the form of electronically-stored information was preserved and collected. This discovery sought production of the company's document retention notices ("DRNs"), along with the identification of the names and job titles of those approximately 600 employees who had received them. *Id.*, at *2. In the absence of any evidence of spoliation, the *In re eBay* court noted that the company had made a sufficient showing that the DRNs themselves constituted attorney-work product. However, the court went further, specifically holding that,

Gibson, Dunn & Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

[t]o the extent . . . that [defendant] is seeking to foreclose *any* inquiry into the contents of those notices at deposition or through other means, ***such a position is not tenable***.  Although plaintiffs may not be entitled to probe into what exactly [defendant's] employees were *told* by its attorneys, they are certainly entitled to know what [defendant's] employees are *doing* with respect to collecting and preserving [electronically-stored information].  Furthermore, because it would neither be reasonable nor practical to require or even to permit plaintiffs to depose all 600 employees, it is appropriate to permit plaintiffs to discover what those employees are *supposed* to be doing.  Even though such inquiry may, indirectly, implicate communications from counsel to the employees, the focus can and should be on the *facts* of what [defendant's] document retention and collection policies are, rather than on any details of the DRNs.  Thus, while plaintiffs should not inquire specifically into how the DRNs were worded or to how they described the legal issues in this action, plaintiffs are entitled to know what kinds and categories of [electronically-stored information defendant] employees were instructed to preserve and collect, and what specific actions they were instructed to undertake to that end.

2007 U.S. Dist. LEXIS 75498, at *7-8 (emphasis added); *id.*, at *2-3 ("Plaintiffs . . . are entitled to inquire into the *facts* as to what the employees receiving the DRNs have done in response; i.e., what efforts they have undertaken to collect and preserve applicable information.").  The *In re eBay* court further held that the identity of the approximately 600 recipients of the litigation hold letters were not privileged, and thus defendant was ordered to produce that information. *Id.* at *9.

Here, just as the producing party in *In re eBay* was unable to do, the United States has not presented one reason why providing the names of the individuals who had received litigation hold letters would invade any privilege.  Instead, the United

34

Gibson, Dunn & Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1  States has asserted summarily that it objects to Goodrich's Interrogatory No. 7 "on the

2  grounds that it is overly broad and unduly burdensome[, because] Goodrich purports

3  to require the United States to list the name of each individual that received a

4  litigation hold letter." (Dintzer Decl., Ex. S.)  Additionally, there is no rationale

5  supporting the United States' contention that either the identity of the individuals

6  *drafting* the letters, or the *dates on which they were drafted*, could be subject to

7  privilege.  Therefore, just as in *In re eBay*, such information is discoverable.  *See also*

8  *Major Tours*, 2009 U.S. Dist. LEXIS 68128, at *7 ("Despite the fact that plaintiffs

9  typically do not have the automatic right to obtain copies of a defendant's litigation

10 hold letters, plaintiffs are entitled to know which categories of electronic storage

11 information employees were instructed to preserve and collect, and what specific

12 actions they were instructed to undertake to that end.") (citing *In re eBay*, 2007 U.S.

13 Dist. LEXIS 75498, at *2).

14     Moreover, additional testimony from EPA officials demonstrates that the United

15 States' the United States' preservation and collection of potentially responsive

16 documents has been anything but reliable and uniform.  For example, Ms. Salyer

17 testified that, since as late as 2002 she has used a "subjective" criteria for deletion of

18 her emails, based only on whether she no longer needed them.  (Dintzer Decl., Ex. U,

19 at 134:2-20.)  Moreover, Ms. Salyer's explanation for her search for documents

20 responsive to prior requests for production made by Goodrich and other parties to this

21 litigation demonstrated the haphazard approach the United States has taken to

22 document collection:

23     Q:  Well, who was the final decider as to what your criteria were versus

24       let's say Wayne[ Praskins]'s?

25     A:  *Me*.

26     Q:  So you took the list from the lawyers, used some of that; you took the

27       list from Wayne, used some of that; and you just kind of decided what

28       you would use and what you wouldn't use; right?

35

Gibson, Dunn & Crutcher LLP

1    A: *Yes*.

2  (*Id.*, at 545:4-11 (emphasis added).)  There is thus clearly no strategy by the United

3  States and its attorneys to implement a uniform document collection strategy across

4  the key EPA personnel involved in these Consolidated Actions.  And the strategy of

5  eliciting this information by deposition is fundamentally flawed given the deponents'

6  failure to provide substantive responses.  Ms. Salyer could not remember using key

7  terms in her individualized search for email documents, despite the fact that they

8  would be responsive to Goodrich's prior requests for production.  (*Id.*, at 546:13-18

9  ("Q:  So let me ask you if you can tell me, was the word 'RCRA' on [your list]?  A: *I*

10  *don't think so*.  Q:  Was 'imminent and substantial endangerment' on there?  A: *I*

11  *don't think so*.) (emphasis added).)

12      Ms. Salyer's testimony thus establishes that uniform searches were not used by

13  key personnel at EPA who are most likely to have important information bearing on

14  the United States' claims.  The United States is obligated to provide all responsive,

15  non-privileged documents relating to its search for documents in response to

16  Goodrich's requests for production.

17  **5.    Even If The United States Were Justified In Withholding Documents**

18  **In Response To Goodrich's Fifth Set of RFPs, It Has Provided No**

19  **Privilege Log, Nor Any Further Information Permitting Goodrich To**

20  **Assess Its Claims Of Privilege As Required By CMO No. 1.**

21      As discussed above, the United States objected to Goodrich's Fifth Set of RFPs

22  in large part on the basis of attorney-client or work product privilege.  (*See e.g.*,

23  Dintzer Decl. Ex. R, at 4:1-10.)  As this Court is aware, the topic of the United States'

24  production of privilege logs has been a major bone of contention between the parties

25  to date.  However, in its May 4, 2011 correspondence, Goodrich specifically inquired

26  further regarding the United States' purported attorney-client privilege and work

27  product protected documents:

28

Gibson, Dunn & Crutcher LLP

1   Finally, should the United States maintain its privilege objections in spite

2   of this overwhelming authority, *Goodrich hereby requests that the*

3   *United States provide a privilege log of all documents it is withholding*

4   *on the basis of privilege.  If the United States refuses to do so, please*

5   *provide information sufficient to determine whether Goodrich will*

6   *move for the United States to prepare a privilege log.*

7   (Dintzer Decl., Ex. W, at 5 (emphasis added).)  The United States is thus in direct

8   contravention of the requirements of Paragraph 6(j) of Case Management Order No. 1

9   ("CMO No. 1"), which provides:

10   Notwithstanding any other provision of this Order, if in response to a

11   request for production of documents covered by Paragraph 6.a. through

12   6.i., above, responsive documents are not produced on the ground that

13   they are protected by the attorney-client privilege and/or the work

14   product doctrine, the responding party shall so state in its response to the

15   request for production of documents and shall identify the grounds upon

16   which such documents have been withheld.  *If the requesting party*

17   *inquires further regarding the withheld documents, the responding*

18   *party shall provide the requesting party with information (e.g., the*

19   *general nature of the withheld documents (emails, letters, internal*

20   *memoranda), the time range of the documents, the identity of any non-*

21   *party recipients, and the number of documents withheld) which is*

22   *reasonably necessary to allow the requesting part to determine whether*

23   *to file a motion to compel production of [a] privilege log . . . .*

24   (Dintzer Decl., Ex. Y, at 6:18-7:1 (emphasis added).)  The United States has never

25   provided *any* information regarding the documents it has withheld in response to

26   Goodrich's Fifth Set of RFPs, let alone the information required to be disclosed

27   pursuant to the parties' agreed upon (and Court-ordered) CMO No. 1.

28

1    The United States should thus be ordered to confirm that the privilege log it is

2    producing in accordance with this Court's orders, identifies those documents relating

3    to its litigation holds that the United States is withholding on the grounds of any

4    claimed privilege.

5    **B.      UNITED STATES' ARGUMENT**

6    The Court should reject Goodrich's attempt to compel the United States to

7    produce the instructions that attorneys issued to EPA personnel to retain information

8    relating to litigation.  Litigation hold instructions are privileged communications and

9    are protected as work product.  See, e.g., Muro v. Target Corp., 250 F.R.D. 350, 360

10    (N.D. Ill. 2007); Gibson v. Ford Motor Co., 510 F. Supp. 2d 1116, 1123-24 (N.D. Ga.

11    2007).

12    For example, in Muro v. Target Corp., 250 F.R.D. 350, 360 (N.D. Ill. 2007), the

13    court held that litigation hold notices that constituted communications of legal advice

14    from corporate counsel to corporate employees regarding document preservation were

15    subject to the attorney-client privilege and to work product protection and did not

16    have to be produced.  In Gibson v. Ford Motor Co., 510 F. Supp. 2d 1116, 1123-24

17    (N.D. Ga. 2007), the court held that a document instructing the defendant's employees

18    not to destroy certain kinds of documents was not reasonably calculated to lead to the

19    discovery of admissible evidence, and therefore did not have to be produced.  The

20    court explained:

21        Not only is the document likely to constitute attorney work product, but

22        its compelled production could dissuade other businesses from issuing

23        such instructions in the event of litigation.  Instructions like the one that

24        appears to have been issued here insure the availability of information

25        during litigation.  Parties should be encouraged, not discouraged, to issue

26        such directives.

27    Id.  Similarly, the instructions that EPA attorneys provided to their clients are

28    privileged.

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH
CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1      Courts have allowed the disclosure of litigation hold instructions discoverable

2  only where there is evidence of spoliation.  See, e.g., Ingersoll v. Farmland Foods,

3  Inc., 2011 WL 1131129, *16-17 (W.D. Mo. 2011); Major Tours, Inc. v. Colorel, 2009

4  WL 2413631 *2 (D.N.J. 2009), upheld at 720 F. Supp. 2d 587, 617-622 (D.N.J. 2010).

5  Spoliation is "the destruction or significant alteration of evidence, or the failure to

6  preserve property for another's use as evidence in pending or reasonably foreseeable

7  litigation."  Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)

8  (quotation omitted).  For spoliation to occur, a party must have had "some notice that

9  the documents were potentially relevant" to the litigation before they were destroyed.

10  United States ex rel. Aflatooni v. Kitsap Physicians Service, 314 F.3d 995, 1001 (9th

11  Cir. 2002) (quoting Akiona v. United States, 938 F.2d 158, 161 (9th Cir. 1991).  Where

12  there is no evidence of spoliation, litigation hold instructions remain privileged.

13      Goodrich alleges that EPA has spoliated evidence and, therefore, EPA's

14  litigation hold information should be produced in discovery.  This allegation is

15  unsupported.  There is no evidence that EPA destroyed relevant or potentially relevant

16  information.[6]

17      A party is not required to keep all evidence, but only relevant evidence.

18  Kronisch v. United States, 150 F.3d 112, 126 (2nd Cir. 1998); see also Cache La

19  Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614, 623 n. 10 (D. Colo. 2007)

20  ("[a] party does not have to go to 'extraordinary measures' to preserve all potential

21  evidence . . . [i]t does not have to preserve every single scrap of paper in its business")

22  (quoting Wiginton v. CB Richard Ellis, Inc., 2003 WL 22439865, 4 (N.D. Ill. 2003)).

23  "While a litigant is under no duty to keep or retain every document in its possession

24  once a complaint is filed, it is under a duty to preserve what it knows, or reasonably

25  should know, is relevant in the action, is reasonably calculated to lead to the discovery

26  _____

27  [6]  Goodrich's baseless allegations are directed solely at EPA.  Goodrich has not even
    attempted to assert spoliation by any other federal agency, including the

28  Department of Defense.

Gibson, Dunn &
Crutcher LLP

of admissible evidence, is reasonably likely to be requested during discovery, and/or is
the subject of a pending discovery request." <u>Wm. T. Thompson Co. v. General
Nutrition Corp.</u>, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984) (citations omitted).
Goodrich has not only made no showing of spoliation but has made no showing of the
destruction of any relevant documents. Speculative allegations that spoliation
occurred are insufficient. <u>See</u>, e.g., <u>Sanofi-Aventis Deutschland GMBH v. Glenmark
Pharmaceuticals Inc., USA</u>, 2010 WL 2652412 *4 (D.N.J. 2010) (contention that
written material existed was too speculative to support spoliation); <u>Samson Tug and
Barge Co., Inc. v. United States</u>, 2008 WL 3285154 * 3 (D. Alaska 2008) (not
established that the records sought ever existed).

In <u>Goodman v. Praxair Services, Inc.</u>, 632 F. Supp. 2d 494, 522-23 (D. Md.
2009), for example, the court found spoliation where defendant's employee
selectively deleted relevant emails after receiving notice that litigation was likely.
Similarly, in <u>Major Tours, Inc. v. Colorel</u>, 2009 WL 2413631, the court found that
there had been a preliminary showing of spoliation where a key employee of the
defendant stated that his attorneys had "probably" told him to preserve information
but admitted that he did not save "anything." <u>Major Tours</u>, 2009 WL 2413631 *3.
Here, Goodrich's allegations are not only false (the sim files) but Goodrich has offered
no probative evidence that spoliation occurred. As discussed and established above,
Goodrich's allegations regarding the destruction of sim files is wholly wrong. No sim
files were created in 2006, and no such files were destroyed. Goodrich's fishing
expeditions during the depositions of Keith Takata and Kathleen Salyer similarly
failed to produce any probative evidence that spoliation occurred.

EPA's privilege log shows the dates of the litigation hold documents that are
being withheld for privilege or work product. When Goodrich filed a lawsuit against
EPA in 2007 challenging the constitutionality of Section 106 of CERCLA, an attorney
at EPA headquarters sent a litigation hold on October 25, 2007. A litigation hold for
this case was sent by the Regional Counsel for Region 9 on May 14, 2010. A

40

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE: GOODRICH
CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1 | litigation hold from EPA Headquarters was sent on November 22, 2010.  These and
2 | other documents relating to EPA litigation hold are on the United States' privilege log.
3 | The motion to compel, therefore, should be denied.

## IV.

## REQUESTS FOR RELIEF

### A.    GOODRICH'S REQUEST FOR RELIEF

In light of the foregoing, and, in particular, the alarming evidence that key EPA officials have destroyed documents relating to these Consolidated Actions, the Moving Parties move for an order compelling the United States to produce documents in response to Goodrich's Fifth Set of RFPs and to provide substantive responses to Goodrich's Second Set of Interrogatories no later than August 31, 2011.  The Moving Parties reserve the right to seek the appropriate relief, including sanctions, from the Special Master and the Court as the circumstances dictate.

Dated:  August 10, 2011

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: _____/s/ Jeffrey D. Dintzer_____
Jeffrey D. Dintzer
Attorneys for GOODRICH CORPORATION

Dated:  August 10, 2011

GIBSON, DUNN & CRUTCHER LLP

By: _____/s/ James R. MacAyeal_____
JAMES R. MacAYEAL, Trial Attorney
DAVID ROSSKAM, Senior Counsel
VALERIE K. MANN, Trial Attorney
DEBORAH A. GITIN, Trial Attorney
BONNIE A. COSGROVE, Trial Attorney
RICHARD M. GLADSTEIN, Senior Counsel
RACHEL A. KAMONS, Trial Attorney
Environmental Enforcement Section
United States Department of Justice

41

Gibson, Dunn & Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

P.O. Box 7611
Washington, D.C.  20044-7611
Telephone:  (202) 616-8777
Facsimile:   (202) 514-2583

OF COUNSEL:

MICHELE BENSON
THOMAS BUTLER
United States Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, CA  94105
E-mail: benson.michele@epa.gov

Attorneys for the United States

Gibson, Dunn &
Crutcher LLP

NOTICE OF MOTION AND JOINT STIPULATION OF POINTS AND AUTHORITIES RE:  GOODRICH
CORPORATION'S MOTION TO COMPEL DISCOVERY RESPONSES RELATING TO LITIGATION HOLDS