1   JAMES R. MacAYEAL (D.C. Bar # 474664)
    jamie.macayeal@usdoj.gov
2   LARRY M. CORCORAN (D.C. Bar # 924266)
    larry.corcoran@usdoj.gov
3   Environmental Enforcement Section
    Environment and Natural Resources Division
4   United States Department of Justice
    P.O. Box 7611
5   Washington, D.C. 20044-7611
    Telephone: 202-305-0370
6   Fax:         202-514-2583

7   Attorneys for the United States

8

9               UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  CITY OF COLTON,                    CASE NO. ED CV 09-01864 PSG (SSx)

13           Plaintiff,

14      v.                             **NOTICE OF UNITED STATES'
                                       OBJECTIONS TO AND MOTION
15  AMERICAN PROMOTIONAL               FOR REVIEW *DE NOVO* Of
    EVENTS, INC.; et al.,              SPECIAL MASTER'S REPORT AND
16                                     ORDER TO COMPEL**

           Defendants.
17

18                                     Date:        September 20, 2011

19                                     Time:        10:00 a.m.

20                                     Location:    312 N. Spring St.,
    AND RELATED CONSOLIDATED                        Courtroom 23,
21  ACTIONS
                                                    Los Angeles, CA 90012
22

23

24                                     Discovery Cut-Off:    February 29, 2012

25                                     Trial Date:           March 25, 2013

26

27

28

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, the United States, pursuant to Federal Rule of Civil Procedure 53(f), and the March 5, 2010 Order re Re-designation of the Honorable Venetta S. Tassopulos, United States Magistrate Judge (Ret.) As Special Master (Docket # 278), objects to and moves for *de novo* review of the August 1, 2011 Report of the Special Master: Order Granting in Part Goodrich Corporation's Motion to Compel Production of Documents In Accordance with the Federal Rules of Civil Procedure (Docket # 877), which was filed and served on August 3, 2011, on the following grounds:

(1)   The Report and Order misinterpreted and improperly modified this Court's February 15, 2011 Case Management Order No. 1 (Docket # 601), which memorializes the long-standing agreement of the parties to use Encore Legal Solutions as a common document repository;

(2)   The Report and Order misinterpreted Fed. R. C. P. 34(b)(2)(E) and improperly applied subsection (i) of the Rule to the production of electronically stored information;

(3)   The Report and Order misinterpreted and improperly modified this Court's February 15, 2011 Case Management Order No. 1 and Fed. R. C. P. 34(b)(2)(E) to require production of EPA records in "native" format with metadata or, alternatively to require each produced record to be labeled with the category of the requests to which it is responsive; and

(4)   The Report and Order, without any supporting evidence, erroneously concluded that production of electronically stored information in TIFF format with load files and optical character recognition text was not a reasonably usable form of production.

**2**

**United States' Objections to and Motion for *de Novo* Review of Special Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

In support of its objections and its motion for *de novo* review of the Special Master's Report and Order, the United States respectfully submits the accompanying Memorandum of Points and Authorities, supporting papers, and a Proposed Order. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 11, 2011, and a subsequent conference on August 16, 2011.

WHEREFORE, the United States respectfully requests that this court, Honorable Suzanne H. Segal, review the Report and Order *de novo*, sustain the objections, and vacate the Report and Order of the Special Master.

**3**

1

**TABLE OF CONTENTS**

2   I.       INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3   II.      ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4   III.     BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5            A.     Prior Related Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6            B.     Case Management Order No. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7            C.     Requests for Production and Responses . . . . . . . . . . . . . . . . . . . . . . . 3

8            D.     United States' Objections to Goodrich Motion . . . . . . . . . . . . . . . . . . 4

9            E.     Hearing and Order By Special Master . . . . . . . . . . . . . . . . . . . . . . . . . 5

10  IV.      STANDARD OF REVIEW IS *DE NOVO* . . . . . . . . . . . . . . . . . . . . . . . . . 7

11  V.       ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12           A.     Special Master's Interpretation of the CMO Imposes Additional

13                  Burdens Contrary to the Intent of This Court and of the Parties . . . . . 8

14                  1.     CMO Memorializes the Parties' Agreement for the Exclusive

15                         Manner and Form For Production . . . . . . . . . . . . . . . . . . . . . . . 8

16                  2.     The Special Master's Ruling Contravenes the Express Agreement

17                         of the Parties, Improperly Modified the CMO and Rule 34, And

18                         Imposes Unnecessary Burdens . . . . . . . . . . . . . . . . . . . . . . . . . 10

19           B.     SPECIAL MASTER MISINTERPRETED THE DISTINCTLY

20                  DIFFERENT RULE 34 REQUIREMENTS FOR PRODUCTION OF

21                  EIS AND FOR PRODUCTION OF DOCUMENTS . . . . . . . . . . . . . 12

22                  1.     2006 Amendment to Rule 34(b)(2)(E) Created Category of ESI

23                         Distinct from Category of Documents . . . . . . . . . . . . . . . . . . 12

24                  2.     Case Analyses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

25           C.     RULE 34 DOES NOT REQUIRE METADATA PRODUCTION . . 16

26

27

**i**

28

**United States' Objections to and Motion for *de novo* Review of Special Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

1      D.    EPA PRODUCED ESI IN A READILY USABLE FORM AND THE

2            SPECIAL MASTER HAD NO EVIDENCE FROM WHICH TO

3            CONCLUDE OTHERWISE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

4      E.    LABELING OF FUTURE PRODUCTION IS A BURDENSOME

5            SOLUTION TO A PROBLEM NOT EVEN ALLEGED  . . . . . . . . . 19

6  VI.   SUMMARY AND CONCLUSIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                    ii

28
     **United States' Objections to and Motion for *de Novo* Review of Special
     Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

1

# TABLE OF AUTHORITIES

2 CASES

3 *Aguilar v. Immigration and Customs Enforcement*,

4      255 F.R.D. 350 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

5 *D'Onofrio v. SFX Sports Group, Inc.*, 247 F.R.D. 43 (D.D.C. 2008) . . . . . . . . . . . 16

6 *Goodrich Corp. v. Emhart Industries, Inc.*, No. 04-0759,

7      2005 WL 6440828 (C.D. Cal., June 10, 2005) . . . . . . . . . . . . . . . . . . . . . 5, 20

8  *Quality Inv. Properties Santa Clara, LLC v. Serrano Electric, Inc.*,

9      No. C 09-5376 LHK (PSG), 2011 U.S. Dist. Lexis 41006

10      (N.D.Cal., Apr. 11, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

11 *United States v. O'Keefe*, 537 F.Supp.2d 14 (D.D.C. 2008) . . . . . . . . . . . . . . 15, 16

12 RULES

13 Fed. R. Civ. P. 26(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

14 Fed. R. Civ. P. 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

15 Fed. R. Civ. P. 45(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

16 Fed. R. Civ. P. 53(f)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17 ADDITIONAL AUTHORITY

18 Report of the Judicial Conference Committee on Rules of Practice and

19      Procedure, September 2005 [Exhibit 20 to this Motion] . . . . . . . . . . . . . . 12

20 Report of the Civil Rules Advisory Committee, May 27, 2005

21      (Revised July 25, 2005) [Exhibit 21 to this Motion] . . . . . . . . . 11, 12, 13, 17

22

23

24

25

26

27                                    **iii**

28

**United States' Objections to and Motion for *de Novo* Review of Special
Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

1

**EXHIBITS**

2    Exhibits 1 through 13 listed below were submitted with the June 28, 2011 Joint

3    Stipulation through the supporting June 24, 2011 declaration of Larry Corcoran,

4    Doc. # 804-2 & 804-3.

| | |
|---|---|
| 5   Exhibit 1 | June 10, 2011 email from Corcoran to Dintzer forwarding letter and |
| 6 | custodians list. |
| 7   Exhibit 2 | June 13, 2011 email from Corcoran to Burnside. |
| 8   Exhibit 3 | June 21, 2011 email from Burnside to Corcoran. |
| 9   Exhibit 4 | June 24, 2011 Declaration of Danny Hambrick. |
| 10   Exhibit 5 | June 22, 2011 Declaration of Tim Mallon. |
| 11   Exhibit 6 | June 23, 2011 Declaration of Elaine Chan. |
| 12   Exhibit 7 | January 20, 2010 Consolidation Order entered in this action, document |
| 13 | no. 201. |
| 14   Exhibit 8 | June 10, 2005 Memorandum Decision and Order in *Goodrich Corp. v.* |
| 15 | *Emhart Indus.*, Case No. EDCV 04-00759-VAP(SSx). |
| 16   Exhibit 9 | October 31, 2005 Memorandum Decision and Order in *Goodrich Corp.* |
| 17 | *v. Emhart Indus.*, Case No. EDCV 04-00759-VAP(SSx) (Doc. # 162). |
| 18   Exhibit 10 | October 31, 2005 Memorandum Decision and Order in *Goodrich Corp.* |
| 19 | *v. Emhart Indus.*, Case No. EDCV 04-00759-VAP(SSx) (Doc. # 161). |
| 20   Exhibit 11 | April 14, 2010 PSI and Goodrich Corp.'s Requests for Production of |
| 21 | Documents to United States of America, Set One. |
| 22   Exhibit 12 | May 14, 2010 United States' Response to PSI and Goodrich's Request |
| 23 | for Production of Documents, Set One. |
| 24   Exhibit 13 | May 4, 2011 Goodrich Corp.'s Request for Production of Documents to |
| 25 | the United States, Set Seven. |

26

27

**iv**

28

1   The Exhibits beginning with Exhibit 14, listed below, are submitted with these

2   Objections and Motion for *de Novo* Review and are supported by the August 18,

3   2011 Declaration of Larry Corcoran, listed below.

4   Exhibit 14     August 18, 2011 Declaration of Larry Corcoran.

5   Exhibit 15     Transcript of July 14, 2011 Hearing, part 2.

6   Exhibit 16     September 29, 2004 Stipulation and CMO No. 3 in *City of Rialto v.*

7                  *United States Department of Defense*, Case No. EDCV 04-00079 VAP

8                  (SSx).

9   Exhibit 17     November 22, 2004 Email from  A. Saunders to B. Broyles . . . J.

10                 Dintzer, *et al.*

11  Exhibit 18     City of Rialto Document Repository Guidelines.

12  Exhibit 19     November 18, 2004 Letter, Syverson to All.

13  Exhibit 20     September 2005 Report of the Judicial Conference Committee on Rules

14                 of Practice and Procedure (excerpts).

15  Exhibit 21     May 27, 2005 (Revised July 25, 2005) Report of the Civil Rules

16                 Advisory Committee, submitted to the Committee on Rules of Practice

17                 and Procedure of the Judicial Conference of the United States

18                 (excerpts).

19  Exhibit 22     July 26, 2011 Letter from Dintzer to Corcoran.

20  Exhibit 23     May 18, 2011 Goodrich Corp.'s Responses to United States' Request

21                 for Production of Documents Set One [posted to Lexis/Nexis on May

22                 19, 2011].

23  Exhibit 24     July 25, 2011 Goodrich Corp.'s Responses to United States' Second Set

24                 of Requests for Production.

25  Exhibit 25     June 28, 2011 PSI's Responses to United States' Request for

26

27                                           v

28

**United States' Objections to and Motion for *de Novo* Review of Special
Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

1    Production of Documents Set One.

2    Exhibit 26   October 14, 2005 PSI's Responses to City of Colton's Requests for

3    Production of Documents, Set One, in *City of Colton v. American*

4    *Promotional Events, Inc. - West*, Case No.  CV 05-1479 JFW (Ex).

5    Exhibit 27   November 15, 2004 PSI's Responses to City of Rialto's First Demand

6    for Production of Documents in *City of Rialto v. United States*

7    *Department of Defense*, Case No. ED-CV04-00079 VAP (SSx).

8    Exhibit 28   March 10, 2006 PSI's Responses to City of Rialto's Request for

9    Production of Documents Set Two in *City of Rialto v. United States*

10   *Department of Defense*, Case No. ED-CV04-00079 VAP (SSx).

11   Exhibit 29   March 7, 2008 PSI's Responses to City of Rialto's Third Set of Request

12   for Production of Documents in *City of Rialto v. United States*

13   *Department of Defense*, Case No. ED-CV04-00079 VAP (SSx).

14   Exhibit 30   October 29, 2004 Goodrich Corp.'s First Demand for Production of

15   Documents to Emhart Indus., in *Goodrich Corp. v. Emhart Indus.*, Case

16   No. EDCV 04-759 VAP (SGLx).

17

18

19

20

21

22

23

24

25

26

27                                        vi

28

**United States' Objections to and Motion for *de Novo* Review of Special
Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

1       **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.**    **INTRODUCTION**

3       The United States, on behalf of the Environmental Protection Agency

4 ("EPA") appeals from Special Master Tassopulos' Report and Order, Doc. #877

5 ("Report" and "Order"), granting a motion by the Goodrich Corporation

6 ("Goodrich")[1]/ to compel EPA to label each record[2]/ it produced (60,000 through

7 May 27, 2011) with each of up to 311 document requests to which each record may

8 be responsive.[3]/ The subject of the motion and of the Report and Order were

9 electronic records,[4]/ *i.e.*, electronically stored information ("ESI").

10       For over seven years, the parties to this action, including Goodrich, have been

11 producing records through Encore Legal Solutions ("Encore") in text searchable

12 TIFF format, but without native file metadata, pursuant to an agreement now

13 memorialized in paragraph 5.a of this Court's February 15, 2011 Case Management

14 Order No. 1, Doc. 601 ("CMO"). Over one year ago, EPA stated its intention to

15 produce its records pursuant to the CMO, and did so for over one year without

16 objection by Goodrich.

17

18 _____

19 [1]/    The Special Master erroneously stated that Pyro Spectaculars, Inc. ("PSI") also

20 brought the motion. *See* Report at 2:10-11. Goodrich alone filed it.

21 [2]/    This memorandum generally uses the term "record" to refer to both hard-copy

22 documents and "electronically stored information."

23 [3]/    Goodrich also moved for attorney fees which the Special Master properly

24 denied. *See* Report at 13:3.

25 [4]/    EPA also produced hard-copy documents, and the Department of Defense has

26 produced both hard-copy documents and ESI, none of which were subjects of the
motion.

27            **1**

28     **United States' Objections to and Motion for *de Novo* Review of Special
Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

## II.      ISSUES PRESENTED

Issues presented in this appeal include the following.

1.      Whether the agreement among the parties, now memorialized in paragraph 5 of CMO No. 1, governs production of documents and ESI to the exclusion of the requirements of Rule 34(b)(2)(E)(i) and (ii) of the Federal Rules of Civil Procedure.  The United States submits it does.

2.      Whether Rule 34(b)(2)(E)(i) applies to the production of ESI, in addition to Rule 34(b)(2)(E)(ii).  The United States submits it does not.

3.      Whether Rule 34 requires the production of native file metadata for ESI if not explicitly requested.  The United States submits it does not.

4.      Whether production of ESI in TIFF format with load files and optical character recognition[5] text was a reasonably usable form as required by Rule 34(b)(2)(E)(ii).  The United States submits that it was.

5.      Whether the Special Master's conclusion that production of ESI must be organized and labeled according to the categories in the request, or in native format for some,[6] was an improper modification of the CMO No. 1 and of Rule 34. The United States submits that it was.

_____

[5]      Optical character recognition, or "OCR," is the process of extracting text from a file so the text is searchable.

[6]      For records EPA already produced through Encore in TIFF format, the Order allows the alternative of reproducing in native form.  "Native" file or format generally refers to the electronic file as created by the software creating the record.  Native file formats can be converted to other, non-native file formats.  Conversions of the electronic copies of a Word document (.doc), a WordPerfect document (.wpd), or an Excel spreadsheet (.xls) to portable document format (.pdf) are examples of conversions from a native file format.

**2**

**United States' Objections to and Motion for *de Novo* Review of Special
Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

## III.   BACKGROUND

### A.   Prior Related Cases

Prior to the present action, many of the parties were involved in a number of cases involving the B.F. Goodrich Superfund Site ("Site").  When those actions were dismissed in 2008, the records in the Encore repository remained available, and the parties agreed to preserve the evidence and, if the actions were reinstated, to cooperate in reinstating procedural orders.  The actions were reinstated.

### B.   Case Management Order No. 1

The parties' implemented their prior agreement to cooperate with this Court's Order of January 20, 2010, which consolidated a number of recent cases and ordered that discovery from four of the older cases be deemed taken and usable in this consolidated case.  *See* January 20, 2010 Order in CV 09-01864 PSG (SSx) (Doc. 201, *e.g.*, ¶ 14.  In addition, in paragraph 5.a of this Court's CMO No. 1, the parties renewed their agreement from 2004 to produce records through Encore.  Encore only stores documents in TIFF format.  *See* Report at 2:27.  Furthermore, Encore only accepts and uses a few metadata fields with each electronic file, none of which are from the native file.  *See* Exhibit 4 (June 24, 2011 Declaration of Danny Hambrick ("Hambrick")), ¶ ¶ 10 & 18.[7]/  *See also* Section V.A.1, *infra* (describing parties' agreement).

### C.   Requests for Production and Responses

Goodrich and PSI served the United States with 311 individual requests in their Requests for Production ("RFP"), Set One on April 14, 2010.  *See* Exhibit 11.  The Requests did not specify any manner or form for production.  *See id.*  The

---

[7]/      The United States submitted Exhibits 1 through 13 with the Joint Stipulation (Doc. #804).  It submits exhibits beginning with number 14 with this Motion.

**3**

**United States' Objections to and Motion for *de Novo* Review of Special Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

United States responded that it would produce records through Encore as required by the CMO.  *See* Exhibit 12.[8]/  Neither Goodrich nor PSI made any objection until over a year after production began.  Through May 27, 2011, EPA produced nearly 72,000 records in TIFF format through Encore (over 60,000 responding to Goodrich and PSI RFP Set One alone), and over ninety-five percent were from ESI.

The United States maintained the order of EPA's records during collection and production.  *See* Exhibit 4 (Hambrick) at ¶ 18; Exhibit 5 (June 22, 2011 Declaration of Tim Mallon) at ¶¶ 11-13; and Exhibit 6 (June 23, 2011 Declaration of Elaine Chan) at ¶ 19.  In addition, at the request of Goodrich, the United States supplemented its production with a list of the custodian of each record produced. *See* Exhibit 1 (June 10, 2011 Letter, Corcoran to Dintzer).

When Goodrich produced records to the United States, it produced them in TIFF format through Encore and without native file metadata, as EPA had produced its records.  *See, e.g.*, Exhibit 4 (Hambrick) at ¶ 20; Exhibit 22, (July 26, 2006 Letter, Dintzer to Corcoran).  Goodrich did not label any of its files.  *See* p. 18, n. 21, *infra*. Unlike EPA, Goodrich provided no custodian or other source information for records it produced, nor any information on their original order.

### D.   United States' Objections to Goodrich Motion

Over a year after EPA began producing records, Goodrich first demanded labeling of the records in accordance with Fed. R. Civ. P. 34(b)(2)(E)(i).  The United States made seven points in opposition: (1) Goodrich having failed to specify a form for production, EPA specified production through Encore pursuant to the CMO, and produced for over a year without objection by Goodrich (Jnt. Stip. 20-22); (2) Rule

---

[8]/     When the United States first responded to Goodrich's Request for Production of Documents, the *proposed* CMO provided for use of Encore.

**4**

**United States' Objections to and Motion for *de Novo* Review of Special Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

34(b)(2)(E), subsection (ii), and not subsection (i), governs production of ESI, and it does not require labeling of ESI in any circumstances, nor production of metadata if not explicitly requested (Jnt. Stip. 22-23, and n.21); (3) having produced ESI in the form specified, without objection, Rule 34(b)(2)(E)(iii) provides that EPA need not produce in another form (Jnt. Stip. 23-24); (4) to the extent that production through Encore (in TIFF format with OCR and no native metadata) differed from the requirements of Rule 34, the CMO properly modified those requirements pursuant to Rule 34(b)(2)(E) (Jnt. Stip. 24-25); (5) Goodrich produced its own ESI through Encore but without any source information such as EPA provided (Jnt. Stip. 26);[9]/ (6) Goodrich's problems in sorting through the large EPA production are a direct result of its overly broad requests, which Goodrich promulgated contrary to this Court's past admonitions, in 2005, in the related case of *Goodrich v. Emhard Industries, Inc.*, No. 04-0759 (Jnt. Stip. 26-28);[10]/ and (7) none of the judicial decisions relied upon by Goodrich addressed the present Rule 34(b)(2)(E) and the distinction between subsections (i) and (ii) (Jnt. Stip. 28-31).

**E.     Hearing and Order By Special Master**

On July 14, 2011, the Special Master heard Goodrich's motion demanding that EPA label each document with the request to which it was responsive.  The Special Master issued her Report and Order on August 1, 2011, and filed it with this Court on August 3.  Doc. #877.

---

[9]/     Information developed after filing of the Joint Stipulation is relevant to the misleading assertions made by Goodrich and PSI at the Hearing and relied upon the by the Special Master.  *Compare* Report at 5:20-21 (asserted labeling of product by Goodrich and PSI) *with* p. 18-19, n. 21, *infra* (citing examples of no identification of responsive documents by Goodrich and PSI, much less labeling).

[10]/     *See also* p. 20, n. 24, *infra* (problems of Goodrich's own making).

**5**

**United States' Objections to and Motion for *de Novo* Review of Special Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

1    The Special Master concluded that the requirement to convert records from
2    native format to TIFF files stripped them of potentially significant information
3    (metadata) and made it impossible for the documents to be produced as kept in the
4    usual course of business.  *See* Report at 3:6-10.  She further concluded that:

5
6    [I]t is unlikely that the parties could have intended to stipulate that none
     of the requirements of Rule 34 apply to the production of documents in
7    this case.  Specifically, it is unlikely that when the parties agreed to
     produce documents through Encore, they were explicitly giving up their
8    rights to productions that would be organized in a satisfactory way or
     produced in a usable form.

9    Report at 5:8-13.  Building on those conclusions, the Special Master reached the
10   legal conclusion "that CMO No. 1 did not eliminate the parties' responsibilities to
11   conform their document productions to the requirements of Rule 34."  Report at 6:1-
12   3.  The Special Master's Report did not address the government's objection that,
13   under Fed. R. Civ. P. 34(b)(2)(E)(iii), EPA was not required to produce records
14   again in another form.

15   The Special Master ordered the United States to reproduce EPA records
16   already produced in TIFF format "in their native form with all necessary metadata by
17   August 12, 2011 or in the alternative identity [sic] by Bates number which
18   documents already produced in TIFF and JPEG format are responsive to each
19   category in the First Request for Production of Documents by August 30."  *See*
20   Report at 12:23-13:2.  The Order did not specify what metadata is "necessary," nor
21   did it specify how to organize the 311 individual Goodrich document requests into
22   categories.[11]/  In addition, the Report stated that "the Special Master concludes that

23   _____

24   [11]/    At some points, Goodrich and the Special Master seemed to be demanding each
25   record be labeled with each of the 311 individual requests for production to which the
     record was responsive.  *See, e.g.,* Hearing at 75:22-24 (Goodrich); 82:13-16
26   (Goodrich); 103:11-16 (S. Master); 107:14-17 (Goodrich quoting *Johnson v. Kraft*

27                                                **6**

28   **United States' Objections to and Motion for *de Novo* Review of Special
     Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

1  all production of ESI in the future must be organized and labeled according to the

2  categories in the request." *See* Report at 12:8-10.

## IV.   STANDARD OF REVIEW IS *DE NOVO*

4          Both the Federal Rules of Civil Procedure and this Court's Order appointing

5  the Special Master, specify that both the legal conclusions and the findings of fact

6  made by the Special Master shall be reviewed *de novo*. *See* Fed. R. Civ. P. 53(f)(3)

7  and (4); March 5, 2010 Order re Re-designation of the Honorable Venetta S.

8  Tassopulos, Doc. 278, at 4 ("All rulings by the Special Master (whether findings of

9  fact or legal conclusions) shall be reviewed *de novo* by the Magistrate Judge.").

## V.   ARGUMENT

11         The Special Master's ruling is contrary to the plain language of the CMO No.

12  1, misinterprets Rule 34, imposes on the parties the unnecessary burden of duplicate

13  production requirements contrary to the requirements of Rule 34, and is based on

14  erroneous factual suppositions.  The Special Master rejected the need for Goodrich

15  to support its demands with factual evidence and, consequently, made a number of

16  erroneous factual assumptions, which contributed to her legal errors.

17

18  _____

19  *Foods*); 117:3-8 (S. Master citing *Johnson v. Kraft Foods*).  At other points, Goodrich
    and the Special Master seemed to be suggesting that related individual requests could
20  be combined into categories and that EPA need label records only to a category of
    requests.  *See, e.g.,* Hearing at 49:1-2 (Goodrich); 71:16-20 (S. Master suggesting
21  Goodrich come up with categories); 75:20-21 (Goodrich); 83:17-21 (Goodrich);
    105:6-9 (Goodrich).  The United States expressed confusion over the ambiguity and
22  over how one would categorize if categorization were permitted or required.  *See, e.g.,*
23  Hearing at 70:18-72:2. Although the Special Master's Report and Order generally
    speaks of labeling each record to each category in the Goodrich RFP, the Report and
24  Order give no clues as to how to create categories to the satisfaction of Goodrich and
25  the Special Master.  *See, e.g.,* Report at 12:24-13:2.
26

27                                              **7**

28  **United States' Objections to and Motion for *de novo* Review of Special
    Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

**A.    Special Master's Interpretation of the CMO Imposes Additional Burdens Contrary to the Intent of This Court and of the Parties**

      **1.    CMO Memorializes the Parties' Agreement for the Exclusive Manner and Form For Production**

This is a complex, multi-party litigation, in which production of documents can be quite burdensome.  Encore standardizes the process.  All parties benefitted from that standardization and simplicity - therefore, all parties are potentially harmed by the interpretation adopted by the Special Master, not just EPA.

The current CMO No. 1 had its origins in this Court's CMO No. 3 issued in the *City of Rialto* case.  That Order required all documents to be produced "in a mutually agreed to electronic manner . . . to a common document repository maintained by a third party vendor" to be selected.  *See City of Rialto, et al., v. United States Department of Defense, et al.*, EDCV 04-00079 VAP (SSx), Doc. 218 (September 29, 2004, Stipulation and Case Management Order No. 3 re Electronic Document Production), at 2:10-16 (¶¶ 1 and 2).  Paragraphs 5 and 6 of that Order made clear that no matter how documents were submitted to the repository, even electronic documents, that the documents were to be converted to "an agreed-upon electronic format" with OCR.  Those paragraphs provided:

> 5.    That all documents (except as otherwise specifically agreed to by the Parties) produced to the electronic document repository will be enhanced (to the extent possible based on the age and condition of the source document) with Optical Character Recognition ("OCR") technology at the producing Party's expense,
> 6.    That the vendor selected by the parties shall have the capability to accept documents in paper form and scan them into an agreed-upon electronic format, to convert documents scanned in other formats to the agreed-upon electronic format, to accept electronically formatted documents and process them through OCR, to accept electronically formatted documents already processed for OCR, and/or prefix and number the documents each Party serves so that the documents shall comply with the requirements of this Order and any subsequent Order or agreement of the Parties[.]"

*Id.* at 2:24-3:8.

**8**

**United States' Objections to and Motion for *de Novo* Review of Special Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

1    Shortly after, in late 2004, the parties selected the metadata to be included

2 with the documents in the repository, none of which metadata was from native files,

3 and had the option to specify inclusion of additional data, at a cost.  The parties'

4 communications demonstrated this:

5    Additionally, Mr. Syverson's letter references, in paragraph 4, that Lex
     Solutio will [be] coding all documents with the fields in the City of
6    Rialto Document Repository Guidelines.  These fields include:
     beginning bates no., ending bates no., page count, CD volume name,
7    produced by, and produced date.  As a group, we need to decide if these
     fields fit our basic coding needs.  If there are any other fields we would
8    collectively desire, then we need to get back to Lex Solutio with that
     information.  Please note that Lex Solutio can also create custom fields
9    as described in the November 18 Letter from Mr. Syverson.  Therefore,
     if certain parties or groups of parties would like documents coded with
10   additional information, this can be arranged with Lex Solutio and those
     parties will be billed accordingly.  Please contact Mr. Syverson if you
11   would like to arrange other database fields.

12 Exhibit 17 (Nov. 22, 2004 Email, A. Sanders to B. Broyles, . . . J. Dintzer, *et al.*)

13 The parties did not accept Lex Solutio's "Additional Coding Suggestions," which

14 were contained in the Guidelines attached to the quoted email, and which

15 recommended inclusion of coding for attachment range, document date, author,

16 recipient, title, cc, type, folder ranges and folder titles.  *See* Exhibit 18 (City of Rialto

17 Document Repository Guidelines), at 2-3 (section I.D "Coding/Indexing").  *See also*

18 Exhibit 14 (August 18, 2011 Declaration of Larry Corcoran) at ¶ 15.f.

19    The parties, including Goodrich, have been using Encore (and its predecessor

20 Lex Solutio) since their agreement in 2004.  With all that experience using Encore,

21 Goodrich and the other parties agreed, in the latest CMO No. 1, to continued use of

22 Encore without changes, and for over a year Goodrich accepted EPA's production of

23 records through Encore without objection.  Paragraph 5.a of the current CMO No. 1

24 memorializing the parties' agreement specifying the manner and form for production

25 reads (with emphasis added):

26

27                                    **9**

28

**United States' Objections to and Motion for *de Novo* Review of Special
Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

1    　　　All documents produced in response to discovery requests shall
2    be posted by the producing party to the common document repository
     maintained by Encore Legal Solutions, **except as otherwise agreed by**
3    **all parties or as ordered by the Court**. However, in the case of
     voluminous documents that do not already exist in electronic form, a
4    producing party may produce such voluminous paper documents
     pursuant to the Federal Rules of Civil Procedure.

5    　　　　**2.**　　　**The Special Master's Ruling Contravenes the Express**
                 **Agreement of the Parties, Improperly Modified the CMO and**
6                **Rule 34, And Imposes Unnecessary Burdens**

7    　　　The Special Master acknowledged that the CMO No. 1 distinguished

8    production of ESI through Encore and production of some (voluminous) paper

9    documents pursuant to the Federal Rules. *See* Report at 4:22-25. Consequently, she

10   agreed that one could interpret paragraph 5.a of the CMO, rather than Rule 34, to

11   "determine the requirements for production of electronic data." Report at 4:25-5:1.

12   Nevertheless, she concluded it was "unlikely" that, when agreeing to Encore, the

13   parties were giving up their rights to production under Rule 34, and that it was "more

14   likely" that the parties intended that Rule 34 continue to govern productions in this

15   case. *See* Report at 5:11-19; 6:1-3. The Special Master wrongly substituted her own

16   unsupported suppositions for the facts.

17   　　　Even if the Special Master correctly concluded that Rule 34 governed

18   production of documents and ESI in addition to the CMO No. 1, she improperly

19   failed to give effect to Rule 34(b)(2)(E)(iii) which provides that: "A party need not

20   produce the same electronically stored information in more than one form." The

21   Order imposes on the parties a duplication of obligations under Rule 34 (native file

22   production or labeling) and under the CMO (production as TIFF images with OCR

23   through Encore). The United States submits that the Special Master's order for

24   reproduction in a native format is an improper denial of EPA's right to choose

25   among alternative means of compliance, as permitted by both subsection (i) and (ii)

26

27   **10**

28

**United States' Objections to and Motion for *de Novo* Review of Special**
**Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

1   of Rule 34(b)(2)(E).[12]/  Having been made without any factual showing of need by

2   Goodrich, the Special Master's Order is also inconsistent with the Court's obligation

3   to balance the benefits and burdens of discovery.[13]/

4

5

6

7

_____

8   [12]/    The Special Master's apparent presumption that native file format is a superior

9   or required form of production is without support.  Because many native files have no

10  inherent and immutable pagination, production in native format prevents Bates

    numbering of individual pages of records.  Not all parties have proprietary software

11  necessary to view all native files.  The judges' committee that proposed revision of

12  Rule 34 identified substantial problems with native format:

13          A number of commentators expressed concern that "a form ordinarily

14          maintained" required "native format" production, which can

            have disadvantages ranging from an inability to redact, leading to privilege

15          problems; an inability to bates-stamp the "document" for purposes of

16          litigation management and control, which is not an insignificant

            consideration, particularly in complex multi-party cases; and the

17          receiving party's ability to create "documents" from the produced native

18          format data and present them back to the producing party as deposition

19          or proposed trial exhibits that, while based on the native format data

            produced, are totally unfamiliar to the producing party.

20

21  Exhibit 21 (May 27, 2005 (Revised July 25, 2005) Report of the Civil Rules Advisory

    Committee), at 64.  In response to commentators' concerns about the problems with

22  native format, the original proposed Rule was changed to require production in a

23  "reasonably usable form" – by a change in form if necessary – in order that litigants

    *not* be required to produce in native format.  *See id.* at 65.

24

    [13]/          Encore does not store native files.  Producing in native format to all

25  parties will require each party to repeat each production for each other party, *i.e.*, 30

26  times or more.

27                                          **11**

28
    **United States' Objections to and Motion for *de Novo* Review of Special
    Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

**B.   SPECIAL MASTER MISINTERPRETED THE DISTINCTLY DIFFERENT RULE 34 REQUIREMENTS FOR PRODUCTION OF EIS AND FOR PRODUCTION OF DOCUMENTS**

**1.   2006 Amendment to Rule 34(b)(2)(E) Created Category of ESI Distinct from Category of Documents**

In its very title, Rule 34(b)(2)(E) distinguishes between documents and ESI by referring to them in the disjunctive: "Producing the Documents or Electronically Stored Information." The Rule carries that clear distinction into its requirements, which in subsection (i) specifies the requirements for production of documents and in subsection (ii) specifies the requirements for production of ESI.[14]/ This clear distinction arose with the 2006 Amendment to Rule 34.

The Committee on Rules of Practice and Procedure explicitly stated its intent to create ESI as a category distinct from "documents" in the 2006 Amendment.

> Under the proposed amendment to Rule 34, electronically stored information is explicitly recognized as a category subject to discovery that is distinct from "documents" and "things." The term "documents" should not continue to be stretched to accommodate all the differences between paper and electronically stored information. Distinguishing in the rules between documents and electronically stored information makes it clear that there are differences between them important to managing discovery.

Exhibit 20 (September 2005 Summary of the Report of the Judicial Conference Committee on Rules of Practice and Procedure), at 28. The accompanying Report of the Civil Rules Advisory Committee further evidenced the intention to create a third category, in addition to documents and things.

> The public comments focused on whether "electronically stored information" should be included within the term "documents," or whether it should be a third category with "documents" and "things." . . . The Committee decided to recommend making "electronically stored information" separate from "documents." Although courts and litigants have included such information in the word "documents" to make it

---

[14]/   *See also* Fed. R. Civ. P. 45(d)(1) and Advisory Note to 2006 Amendment.

**12**

**United States' Objections to and Motion for *de Novo* Review of Special Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

> discoverable under the present rule language, there are significant and growing differences that the distinction acknowledges. . . . Rather than continue to try to stretch the word "document" to make it fit this new category of stored information, the published proposed amendment to Rule 34 explicitly recognized electronically stored information as a separate category.

Exhibit 21 (May 27, 2005 (Revised July 25, 2005) Report of the Civil Rules Advisory Committee), at 63.

The Advisory Note to the 2006 amendments to Rule 34 further confirms the intent to treat ESI differently from "documents."  The Advisory Note observes that documents must be produced as they are kept in the usual course of business or must be organized and labeled to correspond to the categories in the document request.[15]/  *See* Rule 34, Advisory Note to 2006 Amendment, Subdivision (b) (first sentence).  The Advisory Note goes on at length to discuss the production of ESI.  Although Subdivision (b) to the Note began with a statement that **documents** must be produced as kept or labeled, nowhere in the lengthy discussion does it state or even suggest that **ESI** must ever be labeled.  *See id.*, Subdivision (b).

The Special Master gave no consideration to Subdivision (b) of the Advisory Note, the Subdivision that discusses production of ESI.  Instead, she quoted Subdivision (a) of the Advisory Note, which states that a request for "documents" should be understood to encompass ESI.[16]/  *See* Report at 8:15-20.  Subdivision (a)

---

[15]/    Rule 34(b)(2)(E)(i) was written to prevent the producing party from altering documents or their organization so as to make the requestor's task more difficult. *See, e.g.*, Rule 34, Advisory Note to 2006 Amendment, Subdivision (b); Exhibit 21 at 65. Rule 34(b)(2)(E)(ii) was written to provide "similar" protection for production of ESI, not "identical" or the "same" protection.  *See id.*

[16]/    The Special Master also examined the Advisory Notes to the 1970 amendments to Rule 34, and concluded that the term "document" included electronic data compilations.  *See* Report at 8:5-14.  At issue now is the meaning of Rule 34 today,

**13**

**United States' Objections to and Motion for *de Novo* Review of Special Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

1   addresses requests for documents, not **production**, which is the subject of

2   subdivision (b).  Many people still understand "documents" to be anything that can

3   be printed onto paper, regardless of its native format.  Consequently, it is reasonable

4   for the Advisory Note to make clear that semantic differences should not obscure the

5   intent of parties to seek what the Rule now distinguishes as ESI.  The fact remains

6   that Rule 34, and Rule 34(b) in particular, now distinguishes documents from ESI

7   because **production of ESI** presents significantly different issues from **production**

8   **of documents**.

9                **2.    Case Analyses**

10          Goodrich cited only four cases decided after the current Rule 34 went into

11   effect in December 2006.[17]/  Only one of those four cases even mentioned the

12   provisions of Rule 34(b)(2)(E)(ii) which govern production of ESI and which are at

13   issue here.  The Special Master relied upon that single case.  *See* Report at 9:8-21

14   (citing *Quality Inv. Properties Santa Clara, LLC v. Serrano Electric, Inc.*, No. C 09-

15   5376 LHK (PSG), 2011 U.S. Dist. Lexis 41006 (N.D.Cal., Apr. 11, 2011)).

16          *Quality Investment* appears to have dealt with original ESI.  *See id.* at *6-8.

17   However, both parties in *Quality Investment* directed the court's attention to the

18   'produced as kept in the usual course of business or organized and labeled'

19   requirement of Rule 34(b)(2)(E)(i) rather than to subsection (ii).  *See id.* at 8.

20

21   following the 2006 Amendment, not 41 years-ago.

22

23   [17]/     The cases Goodrich cited at the Hearing were all decided before the 2006
     amendment to Rule 34.  *See* Hearing at 74:22-25 (citing *Cardenas v. Dorel Juvenile*

24   *Group, Inc.*, 230 F.R.D. 611 (D. Kan. 2005); *Google, Inc. v. American Blind &*
     *Wallpaper Factory, Inc.*, No. 03-CV-5340, 2006 WL 5349265 (N.D. Cal. Feb. 8,

25   2006); 107:12-25 (citing *Johnson v Kraft Foods N. Am. Inc.*, 236 F.R.D. 535, 541

26   (D.Kan. 2006)).

27                      **14**

28

**United States' Objections to and Motion for *de Novo* Review of Special**
**Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

1   Therefore, the *Quality Investment* court did not address the issue in this case, which

2   falls squarely within Rule 34(b)(2)(E)(ii).[18]/  Equally important for this Court, the

3   *Quality Investment* court found fault with the processing of documents into TIFF and

4   load files for production and without metadata.  *See id.* at 8.  Notwithstanding the

5   *Quality Investment* court's comments about TIFF images, TIFF images are in fact a

6   reasonably usable form for ESI production in compliance with Rule 34(b)(2)(E)(ii)

7   and, whatever their limitations, under this Court's CMO No. 1, the United States

8   (and Goodrich) had no choice but to convert its records to TIFF.

9        More instructive than any case Goodrich cited is the discussion contained in

10   *United States v. O'Keefe*, 537 F.Supp.2d 14, 23 (D.D.C. 2008):

> Under Rule 34 of the Federal Rules of Civil Procedure, a distinction between documents and electronically stored information is made in terms of the form of production.  As established above, a party is obliged to either produce documents as they are kept in the usual course of business or it "must organize and label them to correspond to the categories in the request."  Fed. R. Civ. P. 34(b)(2)(E)(i).  But if, as occurred here, electronically-stored information is demanded but the request does not specify a form of production, the responding party must produce the electronically-stored information in the form in which it is ordinarily maintained or in a reasonably usable form or forms.  Fed. R. Civ. P. 34(b)(2)(E)(ii).  Additionally, a party "need not produce the same electronically stored information in more than one form."  Fed. R. Civ. P. 34(b)(2)(E)(iii).

18   The Special Master acknowledged that the *O'Keefe* opinion supports the

19   United States' interpretation of Rule 34(b)(2)(E), but she rejected its legal reasoning,

20   in part because it did not explicitly consider the Advisory Notes to Rule 34.  *See*

---

22   [18]/    The Special Master acknowledged that the court in *Quality Investment* did not

23   address the issue in this case, *i.e.*, the distinction between subsections (i) and (ii) of Rule 34(b)(2)(E).  *See* Report at 9:25 (note 1).  Nevertheless, the Special Master relied

24   upon *Quality Investment* alone for case authority that production of ESI must comply

25   with both subsections (i) and (ii) of Rule 34(b)(2)(E), and for the determination that production in TIFF format was not production as records were kept in the usual course

26   of business.  *See* Report at 9:9-21.

**15**

**United States' Objections to and Motion for *de Novo* Review of Special Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

1  Report at 9:22-10:22.  However, the Special Master accepted the *Quality Investment*

2  court's conclusions even though it did not consider the Advisory Note to Rule 34 at

3  all and, unlike the court in *O'Keefe*, it did not even address the distinction between

4  subsections (i) and (ii) of Rule 34(b)(2)(E).  As shown above, Subdivision (a) of the

5  Advisory Note to the 2006 Amendments to Rule 34, which the Special Master

6  faulted the *O'Keefe* court for not discussing, is not relevant to **production** of ESI, so

7  discussion was unnecessary.

8  ## C.    RULE 34 DOES NOT REQUIRE METADATA PRODUCTION

9        The Special Master's interpretation of Rule 34 is that metadata must be

10  included in ESI if records are to be produced as kept in the usual course of

11  business[19]/ and, therefore, that ESI processed into TIFF images by EPA was not

12  produced as kept in the ordinary course of business.  *See, e.g.,* Report at 11:5-11,

13  12:1-18.  However, the weight of judicial authority is that one must explicitly

14  request metadata in order to require its production, and Goodrich did not.

15

16        There is a clear pattern in the case law concerning motions to compel
       the production of metadata.  Courts generally have ordered the
       production of metadata when it is sought in the initial document request
17     and the producing party has not yet produced the documents in any
       form.  On the other hand, if metadata is not sought in the initial
18     document request, and particularly if the producing party already has
       produced the documents in another form, courts tend to deny later
19     requests, often concluding that the metadata is not relevant.

20  *Aguilar v. Immigration and Customs Enforcement*, 255 F.R.D. 350, 357 (S.D.N.Y.

21  2008) (citations omitted).  *See also D'Onofrio v. SFX Sports Group, Inc.*, 247 F.R.D.

22  43, 48 (D.D.C. 2008) ("in order to obtain metadata you may need, you should

23

24  ───────────────

25  [19]/    There is no discernible distinction between as "kept in the usual course of
   business" and as "ordinarily maintained" for ESI.  It is unclear whether the Special
26  Master distinguishes the terms.  *See* Hearing at 100:3-22.

27  **16**

28

specifically ask for it to begin with") (quoting Ralph C. Losey, E-Discovery Current

Trends and Cases 158-59 (2007)).  This requirement is implicit in the Rule 34

requirement that the requestor must specify the form of ESI production or, absent

objection, a requesting party must accept the responder's specification of a form of

production for ESI.[20]/

Goodrich did not request metadata in any of its first six requests for

production.  Even if it had made a timely request, Goodrich has made no showing of

relevance and benefit as required for discovery.  *See* Fed. R. Civ. P. Rule 26(b)(1)

and (2)(C); *Aguilar v. ICE*, 255 F.R.D. at 355 ("The discovery of metadata is also

subject to the balancing test of Rule 26(b)(2)(C) which requires a court to weigh the

probative value of proposed discovery against its potential burden.").

### D.   EPA PRODUCED ESI IN A READILY USABLE FORM, AND THE SPECIAL MASTER HAD NO EVIDENCE FROM WHICH TO CONCLUDE OTHERWISE

The United States objected to the absence of any facts supporting Goodrich's

demands.  *See* Hearing at 56:23-57:3; 73:18-21; 123:19-20.  The Special Master

rejected the United States' objections.

> I guess [Mr. Corcoran] would say in his appeal, that Mr. Dintzer hasn't
> made a showing that the material isn't usable in the form that they've
> produced it.  **But I think that he does not need to make declarations.**
> I think he's made a sufficient showing in terms of what he's indicated

---

[20]/   Furthermore, the court in *Aguilar* observed that some authorities considering production of ESI have endorsed production in TIFF format even when native format was requested.  *See Aguilar*, 255 F.R.D. at 356 ("Weighing the advantages and disadvantages of different forms of production, the [Sedona] Conference concluded that even if native files are requested, it is sufficient to produce memoranda, emails, and electronic records in PDF or TIFF format accompanied by a load file containing searchable text and selected metadata.").  This is consistent with the requirement to "translate" ESI into a reasonably usable form.  *See* Exhibit 21 (May 27, 2005 (Revised July 25, 2005) Report of the Civil Rules Advisory Committee), at 65.

**17**

**United States' Objections to and Motion for *de Novo* Review of Special
Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

particularly with the fact that once it was put on the TIFF, the metadata wasn't there.

Now, they say, well, you didn't request it. Well, that should not have to have been requested if you didn't know that it wasn't going to be there.

Hearing at 126:4-13 (emphasis added). All the **evidence** contradicts the Special Master's unsupported conclusions. Goodrich had over seven years of experience with Encore and knew perfectly well that it was not getting native metadata with the production, just as it had agreed it would not in 2004. *See* Section V.A.1, *supra* (describing the negotiations leading to the choice of Encore and the metadata to be included). The fact no party objected for seven years is evidence the productions were more than reasonably usable. *See also* Exhibit 4 (Hambrick), ¶¶ 10 & 15. Goodrich's actions are more probative than are the words of its counsel. *See also* Exhibit 22, July 26, 2011 Letter, Dintzer to Corcoran ("Goodrich produced the documents after consultation with Encore as to acceptable methods of production."). Not only did Goodrich produce through Encore, as did EPA, it did not label its production[21]/ nor did it provide any supplemental information such as EPA provided

---

[21]/    In her Report, the Special Master observed that, at the Hearing, Goodrich and PSI affirmed that they and other parties organized and labeled productions of documents. *Compare* Report at 5:20-21 *with* Hearing at 42:3-46:5 (affirmations elicited by Special Master with leading questions). In fact, neither Goodrich nor PSI said that other parties were labeling production. *See, e.g.,* Hearing at 83:3-24 (everybody complied with CMO, not labeling). Goodrich itself has not labeled production to the United States, contrary to its assertion to the Special Master. *See* Exhibits 23 and 24 (Goodrich Responses to United States' Requests for Production Set 1 and Set 2). In its latest, July 26, 2011 responses to the United States' Second Requests for Production, Goodrich simply asserted it had produced any responsive records at an unspecified time in the past, leaving the United States to guess as to what production Goodrich referred. *See* Exhibit 24. At the August 16, 2011 meet and confer conference, counsel for Goodrich was unable to direct the United States to the labeling of its production that Goodrich had affirmed to the Special Master. *See*

**18**

**United States' Objections to and Motion for *de Novo* Review of Special Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

1   on its records' original organization.

### E.   LABELING OF FUTURE PRODUCTION IS A BURDENSOME SOLUTION TO A PROBLEM NOT EVEN ALLEGED[22]/

The only problem asserted by the defendants, and asserted with no evidentiary facts, was that they needed metadata in order to determine the timing and authorship of a few records they were using in some depositions.[23]/ *See, e.g.,* Hearing at 80:22-

---

Exhibit 14, ¶ 22.  As for PSI, only after the United States had articulated its response to Goodrich's motion to compel,  on June 28, 2011, and apparently for the first time, did PSI label its responses to a dozen individual United States' requests for production.  *See* Exhibit 25 (PSI Responses); Exhibit 14 at ¶ 21 (first time in "this case").  The United States has been unable to locate any other production in which PSI labeled records responsive to any request.  Instead, generally, PSI simply asserted it had produced responsive records at an unspecified time in an unspecified related case, as has Goodrich, again leaving the United States to guess.  *See* Exhibits 26 through 29 (PSI Responses to RFPs in earlier related cases).  At the August 16 meet and confer conference, counsel for PSI stated labeling of earlier productions was not required because they had been made as kept in the usual course of business.  *See* Exhibit 14, ¶ 21.  However, PSI has not provided any information that would allow the United States or this Court to verify that the production was as kept in the usual course or that such production in response to a request from one party in one case is responsive to a different production request by a different party in a different case, albeit related. The fact remains, until after the United States articulated its objections to Goodrich's motion, PSI left it to requesting parties to guess as to which were the responsive documents among all documents that PSI loaded onto Encore.

[22]/   Although Goodrich's motion had asked for an order for future labeling, the Special Master repeatedly stated that she would only address EPA's response to Goodrich RFP Set One.  *See* Hearing at 114:6; 115:9-10 ("I don't want to make an order with respect to future productions."); 126:23-127:4.  The Special Master denied the United States fair notice of the issue she was deciding.

[23]/   In their 2004 agreement, the parties, including Goodrich, did not accept Encore's recommendation to load authorship and other data with each record.

**19**

**United States' Objections to and Motion for *de Novo* Review of Special Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

81:16.  Defendants did not identify any specific documents presenting this problem. Labeling each and every record in all future productions, as required by the Special Master, will not provide the defendants with any metadata and, therefore, cannot solve the alleged, limited problem.  The Special Master's requirement to label every record in all future productions is a burdensome solution to a problem no one has identified, including herself.  Even if the defendants had evidence of a problem,[24]/ it concerns only a few records.  Requiring labeling of all of tens of thousands of records is a solution completely out of proportion to any alleged problem.

If there is a problem with production through Encore, the solution is for the parties to the existing agreement, as memorialized in the CMO No. 1, to negotiate an amendment.[25]/  The solution is not for the Special Master, nor Goodrich, to unilaterally alter the parties' long-standing agreement.

_____

[24]/   Many problems Goodrich encountered with searching and organizing EPA's production are attributable to its promulgation of numerous and overly broad requests, notwithstanding this Court's admonitions to Goodrich to the contrary in the related case of *Goodrich v. Emhart Industries, Inc.  See* Joint Stipulation at 26-28 (quoting, *e.g.*, *Goodrich Corp. v. Emhart Indus., Inc.*, No. 04-0759, 2005 WL 6440828 *5 (C.D. Cal., June 10, 2005) (finding requests nos. 154-160 overbroad and not limited to what was truly essential and material).  *Compare, e.g.,* Exhibit 11 (Goodrich RFP Set One), Requests 138 through 145 (seeking all documents that refer or relate to 29 companies, without any limitations in time, including in Request 141 the companies listed in the *Emhart* case Requests ), *with* Exhibit 30 (Goodrich RFP to Emhart), Requests 154 through 160 (seeking all documents that refer or relate to seven companies, but limited to periods of ten years or less for six).

[25]/    *See* Exhibit 14, at ¶ 15.g (Encore recommendations to update the agreement have been ignored.).  *See also* Hearing at 104:17-18 (Goodrich acknowledged that "[we] all know that there are limitations with that particular system.  Encore has problems.")

**20**

**United States' Objections to and Motion for *de Novo* Review of Special Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

## VI.    SUMMARY AND CONCLUSIONS

The Special Master misinterpreted the parties' agreement on the manner and form of document and ESI production which is memorialized in the CMO No. 1, and misinterpreted Rule 34(b)(2)(E) which specifies distinctly different requirements for production of documents and production of ESI.  The Special Master also erroneously concluded that Goodrich need not support its allegations with evidence and declarations and, consequently, erroneously concluded that conversion to TIFF format, as necessitated by the CMO, rendered EPA's production of ESI not reasonably usable and not as kept in the usual course of business under Rule 34(b)(2)(E).  The Special Master also improperly imposed a burdensome requirement to label future productions, which was not a solution to any alleged problem, and was without any evidentiary support.  The Special Master's Order, both present and future relief, improperly modified both this Court's CMO No. 1 and Rule 34(b).  For all these reasons, the United States moves this Court to vacate the Special Master's Order and to deny Goodrich's motion.

Dated:        August 18, 2011            Respectfully submitted,

By:    _/s/ Larry Corcoran___
JAMES R. MacAYEAL
LARRY CORCORAN
Environmental Enforcement Section
U. S. Department of Justice

Attorneys for Plaintiff
UNITED STATES OF AMERICA
ON BEHALF OF THE
UNITED STATES
ENVIRONMENTAL
PROTECTION AGENCY

**21**

**United States' Objections to and Motion for *de Novo* Review of Special Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**

**PROOF OF SERVICE**

City of Colton v. American Promotional Events, Inc., et al.,
United States District Court, Central District of California
Case No.:  ED CV 09-01864 PSG (SSx)
[Consolidated with Case Nos. CV 09-06630 PSG (SSx),
CV 09-06632 PSG (SSx), CV 09-07501 PSG (SSx),
CV 09-07508 PSG (Ssx), and CV 10-00824 PSG (SSx)]

I am an attorney at the United States DOJ Environmental Enforcement Section.  My business address is 601 D Street, N.W., Washington, D.C.  20004.  I am over the age of 18 years, and not a party to this action.

I hereby certify that on August 18, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM-/EFC or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

NOTICE OF UNITED STATES' OBJECTIONS TO AND MOTION FOR REVIEW *DE NOVO* Of SPECIAL MASTER'S REPORT AND ORDER TO COMPEL, DECLARATION OF LARRY CORCORAN IN SUPPORT, WITH EXHIBITS AND PROPOSED ORDER

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 18, 2011.

/s/ Larry Corcoran
LARRY CORCORAN

**22**

**United States' Objections to and Motion for *de Novo* Review of Special Master's Report and Order dated Aug. 1, 2011 (Doc.# 877, filed Aug. 3)**