E-FILED 01/31/12

1  PENELOPE ALEXANDER-KELLEY (CSB No. 145129)
   Deputy County Counsel
2  RUTH E. STRINGER (CSB No. 103563)
   County Counsel
3  OFFICE OF THE COUNTY COUNSEL
   COUNTY OF SAN BERNARDINO
4  385 N. Arrowhead Avenue
5  San Bernardino, California 92415-0140
   Telephone: (909) 387-5435; Facsimile: (909) 387-5462
6  Electronic Mail: palexander-kelley@cc.sbcounty.gov
   TIMOTHY V.P. GALLAGHER (CSB No. 153341)
7  MARTIN N. REFKIN (CSB No. 062486)
   THOMAS A. BLOOMFIELD (CSB No. 163533)
8  GALLAGHER & GALLAGHER
   A Professional Corporation
9  1925 Century Park East, Suite 950
10 Los Angeles, California 90067
   Telephone: (310) 203-2600; Facsimile: (310) 203-2610
11 Electronic Mail: timg@thegallaghergroup.com
                    refkin@thegallaghergroup.com
12                  tbloomfield@thegallaghergroup.com

13 Attorneys for Defendants
   COUNTY OF SAN BERNARDINO and ROBERTSON'S READY MIX, INC.
14 *Additional counsel listed on next page*

15

16          UNITED STATES DISTRICT COURT

17          CENTRAL DISTRICT OF CALIFORNIA

18

19 CITY OF COLTON, a California          ) Case No. ED CV 09-01864 PSG (SSx)
                                         )
20 municipal corporation,                ) [Consolidated with Case Nos. CV 09-
                                         ) 6630 PSG (SSx), CV 09-06632 PSG
21          Plaintiff,                    ) (SSx), CV 09-07501 PSG (SSx), CV
                                         ) 09-07508 PSG (SSx), and CV 10-00824
22                                        ) PSG (SSx)].
                                         )
23 vs.                                    )
                                         )
24 AMERICAN PROMOTIONAL                   ) [PROPOSED] CONSENT ORDER
                                         ) AND JUDGMENT
25 EVENTS, INC., et al,                   )
                                         )
26          Defendants.                   )
                                         )
27 ─────────────────────────────────

28

Exhibit 69
Page 1474

1
CONSENT ORDER

1  THOMAS N. JACOBSON (CSB No. 55127)
2  3750 Santa Fe Avenue, Suite 105
   Riverside, California 92501
3  Telephone: (951) 682-7882
   Facsimile: (951) 682-7884
4  tom@tomjacobsonlaw.com

5  Attorney for Defendant, ROBERTSON'S READY MIX, INC.

6

7  **SETTLEMENT AGREEMENT**

8  This SETTLEMENT AGREEMENT (the "Agreement") is entered into this ___

9  day of _____, 2010, by and between the following, sometimes referred herein

10 as Parties:  (a) COUNTY OF SAN BERNARDINO ("COUNTY"); (b)

11 ROBERTSON'S READY MIX, INC., ROBERTSON'S READY MIX, LTD.,

12 RRM PROPERTIES, LTD., (collectively, "RRM"); (c) EDWARD STOUT,

13 EDWARD STOUT AS THE TRUSTEE OF THE STOUT-RODRIGUEZ TRUST

14 (also known as the Schulz Family Trust), ELIZABETH RODRIGUEZ, JOHN

15 CALLAGY AS TRUSTEE OF THE FREDERIKSEN CHILDREN'S TRUST

16 UNDER TRUST AGREEMENT DATED FEBRUARY 20, 1985, JOHN

17 CALLAGY AS TRUSTEE OF THE E.F. SCHULZ TRUST, LINDA

18 FREDERIKSEN, LINDA FREDERIKSEN AS TRUSTEE OF THE WALTER M.

19 POINTON TRUST DATED 11/19/91, LINDA FREDERIKSEN AS TRUSTEE

20 OF THE MICHELLE ANN POINTON TRUST UNDER TRUST AGREEMENT

21 DATED FEBRUARY 15, 1985, LINDA FREDERICKSEN AS TRUSTEE OF

22 THE E.F. SCHULZ TRUST, JOHN CALLAGY, MARY CALLAGY, JEANINE

23 ELZIE, STEPHEN CALLAGY, MICHELLE FARRIS, ANTHONY RODRIGUEZ

24 (collectively, the "SCHULZ PARTIES") (all the foregoing are hereinafter

25 collectively referred to as the "Settling Defendants"); (d) CITY OF COLTON

26 ("COLTON"); and (e) CITY OF RIALTO and the RIALTO UTILITY

27 AUTHORITY (collectively, "RIALTO"):

28 ///

Exhibit 69
Page 1475

2
**CONSENT ORDER**

## RECITALS

A. WHEREAS, the CITY OF RIALTO and RIALTO UTILITY AUTHORITY are, respectively, (1) a California municipal corporation, general law city, and public water enterprise duly organized and existing under the laws of the State of California, and (2) a Joint Powers Authority duly organized and existing under the laws of the State of California. By Lease and Management Agreements dated May 1, 2001, the RIALTO UTILITY AUTHORITY is the owner, and lessor of the water system for the CITY OF RIALTO, and the CITY OF RIALTO is the lessee and operator of said water system. The RIALTO UTILITY AUTHORITY has appointed the CITY OF RIALTO as its agent to carry out all aspects of the operation and maintenance of the water system, and CITY OF RIALTO has assumed all rights, liabilities, duties and responsibilities of the RIALTO UTILITY AUTHORITY regarding operation and management of the water system and administration and enforcement of all relevant contracts and other agreements;

B. WHEREAS, COLTON is a California municipal corporation, general law city, duly organized and existing under the laws of the State of California;

C. WHEREAS, the COUNTY is a political and legal subdivision of the State of California, which is the owner of certain lands, generally described in **Exhibit A** attached hereto, and incorporated by this reference (hereinafter collectively "County Land"). The lands include but are not limited to a public solid waste disposal facility known as the Mid-Valley Sanitary Landfill. The COUNTY purchased a portion of the County Land from the Schulz Trust in the 1990s, after conducting a due diligence investigation. The COUNTY also conducts certain regulatory activities within the County of San Bernardino;

D. WHEREAS, Robertson's Ready Mix, Inc. is a Nevada corporation (and previously a California corporation), and RRM PROPERTIES, LTD, and

Exhibit 69
Page 1476

1  ROBERTSON'S READY MIX, LTD, which are conducting or are otherwise
2  associated with certain operations on the County Land;

3    E. WHEREAS, the SCHULZ PARTIES are individuals who have some
4  affiliation with the E.F. Schulz Trust (formerly known as the Stout-Rodriguez
5  Trust), which previously owned certain real property (the "Schulz Trust
6  Property"). Certain Schulz Parties sold the Schulz Trust Property to the COUNTY
7  in the 1990's. Prior to the sale to the COUNTY, the E.F. Schulz Trust and the
8  Schulz Parties leased portions of the Schulz Trust Property to various individuals
9  or entities;

10    F. WHEREAS, perchlorate is a chemical principally used to accelerate
11  the combustion of rocket fuels and propellants and in the manufacture of
12  explosives, munitions, certain fertilizers, flares, ordnance, and pyrotechnic
13  products. RIALTO and COLTON contend that perchlorate and trichloroethylene
14  are each a "hazardous substance" and "hazardous solid waste" within the
15  definitions of the Comprehensive Environmental Response, Compensation, and
16  Liability Act of 1980, as amended ("CERCLA") (42 U.S.C. §9601 et seq.) and
17  Resource Conservation and Recovery Act, as amended ("RCRA") (42 U.S.C. §
18  6903(5)(27), 9601(14)(c), 40 C.F.R. §§ 261.2, 261.3(a)(2)(i), and 261.20(a)).
19  RIALTO and COLTON allege that perchlorate and other chemicals, including but
20  not limited to, trichloroethylene, are found within and/or under the County land
21  and throughout the Rialto-Colton Basin;

22    G. WHEREAS, RIALTO has filed an action ("Rialto I") with the United
23  States District Court for the Central District of California (City of Rialto v. U.S.
24  Department of Defense, et al., Civil Action No. ED CV 04-00079 PSG (SSx)).
25  The operative complaint of RIALTO is the Fifth Amended and Supplemental
26  Complaint ("the Complaint"). The Complaint alleges, in pertinent part, that the
27  COUNTY, Robertson's Ready Mix, Inc., and the SCHULZ PARTIES, named in
28  the Complaint, are liable to RIALTO for damages, injunctive relief and

Exhibit 69
Page 1477

1  declaratory relief arising from perchlorate, trichloroethylene and other
2  contamination that has existed or currently exists in the soil, groundwater and
3  vadose zone within the Rialto-Colton Basin, and which RIALTO claims has
4  affected or threatens to affect its drinking water supply wells.  RIALTO has
5  asserted claims under federal and state law;

6      H. WHEREAS, RIALTO also filed a lawsuit in the Superior Court of the
7  State of California County of San Bernardino, (City of Rialto v. County of San
8  Bernardino, Case No. SCVSS 142292) ("Rialto State Lawsuit"), alleging a right to
9  reimbursement for attorney fees and costs incurred in the Rialto I, among other
10  things.  RIALTO dismissed that action without prejudice, but intends that the
11  damages alleged therein be included in the claims and damages it is releasing in
12  this Agreement;

13      I. WHEREAS, COLTON has filed two federal actions:  (City of Colton
14  v. American Promotional Events, et al., Civil Action No. CV 05-01479 DDP,
15  currently on appeal to the United States Court of Appeals for the Ninth Circuit
16  ("Colton I"); and City of Colton v. American Promotional Events, Inc. West, et al.,
17  Civil Action No. ED CV-04-00079 PSG (SSx)), ("Colton III"); and one action in
18  state court (City of Colton v. American Promotional Events, et al., Case No. BC
19  376008), ("Colton II"), which is currently before the Superior Court for the
20  County of Los Angeles, California);

21      J. WHEREAS, the Colton Lawsuits allege, in pertinent part, that
22  COUNTY and Robertson's Ready Mix, Inc. are liable to COLTON for damages
23  and declaratory relief arising from perchlorate and other contamination that did or
24  currently exists in the soil, groundwater and vadose zone within the Rialto-Colton
25  Basin, and which COLTON claims has affected or threatens to affect its drinking
26  water supply wells;

27      K. WHEREAS, in June 2008, RIALTO and COLTON dismissed the
28  Rialto I Lawsuit and Colton III Lawsuit, respectively, without prejudice in order to

Exhibit 69
Page 1478

5
**CONSENT ORDER**

1   pursue global settlement discussions with a number of the named defendants in the

2   Rialto Lawsuits and Colton Lawsuits. Other parties to those lawsuits also

3   dismissed their claims voluntarily, without prejudice. These global settlement

4   discussions proved unsuccessful, and Rialto and Colton re-filed their lawsuits,

5   which are referred to herein as Rialto II and Colton IV. (Colton IV: City of Colton

6   v. American Promotional Events, Inc., et al., Case No. CV 09-01864 PSG (SSx),

7   filed October 6, 2009, and Rialto II: City of Rialto, et al., v. United States

8   Department of Defense, et al., Case No. CV 09-07501 PSG (SSx), filed October

9   15, 2009. Pursuant to a court order dated January 20, 2010, the court consolidated

10   these cases, along with certain other related cases (CV 09-6630 PSG (SSx), CV

11   09-06632 PSG (SSx), and CV 09-07508 PSG (SSx)) for all purposes other than

12   trial. The United States has filed CERCLA section 107 claims and RCRA claims

13   against certain parties associated with the B.F. Goodrich Superfund Site, which

14   has been consolidated with Colton IV pursuant to a court order dated June 2, 2010

15   (United States v. Goodrich Corporation, et al., Case No. CV 10-00824 PSG

16   (SSx));

17         L. WHEREAS, the Colton I, Colton II, Colton III, and Colton IV

18   lawsuits are collectively referred to herein as the Colton Lawsuits. The Rialto I

19   and the Rialto II lawsuits are collectively referred to herein as the Rialto Lawsuits.

20         M. WHEREAS, the litigants in the Rialto Lawsuits and Colton Lawsuits

21   have various cross-claims and counter-claims, both express and deemed, including

22   claims by and against the Settling Defendants;

23         N. WHEREAS, the Rialto Lawsuits, the Rialto State Lawsuit, and the

24   Colton Lawsuits, together with any consolidated cases, are referred to herein as the

25   Lawsuits;

26         O. WHEREAS, the California Regional Water Quality Control Board –

27   Santa Ana Region ("RWQCB") is acting as the lead agency for purposes of the

28   CERCLA response action to address releases of hazardous substances from

Exhibit 69
Page 1479

6
**CONSENT ORDER**

1  sources in the western side of the Rialto-Colton Basin, and the United States

2  Environmental Protection Agency is acting as the lead agency for purposes of the

3  CERCLA response action to address releases of hazardous substances from the

4  160 Acre Site, also known as the B.F. Goodrich Superfund Site, which is located

5  on the eastern side of the Rialto-Colton Basin;

6  P. WHEREAS, on January 17, 2003, the RWQCB adopted Clean Up

7  and Abatement Order No. R8-2003-0013 ("Order"), which ordered the COUNTY

8  to, among other things, define the lateral and vertical extent of the perchlorate that

9  is alleged to be discharging from property owned by the COUNTY and to

10  implement a remedial plan to cleanup or abate the effects of the perchlorate that is

11  discharging, has been discharged, or threatens to be discharged from such land.

12  The COUNTY filed a timely appeal of the Order with the State Water Resources

13  Control Board ("SWRCB"), but that appeal was placed in abeyance at the mutual

14  consent of the COUNTY and the SWRCB. The COUNTY proceeded to conduct

15  certain investigation and remedial activities in response to the Order, and the

16  RWQCB has approved the response action of the COUNTY as that action has

17  progressed;

18  Q. WHEREAS, on September 17, 2004, the RWQCB adopted an

19  amendment to Clean Up and Abatement Order No. R8-2003-0013. Among other

20  things, the amendment required the COUNTY to provide replacement water for

21  City of Rialto Well 3. In the amendment, the RWQCB found, in pertinent part,

22  that it was appropriate to order the COUNTY to provide replacement water for

23  Rialto Well No. 3 due to the threat that the RWQCB perceived to exist with

24  respect to the beneficial use of the water being extracted at that well. The

25  COUNTY filed a timely appeal of the amendment to the Order with the SWRCB,

26  which appeal was placed in abeyance;

27  R. WHEREAS, the COUNTY has complied with the Order, as amended,

28  and has been providing replacement water to RIALTO for City of Rialto Well 3,

7
**CONSENT ORDER**

Exhibit 69
Page 1480

1   pursuant to the amended RWQCB Order and an agreement between the COUNTY

2   and RIALTO, which is entitled, "Water Replacement Order Implementation

3   Agreement And Water Rights Lease By and Among The City Of Rialto And

4   Rialto Utility Authority On The One Hand And The County Of San Bernardino

5   On The Other Hand," with an Effective Date of April 1, 2005 ("Implementation

6   Agreement"). The COUNTY reports that it has, to date, spent more than

7   $17 million responding to the RWQCB Order, as amended, otherwise

8   investigating and responding to releases, and providing replacement water to

9   RIALTO;

10       S. WHEREAS, each of the Settling Defendants expressly denies any

11   wrongdoing or liability for the Contamination or any matter alleged in the

12   Lawsuits, including that RIALTO and/or COLTON are entitled to joint and

13   several liability. Each of the Settling Defendants also expressly denies any

14   wrongdoing or liability with respect to any other litigant. The Settling Defendants

15   disagree as to whether any of them are responsible for the alleged past or future

16   costs of the investigation, remediation, or monitoring of the Contamination and

17   any damages or response costs alleged to have arisen from the existence of the

18   Contamination;

19       T. WHEREAS, the respective claims of RIALTO, COLTON and each of

20   the Settling Defendants relating to the Contamination, as raised in the Lawsuits,

21   involve arguable and disputed questions of fact and law. The Parties desire to

22   resolve, among other things, all claims raised in the Lawsuits and otherwise

23   related in any way to or arising from the Contamination within, at or from the Site

24   (as defined below), and to release each other from all possible liability, known or

25   unknown, in connection therewith, as set forth herein;

26       U. WHEREAS, given the uncertainties of the outcome of the disputes

27   between the settling parties in the Lawsuits, and the expense of litigation, and

28   subject to the terms and conditions set forth herein, the Parties do not intend to

Exhibit 69
Page 1481

1   proceed with the Lawsuits against one another, and intend to file dismissals with

2   prejudice of their claims against one another in the Lawsuits, but reserve their

3   rights against the non-settling parties; and

4        V. WHEREAS, in or about March 2008, the parties entered into a

5   settlement, subject to certain conditions precedent, and this Consent Order is

6   intended as an amendment to and replacement of that settlement.

7

8        **NOW THEREFORE**, for valuable consideration, including the

9   representations, warranties, and covenants contained herein, the Parties agree as

10  follows, and the Court hereby Orders, Adjudges, and Decrees:

11

12                          **AGREEMENT**

13

14        1.    **JURISDICTION**.  This Court has jurisdiction over the subject

15  matter of this action pursuant to 28 U.S.C. §§1331 and 1345, and 42 U.S.C. §§

16  9606, 9607, 9613(b), and 6972(b)(2)(A).  This Court also has personal jurisdiction

17  over the Settling Defendants.  Solely for the purposes of this Consent Order,

18  Settling Defendants waive all objections and defenses that they may have to

19  jurisdiction of the Court or to venue in this District.

20        2.    **DEFINITIONS**.  The terms used in this Agreement shall have

21  the meanings and definitions set forth below or as otherwise set out in the text of

22  this Agreement.

23             2.1   Contamination.  The term "Contamination" means

24  (a) perchlorate; (b) any substance, product, waste or other material of any nature

25  whatsoever which is or becomes listed, regulated, or addressed pursuant to

26  CERCLA (as "hazardous substance" as now or hereafter defined in Section

27  101(14) of CERCLA or any regulations promulgated under, or as a pollutant or

28  contaminant as now or hereafter defined in Section 101(33) of CERCLA or any

---

9

**CONSENT ORDER**

Exhibit 69
Page 1482

1  regulations promulgated under CERCLA); RCRA; the Hazardous Materials

2  Transportation Act, 49 U.S.C. section 1801, et seq.; the Toxic Substances Control

3  Act, 15 U.S.C. sections 2601, et seq.; the Clean Water Act, 33 U.S.C. section 1251

4  et seq.; the California Hazardous Waste Control Act, Health and Safety Code

5  sections 25100, et seq.; the California Hazardous Substances Account Act, Health

6  and Safety Code sections 25100 et seq.; the California Safe Drinking Water and

7  Toxic Enforcement Act, Health and Safety Code sections 25249.5, et seq.; the

8  California Hazardous Waste Management Act, Health and Safety Code sections

9  25501, et seq. (Hazardous Materials Response Plans and Inventory); or the

10  California Porter-Cologne Water Quality Control Act, Water Code sections 1300,

11  et seq., all as amended from time to time; (c) any additional substance, material or

12  waste (A) the presence and concentration of within, about, at, below or from the

13  Site (i) requires reporting, investigation or remediation under any environmental

14  laws, (ii) causes or threatens to cause a nuisance and poses or threatens to pose a

15  hazard to the health or safety, or (iii) which, if emanated or migrated within, about,

16  below at or from the Site, would constitute a trespass, or (B) which is determined

17  by any governmental authority with jurisdiction thereof to pose a present or

18  potential hazard to human health or the environment.

19          2.2    County Land. The term "County Land" shall mean that

20  certain real property described on **Exhibit A** attached hereto and incorporated

21  herein by this reference.

22          2.3    Eastern Plume Area. The term "Eastern Plume Area"

23  shall mean the geographic area of Existing Contamination located generally to the

24  north-east and to the south of the Western Plume Area, as the Western Plume Area

25  is depicted in **Exhibit B**. Although the lateral and vertical extent of the Eastern

26  Plume Area has not been fully defined, the minimum area and general location of

27  the Eastern Plume Area in the vicinity of the Western Plume Area is depicted in

28  **Exhibit B.**

---

Exhibit 69
Page 1483

1              2.4    Effective Date. The term "Effective Date" shall mean

2    the date all of the conditions precedent set forth in section 5.1, are met.

3              2.5    Existing Contamination. The term "Existing

4    Contamination" means Contamination, whether known or unknown, that is alleged

5    or could have been alleged in the Lawsuits.

6              2.6    New Contamination. The term "New Contamination"

7    means Contamination that is wholly distinct from and completely unrelated to

8    Existing Contamination. New Contamination does not include the migration or

9    movement of Existing Contamination or other new releases of Existing

10   Contamination.

11             2.7    Parties or Party. The term "Parties" shall mean

12   RIALTO, COLTON and the Settling Defendants, and the term "Party" shall mean

13   one or more of those entities or individuals.

14             2.8    Related Parties. The term "Related Parties" means the

15   directors, officers, agents, limited and general partners, parents, attorneys,

16   subsidiaries, corporate predecessors, commissioners, council members, board

17   members, elected officials, appointed officials, supervisors, managers, contractors,

18   shareholders, trustees, estates, employees, beneficiaries, and affiliates, insurers,

19   successors, predecessors and assigns, and all persons or entities acting by,

20   through, under or in concert with any of the foregoing, as applicable.

21             2.9    Site. The term "Site" shall mean the Rialto-Colton

22   Basin, as depicted in **Exhibit B1**, including but not limited to the County Land

23   and the 160 Acre Parcel.

24             2.10   Western Plume Area. The term "Western Plume Area"

25   shall mean the geographic area shown on **Exhibit B** as the Western Plume Area.

26          3.    **CONSIDERATION BY SETTLING DEFENDANTS.**

27             3.1    As a negotiated compromise, without any admission of

28   liability, and in consideration for the agreements and releases hereunder, the

Exhibit 69
Page 1484

1  COUNTY shall pay to RIALTO a sum of four million dollars ($4,000,000) and to

2  COLTON a sum of one million dollars ($1,000,000). In or about July 2008, the

3  COUNTY paid these amounts into a trust established and controlled by Gallagher

4  & Gallagher, a Professional Corporation. Such funds shall be released to RIALTO

5  and COLTON, respectively, with interest as may be earned in the trust account,

6  within thirty (30) days of the Effective Date. These amounts shall go towards past

7  and future response costs in the Rialto-Colton Groundwater Basin, attorney fees

8  and/or other alleged damages, as may be determined from time to time by

9  RIALTO and COLTON in their sole discretion.

10        3.2     The County shall, on behalf of the Settling Defendants,

11  continue to implement the response action currently being required by the Order,

12  as amended, that responds to Existing Contamination in the Western Plume Area

13  consistent with CERCLA and the National Contingency Plan, pursuant to (1) the

14  existing RWQCB Order, as amended subject to the existing County appeals or

15  (2) a settlement with the RWQCB or other appropriate environmental agency that

16  provides for the County to implement a remedy similar in scope to that currently

17  being required by the Order, as amended, or (3) some other future order from the

18  RWQCB or other appropriate environmental agency that provides for the County

19  to implement a remedy similar in scope to that currently being required by the

20  Order, as amended, to address the alleged releases from the County Land.

21  Regardless of which of these three options is used, the County shall implement the

22  response action currently being required by the Order, as amended, and subject to

23  amendments or further orders by the RWQCB or other designated lead agency,

24  once such amendments and further orders are final, following appeals, if any.

25        3.3     Subject to the administrative and legal rights of the

26  COUNTY with respect to such orders, the COUNTY further agrees to comply

27  with future orders from the RWQCB relating to the (a) Existing Contamination at

28  the County Land, and (b) Existing Contamination that is emanating or has

---

12

**CONSENT ORDER**

Exhibit 69
Page 1485

1  emanated from the County Land, but only to the extent such Existing
2  Contamination is within the Western Plume Area.

3             3.4    In conjunction with this Agreement, County shall enter
4  into a Standby Water Rights Agreement described in Section 4.4.

5             3.5    Except as the settlement payments made pursuant to
6  Section 3.1 are deemed applicable, Settling Defendants shall have no obligation to
7  respond to, pay for or otherwise incur response costs for releases or threatened
8  releases at, in or from the Eastern Plume Area.

9      4.    **COOPERATION ON IMPLEMENTATION OF**
10          **RESPONSE ACTION**

11             4.1    RIALTO, COLTON and COUNTY recognize that the
12  response action to address the Contamination in the Western Plume Area will
13  require many years of cooperation and coordination. RIALTO, COLTON and
14  COUNTY agree to use best efforts to coordinate these actions and to work
15  together in a cooperative manner. The COUNTY recognizes that the current
16  response action is an interim action, and that additional response actions may be
17  necessary in the future. The COUNTY response action to address alleged releases
18  at and from the County Land shall be implemented in a manner that complies with
19  state and federal law, including CERCLA, subject to the oversight of the RWQCB
20  or other appropriate environmental agency.

21             4.2    RIALTO, COLTON and COUNTY recognize that over
22  time it may be appropriate to modify the treatment approach or standards for the
23  water being provided, or to be provided, to RIALTO and COLTON, based on the
24  development of new information, improved treatment approaches and cost
25  effectiveness, among other things. At this time, neither RIALTO, COLTON nor
26  COUNTY are proposing such changes; however, if such Party in the future
27  believes that such a change is appropriate, the affected Parties agree to negotiate in
28  good faith regarding such changes, based on the applicable or relevant and

Exhibit 69
Page 1486

1    appropriate state and federal requirements, notwithstanding and without regard to
2    section 10(a) and **Exhibit L** of the Implementation Agreement. If RIALTO and
3    COUNTY or COUNTY and COLTON are unable to reach agreement on such
4    changes, the affected Parties agree to submit such matter to the dispute resolution
5    mechanism set forth in section 10, below. The affected Parties agree to use their
6    best efforts to implement the agreed upon changes or the changes that result from
7    the resolution of the dispute regarding same, including cooperating to secure
8    appropriate approval from the California Department of Public Health for changes
9    to reflect the applicable Maximum Contaminant Levels ("MCLs") in the permits.

10              4.3    RIALTO and COLTON each retain all of its rights to
11   participate in the regulatory process with respect to the response action that the
12   COUNTY will perform pursuant to this Consent Order. This Agreement does not
13   expand the rights of RIALTO or COLTON with respect to the COUNTY response
14   actions. The COUNTY retains all of its rights with respect to the response actions,
15   except as may be later set forth in a settlement with the RWQCB or other
16   appropriate environmental agency.

17              4.4    In conjunction with this Agreement, RIALTO, COLTON
18   and COUNTY have entered into the standby water rights agreement ("Standby
19   Water Rights Agreement") attached to this Agreement and labeled **Exhibit C**,
20   which becomes effective on the Effective Date of this Agreement. That Standby
21   Water Rights Agreement provides for, among other things and consistent with the
22   terms of that agreement, COLTON to make 200-acre feet of water rights available
23   to the COUNTY, to pump, treat and deliver to COLTON, the COUNTY to provide
24   on average 200-acre feet of treated water to COLTON per year, the COUNTY to
25   receive a right of first refusal on other water rights of COLTON, and RIALTO to
26   agree to wheel up to 10,000-acre feet a year to COLTON.

27   ///
28   ///

Exhibit 69
Page 1487

5. **CONDITIONS PRECEDENT**

5.1  This Agreement is expressly conditioned upon:

(a)  The Court's entry of an order approving this Agreement as a good faith settlement as to all Settling Defendants and barring all claims by non-settling parties against the Settling Defendants, substantially in the form attached hereto as **Exhibit D** ("Good Faith and Dismissal Order"), and the Court's execution and entry of this settlement as a consent order;

(b)  The expiration of any time for appeal or review of such Good Faith and Dismissal Order, or, if any appeal is filed and not dismissed, the upholding in all material respects of the Good Faith and Dismissal Order on the final appeal in all material respects;

5.2  If the conditions in section 5.1 above are not met, the affected Parties agree to negotiate in good faith in an effort to reach another settlement agreement, following such guidance as may be given by any court, as applicable.  If the affected Parties are unable to so negotiate another settlement agreement, after exercising their good faith efforts to do so, and an affected Party gives written notice to that effect, then this Settlement Agreement shall be null and void and of no further force or effect.

5.3  On or before sixty (60) days from the execution of this Agreement by all Parties, the Settling Defendants shall file a motion for confirmation of the good faith of each party's settlement hereunder under applicable state and federal law, and the parties shall pursue approval of such motion in good faith.

6. **RELEASE OF KNOWN AND UNKNOWN CLAIMS; MATTERS ADDRESSED**

6.1  RIALTO Release of Settling Defendants.  Upon the satisfaction of all the conditions precedent as set forth in section 5.1 of this Agreement, and except as otherwise provided in section 7, RIALTO hereby

Exhibit 69
Page 1488

1  releases each Settling Defendant (and their Related Parties), from all claims of

2  every kind and nature, past or present [including but not limited to, rights, claims,

3  demands, damages, debts, liabilities, accounts, liens, attorney's fees, costs,

4  expenses, actions and causes of action of every kind and nature whatsoever,

5  whether in contract, tort, at law or in equity, or otherwise, now known or

6  unknown, suspected or unsuspected, whether intentional, negligent (including

7  joint, sole, concurrent and gross negligence), arising from regulatory activity or

8  otherwise, and whether existing at common law, in contribution, indemnity,

9  subrogation or otherwise, by statute, or other legislative act, or by constitutional

10  provision] that are based in whole or in part on, consist of, or which do or may

11  arise out of, or which are or may be related to or in any way connected with one or

12  more of the following (i) the Lawsuits, (ii) claims or demands that could have been

13  brought as part of the Lawsuits by any person or entity, (iii) Existing

14  Contamination about, at, within, below and from the Site, (iv) any and all response

15  actions taken or to be taken by any litigant to the Lawsuits at or in connection with

16  the Existing Contamination as alleged in the Lawsuits, (v) any and all response

17  costs incurred and to be incurred by any litigant to the Lawsuits, or in connection

18  with the Existing Contamination or (vi) attorney's fees and expenses related to or

19  arising out of the foregoing (i) through (v).

20          6.2   <u>Colton Release of Settling Defendants</u>.  Upon the

21  satisfaction of all the conditions precedent as set forth in section 5.1 of this

22  Agreement, and except as otherwise provided in section 7, COLTON hereby

23  releases each Settling Defendant (and their Related Parties) from all claims of

24  every kind and nature, past or present [including but not limited to, rights, claims,

25  demands, damages, debts, liabilities, accounts, liens, attorney's fees, costs,

26  expenses, actions and causes of action of every kind and nature whatsoever,

27  whether in contract, tort, at law or in equity, or otherwise, now known or

28  unknown, suspected or unsuspected, whether intentional, negligent (including

Exhibit 69
Page 1489

16
**CONSENT ORDER**

1  joint, sole, concurrent and gross negligence), arising from regulatory activity or
2  otherwise, and whether existing at common law, in contribution, indemnity,
3  subrogation or otherwise, by statute, or other legislative act, or by constitutional
4  provision] that are based in whole or in part on, consist of, or which do or may
5  arise out of, or which are or may be related to or in any way connected with one or
6  more of the following (i) the Lawsuits, (ii) claims or demands that could have been
7  brought as part of the Lawsuits by any person or entity, (iii) Existing
8  Contamination about, at, within, below and from the Site, (iv) any and all response
9  actions taken or to be taken by any litigant to the Lawsuits at or in connection with
10  the Existing Contamination as alleged in the Lawsuits, (v) any and all response
11  costs incurred and to be incurred by any litigant to the Lawsuits, or in connection
12  with the Existing Contamination or (vi) attorney's fees and expenses related to or
13  arising out of the foregoing (i) through (v).

14        6.3    Settling Defendants' Release of Other Settling Parties.
15  Upon the satisfaction of all the conditions precedent as set forth in section 5.1 of
16  this Agreement, and except as otherwise provided in section 7, each Settling
17  Defendant hereby releases RIALTO, COLTON and the other Settling Defendants
18  (and each of their Related Parties), from all claims of every kind and nature, past
19  or present [including but not limited to, rights, claims, demands, damages, debts,
20  liabilities, accounts, liens, attorney's fees, costs, expenses, actions and causes of
21  action of every kind and nature whatsoever, whether in contract, tort, at law or in
22  equity, or otherwise, now known or unknown, suspected or unsuspected, whether
23  intentional, negligent (including joint, sole, concurrent and gross negligence)
24  arising from regulatory activity or otherwise, and whether existing at common law,
25  in contribution, indemnity, subrogation or otherwise, by statute, or other
26  legislative act, or by constitutional provision] that are based in whole or in part on,
27  consist of, or which do or may arise out of, or which are or may be related to or in
28  any way connected with one or more of the following (i) the Lawsuits, (ii) claims

1  or demands that could have been brought as part of the Lawsuits by any person or

2  entity, (iii) Existing Contamination about, at, within, below and from the Site,

3  (iv) any and all response actions taken or to be taken by any litigant to the

4  Lawsuits at or in connection with the Existing Contamination as alleged in the

5  Lawsuits, (v) any and all response costs incurred and to be incurred by any litigant

6  to the Lawsuits, or in connection with the Existing Contamination or vi) attorney's

7  fees and expenses related to or arising out of the foregoing (i) through (v).

8       6.4   RIALTO, COLTON and Each Settling Defendant further

9  compromises and settles the matters released in sections 6.1, 6.2, and 6.3 above,

10  respectively, and agrees that this compromise and settlement shall constitute a bar

11  to the assertion of any such matter against any other Party and Related Party by

12  any other Party and Related Party. RIALTO, COLTON and Each Settling

13  Defendant covenants and agrees never to commence, prosecute, voluntarily assist

14  in any way, cause, permit, encourage or advise to be commenced or prosecuted

15  any civil action, lawsuit or administrative action against a Party or Related Party,

16  based in whole or in part upon any of the matters released in section 6.1, 6.2, and

17  6.3, respectively, subject to the reservations contained in section 7, below.

18       6.5   There is a risk that, subsequent to the execution of this

19  Agreement, a Party hereto will discover, incur or suffer loss, damages or injuries

20  which are in some way related to the matters released but which are unknown or

21  unanticipated at the time that this Agreement is executed.  Each Party hereby

22  assumes this risk and understands that THIS AGREEMENT SHALL APPLY TO

23  ALL UNKNOWN OR UNANTICIPATED LOSSES, DAMAGES OR INJURIES

24  RELATED TO THE MATTERS RELEASED ABOVE, AS WELL AS THOSE

25  KNOWN AND ANTICIPATED. Each Party hereby expressly acknowledges that

26  each is familiar with section 1542 of the California Civil Code which provides:

27       A general release does not extend to claims which

28       the creditor does not know or suspect to exist in

Exhibit 69
Page 1491

1    his or her favor at the time of executing the

2    release, which if known by him or her must have

3    materially affected his or her settlement with the

4    debtor.

5

6   Each Party understands and acknowledges the significance and consequence of

7   this specific waiver of section 1542. Having the opportunity to consult with legal

8   counsel, each Party expressly waives and relinquishes any and all rights and

9   benefits which it/he/she may have under section 1542 of the Civil Code to the full

10  extent that such rights and benefits may be lawfully waived pertaining to the

11  subject matter of this Agreement;

12          6.6     In consideration of the covenants from Settling

13  Defendants, RIALTO and COLTON agree that the Settling Defendants have no

14  responsibility for any past or future costs or damages associated with the treatment

15  of Chino Well Nos. 1 and 2.

16          6.7     The matters addressed ("Matters Addressed") by this

17  settlement include the matters released by the Parties in section 6.1 through, 6.6

18  above.

19      7.    **RESERVATIONS**

20          7.1     Notwithstanding other provisions of this Agreement, no

21  Settling Party is releasing any other Party from any claims, demands, obligations,

22  damages, contracts, debts, causes of action, or liabilities, of any kind or nature,

23  that any Settling Defendant may have against, to, or with any other Party:

24              (a)     For releases of New Contamination; or

25              (b)     For past or future criminal violations of laws that

26  are within the jurisdiction of the settling governmental entities.

27  ///

28  ///

---

**CONSENT ORDER**

Exhibit 69
Page 1492

7.2 The SCHULZ PARTIES shall not be liable to the COUNTY under any circumstances for any portion of the Agreement that is funded by the COUNTY.

7.3 This Settlement Agreement shall not diminish, expand or otherwise affect the contractual defense and indemnity rights, if any, of the Schulz Parties against the COUNTY for future claims that might otherwise exist by virtue of the Agreements for Purchase and Sale of Real Property and Escrow Instructions between and among certain Schulz Parties and the COUNTY, dated December 14, 1993 and May 1995 (contract number 95-304) as well as any other subsequently entered agreements between the Schulz Parties and the COUNTY. This includes but is not limited to any claims for personal injury.

7.4 Each Settling Defendant reserves its claims and causes of action against its insurers that it may possess, including any claims and causes of action relating to or arising out of: (i) the Lawsuits, (ii) claims or demands that could have been brought as part of the Lawsuits by any person or entity, (iii) Existing Contamination about, at, within, below and from the Site, (iv) any and all response actions taken or to be taken by any litigant to the Lawsuits at or in connection with the Existing Contamination as alleged in the Lawsuits, (v) any and all response costs incurred and to be incurred by any litigant to the Lawsuits, or in connection with the Existing Contamination or (vi) attorney's fees and expenses related to or arising out of the foregoing (i) through (v). Notwithstanding the foregoing, such reservation is not intended to conflict with or supersede any separate agreement between the Settling Defendants and any of their insurers.

7.5 The COUNTY and RRM each reserves its claims against the other with respect to the Matters Addressed, and each reserves and does not waive any and all arguments, positions, claims and defenses concerning such claims with respect to the other.

Exhibit 69
Page 1493

8.   **DISMISSAL OF THE LAWSUITS BY AND AGAINST SETTLING PARTIES**

The Parties will each execute and cause to be filed in the Lawsuits Stipulations for Dismissal substantially in the form attached hereto as **Exhibit E** (Colton I), and **Exhibit** F (Colton II), as applicable, whereby all claims by and between them pending in the Lawsuits will be dismissed with prejudice. These Stipulations for Dismissal shall be filed within ten (10) business days following the satisfaction of the last of the following conditions:  (1) execution of this Agreement by all Parties, (2) the satisfaction of each condition precedent contained in section 5.1 above (except to the extent such conditions are waived in writing by the COUNTY), and (3) the payment by the COUNTY. To the extent a dismissal cannot be filed because the district court does not have jurisdiction due to the case being on appeal, the parties shall file such dismissals promptly if the case is remanded to the district court.

9.   **STIPULATION OF NON-LIABILITY.**

9.1   All Parties recognize, acknowledge and agree that entering into this Agreement is in no way to be interpreted as an admission of liability or a concession of any wrongdoing whatsoever or an admission that any Party paying any sum of money or offering any other consideration hereunder is in any way responsible or liable for any Contamination at, within, below and from the Site, or for any response costs, damages or other relief sought in the Lawsuits. All Parties recognize, acknowledge and agree that entering into this Agreement by any Party receiving any money is not a concession of its respective damages or the costs of removal or remediation in the Lawsuits. This Agreement effectuates settlement of claims in the Lawsuits between the settling Parties that are disputed, contested or denied, and other related matters. Neither this Agreement nor any Party's performance under it is intended to be or shall be asserted by any other Party to be an admission of any kind or character whatsoever except as to the

Exhibit 69
Page 1494

1   admitted fact that a full, fair and equitable settlement has been reached by each of
2   the Parties. This Agreement is in compromise of the disputed claims between the
3   Parties and shall never be treated as an admission of liability by any Party, court,
4   arbitrator(s), mediator(s), or dispute resolution panel.

5             10.    **DISPUTE RESOLUTION**

6                  10.1   The following matters are to be handled through the
7   dispute resolution mechanism of this section 10:

8                           (a)    Disputes regarding modification of the treatment
9   approach;

10                          (b)    Disputes regarding standards for the water being
11  provided to RIALTO or COLTON as replacement water for City of Rialto Well
12  3 or the Standby Water Rights Agreement, respectively; and

13                          (c)    Disputes arising under the Standby Water Rights
14  Agreement.

15               10.2   Dispute Resolution Process

16                          (a)    If RIALTO, COLTON and the COUNTY (the two
17  or three Parties to the dispute are referred to as "Disputing Parties") are unable to
18  resolve a dispute (the "Dispute") of the type identified in section 10.1 by
19  discussion or negotiation, the Disputing Parties shall, as a condition precedent to
20  further remedies under this Agreement, first submit the Dispute to an experienced
21  mediator who shall be selected by and reasonably acceptable to each Disputing
22  Party. If the Disputing Parties are unable to agree on a mediator within thirty
23  (30) days of notice of the dispute (or other such period as agreed by the Disputing
24  Parties), then either Party may petition the court for selection of a mediator, which
25  selection shall be binding. Each Disputing Party shall bear its own costs of
26  participating in mediation and shall share equally the reasonable costs of the
27  mediator. The mediation shall be confidential to the extent permitted by law. If
28  the Disputing Parties involved in the mediation, negotiating in good faith, are

Exhibit 69
Page 1495

22
**CONSENT ORDER**

1  unable to resolve and settle the Dispute within sixty (60) days after the Dispute is

2  first submitted to the mediator, then any involved Party shall be entitled to cause

3  the Dispute to be submitted for binding arbitration pursuant to Section (b) below.

4          (b)     Any Dispute that is not settled after the Parties'

5  attempt at negotiation and mediation with the mediator shall be resolved by any

6  Disputing Party submitting the Dispute to binding arbitration before JAMS or

7  other arbitration service agreeable to the Disputing Parties ("Arbitration"), to be

8  conducted within ten miles of Rialto, California, or other location agreeable to the

9  Disputing Parties as the sole means (other than mutual written agreement) of

10  resolving the disputed matter. The Disputing Parties agree to utilize binding

11  arbitration pursuant to the California Code of Civil Procedure, and the Parties

12  expressly agree that California Code of Civil Procedure section 1283.05 is

13  incorporated into and made part of and applicable to the arbitration. The Dispute

14  will be resolved based on applicable or relevant and appropriate federal and state

15  requirements, with water treatment required to meet the applicable state or federal

16  standard, notwithstanding and without regard to section 10(a) and **Exhibit L** of

17  the Implementation Agreement. Among other things, the Parties agree that the

18  treatment standard for the water should be based upon applicable state and federal

19  regulatory standards, including the applicable MCLs. The Parties will have thirty

20  (30) days (or other period agreed upon by the Parties) in which to make the

21  selection of the arbitrator from written notice of an intent to arbitrate. If the

22  Disputing Parties are unable to agree on an arbitrator, then the matter will be

23  submitted to the federal district court for resolution pursuant to its continuing

24  jurisdiction of this matter. The arbitrator shall issue a written, reasoned decision.

25  The decision of the arbitrator shall be final and binding upon the Disputing Parties

26  hereto as if it were a final judgment or decree of a court of competent jurisdiction,

27  subject to the rights of judicial review or appeal, as applicable.

28  ///

Exhibit 69
Page 1496

11.   **GENERAL PROVISIONS**.

11.1   <u>Full Authority</u>.  Each Party represents and warrants that it has the right, power, and authority to execute this Agreement, that all approvals on its part have been obtained to fully authorize and bind said Party under this Agreement, and further represents and warrants that it has the exclusive right to prosecute, compromise, and agree to the matters set forth herein, and that it has not sold, assigned, conveyed, or otherwise transferred such right.

11.2   <u>Further Assurances; Covenant to Sign Documents</u>.  Each Party shall take all actions and do all things, and execute, with acknowledgement or affidavit, if required, any and all documents and writings that may be necessary or proper to achieve the purposes and objectives of this Agreement.

11.3   <u>Further Settlement</u>.  On request of any other Party, each Party agrees to meet and negotiate in good faith on proposed settlements with other defendants.

11.4   <u>Statement of Compliance</u>.  Within thirty (30) days following any written request by a Party, the other Parties shall execute and deliver a statement certifying that this Agreement is unmodified and in full force and effect or, if there have been modifications hereto, that this Agreement is in full force and effect as modified, that there are no current uncured defaults under this Agreement, and any other information reasonably requested.

11.5   <u>No Agency</u>.  It is expressly agreed that, in carrying out this Agreement, no relationship of principal and agent shall ever exist between the Parties hereto.

11.6   <u>Entire Agreement</u>.  This Agreement sets forth and contains the entire understanding and agreement of the Parties, and there are no oral or written representations, understandings, or ancillary covenants, undertakings or agreements which are not contained or expressly referred to herein.  No testimony or evidence of any such representations, understandings or

24<br>**CONSENT ORDER**

Exhibit 69
Page 1497

1  covenants shall be admissible in any proceeding of any kind or nature to interpret

2  or determine the terms or conditions of this Agreement.  To the extent this

3  agreement conflicts with any prior agreements, this Agreement shall control.

4         11.7   Incorporation of Recitals.  The recitals to this

5  Agreement, above, are hereby incorporated herein and made a part hereof.

6         11.8   Construction of Agreement.  This Agreement is the

7  product of arms-length negotiations between the Parties and their respective

8  attorneys.  Each of the Parties hereto expressly acknowledges and agrees that this

9  Agreement shall be deemed to have been mutually prepared so that the rule of

10  construction to the effect that ambiguities are to be resolved against the drafting

11  party shall not be employed in the interpretation of this Agreement.  The

12  paragraph and section headings used in this Agreement are for reference only and

13  shall not affect the construction of this Agreement.

14         11.9   Representations as to Negotiation Process.  The Parties

15  hereto represent to each other that each Party has been represented by counsel with

16  respect to this Agreement and all matters covered by and relating to it, that they

17  have been fully advised by such counsel with respect to their rights and with

18  respect to the execution of this Agreement.  The Parties further represent that each

19  party has entered into this Agreement of his, her, or its free will and independent

20  action without undue pressure, coercion or influence of any sort.

21         11.10 Notices.  All notices called for pursuant to this

22  Agreement shall be given in writing by personal delivery, or recognized overnight

23  delivery service which obtains the signature of the addressee or its agent as

24  evidence of delivery, or confirmed electronic transmission or telecopy/facsimile.

25  All such notices or communications shall be deemed to have been given and

26  received on the first to occur of:  (i) actual receipt by any of the addressees listed

27  below; or (ii) the date of delivery by recognized overnight delivery services;

28  and/or (iii) upon receipt by the sender of electronic confirmation of delivery of

Exhibit 69
Page 1498

such notices or communications sent by telecopy/facsimile.  A Party may change its address by giving written notice thereof to the other in accordance with the provisions of this section.

| | |
|---|---|
| RIALTO: | CITY CLERK<br>CITY OF RIALTO<br>150 South Palm Avenue<br>Rialto, CA 92376 |
| WITH A COPY TO: | RIALTO CITY ATTORNEY<br>150 South Palm Avenue<br>Rialto, CA 92376 |
| COUNTY: | Division Manager<br>Solid Waste Management Division<br>222 West Hospitality Lane<br>2nd Floor<br>San Bernardino, CA 92415-0140 |
| WITH A COPY TO: | COUNTY COUNSEL<br>385 North Arrowhead Ave., 4th Fl.<br>San Bernardino, CA 92415-0140<br>Facsimile No. (909) 387-4381<br><br>Timothy V. P. Gallagher<br>GALLAGHER & GALLAGHER,<br>a Professional Corporation<br>Watt Plaza, Suite 950<br>1925 Century Park East<br>Los Angeles, CA 90067<br>Facsimile No. 310 203 2610 |
| COLTON: | City Manager<br>650 North La Cadena Drive<br>Colton, CA 92324<br>Telephone - 909.370.5051 |

Exhibit 69
Page 1499

1

2     WITH A COPY TO:
                                   City Attorney
3                                  Dean Derleth
4                                  300 South Grand Ave
                                   25th Floor
5                                  Los Angeles, CA  90072
6     ROBERTSON'S            Dennis Troesh
      READY MIX             ROBERTSON'S READY-MIX
7                                  P.O. BOX 3600
8                                  200 S. Main St. Suite 200
9                                  Corona, CA 92882

10
                                   Thomas N. Jacobson
11    WITH A COPY TO:         Attorney at Law
12                                 3750 Santa Fe Avenue
                                   Suite 105
13                                 Riverside, CA 92507
14                                 (951) 682-7882
                                   Fax (951) 682-7884
15

16
      SCHULZ PARTIES        Ruben A. Castellón, Esq.
17                                 Castellón  & Funderburk
18                                 3200 Danville Blvd.
                                   Suite 100
19                                 Alamo, CA 94507
20
                                   William W. Funderburk, Esq.
21    WITH A COPY TO:         Castellón & Funderburk
22                                 811 Wilshire Blvd., Suite 1025
23                                 Los Angeles, CA  909017-2606

24
              11.11 Representations As To Due Execution:  The Parties
25
      represent and warrant to each other that this Agreement has been duly executed
26
      and appropriately authorized by all required governmental and other
27
      authorizations.
28

Exhibit 69
Page 1500

1    11.12 <u>Severability</u>: It is agreed that if any terms, covenants, or
2  provisions of this Agreement shall be illegal or unenforceable, such illegality or
3  unenforceability shall not invalidate the entire Agreement, but the Agreement shall
4  be construed as if the provision containing the illegal or unenforceable part were
5  not a part hereof.

6    11.13 <u>Continuing Jurisdiction</u>. Notwithstanding any dismissals
7  to be filed pursuant to this Agreement, the Parties agree that the Federal Court in
8  which the federal Lawsuits are currently pending shall retain jurisdiction to
9  enforce the terms of this Agreement.

10    11.14 <u>Continuing Effect</u>. This Agreement shall be binding
11  upon and inure to the benefit of the Parties hereto and their respective Related
12  Parties.

13    11.15 <u>Choice of Law</u>. This Agreement shall be interpreted in
14  accordance with and governed in all respects by the laws of the State of California,
15  without regard to any conflict of laws provisions.

16    11.16 <u>Amendment</u>: This Agreement may only be amended by
17  a written document executed by all Parties hereto, and the Exhibits may be
18  amended by the signatories to those Exhibits, as applicable.

19    11.17 <u>Execution in Counterparts</u>. This Agreement may be
20  executed in multiple counterparts, each of which shall be deemed an original, and
21  all of which shall constitute one agreement.

22    11.18 <u>Claims by the United States Environmental Protection</u>
23  <u>Agency</u>: Nothing in this Agreement affects the authority of the United States
24  Environmental Protection Agency under CERCLA, RCRA or any other authorities
25  for the Western or Eastern Plumes.

26  ///
27  ///
28  ///

Exhibit 69
Page 1501

1    **IN WITNESS WHEREOF,** we have signed this Agreement as of the date

2    first above written.

3

4    CITY OF RIALTO

5    By _~Grace Vargas~_____

6    Its _~Mayor~_____

7    Dated: _~8/13~____, 2010

8

9    RIALTO UTILITY AUTHORITY

10   By _~Grace Vargas~_____

11   Its _~Chay Person~_____

12   Dated: _~8/31~____, 2010

13

14   CITY OF COLTON

15   By _____

16   Its _____

17   Dated: _____, 2010

18

19   COUNTY OF SAN BERNARDINO

20   By _____

21   Its _____

22   Dated: _____, 2010

23

24   ROBERTSON'S READY MIX, INC.

25   By _____

26   Its _____

27   Dated: _____, 2010

28   ///

---

29

**CONSENT ORDER**

Exhibit 69
Page 1502

1    **IN WITNESS WHEREOF**, we have signed this Agreement as of the date
2    first above written.

3

4    CITY OF RIALTO

5    By _____

6    Its _____

7    Dated: _____, 2010

8

9    RIALTO UTILITY AUTHORITY

10   By _____

11   Its _____

12   Dated: _____, 2010

13

14   CITY OF COLTON

15   By _____

16   Its _City Manager_____

17   Dated: _8/9_____, 2010

18

19   COUNTY OF SAN BERNARDINO

20   By _____

21   Its _____

22   Dated: _____, 2010

23

24   ROBERTSON'S READY MIX, INC.

25   By _____

26   Its _____

27   Dated: _____, 2010

28   ///

---

29
**CONSENT ORDER**

Exhibit 69
Page 1503

1    **IN WITNESS WHEREOF,** we have signed this Agreement as of the date
2    first above written.

3

4    CITY OF RIALTO
5    By _____
6    Its _____
7    Dated: _____, 2010

8

9    RIALTO UTILITY AUTHORITY
10   By _____
11   Its _____
12   Dated: _____, 2010

13

14   CITY OF COLTON
15   By _____
16   Its _____
17   Dated: _____, 2010

18

19   COUNTY OF SAN BERNARDINO
20   By _____
21   Its ____CAO_____
22   Dated: __7/20____, 2010

23

24   ROBERTSON'S READY MIX, INC.
25   By _____
26   Its _____
27   Dated: _____, 2010
28   ///

29
**CONSENT ORDER**

Exhibit 69
Page 1504

1    **IN WITNESS WHEREOF**, we have signed this Agreement as of the date
2    first above written.
3
4    CITY OF RIALTO
5    By _____
6    Its _____
7    Dated: _____, 2010
8
9    RIALTO UTILITY AUTHORITY
10   By _____
11   Its _____
12   Dated: _____, 2010
13
14   CITY OF COLTON
15   By _____
16   Its _____
17   Dated: _____, 2010
18
19   COUNTY OF SAN BERNARDINO
20   By _____
21   Its _____
22   Dated: _____, 2010
23
24   ROBERTSON'S READY MIX, INC.
25   By _____
26   Its __PRESIDENT_____
27   Dated: _August 19_, 2010
28   ///

---
29
**CONSENT ORDER**

Exhibit 69
Page 1505

1  ROBERTSON'S READY MIX, LTD.

2  By _____

3  Its _____

4  Dated: _August 19_, 2010

5

6  RRM PROPERTIES, LTD.

7  By _____

8  Its _____

9  Dated: _August 19_, 2010

10  EDWARD STOUT

11  By _____

12  Dated: _____, 2010

13

14  EDWARD STOUT, AS THE TRUSTEE OF THE STOUT-RODRIGUEZ TRUST

15  By _____

16  Dated: _____, 2010

17

18  ELIZABETH RODRIGUEZ

19  By _____

20  Dated: _____, 2010

21

22  JOHN CALLAGY AS TRUSTEE OF THE FREDERIKSEN CHILDREN'S

23  TRUST UNDER TRUST AGREEMENT DATED FEBRUARY 20, 1985

24  By _____

25  Dated: _____, 2010

26  ///

27  ///

28  ///

---

30
**CONSENT ORDER**

Exhibit 69
Page 1506

1    ROBERTSON'S READY MIX, LTD.

2    By _____

3    Its _____

4    Dated: _____, 2010

5

6    RRM PROPERTIES, LTD.

7    By _____

8    Its _____

9    Dated: _____, 2010

10   EDWARD STOUT

11   By *Edward Stout*

12   Dated: 7-30 ~~10~~ , 2010

13

14   EDWARD STOUT, AS THE TRUSTEE OF THE STOUT-RODRIGUEZ TRUST

15   By *Edward Stout*

16   Dated: 7-30 ~~~~ , 2010

17

18   ELIZABETH RODRIGUEZ

19   By _____

20   Dated: _____, 2010

21

22   JOHN CALLAGY AS TRUSTEE OF THE FREDERIKSEN CHILDREN'S

23   TRUST UNDER TRUST AGREEMENT DATED FEBRUARY 20, 1985

24   By _____

25   Dated: _____, 2010

26   ///

27   ///

28   ///

---

30
**CONSENT ORDER**

Exhibit 69
Page 1507

1  ROBERTSON'S READY MIX, LTD.

2  By _____

3  Its _____

4  Dated: _____, 2010

5

6  RRM PROPERTIES, LTD.

7  By _____

8  Its _____

9  Dated: _____, 2010

10  EDWARD STOUT

11  By _____

12  Dated: _____, 2010

13

14  EDWARD STOUT, AS THE TRUSTEE OF THE STOUT-RODRIGUEZ TRUST

15  By _____

16  Dated: _____, 2010

17

18  ELIZABETH RODRIGUEZ

19  By *Elizabeth Rodriguez*

20  Dated: 7-29 _____, 2010

21

22  JOHN CALLAGY AS TRUSTEE OF THE FREDERIKSEN CHILDREN'S

23  TRUST UNDER TRUST AGREEMENT DATED FEBRUARY 20, 1985

24  By _____

25  Dated: _____, 2010

26  ///

27  ///

28  ///

30

**CONSENT ORDER**

Exhibit 69
Page 1508

1  ROBERTSON'S READY MIX, LTD.

2  By _____

3  Its _____

4  Dated: _____, 2010

5

6  RRM PROPERTIES, LTD.

7  By _____

8  Its _____

9  Dated: _____, 2010

10  EDWARD STOUT

11  By _____

12  Dated: _____, 2010

13

14  EDWARD STOUT, AS THE TRUSTEE OF THE STOUT-RODRIGUEZ TRUST

15  By _____

16  Dated: _____, 2010

17

18  ELIZABETH RODRIGUEZ

19  By _____

20  Dated: _____, 2010

21

22  JOHN CALLAGY AS TRUSTEE OF THE FREDERIKSEN CHILDREN'S

23  TRUST UNDER TRUST AGREEMENT DATED FEBRUARY 20, 1985

24  By _John Callagy_

25  Dated: _July 27_, 2010

26  ///

27  ///

28  ///

Exhibit 69
Page 1509

1   JOHN CALLAGY AS TRUSTEE OF THE E.F. SCHULZ TRUST,

2   By _John Callagy_

3   Dated: _July 27_, 2010

4

5   LINDA FREDERIKSEN

6   By _____

7   Dated: _____, 2010

8

9   LINDA FREDERIKSEN AS TRUSTEE OF THE WALTER M. POINTON

10   TRUST DATED 11/19/91

11   By _____

12   Dated: _____, 2010

13

14   LINDA FREDERIKSEN AS TRUSTEE OF THE MICHELLE ANN POINTON

15   TRUST UNDER TRUST AGREEMENT DATED FEBRUARY 15, 1985

16   Its _____

17   Dated: _____, 2010

18

19   LINDA FREDERICKSEN AS TRUSTEE OF THE E.F. SCHULZ TRUST,

20   By _____

21   Its _____

22   Dated: _____, 2010

23

24   MICHELLE FARRIS

25   By _____

26   Dated: _____, 2010

27   ///

28   ///

Exhibit 69
Page 1510

1  JOHN CALLAGY AS TRUSTEE OF THE E.F. SCHULZ TRUST,

2  By _____

3  Dated: _____, 2010

4

5  LINDA FREDERIKSEN

6  By *Linda Frederiksen*

7  Dated: July 27, 2010

8

9  LINDA FREDERIKSEN AS TRUSTEE OF THE WALTER M. POINTON

10  TRUST DATED 11/19/91

11  By *Linda Frederiksen*

12  Dated: July 27, 2010

13

14  LINDA FREDERIKSEN AS TRUSTEE OF THE MICHELLE ANN POINTON

15  TRUST UNDER TRUST AGREEMENT DATED FEBRUARY 15, 1985

16  Its *Linda Frederiksen* TTEE

17  Dated: July 27, 2010

18

19  LINDA FREDERIKSEN AS TRUSTEE OF THE E.F. SCHULZ TRUST,

20  By *Linda Frederiksen*, TTEE

21  Its _____

22  Dated: July 27, 2010

23

24  MICHELLE FARRIS

25  By _____

26  Dated: _____, 2010

27  ///

28  ///

31

CONSENT ORDER

Exhibit 69
Page 1511

1  JOHN CALLAGY AS TRUSTEE OF THE E.F. SCHULZ TRUST,

2  By _____

3  Dated: _____, 2010

4

5  LINDA FREDERIKSEN

6  By _____

7  Dated: _____, 2010

8

9  LINDA FREDERIKSEN AS TRUSTEE OF THE WALTER M. POINTON

10  TRUST DATED 11/19/91

11  By _____

12  Dated: _____, 2010

13.

14  LINDA FREDERIKSEN AS TRUSTEE OF THE MICHELLE ANN POINTON

15  TRUST UNDER TRUST AGREEMENT DATED FEBRUARY 15, 1985

16  Its _____

17  Dated: _____, 2010

18

19  LINDA FREDERICKSEN AS TRUSTEE OF THE E.F. SCHULZ TRUST,

20  By _____

21  Its _____

22  Dated: _____, 2010

23

24  MICHELLE FARRIS

25  By _____

26  Dated: 7-27, 2010

27  ///

28  ///

---

31
**CONSENT ORDER**

Exhibit 69
Page 1512

1  ANTHONY RODRIGUEZ
2  By _Anthony Rodriguez_
3  Dated: _7-29_____, 2010
4
5  JOHN CALLAGY
6  By _____
7  Dated: _____, 2010
8
9  MARY CALLAGY
10 By _____
11 Dated: _____, 2010
12
13 JEANINE ELZIE
14 By _____
15 Dated: _____, 2010
16
17 STEPHEN CALLAGY
18 By _____
19 Dated: _____, 2010
20
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

Exhibit 69
Page 1513

1  ANTHONY RODRIGUEZ
2  By _____
3  Dated: _____, 2010
4
5  JOHN CALLAGY
6  By _____
7  Dated: July 27 , 2010
8
9  MARY CALLAGY
10  By _____
11  Dated: _____, 2010
12
13  JEANINE ELZIE
14  By _____
15  Dated: _____, 2010
16
17  STEPHEN CALLAGY
18  By _____
19  Dated: _____, 2010
20
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

Exhibit 69
Page 1514

1  ANTHONY RODRIGUEZ

2  By _____

3  Dated: _____, 2010

4

5  JOHN CALLAGY

6  By _____

7  Dated: _____, 2010

8

9  MARY CALLAGY

10  By _Mary Callagy_

11  Dated: _8/16_, 2010

12

13  JEANINE ELZIE

14  By _____

15  Dated: _____, 2010

16

17  STEPHEN CALLAGY

18  By _____

19  Dated: _____, 2010

20

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Exhibit 69
Page 1515

1   ANTHONY RODRIGUEZ

2   By _____

3   Dated: _____, 2010

4

5   JOHN CALLAGY

6   By _____

7   Dated: _____, 2010

8

9   MARY CALLAGY

10  By _____

11  Dated: _____, 2010

12

13  JEANINE ELZIE

14  By *Jeanine Elzie*

15  Dated: *July 27*, 2010

16

17  STEPHEN CALLAGY

18  By _____

19  Dated: _____, 2010

20

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

---

32

**CONSENT ORDER**

Exhibit 69
Page 1516

ANTHONY RODRIGUEZ

By _____

Dated: _____, 2010

JOHN CALLAGY

By _____

Dated: _____, 2010

MARY CALLAGY

By _____

Dated: _____, 2010

JEANINE ELZIE

By _____

Dated: _____, 2010

STEPHEN CALLAGY

By _____

Dated: _July 28_, 2010

///
///
///
///
///
///
///
///

32
**CONSENT ORDER**

Exhibit 69
Page 1517

1

## ATTORNEY'S CERTIFICATE

2

3      I, the undersigned, am a member of the State Bar of California and am the

4    attorney of record for COUNTY OF SAN BERNARDINO in the foregoing

5    Settlement Agreement. I have read the foregoing Settlement Agreement and have

6    advised my client as to the same.

7    DATED: __8/27/10__                    By: _____

8

9

10                    ## ATTORNEY'S CERTIFICATE

11

12      We, the undersigned, are members of the State Bar of California and are the

13    attorneys of record for CITY OF RIALTO in the foregoing Settlement Agreement.

14    We have read the foregoing Settlement Agreement and have advised our clients as

15    to the same.

16    DATED: _____          By: _____

17

18                    ## ATTORNEY'S CERTIFICATE

19

20      We, the undersigned, are members of the State Bar of California and are the

21    attorneys of record for RIALTO UTILITY AUTHORITY in the foregoing

22    Settlement Agreement. We have read the foregoing Settlement Agreement and

23    have advised our clients as to the same.

24    DATED: _____          By _____

25    ///

26    ///

27    ///

28    ///

Exhibit 69
Page 1518

**ATTORNEY'S CERTIFICATE**

I, the undersigned, am a member of the State Bar of California and am the attorney of record for COUNTY OF SAN BERNARDINO in the foregoing Settlement Agreement. I have read the foregoing Settlement Agreement and have advised my client as to the same.

DATED: _____        By: _____

**ATTORNEY'S CERTIFICATE**

We, the undersigned, are members of the State Bar of California and are the attorneys of record for CITY OF RIALTO in the foregoing Settlement Agreement. We have read the foregoing Settlement Agreement and have advised our clients as to the same.        PILLSBURY WINTHROP SHAW PITTMAN LLP

DATED: _JULY 21 2010_        By: _____

**ATTORNEY'S CERTIFICATE**

We, the undersigned, are members of the State Bar of California and are the attorneys of record for RIALTO UTILITY AUTHORITY in the foregoing Settlement Agreement. We have read the foregoing Settlement Agreement and have advised our clients as to the same.        PILLSBURY WINTHROP SHAW PITTMAN LLP

DATED: _JULY 21 2010_        By _____

///
///
///
///

Exhibit 69
Page 1519

**ATTORNEY'S CERTIFICATE**

We, the undersigned, are members of the State Bar of California and are the attorneys of record for the CITY OF COLTON in the foregoing Settlement Agreement. We have read the foregoing Settlement Agreement and have advised our clients as to the same.

DATED: 8|5|10                    By: Danielle See

**ATTORNEY'S CERTIFICATE**

We, the undersigned, are members of the State Bar of California and are the attorneys of record for EDWARD STOUT, EDWARD STOUT AS THE TRUSTEE OF THE STOUT-RODRIGUEZ TRUST, ELIZABETH RODRIGUEZ, JOHN CALLAGY AS TRUSTEE OF THE FREDERIKSEN CHILDREN'S TRUST UNDER TRUST AGREEMENT DATED FEBRUARY 20, 1985, JOHN CALLAGY AS TRUSTEE OF THE E.F. SCHULZ TRUST, LINDA FREDERIKSEN AS TRUSTEE OF THE WALTER M. POINTON TRUST DATED 11/19/91, LINDA FREDERIKSEN AS TRUSTEE OF THE MICHELLE ANN POINTON TRUST UNDER TRUST AGREEMENT DATED FEBRUARY 15, 1985, LINDA FREDERICKSEN AS TRUSTEE OF THE E.F. SCHULZ TRUST, JOHN CALLAGY, MARY CALLAGY, JEANINE ELZIE, STEPHEN CALLAGY in the foregoing Settlement Agreement. We have read the foregoing Settlement Agreement and have advised our clients as to the same.

DATED: _____     By: _____

///
///
///

---

**34**
**CONSENT ORDER**

Exhibit 69
Page 1520

**ATTORNEY'S CERTIFICATE**

We, the undersigned, are members of the State Bar of California and are the attorneys of record for the CITY OF COLTON in the foregoing Settlement Agreement. We have read the foregoing Settlement Agreement and have advised our clients as to the same.

DATED:                              By: _____

**ATTORNEY'S CERTIFICATE**

We, the undersigned, are members of the State Bar of California and are the attorneys of record for EDWARD STOUT, EDWARD STOUT AS THE TRUSTEE OF THE STOUT-RODRIGUEZ TRUST, ELIZABETH RODRIGUEZ, JOHN CALLAGY AS TRUSTEE OF THE FREDERIKSEN CHILDREN'S TRUST UNDER TRUST AGREEMENT DATED FEBRUARY 20, 1985, JOHN CALLAGY AS TRUSTEE OF THE E.F. SCHULZ TRUST, LINDA FREDERIKSEN AS TRUSTEE OF THE WALTER M. POINTON TRUST DATED 11/19/91, LINDA FREDERIKSEN AS TRUSTEE OF THE MICHELLE ANN POINTON TRUST UNDER TRUST AGREEMENT DATED FEBRUARY 15, 1985, LINDA FREDERICKSEN AS TRUSTEE OF THE E.F. SCHULZ TRUST, JOHN CALLAGY, MARY CALLAGY, JEANINE ELZIE, STEPHEN CALLAGY in the foregoing Settlement Agreement. We have read the foregoing Settlement Agreement and have advised our clients as to the same.

DATED: _____       By:    _____

///
///
///

Exhibit 69
Page 1521

## ATTORNEY'S CERTIFICATE

We, the undersigned, are members of the State Bar of California and are the attorneys of record for ROBERTSON'S READY MIX, INC., ROBERTSON'S READY MIX, LTD., and RRM PROPERTIES, LTD. in the foregoing Settlement Agreement. We have read the foregoing Settlement Agreement and have advised our client as to the same.

DATED: 8/27/10          By: _____

## FINAL JUDGMENT

This Consent Order and its appendices constitute a final, complete, and exclusive agreement and understanding among the parties with respect to the settlement embodied in the Consent Order. Upon approval and entry of this Consent Order by the Court, this Consent Order shall constitute a final judgment between and among Settling Defendants (except as expressly reserved above). The Court finds that there is no just reason for delay and therefore enters this order as a final judgment under Fed. R. Civ. P. 54 and 58. The Court retains jurisdiction to oversee implementation of the Settlement Agreement, and to issue further orders in connection with this Consent Order, including but not limited to Exhibit D (Good Faith and Dismissal Order).

SO ORDERED THIS ___ DAY OF _____, 2010.

_____
Hon. Philip S. Gutierrez

Exhibit 69
Page 1522

1  |  **ATTORNEY'S CERTIFICATE**

2

3  We, the undersigned, are members of the State Bar of California and are the

4  attorneys of record for ROBERTSON'S READY MIX, INC., ROBERTSON'S

5  READY MIX, LTD., and RRM PROPERTIES, LTD. in the foregoing Settlement

6  Agreement. We have read the foregoing Settlement Agreement and have advised

7  our client as to the same.

8  DATED: _____        By: _____

9

10

11  |  **FINAL JUDGMENT**

12

13  This Consent Order and its appendices constitute a final, complete, and exclusive

14  agreement and understanding among the parties with respect to the settlement

15  embodied in the Consent Order. Upon approval and entry of this Consent Order

16  by the Court, this Consent Order shall constitute a final judgment between and

17  among Settling Defendants (except as expressly reserved above). The Court finds

18  that there is no just reason for delay and therefore enters this order as a final

19  judgment under Fed. R. Civ. P. 54 and 58. The Court retains jurisdiction to

20  oversee implementation of the Settlement Agreement, and to issue further orders

21  in connection with this Consent Order, including but not limited to

22  Exhibit D (Good Faith and Dismissal Order).

23                                                           2012

24  SO ORDERED THIS 31st DAY OF  January , ~~2010~~

25

26                                          _____

27                                          Hon. Philip S. Gutierrez

28

---

35
**CONSENT ORDER**

Exhibit 69
Page 1523