IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
BRADLEY R. O'BRIEN (CA Bar #189425)
MICHAEL C. AUGUSTINI (DC Bar #452526)
MARK A. RIGAU (CA Bar #223610)
Environment and Natural Resources Division
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California  94105
Telephone:   (415) 744-6484
Facsimile:   (415) 744-6476
brad.obrien@usdoj.gov

Attorneys for UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| CITY OF COLTON, a California municipal corporation, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN PROMOTIONAL EVENTS, INC., et al. <br><br> Defendants. <br> AND CONSOLIDATED ACTIONS | CASE NO. ED CV 09-01864 PSG (SSx) <br><br> [Consolidated with Case Nos. CV 09-6630 PSG (SSx), CV 09-06632 PSG (SSx), CV 09-07501 PSG (SSx), CV 09-07508 PSG (SSx), CV 10-824 PSG (SSx) and CV 05-01479 PSG (SSx)] <br><br> **CONSENT DECREE** |

# **TABLE OF CONTENTS**

I.      BACKGROUND ................................................................ 1

II.     JURISDICTION ................................................................ 7

III.    PARTIES BOUND ............................................................. 8

IV.     DEFINITIONS .................................................................. 9

V.      GENERAL PROVISIONS ................................................. 24

VI.     PERFORMANCE OF THE WORK BY SETTLING WORK

        DEFENDANT ................................................................. 27

VII.    REMEDY REVIEW ......................................................... 39

VIII.   QUALITY ASSURANCE, SAMPLING, AND DATA

        ANALYSIS ..................................................................... 40

IX.     ACCESS .......................................................................... 43

X.      REPORTING REQUIREMENTS .................................... 48

XI.     EPA APPROVAL OF PLANS, REPORTS, AND OTHER

        DELIVERABLES ............................................................ 51

XII.    PROJECT COORDINATORS ......................................... 53

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

XIII.    PERFORMANCE GUARANTEE ...................................................... 55

XIV.    CERTIFICATION OF COMPLETION OF THE WORK ................ 66

XV.    EMERGENCY RESPONSE .................................................................. 72

XVI.    ESTABLISHMENT OF ACCOUNTS

            AND PAYMENTS ........................................................................... 73

XVII.    INDEMNIFICATION AND INSURANCE ...................................... 98

XVIII.    FORCE MAJEURE ........................................................................ 101

XIX.    DISPUTE RESOLUTION ................................................................ 104

XX.    STIPULATED PENALTIES ............................................................ 110

XXI.    COVENANTS, RELEASES, AND RESERVATIONS

            OF RIGHTS .................................................................................. 118

XXII.    EFFECT OF SETTLEMENT CONTRIBUTION ........................... 146

XXIII.    RETENTION OF RECORDS .......................................................... 150

XXIV.    ACCESS TO INFORMATION ....................................................... 152

XXV.    NOTICES AND SUBMISSIONS .................................................... 154

XXVI.    RETENTION OF JURISDICTION ................................................. 157

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

XXVII.    APPENDICES ........................................................................ 158

XXVIII.  COMMUNITY RELATIONS ............................................... 158

XXIX.    MODIFICATION ............................................................... 159

XXX.     LODGING AND OPPORTUNITY FOR PUBLIC COMMENT .... 160

XXXI.    SIGNATORIES/SERVICE ................................................ 160

XXXII.   FINAL JUDGMENT ......................................................... 161

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

# I.   BACKGROUND

A.     The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed, on February 4, 2010, a complaint (Case No. CV 10-0824 PSG (SSx)) pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607 and Section 7003 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6973.  Goodrich Corporation filed, on September 11, 2009, a complaint (CV 09-06630 PSG (SSx)) under CERCLA and state law.  These cases were consolidated by orders filed on January 20, 2010 and June 3, 2010.

B.     The United States in its complaint seeks, *inter alia*:  (1) reimbursement of costs incurred for response actions at the Locust Avenue Superfund Site in Rialto, California, together with accrued Interest; and (2) performance of response actions by the defendants at the Locust Avenue Superfund Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").  In addition, Goodrich Corporation has asserted claims against the United States pursuant to Sections 106, 107, and 113 of CERCLA, 42 U.S.C. §§ 9606, 9607, and 9613.  Goodrich Corporation in its complaint seeks reimbursement of costs incurred by it for response actions taken in the Rialto

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Ammunition Backup Storage Point ("RABSP") and declaratory relief for future response costs.  The United States Department of Defense also has asserted CERCLA contribution claims against Goodrich in the action.

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of California (the "State") on December 9, 2010, of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the remedial design and remedial action for the Locust Avenue Superfund Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the U.S. Fish and Wildlife Service and the California Department of Fish and Game on November 15, 2010, of negotiations with PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustees to participate in the negotiation of this Consent Decree.

E.      Goodrich Corporation ("Settling Work Defendant"), federal agencies ("Settling Federal Agencies"), and United Technologies Corporation ("UTC") have entered into this Consent Decree and do not admit any liability in the Consolidated Federal Action arising out of the transactions or occurrences alleged

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

in the complaints, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Locust Avenue Superfund Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.  Settling Work Defendant and Settling Federal Agencies do not admit any liability arising out of the transactions or occurrences alleged in any claim or counterclaim asserted by any party in the Consolidated Federal Action.

F.    The United States' complaint, this Consent Decree, and the history of the Locust Avenue Superfund Site, exist within a larger context of litigation and a larger context of activities in and around the Locust Avenue Superfund Site, as follows:

(1)    During and immediately after World War II, certain United States agencies owned a tract known as the RABSP in San Bernardino County, California;

(2)    The RABSP sits atop the Rialto-Colton Groundwater Basin ("Rialto Basin");

(3)    After World War II, the United States agencies sold the RABSP property off in different parcels, including a 160 acre parcel ("160-Acre Area") bounded by Casa Grande Park Avenue on the north, Locust Avenue on the east, an extension of Alder Avenue on the west, and an extension of Summit Avenue on the south.  Settling Work Defendant and other parties to the Consolidated Federal

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Action owned and/or operated businesses within the area formerly occupied by the RABSP;

(4)    The United States on behalf of EPA, asserts that there are two source areas within the area formerly occupied by the RABSP (the "RABSP Area") from which contaminated groundwater is emanating.  These two source areas are known as the West Side Area and the 160-Acre Area;

(5)    The West Side Area is in the western portion of the former RABSP Area.  For purposes of this Consent Decree, it consists of property currently owned by San Bernardino County, otherwise known as the Mid Valley Sanitary Landfill ("County Property"), and the Stonehurst Property, which is located adjacent to the County Property;

(6)    The State of California's Water Resources Control Board and its Santa Ana Regional Water Quality Control Board have assumed jurisdiction over, among other things, the cleanup of the County Property and the Stonehurst Property, and San Bernardino County has assumed responsibility for implementing cleanup of releases from the County Property pursuant to a Cleanup and Abatement Order, Regional Water Quality Control Board Order No. R8-2003-0013, as amended by R8-2004-0072;

(7)    Certain claims in the Consolidated Federal Action are the subject of consent decrees entered in the Central District of California under case

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

number ED CV 09-1864 (SSx) (Docket Nos. 772, 1192, and 1258); and

(8)    The 160-Acre Area is in the eastern portion of the former RABSP and is the source area encompassed in the Locust Avenue Superfund Site.

G.    In response to a release or a substantial threat of a release of a hazardous substance(s) at or from the B. F. Goodrich Superfund Site, EPA commenced on January 15, 2009, a Remedial Investigation ("RI") and Feasibility Study ("FS") for the B.F. Goodrich Superfund Site pursuant to 40 C.F.R. § 300.430.  At that time, the Locust Avenue Superfund Site was known as the B.F. Goodrich Superfund Site.  EPA shall propose a rulemaking in spring 2013 that will propose to change the name of the site to the Locust Avenue Superfund Site.  For purposes of this Consent Decree, the Parties and UTC will identify this site as the Locust Avenue Superfund Site.

H.    Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Locust Avenue Superfund Site on the National Priorities List, set forth at 40 C.F.R. Part 300, by publication in the Federal Register on September 23, 2009, 74 Fed. Reg. 48412.  By placing the Locust Avenue Superfund Site on the National Priorities List, U.S. EPA assumed jurisdiction over its cleanup.

I.    EPA completed an RI/FS Report for the Locust Avenue Superfund Site on January 25, 2010.  The decision by EPA on a first remedial action to be implemented at the Locust Avenue Superfund Site is embodied in an Interim

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Record of Decision, executed on September 30, 2010, on which the State has given its concurrence.

J.  On July 26, 2012, Goodrich Corporation was acquired by United Technologies Corporation.

K.  EPA is currently performing an additional RI to determine whether any further remedial action will be necessary at the Locust Avenue Superfund Site beyond those remedial actions specified in the 2010 ROD and, if so, the extent of such further remedial action.

L.  Based on the information presently available to EPA, EPA believes that the work required by this Consent Decree will be properly and promptly conducted by Settling Work Defendant if conducted in accordance with the requirements of this Consent Decree.  EPA currently intends to issue one (1) OU2/OU3 ROD as defined in Section IV (Definitions).  However, it is within EPA's discretion to issue a separate ROD for OU2 and a separate ROD for OU3.

M.  In the event the OU2/OU3 ROD selects a remedy that requires the participation of a drinking water purveyor, EPA will actively assist Settling Work Defendant in obtaining access, water rights, and the cooperation from the relevant drinking water purveyor.

N.  Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the remedy set forth in the OU2/OU3 ROD and the work, if any, to be

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

- 6 -

performed by Settling Work Defendant, shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

O.     The Parties and UTC recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties and UTC in good faith, that implementation of this Consent Decree will expedite the cleanup of the Locust Avenue Superfund Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.     JURISDICTION

1.     This Court has jurisdiction over the subject matter of this Consolidated Federal Action pursuant to 28 U.S.C. §§ 1331, 1345, and 1367 and to 42 U.S.C. §§ 9607, 9613(b), and 6973.  The claims and counterclaims brought in accordance with state law arise from the same common nucleus of operative facts as the claims under federal law.  This Court also has personal jurisdiction over Settling Work Defendant and the United States on behalf of Settling Federal Agencies.  The Consolidated Federal Action is properly venued in this Court. Settling Work Defendant, UTC, and the United States on behalf of Settling Federal

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Agencies shall not challenge the terms of this Consent Decree or this Court's

jurisdiction to enter and enforce this Consent Decree.

### III.    PARTIES BOUND

2.    This Consent Decree applies to and is binding upon the United States,

on behalf of EPA and Settling Federal Agencies, Settling Work Defendant, UTC,

and upon their heirs, successors, and assigns.  LGEs, as defined in Section IV

(Definitions), are joining this Consent Decree solely for the purpose of providing

and receiving covenants not to sue and/or releases; therefore, solely Paragraphs

105 – 108 and 125 of this Consent Decree apply to and are binding upon LGEs.

Any change in ownership or corporate status of Settling Work Defendant

including, but not limited to, any transfer of assets or real or personal property,

shall in no way alter Settling Work Defendant's responsibilities under this Consent

Decree.

3.    Settling Work Defendant shall provide a copy of this Consent Decree

to each contractor hired to perform the Work required by this Consent Decree and

to each person representing Settling Work Defendant with respect to the Locust

Avenue Superfund Site or the Work, and whose annual fee or invoices exceed

twenty thousand dollars ($20,000) in a given calendar year, and shall condition all

contracts entered into hereunder upon performance of the Work in conformity with

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

the terms of this Consent Decree.  Settling Work Defendant or its contractor shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree, and whose annual fee or invoices exceed twenty thousand dollars ($20,000) in a given calendar year. Settling Work Defendant shall nonetheless be responsible for ensuring that its contractors and subcontractors perform the Work in accordance with the terms of this Consent Decree.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Work Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.    DEFINITIONS

4.      Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply solely for purposes of this Consent Decree:

"160-Acre Area" shall mean the area located in San Bernardino County that is bounded by West Casa Grande Drive on the north, Locust Avenue on the east,

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Alder Avenue on the west, and an extension of Summit Avenue on the south.  The 160-Acre Area is depicted generally on the map included in Appendix A.

"2010 Record of Decision" or "2010 ROD" shall mean the document entitled "USEPA Superfund Interim Action Record of Decision" relating to the Source Area Operable Unit, Locust Avenue Superfund Site, San Bernardino County, California, EPA ID:  CAN000905945, dated September 30, 2010, signed by the Assistant Director, Superfund Division, EPA Region 9, and all attachments thereto.

"Administrative Order on Consent No. 2013-01" or "AOC" shall mean the AOC that requires Settling Work Defendant to complete the RI/FS for OU2 (groundwater only) and OU3 (soil and/or vadose zone only).

"Basin Contaminants" shall mean any type of perchlorate; trichloroethylene ("TCE"); carbon tetrachloride; chloroform; or methylene chloride; including any breakdown or "daughter" products of the foregoing.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq*.

"Certification of Completion of the Remedial Action" shall mean the certification of completion of the remedial action associated with the OU2/OU3 ROD for the Locust Avenue Superfund Site.

"Colton" shall mean the City of Colton and any of its present, former, or

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

future subdivisions, departments, commissions, agencies, or instrumentalities.

"Consent Decree" or "Decree" shall mean this Consent Decree and all Appendices attached hereto listed in Section XXVII (Appendices).  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Consolidated Federal Action" shall mean *City of Colton v. American Promotional Events, Inc., et al.*, Case No. ED CV 09-01864 PSG (SSx); *Goodrich Corporation v. Chung Ming Wong, et al.*, Case No. CV 09-6630 PSG (SSx); *County of San Bernardino, et al., v. Tung Chun Co., et al.*, Case No. CV 09-06632 PSG (SSx); *City of Rialto and Rialto Utility Authority v. United States Department of Defense, et al.*, Case No. CV 09-7501 PSG (SSx); and *Emhart Industries, Inc. v. American Promotional Events, Inc.-West, et al.*, Case No. CV 09-07508 PSG (SSx), all of which were consolidated pursuant to an order issued on January 20, 2010; *United States of America v. Goodrich Corporation, et al.*, Case No. 10-00824 PSG (SSx), which was consolidated with the previously consolidated cases pursuant to an order issued on June 3, 2010; and *City of Colton v. American Promotional Events, Inc., et al.*, Case No. ED CV 05-01479 PSG (SSx), which was consolidated with the previously consolidated cases pursuant to an order issued on March 24, 2011.

"Construction of the Remedial Action" shall mean all activities Settling

Work Defendant is required to perform under the Consent Decree to implement the OU2/OU3 ROD, in accordance with the SOW, the Remedial Design and Remedial Action Work Plans, and other plans approved by EPA, and excluding performance of the Remedial Design, start-up, O&M, and the activities required under Section XXIII (Retention of Records).

"County" shall mean the County of San Bernardino and any of its present, former, or future subdivisions, departments, commissions, agencies, or instrumentalities.

"County Property" shall mean the property known as the Mid Valley Sanitary Landfill, which is currently owned by the County of San Bernardino, including those areas currently leased to Robertson's Ready Mix.  The County Property is bounded by Summit Avenue on the north, generally by Alder Avenue on the east (until Alder Avenue terminates at or within the Robertson's Ready Mix leasehold), generally by the municipal boundaries of the Cities of Fontana and Rialto on the west except for a strip of land located in the City of Fontana, and by Casmalia Street on the south.  The County Property is depicted generally on the map included in Appendix A.

"Day" shall mean a calendar day unless expressly stated to be a working day.  The term "working day" shall mean a day other than a Saturday, Sunday, or federal holiday.  In computing any period of time under this Consent Decree, when

the last day falls on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall be the earlier of the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Existing Settling Parties" shall mean the parties identified on Appendix B.

"Federal Contract" means any prime contract, subcontract, or any other agreement transferring value between a party to this Consent Decree and a department, agency, or instrumentality of the United States, including but not limited to, contracts for goods or services, grants, and cooperative agreements. The term "Federal Contract" does not include this Consent Decree.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs after the Effective Date of this Consent Decree in reviewing or developing plans, reports, and other deliverables submitted pursuant to this Consent Decree, or otherwise

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Section VII (Remedy Review), Section IX (Access) (including, but not limited to, the cost of attorney time and any monies paid to secure access including, but not limited to, the amount of just compensation), Section XV (Emergency Response), Paragraph 49 (Funding for Work Takeover), and Section XXVIII (Community Relations).  Future Response Costs do not include EPA oversight costs for the RI/FS, which costs shall be borne by Settling Work Defendant as provided for by the AOC.

"Future Settling Party" shall mean the Estate of Hescox; Ken Thompson, Inc.; General Dynamics; or other parties, or these parties' insurers, in the Consolidated Federal Action that have not entered into a lodged Consent Decree with the United States as of December 31, 2012, as part of the Consolidated Federal Action.

"Goodrich Corporation" shall mean Goodrich Corporation and its officers, directors and employees acting in their official capacity.

"Institutional Controls" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that:  (a) limit land, water, and/or resource use to minimize the potential for human exposure to Waste Material at or in connection with the Locust Avenue

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Superfund Site; (b) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the Remedial Action; and/or (c) provide information intended to modify or guide human behavior at or in connection with the Locust Avenue Superfund Site.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.

"Local Government Entities" or "LGEs" shall mean the County, Rialto, and Colton, which includes their past and current officers and employees acting in the course and scope of their employment.

"Locust Avenue Superfund Site" also heretofore known as the "B.F. Goodrich Superfund Site," shall mean the 160-Acre Area and all areas where Basin Contaminants or other contaminants of concern that are identified in the OU2/OU3 ROD that originate from the 160-Acre Area come to be located.

"MSW" shall mean municipal solid waste material:  (a) generated by a household (including a single or multifamily residence); or (b) generated by a commercial, industrial, or institutional entity, to the extent that the waste material:

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

(1) is essentially the same as waste normally generated by a household; (2) is collected and disposed of with other municipal solid waste as part of normal municipal solid waste collection services; and (3) contains a relative quantity of hazardous substances no greater than the relative quantity of hazardous substances contained in waste material generated by a typical single-family household.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operable Unit No. 1" or "OU1" shall mean the operable unit at the Locust Avenue Superfund Site that addresses groundwater contamination within the Target Area.

"Operable Unit No. 2" or "OU2" shall mean the operable unit at the Locust Avenue Superfund Site that addresses groundwater contaminated by Basin Contaminants or other contaminants of concern that are identified in the OU2/OU3 ROD at the Locust Avenue Superfund Site downgradient of the Target Area.  OU2 remedial activities do not include groundwater within the Target Area.

"Operable Unit No. 3" or "OU3" shall mean the operable unit at the Locust Avenue Superfund Site that addresses Basin Contaminants or other contaminants of concern that are identified in the OU2/OU3 ROD for the soils and soil vapor in

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

the vadose zone at the 160-Acre Area.

"Operation and Maintenance" or "O&M" shall mean all activities required to operate and maintain the systems constructed to implement the Remedial Action as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to Section VI (Performance of the Work by Settling Work Defendant) and the SOW.

"OU1 Work Decree" shall mean the Consent Decree that will implement the OU1 work, as lodged with the Court on December 4, 2012.

"OU2/OU3 Locust Avenue Superfund Site Disbursement Special Account" or "OU2/OU3 Disbursement Special Account" shall be the account described in Paragraph 62.

"OU2/OU3 Locust Avenue Superfund Site Special Account" shall mean the special account, within the EPA Hazardous Substances Superfund, established for the Locust Avenue Superfund Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"OU2/OU3 Record of Decision" or "OU2/OU3 ROD" shall mean the Record of Decision(s) (and all attachments) for the Locust Avenue Superfund Site that will be signed by EPA in the future, and after the date of lodging this Consent Decree.  EPA currently intends to issue one (1) OU2/OU3 ROD; however, it is within EPA's discretion to issue a separate ROD for OU2 and a separate ROD for

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

OU3.

"Paragraph" shall mean a portion of this Consent Decree identified by an
Arabic numeral or an upper or lower case letter.

"Party" and/or "Parties" shall mean the United States and Settling Work
Defendant.

"Past Response Costs" shall mean all costs, including, but not limited to,
direct and indirect costs, that the United States paid (by EPA or by the Department
of Justice in representing EPA) at or in connection with the Locust Avenue
Superfund Site through the Effective Date this Consent Decree, plus Interest on all
such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.
Past Response Costs shall not include RI/FS oversight costs incurred by EPA
under the AOC, which shall be borne by Settling Work Defendant pursuant to the
AOC.

"Performance Standards" shall mean the cleanup standards, the Applicable
or Relevant and Appropriate Requirements ("ARARs"), and other measures of
achievement of the goals of the Remedial Action, as set forth in OU2/OU3 ROD
and any modified standards established pursuant to this Consent Decree.  Settling
Work Defendant will continue to implement the OU2 Work until Settling Work
Defendant can demonstrate the following:  (1) the concentrations of the Basin
Contaminants and/or contaminants of concern identified in the OU2/OU3 ROD, in

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

groundwater at monitoring locations to be determined, do not exceed state or

federal MCLs or other groundwater cleanup standards identified in the OU2/OU3

ROD; and (2) such concentrations are not reasonably expected, based on sound and

generally accepted scientific principles, to increase above the selected cleanup

standards after the Work ceases.  Any Work required for OU3 will be implemented

in accordance with the OU2/OU3 ROD and the Performance Standards identified

for OU3.

"Plaintiff" shall mean the United States on behalf of EPA.

"Proprietary Controls" shall mean easements or covenants running with the

land that:  (a) limit land, water, or resource use and/or provide access rights, and

(b) are created pursuant to common law or statutory law by an instrument that is

recorded by the owner in the appropriate land records office.

"RABSP Area" shall mean the approximately 2,800 acre parcel of land

originally containing the former Rialto Ammunition Backup Storage Point, located

in San Bernardino County, California.  The 160-Acre Area is within the

geographic area of the RABSP Area.  The RABSP Area is depicted, generally, in

the map identified in Appendix A.

"RABSP Site" shall mean the RABSP Area and all areas where

contamination from the RABSP Area comes to be located.

"Remedial Action" or "RA" shall mean all activities Settling Work

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Defendant is required to perform under this Consent Decree to implement the OU2/OU3 ROD in accordance with the SOW, the final approved remedial design submission, the approved Remedial Action Work Plan, and other plans approved by EPA, including the implementation of Institutional Controls, until the Performance Standards are met, and excluding performance of the Remedial Design, and the activities required under Section XXIII (Retention of Records). Remedial Action includes Startup Activities.  Remedial Action does not include activities and obligations that are being performed under the OU1 Work Decree.

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 13 and approved by EPA, and any modifications or addendums thereto.

"Remedial Design" or "RD" shall mean those activities to be undertaken by Settling Work Defendant to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 12 (Remedial Design and Remedial Action Planning) and approved by EPA, and any modifications or addendums thereto authorized by this Consent Decree.

"Resource Conservation and Recovery Act" or "RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901, *et seq.*

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

"Rialto" shall mean the City of Rialto and any of its present, former, or future subdivisions, departments, commissions, agencies, or instrumentalities, including, but not limited to, the Rialto Utility Authority and the Rialto Redevelopment Agency.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Federal Agencies" shall mean any federal agency, department, or instrumentality named or alleged to be liable for contamination in the Consolidated Federal Action, including but not limited to the United States Department of the Army and United States Army Corps of Engineers, the United States Department of the Navy, the United States Department of the Air Force, the United States Department of Defense, the Farm Credit Administration, the United States Customs and Border Protection, the National Guard Bureau, the National Aeronautics and Space Administration, the United States Department of Energy, Lawrence Livermore National Laboratory, the United States Forest Service, and any other federal entity that is alleged to have transported, disposed of, or released any Waste Material within the area encompassed by the RABSP Area, as depicted in Appendix A, and any of their predecessors or successors.

"Settling Work Defendant" shall mean Goodrich Corporation and its officers, directors, and employees acting in their official capacities.

"Startup Activities" shall mean those activities performed by Settling Work Defendant after the completion of Construction of the Remedial Action, to make the remedy "Operational and Functional." The remedy shall be deemed Operational and Functional when EPA determines that the remedy is functioning properly and is performing as designed.

"State" shall mean the State of California.

"Statement of Work" or "SOW" shall mean the statement of work Settling Work Defendant has agreed to perform as set forth in this Consent Decree for implementation of the Remedial Design, Remedial Action, and O&M at the Locust Avenue Superfund Site, as set forth in Appendix C to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Stonehurst Property" shall mean the approximate 5-acre property in San Bernardino County, County APNs 1133-07-105, 1133-07-106, and 1133-07-107, collectively, located at 2298 West Stonehurst Drive, Rialto, California. The Stonehurst Property is depicted generally on the map included in Appendix A. The Stonehurst Property has been and is owned and operated by entities that are not signatories to this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by Settling Work Defendant to supervise and direct the implementation of the Work under this Consent Decree.

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

"Target Area" shall mean the area of contaminated groundwater described in section 2.11.2 (Description of the Selected Remedy) of the 2010 ROD and/or the OU1 Work Decree.

"Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, specifically including EPA and Settling Federal Agencies.

"United Technologies Corporation" or "UTC" shall mean United Technologies Corporation and its officers, directors, and employees acting in their official capacities.

"Waste Material" shall mean:  (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous material" under all applicable or relevant and appropriate State statutory authority.

"West Side Area" shall mean the County Property and the Stonehurst Property.  The West Side Area is depicted generally on the map included in Appendix A.

"West Side Site" shall mean the West Side Area and all areas where perchlorate and TCE contamination from the West Side Area comes to be located.

 "Work" shall mean all activities and obligations Settling Work Defendant is required to perform under this Consent Decree, except the activities required under Section XXIII (Retention of Records).  Work does not include activities and obligations that are being performed under the OU1 Work Decree or under the AOC.

"Work Costs" shall mean all costs incurred and paid by Settling Work Defendant in performing the Work.  Work Costs do not include "Costs Excluded from Disbursement" pursuant to Paragraph 63e.

## V.    GENERAL PROVISIONS

5.    <u>Objectives of the Parties and UTC</u>.  The objectives of the Parties and UTC in entering into this Consent Decree are to protect public health or welfare or the environment by the design and implementation of response actions required by this Consent Decree at the Locust Avenue Superfund Site by Settling Work Defendant, to resolve the pending litigation in the Consolidated Federal Action, and to provide Settling Work Defendant, UTC, and Settling Federal Agencies with the protections granted by an order from this Court finding that the settlement herein described has been made in good faith, is reasonable, and is fair under

federal and state law.

6.   <u>Commitments by Settling Work Defendant</u>.

a.   Settling Work Defendant shall perform all of the Work and, subject to potential reimbursement from other parties as described in Paragraphs 56 – 58 and 63 – 66, finance portions of the Work in accordance with this Consent Decree, the OU2/OU3 ROD, the SOW, and all work plans, other plans, standards, specifications, and schedules set forth in this Consent Decree or developed by Settling Work Defendant and approved by EPA pursuant to this Consent Decree.

b.   Settling Work Defendant shall reimburse EPA for all Future Response Costs, subject to potential reimbursement from other parties as described in Paragraphs 56 – 58 and 63 – 66.

c.   Settling Work Defendant has entered into an AOC with EPA that requires Settling Work Defendant to complete the RI/FS for OU2 (groundwater only) and OU3 (soil and/or vadose zone only).  Under the terms of the AOC, Settling Work Defendant is completing the RI/FS at its own expense and will reimburse EPA for EPA RI/FS oversight costs incurred after the effective date of the AOC pursuant to the AOC.  This Consent Decree does not modify or impact the terms of the AOC.

7.   <u>Commitments by Settling Federal Agencies</u>.  The United States, on behalf of Settling Federal Agencies, shall reimburse Goodrich Corporation for

portions of the NCP compliant Work Costs and Future Response Costs as provided in Paragraphs 56- 58 and 63– 66 of this Consent Decree.

8.   <u>Compliance with Applicable Law</u>.  All activities undertaken by Settling Work Defendant pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal, state, local laws, and regulations.  Settling Work Defendant must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the OU2/OU3 ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be deemed to be consistent with the NCP.

9.   <u>Permits</u>.

a.   As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Where any portion of the Work that is not on-site requires a federal, state, or local permit or approval, Settling Work Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.   Settling Work Defendant may seek relief under the provisions

of Section XVIII (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Paragraph 9a. and required for the Work, provided that Settling Work Defendant has submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

c.    This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal, state, or local statute or regulation.

## VI.    PERFORMANCE OF THE WORK BY SETTLING WORK DEFENDANT

10.    Selection of Supervising Contractor.

a.    All aspects of the Work to be performed by Settling Work Defendant pursuant to Sections VI (Performance of the Work by Settling Work Defendant), VII (Remedy Review), VIII (Quality Assurance, Sampling, and Data Analysis), IX (Access), and XV (Emergency Response) shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA.  Within thirty (30) Days after EPA provides Settling Work Defendant notice that any OU2/OU3 ROD is signed, Settling Work Defendant shall notify EPA in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor.  With respect to any contractor proposed to be Supervising Contractor, Settling Work

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Defendant shall demonstrate that the proposed contractor has a quality assurance system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan ("QMP").  The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA.  EPA will issue a notice of disapproval or an authorization to proceed regarding hiring of the proposed contractor.  If at any time thereafter, Settling Work Defendant proposes to change a Supervising Contractor, Settling Work Defendant shall give such notice to EPA and must obtain an authorization to proceed from EPA before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b.      If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Work Defendant in writing, and Settling Work Defendant shall submit to EPA a list of contractors, including the qualifications of each contractor, which would be acceptable to Settling Work Defendant within thirty (30) Days of receipt of EPA's disapproval of the contractor previously proposed.  EPA will provide written notice of the names of any contractor(s) that it disapproves and an

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

authorization to proceed with respect to any of the other contractors.  Settling Work Defendant may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within twenty-one (21) Days of EPA's authorization to proceed.

        c.     If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents Settling Work Defendant from meeting one or more of the deadlines in a plan approved by EPA pursuant to this Consent Decree, Settling Work Defendant may seek relief under Section XVIII (Force Majeure).

       11.    <u>Settling Work Defendant Contracting and Participation of Water Purveyor</u>.

        a.     Settling Work Defendant may, upon EPA approval, contract some or all of the Remedial Action portion of the Work to a qualified public water purveyor or other qualified person; provided however, contracting the Remedial Action portion of the Work to a qualified public water purveyor or other qualified person does not impact or alter Settling Work Defendant's or UTC's obligations under this Consent Decree.

        b.     If Settling Work Defendant, with the prior written approval of the United States on behalf of EPA and Federal Settling Parties, enters into an agreement with a water purveyor or other person to conduct work or reimburse the

costs of work relating to Basin Contaminants or contaminants of concern relating to the Locust Avenue Superfund Site prior to the finalization of OU2/OU3 ROD, the costs of such work shall be treated the same as Work Costs and Future Response Costs and subject to the funding procedures described in Paragraph 57, and otherwise shall be subject to Section XVI (Establishment of Accounts and Payments) generally.  Such costs will not be so treated if Settling Work Defendant unilaterally enters into such an agreement without the prior written approval of the United States on behalf of EPA and the Settling Federal Agencies.

c.      In performing the Work, Settling Work Defendant shall not be required to pay to any participating water purveyor materially more than the actual, incremental cost that such water purveyor incurs in accepting water from Settling Work Defendant, above what would have otherwise been the water purveyor's usual and customary cost of providing potable water to its customers.  Such water purveyor's incremental costs may include, but are not limited to, Work Costs relating to:  (1)  installing new extraction wells to withdraw contaminated groundwater; (2) operating an existing extraction well; (3) transporting contaminated groundwater to such water purveyor's treatment system; and / or (4) in treating contaminated groundwater.

12.    <u>Remedial Design and Remedial Action Planning.</u>

a.      Within sixty (60) Days after EPA's issuance of an authorization

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to proceed pursuant to Paragraph 10, Settling Work Defendant shall submit to EPA, with copies to the State, Rialto and Colton, a work plan for the design of the Remedial Action at the Locust Avenue Superfund Site ("Remedial Design Work Plan").  The Remedial Design Work Plan shall provide for design of the remedy as required by this Consent Decree and the OU2/OU3 ROD.  If a Record of Decision has been adopted for only one of the two operable units (OU2 or OU3), and a second Record of Decision is subsequently adopted that requires remedial design and remedial action, Settling Work Defendant shall submit to EPA, with copies to the State, Rialto and Colton, an addendum to the approved Remedial Design Work Plan for the design of the Remedial Action required by the subsequent Record of Decision.  An addendum will be submitted within forty-five (45) Days after EPA provides notice to the Settling Work Defendant that a second ROD has been signed by EPA.  Upon its approval by EPA, the Remedial Design Work Plan, and any addendums, shall be incorporated into and enforceable under this Consent Decree.

         b.      The Remedial Design Work Plan shall include plans and schedules for implementation of all remedial design tasks identified in the SOW, including but not limited to, plans and schedules for the completion of:  (1) a preliminary design submission; (2) a pre-final/final design submission; (3) an O&M Plan; (4) a Compliance Monitoring Plan; and (5) a Construction Quality Assurance Plan ("CQAP").  The Remedial Design Work Plan shall also include

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

provisions for the following if needed to complete the design:  (1) a Remedial Design Investigation sampling and analysis plan (including, but not limited to, a Quality Assurance Project Plan ("QAPP") in accordance with Section VIII (Quality Assurance, Sampling, and Data Analysis) and a Health and Safety Plan which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.); (2) a Remedial Design Investigation; (3) a Remedial Design Investigation Report; and (4) Groundwater Flow Modeling.  In addition, the Remedial Design Work Plan shall include a proposed schedule for completion of the Remedial Action Work Plan.

    c.  Upon approval of the Remedial Design Work Plan by EPA, after a reasonable opportunity for review and comment by the State, Rialto and Colton, Settling Work Defendant shall implement the Remedial Design Work Plan. Settling Work Defendant shall submit to EPA, with copies to the State, Rialto and Colton, all plans, reports, and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables).  Unless otherwise directed by EPA, Settling Work Defendant shall not commence further Remedial Design activities at the Locust Avenue Superfund Site prior to approval of the Remedial Design Work Plan.

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

d.      The Remedial Design Investigation, if needed, shall provide: (1) updated data needed for the remedial design; and (2) data to address any concerns about the quantity, quality, completeness, or usability of water quality or other data upon which the design will be based.

e.      Groundwater Flow Modeling, if needed, shall include activities needed to determine final groundwater extraction rates and locations for the remedy, including the use of a numeric groundwater flow model, submittal of preliminary modeling results to EPA, and submittal of a Groundwater Flow Modeling Report at the completion of the modeling effort.

f.      The preliminary design submission shall include, at a minimum, the following:  (1) design criteria; (2) project delivery strategy; (3) preliminary plans, drawings, and sketches; (4) required specifications in outline form; and (5) preliminary construction schedule.

g.      The pre-final/final design submission shall include, at a minimum, the following:  (1) final plans and specifications; (2) an Operation and Maintenance Plan; and (3) a Compliance Monitoring Plan.  A CQAP shall be submitted concurrent with the prefinal plans and specifications.  The CQAP, which shall detail the approach to quality assurance during construction activities at the Locust Avenue Superfund Site, shall specify a quality assurance official, independent of the Supervising Contractor, to conduct a quality assurance program

during the construction phase of the project.

h. The Operation and Maintenance Plan, shall address material and maintenance needs; recordkeeping; staffing needs; routine data collection and analysis activities; resin and carbon replacement criteria, if applicable; routine reporting to EPA and the State; development of a Health and Safety Plan; potential operating problems; waste disposal; development of the Sampling and Analysis Plan ("SAP") or addendum to an existing SAP; and noncompliance notification to EPA and the State.

i. The Compliance Monitoring Plan shall address data collection, analysis, and reporting activities needed to demonstrate that the Work satisfies Performance Standards related to hydraulic control.

j. The CQAP shall ensure, with a reasonable degree of certainty, that the completed RA will meet or exceed all design criteria, plans and specifications, relevant Performance Standards, and other relevant requirements.

13. <u>Remedial Action</u>.

a. Within sixty (60) Days after the approval of any final design submission, Settling Work Defendant shall submit to EPA, with copies to the State, Rialto and Colton, a work plan for the performance of the Remedial Action at the Locust Avenue Superfund Site ("Remedial Action Work Plan"). The Remedial Action Work Plan shall provide for construction and implementation of the remedy

set forth in the OU2/OU3 ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the OU2/OU3 ROD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design Work Plan and approved by EPA.  If additional final design documents are approved after the Remedial Action Work Plan is submitted, addendums to the Remedial Action Work Plan shall be submitted for EPA approval, within forty-five (45) Days after the approval of any additional final design submission.  Upon its approval by EPA, the Remedial Action Work Plan shall be incorporated into and enforceable under this Consent Decree.

b.      The Remedial Action Work Plan shall include the following: (1) schedule for completion of the Remedial Action; (2) method for selection of the contractor(s); (3) schedule for developing and submitting other required Remedial Action plans; (4) methods for satisfying permitting requirements; and (5) procedures and plans for the decontamination of equipment and the disposal of contaminated materials.  The Remedial Action Work Plan also shall include the methodology for implementing the CQAP and a schedule for implementing all Remedial Action tasks identified in the final design submission and shall identify the initial formulation of Settling Work Defendant's Remedial Action project team (including, but not limited to, the Supervising Contractor).

c.      Upon approval of the Remedial Action Work Plan by EPA,

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

after a reasonable opportunity for review and comment by the State, Rialto and Colton, Settling Work Defendant shall implement the activities required under the Remedial Action Work Plan.  Settling Work Defendant shall submit to EPA, with copies to the State, all reports and other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables).  Unless otherwise directed by EPA, Settling Work Defendant shall not commence physical Remedial Action activities at the Locust Avenue Superfund Site prior to approval of the Remedial Action Work Plan.

14.     Settling Work Defendant shall continue to implement the Remedial Action until the Performance Standards are achieved.  Settling Work Defendant shall implement O&M as is required by this Consent Decree.

15.     Modification of SOW or Work Plans Required by the SOW.

a.     If EPA determines that it is necessary to modify the Work specified in the SOW and/or in work plans developed pursuant to the SOW to achieve, maintain, and satisfy the Performance Standards or to carry out and maintain the effectiveness of the remedy or remedies set forth in the OU2/OU3 ROD, and such modification is consistent with the scope of the remedy or remedies set forth in the OU2/OU3 ROD, then EPA may issue such modification in writing and shall notify Settling Work Defendant of such modification.  If

Settling Work Defendant objects to EPA's modification made pursuant to this Paragraph, Settling Work Defendant may, within forty-five (45) Days after EPA's notification, seek dispute resolution under Paragraph 80 (Record Review).

b.      The SOW and/or related work plans shall be modified:  (1) in accordance with the modification issued by EPA; or (2) if Settling Work Defendant invokes dispute resolution, in accordance with the final resolution of the dispute.  The modifications shall be incorporated into and enforceable under this Consent Decree, and Settling Work Defendant shall implement all work required by such modification.  Settling Work Defendant shall incorporate the modification into the Remedial Design or Remedial Action Work Plan under Paragraphs 12 or 13, as appropriate.

c.      Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

16.     Nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the Work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

17.     OU1, OU2 and OU3 Remedial Activities.  The Parties acknowledge that OU1 remedial activities pursuant to the OU1 Work Decree and OU2 and OU3

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

remedial activities pursuant to this Consent Decree may be implemented, in part,

within a common timeframe.  At EPA's discretion, EPA will seek to coordinate the

OU1, OU2, and OU3 remedial activities for the purpose of maintaining the long

term sustainability of these remedies.

18.   Off-Site Shipment of Waste Material.

a.   Settling Work Defendant may ship Waste Material from the

Locust Avenue Superfund Site to an off-Site facility only if Settling Work

Defendant has verified, prior to any shipment, that the off-Site facility is operating

in compliance with the requirements of Section 121(d)(3) of CERCLA, 42 U.S.C.

§ 9621(d)(3), and 40 C.F.R. § 300.440, by obtaining a determination from EPA

that the proposed receiving facility is operating in compliance with 42 U.S.C. §

9621(d)(3) and 40 C.F.R. § 300.440.

b.   Settling Work Defendant may ship Waste Material from the

Locust Avenue Superfund Site to an out-of-state waste management facility only

if, prior to any shipment, Settling Work Defendant provides written notice to the

appropriate state environmental official in the receiving facility's state and to the

EPA Project Coordinator.  This notice requirement shall not apply to any off-Site

shipments when the total quantity of all such shipments will not exceed ten (10)

cubic yards.  The written notice shall include the following information, if

available:  (1) the name and location of the receiving facility; (2) the type and

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

quantity of Waste Material to be shipped; (3) the schedule for the shipment; and (4) the method of transportation.  Settling Work Defendant also shall notify the state environmental official referenced above and the EPA Project Coordinator of any major changes in the shipment plan, such as a decision to ship the Waste Material to a different out-of-state facility.  Settling Work Defendant shall provide the written notice after the award of the contract for Remedial Action construction and before the Waste Material is shipped.

## VII.   REMEDY REVIEW

19.   <u>Periodic Review</u>.  Settling Work Defendant shall conduct any studies and investigations that EPA determines to be necessary in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five (5) years as required by Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and any applicable regulations.

20.   <u>EPA Selection of Further Response Actions</u>.  If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Locust Avenue Superfund Site in accordance with the requirements of CERCLA and the NCP.

21.   <u>Opportunity to Comment.</u>  Settling Work Defendant, and if required by Sections 113(k)(2) or 117 of CERCLA, 42 U.S.C. § 9613(k)(2) or 9617, the

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

public will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

## VIII.   QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

22.   Quality Assurance.

a.   Settling Work Defendant shall use quality assurance, quality control, and chain of custody procedures for all design, compliance, and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001, reissued May 2006), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/240/R-02/009, December 2002), and subsequent amendments to such guidelines upon notification by EPA to Settling Work Defendant, of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.

b.   Prior to the commencement of any monitoring project under this Consent Decree, Settling Work Defendant shall submit to EPA for approval, after a reasonable opportunity for review and comment by the State, a QAPP that is consistent with the SOW, the NCP, and applicable guidance documents.  If relevant to the proceeding, the Parties agree that validated sampling data generated

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.  Settling Work Defendant shall ensure that EPA personnel and its authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Work Defendant in implementing this Consent Decree.  In addition, Settling Work Defendant shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring.  Settling Work Defendant shall ensure that the laboratories it utilizes for the analysis of samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods.  Accepted EPA methods consist of those methods that are documented in the "USEPA Contract Laboratory Program Statement of Work for Inorganic Analysis, ILM05.4," the "USEPA Contract Laboratory Program Statement of Work for Organic Analysis, SOM01.2," and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by EPA, Settling Work Defendant may use other analytical methods, including those specified in the most recent update to EPA publication SW-846, Test Methods for Evaluating Solid Waste, Physical/Chemical Methods, which are as stringent as or more stringent than the CLP-approved methods.  Settling Work Defendant shall ensure that all laboratories it uses for analysis of samples taken pursuant to this Consent Decree participate in an EPA or

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

EPA-equivalent QA/QC program.  Settling Work Defendant shall use only laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA.  EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements. Settling Work Defendant shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree are conducted in accordance with the procedures set forth in the QAPP approved by EPA.

23.    Upon request, Settling Work Defendant shall allow split or duplicate samples to be taken by EPA or its authorized representatives.  Settling Work Defendant shall notify EPA not less than twenty-eight (28) Days in advance of any sample collection activity unless shorter notice is agreed to by EPA.  In addition, EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA shall allow Settling Work Defendant to take split or duplicate samples of any samples it takes as part of Plaintiff's oversight of Settling Work

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Defendant's implementation of the Work.

24.     Settling Work Defendant shall submit to EPA copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Work Defendant with respect to the Locust Avenue Superfund Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.  Settling Work Defendant is not required to submit a detailed interpretive report when submitting unvalidated sampling and/or tests results to EPA.

25.     Notwithstanding any provision of this Consent Decree, the United States retains all of its information gathering and inspection authorities and rights, including enforcement actions, for information gathering and inspection authorities and rights, under CERCLA, RCRA, and any other applicable statutes or regulations.

## IX.   ACCESS

26.     <u>Access by Settling Work Defendant and UTC</u>.  If the Locust Avenue Superfund Site, or any other real property where access is needed or land/water use restrictions are needed, is owned or controlled by Settling Work Defendant or UTC:

        a.     Settling Work Defendant and UTC shall, commencing on the date of lodging of the Consent Decree, provide the United States and its

representatives, contractors, and subcontractors, with access at all reasonable times, and, where feasible, with three (3) working days' notice, to any portions of the Locust Avenue Superfund Site, or such other real property, over which it has ownership or control, to conduct any activity regarding the Consent Decree including, but not limited to, the following activities:

(1)  Monitoring the Work;

(2)  Verifying any data or information submitted to the United States;

(3)  Conducting investigations regarding contamination at or near the Locust Avenue Superfund Site;

(4)  Obtaining samples;

(5)  Assessing the need for, planning, or implementing additional response actions at or near the Locust Avenue Superfund Site;

(6)  Assessing implementation of quality assurance and quality control practices as defined in the approved QAPP;

(7)  Implementing the Work pursuant to the conditions set forth in Paragraph 100 (Work Takeover);

(8)  Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Work Defendant or its agents, consistent with Section XXIV (Access to Information);

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

(9)     Assessing Settling Work Defendant's compliance with the Consent Decree; and

(10)    Determining whether the Locust Avenue Superfund Site or other real property is being used in a manner that is prohibited or restricted under this Consent Decree, or that may need to be prohibited or restricted under the Consent Decree.

b.     Commencing on the date of lodging of the Consent Decree, Settling Work Defendant or UTC shall not use the Locust Avenue Superfund Site, or such other real property in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action.

27.    If the Locust Avenue Superfund Site, or any other real property where access and/or land/water use restrictions are needed is owned or controlled by persons other than any Party to this Consent Decree, then Settling Work Defendant shall use its best efforts to secure from such persons:

a.     An agreement to provide access thereto for the United States and Settling Work Defendant, and its representatives, contractors, and subcontractors, to conduct any activity regarding the Consent Decree including, but not limited to, the activities listed in Paragraph 26a.; and

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

b.      An agreement, enforceable by Settling Work Defendant and the United States, to refrain from using the Locust Avenue Superfund Site, or such other real property, in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Materials or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action.  The agreement shall include, but not be limited to the execution and recordation in the appropriate land records office of Proprietary Controls, that grant a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 26a.

28.     For purposes of Paragraph 27, "best efforts" include the payment of reasonable sums of money to obtain access, an agreement to restrict land/water use, a Proprietary Control, and/or an agreement to release or subordinate a prior lien or encumbrance.  If, after Settling Work Defendant has exhausted its best efforts, Settling Work Defendant has not:  (a) obtained agreements to provide access, restrict land/water use or record Proprietary Controls, as required by Paragraph 27; or (b) obtained, pursuant to Paragraph 27, agreements from the holders of prior liens or encumbrances to release or subordinate such liens or encumbrances to the Proprietary Controls, Settling Work Defendant shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Work Defendant has taken to attempt to comply with

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Paragraph 27.  The United States will, as it deems appropriate, assist Settling Work Defendant in obtaining access, agreements to restrict land/water use, Proprietary Controls, or the release or subordination of a prior lien or encumbrance.  Settling Work Defendant shall reimburse the United States under Section XVI (Establishment of Accounts and Payments), for all costs incurred, direct or indirect, by the United States in obtaining such access, agreements to restrict land/water use, Proprietary Controls, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

29.    If EPA determines that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls are needed, Settling Work Defendant shall cooperate with EPA and the State's efforts to secure and ensure compliance with such governmental controls.

30.    In the event that any Settling Federal Agencies have or acquire an interest in any real property within the Locust Avenue Superfund Site, or other affected property, that Settling Federal Agency shall provide reasonable access to EPA and/or Settling Work Defendant, subject to the provisions of federal law and regulations, to effectuate the response actions set forth in this Consent Decree.

31.    Notwithstanding any provision of the Consent Decree, the United States and the State retain all of their access authorities, access rights, rights to

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

require Institutional Controls, and related enforcement authorities under CERCLA, RCRA, and any other applicable statute, regulations, municipal codes, or ordinances.

## X.   REPORTING REQUIREMENTS

32.   In addition to any other requirement of this Consent Decree, commencing thirty (30) Days after EPA provides Settling Work Defendant notice that the OU2/OU3 ROD is signed, Settling Work Defendant shall submit to EPA, with copies to the State, Rialto and Colton, monthly progress reports that:  (a) describe deliverables submitted and actions taken during the previous month on each active task required by the SOW or the approved RD or RA Work Plans; (b) describe problems arising since the previous report and steps planned or underway to mitigate the problems; (c) describe actions scheduled for the next two (2) months; (d) describe any anticipated changes in the schedule; (e) describe the nature of, duration of, and response to any noncompliance with Performance Standards or other requirements; and (f) describe any community relations activities completed during the previous month or planned for the next two (2) months.  Progress reports are due by the tenth (10th) Day of every month.  Settling Work Defendant shall submit these progress reports to EPA, with copies to the State, Rialto and Colton, by the tenth (10th) Day of every month after the

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

OU2/OU3 ROD is signed until EPA notifies Settling Work Defendant pursuant to Paragraph 52b. of Section XIV (Certification of Completion of the Work).  Upon EPA's written approval, Settling Work Defendant may submit the progress reports described in this Paragraph on a quarterly basis.  If requested by EPA, Settling Work Defendant shall also provide briefings for EPA to discuss the progress of the Work.  Upon completion of the Construction of the Remedial Action, Settling Work Defendant shall submit to EPA, with a copy to Rialto and Colton, annual reports on the effectiveness of the Remedial Action. Settling Work Defendant is not required to submit a detailed interpretive report when submitting unvalidated sampling and/or tests results to EPA.

33.     Settling Work Defendant shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven (7) Days prior to the performance of the activity.

34.     Upon the occurrence of any event during performance of the Work that Settling Work Defendant is required to report pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11004, Settling Work Defendant, shall within twenty-four (24) hours of the onset of such event, orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator nor Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 9, United States Environmental Protection Agency.  These reporting requirements are in addition to the reporting required by CERCLA Section 103 and/or EPCRA Section 304.

35.     Within twenty (20) Days of the onset of such an event, Settling Work Defendant shall furnish to EPA, a written report, signed by Settling Work Defendant's Project Coordinator, setting forth the events that occurred and the measures taken, and to be taken, in response thereto.  Within forty-five (45) Days of the conclusion of such an event, Settling Work Defendant shall submit a report to EPA setting forth all actions taken in response thereto.

36.     Settling Work Defendant shall submit all plans, reports, data, written notifications, and other deliverables required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans.  Settling Work Defendant shall simultaneously submit copies of all such plans, reports, data, written notifications, and other deliverables to the State.  Unless directed otherwise by EPA, Settling Work Defendant shall submit, in electronic form, all or any portion of any deliverables Settling Work Defendant is required to submit pursuant to the provisions of this Consent Decree.

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

37.    All deliverables submitted by Settling Work Defendant to EPA that purport to document Settling Work Defendant's compliance with the terms of this Consent Decree shall be signed by an authorized representative of Settling Work Defendant.

## XI.    EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES

38.    <u>Initial Submissions</u>.

a.    After review of any plan, report, or other deliverable that is required to be submitted for approval pursuant to this Consent Decree, EPA, shall: (1) approve, in whole or in part, the submission; (2) approve the submission upon specified conditions; (3) disapprove, in whole or in part, the submission; or (4) any combination of the foregoing.

b.    EPA also may modify the initial submission to cure deficiencies in the submission if:  (1) EPA determines that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Work; or (2) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable plan, report, or deliverable.

39.    <u>Resubmissions</u>.  Upon receipt of a notice of disapproval under Paragraph 38a., or if required by a notice of approval upon specified conditions

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

under Paragraph 38a., Settling Work Defendant shall, within fourteen (14) Days, or within thirty (30) Days for the Annual Performance Evaluation Report, Remedial Design Investigation Report, and RA Report, or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other deliverable for approval.  After review of the resubmitted plan, report, or other deliverable, EPA may:  (a) approve, in whole or in part, the resubmission; (b) approve the resubmission upon specified conditions; (c) modify the resubmission; (d) disapprove, in whole or in part, the resubmission, requiring Settling Work Defendant to correct the deficiencies; or (e) any combination of the foregoing.

40.     <u>Material Defects</u>.  If an initially submitted or resubmitted plan, report, or other deliverable contains a material defect, and the plan, report, or other deliverable is disapproved or modified by EPA under Paragraph 38 or Paragraph 39 due to such material defect, then the material defect shall constitute a lack of compliance for purposes of Paragraph 83.  The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the accrual and payment of any stipulated penalties regarding Settling Work Defendant's submissions under this Section.

41.     <u>Implementation</u>.  Upon approval, approval upon conditions, or modification by EPA under Paragraph 38 or 39, of any plan, report, or other deliverable, or any portion thereof:  (a) such plan, report, or other deliverable, or

portion thereof, shall be incorporated into and enforceable under this Consent Decree; and (b) Settling Work Defendant shall take any action required by such plan, report, or other deliverable, or portion thereof, subject only to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  The implementation of any non-deficient portion of a plan, report, or other deliverable submitted or resubmitted under Paragraphs 38 or 39 shall not relieve Settling Work Defendant of any liability for stipulated penalties under Section XX (Stipulated Penalties).

## XII.    PROJECT COORDINATORS

42.    Within fourteen (14) Days after EPA provides Settling Work Defendant notice that the OU2/OU3 ROD is signed, Settling Work Defendant and EPA will notify each other, in writing, of the name, address, and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators.  If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five (5) working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made. Settling Work Defendant's Project Coordinator shall be subject to disapproval by

EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work.  Settling Work Defendant's Project Coordinator shall not be an attorney for Settling Work Defendant in this matter.  He or she may assign other representatives, including other contractors, to serve as a representative for oversight of performance of daily operations during remedial activities.

43.     EPA may designate other representatives, including, but not limited to, EPA employees and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree.  EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the NCP, 40 C.F.R. Part 300.  EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the NCP, to halt any Work required by this Consent Decree and to take any necessary response action when he or she determines that conditions at the Locust Avenue Superfund Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

44.     EPA's Project Coordinator and Settling Work Defendant's Project Coordinator will communicate regularly.

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

## XIII.   PERFORMANCE GUARANTEE

45.     In order to ensure the full and final completion of the Work, Settling Work Defendant shall establish and maintain a performance guarantee, initially in the amount of twenty-one million five hundred thousand dollars ($21,500,000), for the benefit of EPA (hereinafter "Estimated Cost of the Work").  Furthermore, UTC will assume all Settling Work Defendant's obligations under this Consent Decree in the event Settling Work Defendant defaults on those obligations, for the benefit of EPA, and the United States may then enforce those obligations as to UTC pursuant to this Consent Decree.  This performance guarantee, which must be satisfactory in form and substance to EPA, shall be in the form of one or more of the following mechanisms (provided that, if Settling Work Defendant intends to use multiple mechanisms, such multiple mechanisms shall be limited to surety bonds guaranteeing payment, letters of credit, trust funds, and insurance policies):

a.      A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.      One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s):  (1) that has the authority to issue letters of credit, and (2) whose letter-of-credit operations are

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

regulated and examined by a federal or state agency;

c.      A trust fund established for the benefit of EPA that is administered by a trustee:  (1) that has the authority to act as a trustee, and (2) whose trust operations are regulated and examined by a federal or state agency. For purposes of this Paragraph, the Locust Avenue Superfund Site OU2/OU3 ROD Trust Fund may qualify as a performance guarantee mechanism, if it is properly established consistent with this Paragraph and pursuant to other requirements of this Consent Decree;

d.      A policy of insurance that:  (1) provides EPA with acceptable rights as a beneficiary thereof; and (2) is issued by an insurance carrier:  (a) that has the authority to issue insurance policies in the applicable jurisdiction(s), and (b) whose insurance operations are regulated and examined by a federal or state agency;

e.      A demonstration by Settling Work Defendant that it meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee), provided that all other requirements of 40 C.F.R. § 264.143(f) are met to EPA's satisfaction; or

f.      A written guarantee to fund or perform the Work executed in

favor of EPA by one or more of the following:  (1) a direct or indirect parent company of a Settling Work Defendant, or (2) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with Settling Work Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test and reporting requirements for owners and operators set forth in subparagraphs (1) through (8) of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee) that it proposes to guarantee hereunder.

46.    Within thirty (30) Days after the Effective Date, Settling Work Defendant shall execute or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding, and such performance guarantee(s) shall thereupon be fully effective.  Within sixty (60) Days of the Effective Date, Settling Work Defendant shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA Regional Financial Management Officer in accordance with Section XXV (Notices and Submissions), with a copy to the United States and EPA as specified in Section XXV (Notices and Submissions).

47.    If, at any time after the Effective Date and before issuance of the Certification of Completion of the Work pursuant to Paragraph 52, Settling Work Defendant provides a performance guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraphs 45 or 46, Settling Work Defendant shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f) relating to these mechanisms unless otherwise provided in this Consent Decree, including but not limited to:  (a) the initial submission of required financial reports and statements from the relevant entity's chief financial officer ("CFO") and independent certified public accountant ("CPA"), in the form prescribed by EPA in its financial test sample CFO letters and CPA reports available at:

http://www.epa.gov/compliance/resources/policies/cleanup/superfund/fa-test-samples.pdf; (b) the annual re-submission of such reports and statements within ninety (90) Days after the close of each such entity's fiscal year; and (c) the prompt notification of EPA, after each such entity determines that it no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1) and in any event within ninety (90) Days after the close of any fiscal year in which such entity no longer satisfies such financial test requirements.  For purposes of the performance guarantee mechanisms specified in this Section, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

deemed to include the Work; the terms "current closure cost estimate," "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to include the Estimated Cost of the Work; the terms "owner" and "operator" shall be deemed to refer to Settling Work Defendant making a demonstration under Paragraph 45; and the terms "facility" and "hazardous waste facility" shall be deemed to include the Locust Avenue Superfund Site.

48.    In the event that EPA determines at any time that a performance guarantee provided by Settling Work Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work (the Estimated Cost of the Work will need to be adjusted when the OU2/OU3 ROD is finalized based upon the estimated cost of that remedy) or for any other reason, or in the event that any Settling Work Defendant becomes aware of information indicating that a performance guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Work Defendant, within thirty (30) Days of receipt of notice of EPA's determination or, as the case may be, within thirty (30) Days of Settling Work Defendant becoming aware of such information, shall obtain and present to EPA for approval, a proposal for a revised or alternative form of

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

performance guarantee listed in Paragraph 45 that satisfies all requirements set forth in this Section; provided, however, that if Settling Work Defendant cannot obtain such revised or alternative form of performance guarantee within such thirty (30) Day period, and provided further that Settling Work Defendant shall have commenced to obtain such revised or alternative form of performance guarantee within such thirty (30) Day period, and thereafter diligently proceeds to obtain the same, EPA shall extend such period for such time as is reasonably necessary for Settling Work Defendant in the exercise of due diligence to obtain such revised or alternative form of performance guarantee, such additional period not to exceed sixty (60) Days.  On Day thirty (30), Settling Work Defendant shall provide to EPA, a status report on its efforts to obtain the revised or alternative form of guarantee.  In seeking approval for a revised or alternative form of performance guarantee, Settling Work Defendant shall follow the procedures set forth in Paragraph 50b.  Settling Work Defendant's inability to post a performance guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Work Defendant to complete the Work in strict accordance with the terms of this Consent Decree.

49.     Funding for Work Takeover.  The commencement of any Work Takeover pursuant to Paragraph 100 shall trigger EPA's right to receive the benefit

of any performance guarantee(s) provided pursuant to Paragraphs 45 – 48, and at such time EPA shall have immediate access to resources guaranteed under any such performance guarantee(s), whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover.  Upon the commencement of any Work Takeover, if:  (a) for any reason EPA is unable to promptly secure the resources guaranteed under any such performance guarantee(s), whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or (b) in the event that the performance guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 45 or 46, Settling Work Defendant (or in the case of Paragraphs 45 and 45f.(2), the guarantor) shall immediately upon written demand from EPA deposit into a special account within the EPA Hazardous Substance Superfund or such other account as EPA may specify, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of completing the Work as of such date as determined by EPA.  In addition, if at any time EPA is notified by the issuer of a performance guarantee that such issuer intends to cancel the performance guarantee mechanism it has issued, then, unless Settling Work Defendant provides a substitute performance guarantee mechanism in accordance with this Section, no later than thirty (30) Days prior to the impending cancellation date, EPA shall be

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

- 61 -

entitled (as of and after the date that is thirty (30) Days prior to the impending cancellation) to draw fully on the funds guaranteed under the then-existing performance guarantee.  All EPA Work Takeover costs not reimbursed under this Paragraph shall be reimbursed under Section XVI (Establishment of Accounts and Payments).

      50.   <u>Modification of Amount and/or Form of Performance Guarantee</u>.

      a.   <u>Reduction of Amount of Performance Guarantee</u>.  If Settling Work Defendant believes that the estimated cost of completing the Work has diminished below the amount set forth in Paragraph 45, Settling Work Defendant may, on any anniversary of the Effective Date, or at any other time agreed to by EPA and Settling Work Defendant, petition EPA in writing to request a reduction in the amount of the performance guarantee provided pursuant to this Section so that the amount of the performance guarantee is equal to the estimated cost of completing the Work.  Settling Work Defendant shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the estimated cost of completing the Work and the basis upon which such cost was calculated.  In seeking approval for a reduction in the amount of the performance guarantee, Settling Work Defendant shall follow the procedures set forth in Paragraph 50 for requesting a revised or alternative form of performance guarantee, except as specifically provided in this Paragraph.  If EPA decides to accept Settling Work

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Defendant's proposal for a reduction in the amount of the performance guarantee, either to the amount set forth in Settling Work Defendant's written proposal or to some other amount as selected by EPA, EPA will notify Settling Work Defendant of such decision in writing of the notification. Upon EPA's acceptance of a reduction in the amount of the performance guarantee, the Estimated Cost of the Work shall be deemed to be the estimated cost of completing the Work set forth in EPA's written decision. After receiving EPA's written decision, Settling Work Defendant may reduce the amount of the performance guarantee in accordance with and to the extent permitted by such written acceptance and shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding in accordance with Paragraph 50b. In the event of a dispute, Settling Work Defendant may reduce the amount of the performance guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution). No change to the form or terms of any performance guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 48 or 50b.

      b.    <u>Change of Form of Performance Guarantee</u>.

      (1)    If, after the Effective Date, Settling Work Defendant

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

desires to change the form or terms of any performance guarantee(s) provided pursuant to this Section, Settling Work Defendant may, on any anniversary of the Effective Date, or at any other time agreed to by the United States on behalf of EPA, petition EPA in writing, to request a change in the form or terms of the performance guarantee provided hereunder.  The submission of such proposed revised or alternative performance guarantee shall be as provided in Paragraph 50b.  Any decision made by EPA on a petition submitted under this Paragraph shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Work Defendant pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

(2)    Settling Work Defendant shall submit a written proposal for a revised or alternative performance guarantee to EPA, which shall specify, at a minimum, the estimated cost of completing the Work, the basis upon which such cost was calculated, and the proposed revised performance guarantee, including all proposed instruments or other documents required in order to make the proposed performance guarantee legally binding.  The proposed revised or alternative performance guarantee must satisfy all requirements set forth or incorporated by reference in this Section.  Settling Work Defendant shall submit such proposed revised or alternative performance guarantee to the EPA Regional Financial Management Officer in accordance with Section XXV (Notices and Submissions).

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

EPA will notify Settling Work Defendant in writing of its decision to accept or reject a revised or alternative performance guarantee submitted pursuant to this Paragraph.  Within thirty (30) Days after receiving a written decision approving the proposed revised or alternative performance guarantee, Settling Work Defendant shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such performance guarantee(s) shall thereupon be fully effective.  Settling Work Defendant shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA Regional Financial Management Officer within sixty (60) Days of receiving a written decision approving the proposed revised or alternative performance guarantee in accordance with Section XXV (Notices and Submissions), and to the United States and EPA as specified in Section XXV (Notices and Submissions).

    c. <u>Release of Performance Guarantee</u>.  Settling Work Defendant shall not release, cancel, or discontinue any performance guarantee provided pursuant to this Section except as provided in this Paragraph.  If Settling Work Defendant receives written notice from EPA in accordance with Paragraph 52 that the Work has been fully and finally completed in accordance with the terms of this

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Consent Decree, or if EPA otherwise so notifies Settling Work Defendant in writing, Settling Work Defendant may thereafter release, cancel, or discontinue the performance guarantee(s) provided pursuant to this Section.  In the event of a dispute, Settling Work Defendant may release, cancel, or discontinue the performance guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution).

## XIV.   CERTIFICATION OF COMPLETION OF THE WORK

51.   <u>Completion of Remedial Action.</u>

a.   Within ninety (90) Days after Settling Work Defendant concludes that the Remedial Action has been fully performed and the Performance Standards have been achieved, Settling Work Defendant shall schedule and conduct a pre-certification inspection to be attended by Settling Work Defendant and EPA, with an opportunity for Rialto and Colton to attend at its discretion.  If, after the pre-certification inspection, Settling Work Defendant still believes that the Remedial Action has been fully performed and the Performance Standards have been achieved, it shall submit a written report requesting certification to EPA for approval, with a copy to the State, pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables), with a copy to Rialto, within thirty (30) Days

after the inspection.  In the report, a registered professional engineer and Settling Work Defendant's Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official of Settling Work Defendant or Settling Work Defendant's Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity for review and comment by the State, Rialto and Colton, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Work Defendant in writing, and provide a copy to Rialto, of the activities that must be undertaken by Settling Work Defendant pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided

however, that EPA may only require Settling Work Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the scope of the remedy set forth in the OU2/OU3 ROD.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Work Defendant to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables).  Settling Work Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.     If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion of the Remedial Action and after a reasonable opportunity for review and comment by the State, Rialto and Colton, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Work Defendant and provide a copy to Rialto.  This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXII (Covenants by Plaintiff).  Certification of Completion of the Remedial Action shall not affect Settling Work Defendant's remaining obligations under this

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Consent Decree.

c.      In the event the Remedial Action for OU2 has been fully performed and the Performance Standards have been achieved prior to the Remedial Action for OU3 having been fully performed and the Performance Standards having been achieved, Settling Work Defendant may seek to certify the completion of the OU2 Remedial Action as set forth in subparagraphs a. and b.  In the event the Remedial Action for OU3 has been fully performed and the Performance Standards have been achieved prior to the Remedial Action for OU2 having been fully performed and the Performance Standards having been achieved, Settling Work Defendant may seek to certify the completion of the Remedial Action for OU3 as set forth in subparagraphs a. and b.

52.   Completion of the Work.

a.      Within ninety (90) Days after Settling Work Defendant concludes that the Work, other than any remaining activities required under Section VII (Remedy Review), have been fully performed, Settling Work Defendant shall schedule and conduct a pre-certification inspection to be attended by Settling Work Defendant and EPA.  If, after the pre-certification inspection, Settling Work Defendant still believes that the Work has been fully performed, Settling Work Defendant shall submit a written report by a registered professional engineer to EPA, with a copy to Rialto, stating that the Work has been completed

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

in full satisfaction of the requirements of this Consent Decree.  The report shall contain the statement set forth in Paragraph 51, signed by a responsible corporate official of a Settling Work Defendant or Settling Work Defendant's Project Coordinator.  If, after review of the written report, EPA, after reasonable opportunity for review and comment by the State, Rialto and Colton, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Work Defendant in writing, and provide a copy to Rialto, of the activities that must be undertaken by Settling Work Defendant pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Work Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the scope of the remedy set forth in the OU2/OU3 ROD, as that term is defined in Paragraph 15.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Work Defendant to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). Settling Work Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

b.      If EPA concludes, based on the initial or any subsequent request for Certification of Completion of the Work by Settling Work Defendant, and after a reasonable opportunity for review and comment by the State, Rialto and Colton, that the Work has been performed in accordance with this Consent Decree, EPA will so notify Settling Work Defendant in writing and provide a copy to Rialto.

c.      In the event the Work for OU2 (other than any remaining activities required under Section VII (Remedy Review)) has been fully performed prior to the Work for OU3 having been fully performed (other than any remaining activities required under Section VII (Remedy Review)), Settling Work Defendant may seek to certify the completion of the Work for OU2 as set forth in above subparagraphs a. and b.  In the event the Work for OU3 (other than any remaining activities required under Section VII (Remedy Review)) has been fully performed prior to the Work for OU2 having been fully performed (other than any remaining activities required under Section VII (Remedy Review)), Settling Work Defendant may seek to certify the completion of the Work for OU3 as set forth in above subparagraphs a. and b.

d.      If appropriate, Settling Work Defendant may seek simultaneous Certificates of Completion of the Remedial Action and the Work.

53.    <u>RESERVED</u>.

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

## XV.   EMERGENCY RESPONSE

54.     If any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Locust Avenue Superfund Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Work Defendant shall, subject to Paragraph 55, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator.  If neither of these persons is available, Settling Work Defendant shall notify the EPA Emergency Response Unit, Region 9.  Settling Work Defendant shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans and any other applicable plans or documents developed pursuant to the SOW.  In the event that Settling Work Defendant fails to take appropriate response actions as required by this Section, and EPA takes such action instead, Settling Work Defendant shall reimburse EPA for all costs of the response action and such costs are not subject to reimbursement from the United States under the terms of this Consent Decree.

55.     Subject to Section XXI (Covenants, Releases, and Reservations of Rights), nothing in the preceding Paragraph or in this Consent Decree shall be

deemed to limit any authority of the United States:  (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Locust Avenue Superfund Site, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Locust Avenue Superfund Site.

## XVI.   ESTABLISHMENT OF ACCOUNTS AND PAYMENTS

56.   <u>General Statement Regarding Purpose and Use of the OU2/OU3 Locust Avenue Superfund Site Accounts</u>.  Subject to other provisions of this Consent Decree, including but not limited to Paragraph 57 below, in the event the United States, Settling Work Party, or UTC receive funds resulting from a settlement or Consent Decree with any Future Settling Party after December 31, 2012, as part of the Consolidated Federal Action:  (a) fifty percent (50%) of such payment(s) shall be transferred to the OU2/OU3 Disbursement Special Account to be used for the Work Costs; and (b) fifty percent (50%) of such payments shall be transferred to the OU2/OU3 Locust Avenue Superfund Site Special Account to be retained and used by EPA at EPA's discretion to conduct or finance response actions at or in connection with the Locust Avenue Superfund Site, or to be

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

transferred by EPA to the EPA Hazardous Substance Superfund, or as otherwise deemed appropriate by EPA.  Notwithstanding the prior sentence, with respect to funds received by the United States, Settling Work Defendant, or UTC, resulting from a settlement or Consent Decree with the Estate of Hescox or its insurers, as part of the Consolidated Federal Action:  (a) twenty-five percent (25%) of such payment(s) shall be paid directly to Settling Work Defendant; (b) twenty-five percent (25%) of such payment(s) shall be transferred to the OU2/OU3 Disbursement Special Account to be used for the Work Costs; and (c) fifty percent (50%) of such payment(s) shall be transferred to the OU2/OU3 Locust Avenue Superfund Site Special Account to be retained and used by EPA at EPA's discretion to conduct or finance response actions at or in connection with the Locust Avenue Superfund Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund, or as otherwise deemed appropriate by EPA.  At EPA's discretion, EPA may establish one account for the OU2/OU3 Locust Avenue Superfund Special Account and for the account defined in the OU1 Work Decree as the B.F. Goodrich Special Account.  Any potential funds that the United States on behalf of the Settling Federal Agencies is required to pay to reimburse Settling Work Defendant for NCP compliant Work Costs or Future Response Costs pursuant to Paragraphs 56 – 58 and 63 – 66 will be paid directly to Settling Work Defendant.

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

57.     The Work Costs and Future Response Costs shall be funded as follows:  (a) The first twenty-one million five hundred thousand dollars ($21,500,000), plus an amount equal to the twenty-five percent (25%) paid directly to Settling Work Defendant on behalf of the Estate of Hescox or its insurers as provided in Paragraph 56 above ("Settling Work Defendant's Initial Funding"), shall be paid by Settling Work Defendant; (b) after exhaustion of Settling Work Defendant's Initial Funding, payments shall be made by Settling Work Defendant using money from any insurance recoveries that Settling Work Defendant or UTC receive relating to the RABSP Site that total in excess of sixty-eight million seven hundred fifty thousand dollars ($68,750,000); (c) after exhaustion of Settling Work Defendant's Initial Funding and the funds from any insurance recoveries above sixty-eight million seven hundred fifty thousand dollars ($68,750,000) as described in subparagraph (b), Settling Work Defendant may seek reimbursement for NCP compliant Work Costs from the OU2/OU3 Disbursement Special Account; and (d) upon the exhaustion of the funds described in subparagraphs (a), (b), and (c), Settling Work Defendant and the United States on behalf of Settling Federal Agencies shall each be obligated to pay fifty percent (50%) of the remaining NCP compliant Work Costs and Future Response Costs (for a total of one hundred percent (100%) of such costs), until the Work is completed with Settling Federal Agencies' payment being in the form of reimbursement to Settling Work

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Defendant as described in Paragraphs 56 – 58 and 63 – 66.  Settlement funds that the United States, Settling Work Party, or UTC receives from any Future Settling Party after December 31, 2012, as part of the Consolidated Federal Action shall not alter, offset, or reimburse Settling Work Defendant's obligations under this Consent Decree, except as specifically provided in this Paragraph.  Settling Work Defendant has represented that it has submitted claims to its insurers in excess of seventy-one million five hundred thousand dollars ($71,500,000) relating to the RABSP Site, including over fifty million dollars ($50,000,000) in past costs, fees, or litigation expenses and twenty-one million five hundred thousand dollars ($21,500,000) for the Settling Work Defendant's Initial Funding.

58.     Pursuant to this Consent Decree, and subject to the general reservation in Paragraph 99, Settling Work Defendant is only required to perform and/or fund Work up to two million dollars ($2,000,000) for OU3, if such Work or funding is required by EPA.  Any funds, up to two million dollars ($2,000,000), spent on Work Costs by Settling Work Defendant for OU3, shall be counted toward Settling Defendant's Initial Funding pursuant to Paragraph 57.  In the event EPA exercises its reservation pursuant to Paragraph 99j. of this Consent Decree or otherwise requests Settling Work Defendant to conduct OU3 Work in excess of two million dollars ($2,000,000), and Settling Work Defendant conducts such OU3 Work pursuant to this Consent Decree or pursuant to an administrative order, these

additional funds shall be counted toward Settling Work Defendant's Initial Funding pursuant to Paragraph 57 and subject to the funding procedures described in Paragraph 57(a) through (d).  If Settling Work Defendant conducts OU3 Work in excess of two million dollars ($2,000,000) pursuant to this Consent Decree or pursuant to an administrative order, such OU3 Work shall not require an amendment to this Consent Decree and shall be subject to all of the funding and reimbursement terms and conditions of this Consent Decree in the same manner as the first two million dollars ($2,000,000) of OU3 Work.

59.    Operation and Maintenance of the Remedial Action are included in the Work and, once the funds described in Paragraph 57(a), (b), and (c) have been fully depleted, are subject to Settling Work Defendant and Settling Federal Agencies cost sharing described in Paragraphs 56 – 58 and 63 – 66.

60.    Settling Work Defendant will actively assist the United States in pursuing settlement funds from Future Settling Parties and seeking fair and appropriate resolution of its claims against these parties.

61.    <u>Settling Work Defendant's Initial Funding Work Cost Summary and Certification</u>.  (a) Settling Work Defendant is required to certify, under penalty of perjury, to the United States, EPA, and DOJ, the extent to which it has funded and implemented the Settling Work Defendant's Initial Funding of Work pursuant to Paragraph 57 of this Consent Decree.  On or before February 15 of each calendar

year, beginning after the OU2/OU3 ROD is signed, and annually each year thereafter until the Settling Work Defendant's Initial Funding has been exhausted, Settling Work Defendant shall submit to EPA and DOJ a Cost Summary and Certification, as described in subparagraph (b) below, covering Work Costs and Future Response Costs incurred and paid by Settling Work Defendant from January 1 to December 31 of the preceding calendar year, if any and; (b) Each Work Cost Summary and Certification shall include a complete and accurate written cost summary and certification of the Work Costs and Future Response Costs incurred and paid by Settling Work Defendant for the particular submission, excluding costs excluded from disbursement or reimbursement under Paragraph 63e. Each Work Cost Summary and Certification pursuant to this subparagraph shall contain the following statement signed by an officer of Settling Work Defendant or Settling Work Defendant's Project Coordinator, who shall be an employee of Settling Work Defendant or UTC:

> I certify that, to the best of my knowledge, after thorough investigation and review of Goodrich Corporation's documentation of Work Costs (and Future Response Costs) incurred and paid for work performed pursuant to a certain Consent Decree entered by the Federal District Court in Central District of California, Case No. 09-01864 PSG (SSx) as Docket No. [_____] on [DATE] during the period covered by this certification, the information contained in or accompanying this submission is true, accurate, and complete. The documents that I reviewed in support of this certification are attached as Attachment A, hereto. I certify that Goodrich Corporation has not sought or recovered any documented Work Costs or Future Response Costs under any Federal Contract. I further certify that Goodrich

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

> Corporation has not recovered more than sixty-eight million seven hundred fifty thousand dollars ($68,750,000) from its insurers on claims relating to the RABSP Site.  I am aware that there are significant penalties for knowingly submitting false information, including the possibility of fine and imprisonment.

The officer or Project Coordinator of Settling Work Defendant shall also provide a list of the documents that he or she reviewed in support of the certification.  Upon request by EPA or DOJ, Settling Work Defendant shall submit to EPA or DOJ, any additional information that EPA or DOJ deems necessary for its review and approval of a certification.  No accounting is required by this Paragraph if Settling Work Defendant has not incurred Work Costs during the applicable annual period.  Settling Work Defendant shall not include in any submission costs included in a previous Cost Summary and Certification if those costs have been previously sought or reimbursed.  In no event shall Settling Work Defendant submit or be entitled to recover from the United States a Work Cost or Future Response Cost more than two (2) years after it has been incurred by Settling Work Defendant.

62.  <u>Establishment of OU2/OU3 Disbursement Special Account and Reimbursement of Settling Work Defendant's Expenditures</u>.  EPA shall timely establish the OU2/OU3 Disbursement Special Account.  Subject to the terms and conditions set forth in this Section XVI (Establishment of Accounts and Payments), EPA agrees to make the funds in the OU2/OU3 Disbursement Special Account, including Interest earned on the funds in the OU2/OU3 Disbursement

Special Account, available for disbursement to Settling Work Defendant as reimbursement for performance of the Work undertaken by Settling Work Defendant (and Future Response Costs paid by Settling Work Defendant) after Settling Work Defendant's Initial Funding described in Paragraph 57(a), above has been depleted.

63.   Requests for Reimbursement from the OU2/OU3 Disbursement Special Account.

a.   On or before February 15 of each calendar year beginning after Settling Defendant's Initial Funding has been depleted and annually thereafter until exhaustion of the funds in the OU2/OU3 Special Disbursement Account, Settling Work Defendant shall submit to EPA and DOJ a Cost Summary and Certification, as defined in Paragraph 61b., covering Work Costs (and Future Response Costs) incurred and paid by Settling Work Defendant from January 1 to December 31 of the preceding calendar year.  No accounting is required by this Paragraph if Settling Work Defendant has not incurred Work Costs during the applicable annual period.  Settling Work Defendant shall not include in any submission costs included in a previous Cost Summary and Certification if those costs have been previously sought or reimbursed.

b.   Each Cost Summary and Certification shall include a complete and accurate written cost summary and certification of the necessary costs incurred

and paid by Settling Work Defendant for the Work Costs (and Future Response Costs) covered by the particular submission, excluding costs excluded from disbursement or reimbursement under subparagraph e.  Each Cost Summary and Certification pursuant to this subparagraph shall contain the following statement signed by an officer of Settling Work Defendant or UTC or Settling Work Defendant's Project Coordinator who shall be an employee of Settling Work Defendant or UTC, and by an independent CPA or other person acceptable to EPA:

> I certify that, to the best of my knowledge, after thorough investigation and review of Goodrich Corporation's documentation of costs incurred and paid for work performed pursuant to a certain Consent Decree entered by the District Court in Central District of California Case No. 09-01864 PSG (SSx) as Docket No. [____] on [DATE] during the period covered by this Cost Summary and Certification, the information contained in or accompanying this submission is true, accurate, and complete.  I certify that Goodrich Corporation has not sought or recovered any claimed Work Costs or Future Response Costs from the United States under any Federal Contract.  I further certify that Goodrich Corporation has not recovered any claimed Work Costs in excess of sixty-eight million seven hundred fifty thousand dollars ($68,750,000) relating to the RABSP Site, or Future Response Costs from any other source, including its insurers.  I am aware that there are significant penalties for knowingly submitting false information, including the possibility of fine and imprisonment.

The officer or Project Coordinator and the independent CPA or other person acceptable to EPA shall also provide EPA a list of the documents that he or she reviewed in support of the Cost Summary and Certification.  Upon request by

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

EPA, Settling Work Defendant shall submit to EPA any additional information that EPA deems necessary for its review and approval of a Cost Summary and Certification.

        c.      If EPA or DOJ finds that a Cost Summary and Certification includes a mathematical error, costs excluded from disbursement or reimbursement under subparagraph e., costs that are inadequately documented, or costs submitted in a prior Cost Summary and Certification, it will notify Settling Work Defendant and provide it an opportunity to cure the deficiency by submitting a revised Cost Summary and Certification.  If Settling Work Defendant fails to cure the deficiency within thirty (30) Days after being notified of, and given the opportunity to cure, the deficiency, EPA will recalculate Settling Work Defendant's costs eligible for disbursement for that submission and disburse the corrected amount to Settling Work Defendant.  Settling Work Defendant may dispute EPA's recalculation under this Paragraph pursuant to Section XIX (Dispute Resolution). In no event shall Settling Work Defendant be disbursed funds from the OU2/OU3 Disbursement Special Account in excess of amounts properly documented in a Cost Summary and Certification accepted or modified by EPA.

        d.      <u>Timing, Amount, and Method of Disbursing Funds From the OU2/OU3 Disbursement Special Account</u>.  Within thirty (30) Days after EPA's receipt of a Cost Summary and Certification as defined by subparagraphs a. and b.,

or if EPA has requested additional information under or a revised Cost Summary and Certification under subparagraph c., within thirty (30) Days after receipt of the additional information or revised Cost Summary and Certification, and subject to the conditions set forth in this Section, EPA shall disburse the funds to Settling Work Defendant from the OU2/OU3 Disbursement Special Account.

    e. <u>Costs Excluded from Disbursement</u>.  The following costs are excluded from, and shall not be sought by Settling Work Defendant for disbursement from the OU2/OU3 Disbursement Special Account, for reimbursement under the provisions described in Paragraphs 56 – 58 and 63 – 66, or otherwise from the United States:  (1) except as specifically provided in this subparagraph, any payments made by Settling Work Defendant to the United States pursuant to this Consent Decree, including, but not limited to, any Interest or stipulated penalties paid pursuant to Section XX (Stipulated Penalties); (2) attorneys' fees and costs, except for reasonable non-litigation attorneys' fees necessarily related to obtaining access, water rights, or institutional controls, as required by Section IX (Access); (3) costs of any response activities Settling Work Defendant performs that are not required under the terms of this Consent Decree, or approved by EPA pursuant to, this Consent Decree; (4) costs related to Settling Work Defendant's litigation, settlement, development of potential contribution claims, or identification of defendants; (5) internal costs of Settling Work

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Defendant, including but not limited to, salaries, travel, or in-kind services, except for those costs that represent the work of employees of Settling Work Defendant directly performing the Work; (6) any costs incurred by Settling Work Defendant prior to the Effective Date, except for approved Work completed pursuant to this Consent Decree; (7) any costs incurred by Settling Work Defendant pursuant to Section XIX (Dispute Resolution); or (8) any claimed Work Cost from the United States or from any other source, including insurers, however, Settling Work Defendant may seek reimbursement from the OU2/OU3 Disbursement Special Account for Future Response Costs after depletion of (1) Settling Work Defendant's Initial Funding; and (2) depletion of all insurance proceeds received by Settling Work Defendant and/or UTC related to the RABSP Site in excess of sixty-eight million seven hundred fifty thousand dollars ($68,750,000).

       f.    <u>Termination of Disbursements from the OU2/OU3 Disbursement Special Account</u>.  EPA's obligation to disburse funds from the OU2/OU3 Disbursement Special Account under this Consent Decree shall terminate upon EPA's determination that Settling Work Defendant:  (1) has knowingly submitted a materially false or misleading Cost Summary and Certification; (2) has submitted a materially inaccurate or incomplete Cost Summary and Certification, and has failed to correct the materially inaccurate or incomplete Cost Summary and Certification within sixty (60) Days after being

notified of, and given the opportunity to cure, the deficiency; or (3) failed to submit a Cost Summary and Certification as required by subparagraphs a. and b., within sixty (60) Days (or such longer period as EPA agrees) after being notified that EPA intends to terminate its obligation to make disbursements pursuant to this Section because of Settling Work Defendant's failure to submit the Cost Summary and Certification as required by subparagraphs a., b., and c.  EPA's obligation to disburse funds from the OU2/OU3 Disbursement Special Account shall also terminate upon EPA's assumption of performance of any portion of the Work pursuant to Paragraph 100 (Work Takeover), when such assumption of performance of the Work is not challenged by Settling Work Defendant or, if challenged, is upheld under Section XIX (Dispute Resolution).  Settling Work Defendant may dispute EPA's termination of special account disbursements under Section XIX (Dispute Resolution).  EPA's obligation to disburse funds shall also terminate when all funds, if any, in the account have been exhausted.

g.    Recapture of Disbursement from OU2/OU3 Disbursement Special Account.

(1)    Upon termination of disbursements from the OU2/OU3 Disbursement Special Account under subparagraph f., if EPA has previously disbursed funds from the OU2/OU3 Disbursement Special Account for activities specifically related to the reason for termination, i.e., discovery of a materially

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

false or misleading submission after disbursement of funds based on that submission, EPA shall submit a bill to Settling Work Defendant for those amounts already disbursed from the OU2/OU3 Disbursement Special Account specifically related to the reason for termination, plus Interest on that amount covering the period from the date of disbursement of the funds by EPA to the date of repayment of the funds by Settling Work Defendant.

(2)     Within sixty (60) Days after receipt of EPA's bill, Settling Work Defendant shall reimburse the EPA Hazardous Substance Superfund for the total amount billed.  Payment shall be made in accordance with Paragraph 67 (Instructions for Future Response Cost Payments and Stipulated Penalties).

(3)     Upon receipt of payment, EPA may deposit all or any portion thereof in the OU2/OU3 Locust Avenue Superfund Site Special Account, the OU2/OU3 Disbursement Special Account, or the EPA Hazardous Substance Superfund.  The determination of where to deposit or how to use the funds shall not be subject to challenge by Settling Work Defendant pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.  Settling Work Defendant may dispute EPA's determination as to recapture of funds pursuant to Section XIX (Dispute Resolution).

h.     Balance of Disbursement of OU2/OU3 Disbursement of Special Account Funds.  After EPA issues its written Certification of Completion of the

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Work pursuant to this Consent Decree and after EPA completes all disbursements to Settling Work Defendant in accordance with this Section, if any funds remain in the OU2/OU3 Disbursement Special Account, EPA may transfer such funds to the OU2/OU3 Locust Avenue Superfund Site Special Account or to the EPA Hazardous Substance Superfund.  Any transfer of funds to the OU2/OU3 Locust Avenue Superfund Site Special Account or to the EPA Hazardous Substance Superfund shall not be subject to challenge by Settling Work Defendant pursuant to the dispute resolution provisions of this Consent Decree or any other forum.

64.     Payments by Settling Federal Agencies.

a.     Subject to and in the manner described in Paragraphs 56 – 58 and 63 – 66, the United States on behalf of Settling Federal Agencies shall directly reimburse Settling Work Defendant for its share of Work Costs and Future Response Costs.

b.     On or before February 15 of each calendar year beginning after Settling Work Defendant's Initial Funding has been depleted and the exhaustion of the funds in the OU2/OU3 Special Disbursement Account, Settling Work Defendant shall submit to DOD a Cost Summary and Certification, as described in subparagraph c. covering Work Costs and Future Response Costs incurred and paid by Settling Work Defendant from January 1 to December 31 of the preceding calendar year.  No accounting is required by this Paragraph if Settling Work

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Defendant has not incurred Work Costs during the applicable annual period.

Settling Work Defendant shall not include in any submission costs included in a

previous Cost Summary and Certification if those costs have been previously

sought or reimbursed.  In no event shall Settling Work Defendant submit or be

entitled to recover from the United States a Work Cost more than two (2) years

after it has been incurred by Settling Work Defendant.

       c.     Each Work Cost Summary and Certification shall include a

complete and accurate written cost summary and certification of the Work Costs

and Future Response Costs incurred and paid by Settling Work Defendant for the

particular submission, excluding costs not eligible for disbursement or

reimbursement under Paragraph 63e.  Each Work Cost Summary and Certification

pursuant to this subparagraph shall contain the following statement signed by an

officer of Settling Work Defendant or Settling Work Defendant's Project

Coordinator who shall be an employee of Settling Work Defendant or UTC:

> I certify that, to the best of my knowledge, after thorough investigation and review of Goodrich Corporation's documentation of Work Costs [and Future Response Costs] incurred and paid for work performed pursuant to a certain Consent Decree entered by the District Court in Central District of California Case No. 09-01864 PSG (SSx) as Docket No. [____] on [DATE] during the period covered by this certification, the information contained in or accompanying this submission is true, accurate, and complete.  I certify that Goodrich Corporation has not sought or recovered any claimed Work Costs or Future Response Costs from the United States under any Federal Contract.  I further certify that Goodrich Corporation has not recovered any claimed Work Costs in excess of sixty-eight million seven hundred fifty thousand dollars ($68,750,000) relating to the RABSP Site or Future

Response Costs from any other source, including its insurers.  I am aware that there are significant penalties for knowingly submitting false information, including the possibility of fine and imprisonment.

Included with each statement and certification shall be copies of invoices, a description of the Work underlying the invoices, and other documentation reasonably requested by the United States sufficient to support the claimed Work Costs and Future Response Costs.  Settling Work Defendant shall notify the United States before making any claims to other parties for reimbursement of any Work Costs or Future Response Costs and Settling Work Defendant agrees not to seek reimbursement from either Settling Federal Agencies or from the EPA Disbursement Special Account for any Work Costs or Future Response Costs that it has received from any other party.

      d.     Within ninety (90) Days of the United States' receipt of each Cost Summary and Certification, the United States on behalf of Settling Federal Agencies shall reimburse Settling Work Defendant fifty percent (50%) of the necessary NCP compliant Work Costs and Future Response Costs, as set forth in Paragraphs 56 – 58 and 63 – 66 contained in the statement that are properly included and supported, except as otherwise provided in Paragraph 63e. of this Consent Decree.  Payment shall be made pursuant to instructions given by Settling Work Defendant, provided these instructions comply with federal and any other applicable law.

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

e.    If Settling Work Defendant fails to support Work Costs and Future Response Costs with documentation required in subparagraphs b. and c., or otherwise fails to demonstrate that a cost is properly reimbursable under this Agreement, the United States may object, in writing, within sixty (60) Days of receipt of the statement, and said objection shall be sent to Settling Work Defendant's designated counsel.  Any such objection shall identify the contested cost item and the basis for objection.  In the event of an objection, the United States shall, within the ninety (90) Day period, reimburse its share of any uncontested Work Costs.  After the transmission of any objection, the United States shall initiate the dispute resolution procedures provided in this Paragraph.

f.    If any payment required to be made by this Paragraph is not made in accordance with the provisions of this Section, Interest on the unpaid balance shall accrue from the date on which the payment was due.

g.    After exhaustion of the funds in the OU2/OU3 Disbursement Special Account pursuant to Paragraphs 62 and 63, Settling Work Defendant and the United States on behalf of Settling Federal Agencies shall pay fifty percent (50%) each of the remaining Work Costs until the Work is completed or this Consent Decree is terminated.  Settling Work Defendant shall pursuant to this Paragraph submit its Work Costs to the counsel representing the United States Department of Defense designated in the Notices and Submissions Section for fifty

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

percent (50%) reimbursement.  If the United States determines for any reason that a portion of Work Costs for which reimbursement was made to Settling Work Defendant pursuant to this Consent Decree was not properly subject to reimbursement, the United States may demand credit, with Interest, of all payments made previously with regard to those costs, which credit shall be applied to Settling Work Defendant's subsequent demands for Work Costs or through a direct payment if Settling Work Defendant makes no other demands for reimbursement to which a credit may be applied.  Within sixty (60) Days of receiving such a demand, Settling Work Defendant shall credit such prior payments to the United States, with Interest from the date of the prior payments to the date of return of those payments, unless Settling Work Defendant provides written notice contesting that demand for credit within said sixty (60) Day period, in which case the dispute resolution provisions of this Paragraph shall take effect. The United States shall not demand credit for any payment of Work Costs, more than two (2) years after it has made that payment, except in cases of fraud or bad faith, or where the United States could not have reasonably determined, from the information submitted by Settling Work Defendant before the payment, that a claimed cost was not a valid Work Cost or had been reimbursed from another source.

       h.    A determination by the United States not to object to a Work

Cost shall not constitute an admission, agreement, understanding, or other indication by the United States that any such cost is within the scope of this Consent Decree, that such cost was necessary or incurred consistent with the NCP, or is otherwise reimbursable under this Consent Decree or under any statute, regulation, or other provision of law or equity.

i.     <u>Dispute Resolution for Settling Work Defendant's Work Costs</u>. In lieu of the dispute resolution provisions Section XIX (Dispute Resolution), any dispute with respect to the United States' obligation, on behalf of Settling Federal Agencies pursuant to Paragraphs 56 – 58 and 63 – 66, to reimburse Work Costs under this Consent Decree shall in the first instance be the subject of informal negotiations between the United States and Settling Work Defendant.  The period for informal negotiations shall last sixty (60) Days from the date the United States transmits its objection pursuant to this Paragraph, or Settling Work Defendant transmits an intention to contest a demand for credit, unless this period is extended by written agreement of the United States and Settling Work Defendant.  If informal negotiations are unsuccessful, the United States and Settling Work Defendant may notify the Court of the dispute and the need for a resolution, either by the Court or through the use of Court-annexed alternative dispute resolution procedures, unless the United States and Settling Work Defendant agree in writing, to an alternative method of dispute resolution.

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

j.      In the event informal negotiations are unsuccessful, neither the United States nor Settling Work Defendant shall submit or rely on any evidence, in any form, to resolve the disputed Work Costs, that was not disclosed to the other Party prior to the expiration of the informal negotiation period, except upon leave of Court or as the United States and Settling Work Defendant otherwise agree. However, nothing in this Paragraph shall preclude a Party from submitting or relying on:  (1) expert testimony; (2) factual evidence not in existence at the time of the informal negotiation period; (3) factual evidence not known to the Party at the time of the informal negotiation period; or (4) evidence that is, or was at the time of the informal negotiation period, exclusively within the possession of the other Party.

k.      If a reimbursement is determined to be due, the United States shall pay the sum determined to be due within sixty (60) Days of the resolution of the dispute (with accrued Interest pursuant to this Consent Decree).  If a credit is determined to be due to the United States pursuant to this Paragraph, such credit shall be applied to Settling Work Defendant's subsequent claims for reimbursement.  In the event Settling Work Defendant makes no subsequent claims for reimbursement exceeding the credit, then it shall refund any remaining credit to the United States with Interest accruing from the date the credit was determined due.

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

65.     The Parties and UTC recognize and acknowledge that the payment

obligations of the United States on behalf of Settling Federal Agencies under this

Consent Decree can only be paid from appropriated funds legally available for

such purpose.  Nothing in this Consent Decree shall be interpreted or construed as

a commitment or requirement that the United States on behalf of any Settling

Federal Agency obligate or pay funds in contravention of the Anti-Deficiency Act,

31 U.S.C. § 1341, or any other applicable provision of law.

66.     Payment and Disbursement Instructions.  Except as otherwise

provided herein, Future Settling Parties shall deposit their respective payments into

the Locust Avenue Superfund Site Special Account and the OU2/OU3

Disbursement Special Account as described in Paragraph 56.

67.     Instructions for Future Response Costs Payments and Stipulated

Penalties.  All payments required elsewhere in this Consent Decree to be made in

accordance with this Paragraph shall be made in accordance with instructions to be

provided by the United States following the date of lodging of Consent Decree,

and shall be identified as "future response costs payments" or "stipulated

penalties" as applicable.  All payments to be made under this Paragraph shall

reference the EPA Site/Spill ID Number 09JW and DOJ Case Number 90-11-2-

09952.  At the time of any payment required to be made in accordance with

Section XVI (Establishment of Accounts and Payments), Settling Work Defendant

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

shall send notice that payment has been made to the United States, and to EPA, in accordance with Section XXV (Notices and Submissions), and to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, or by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268.  Such notice shall also reference the EPA Site/Spill ID Number 09JW and DOJ Case Number 90-11-2-09952.  Settling Work Defendant shall pay to EPA Future Response Costs not inconsistent with the NCP.  On a periodic basis, EPA will send Settling Work Defendant a bill requiring payment that includes an itemized cost summary, which includes costs incurred by EPA.  Settling Work Defendant shall make payments to EPA within forty-five (45) Days of Settling Work Defendant's receipt of each bill requiring payment, unless the cost summary is contested pursuant to the dispute resolution provisions of Section XIX (Dispute Resolution) of this Consent Decree.

68.    Settling Work Defendant may contest any Future Response Costs if it determines that EPA has made a mathematical error or included a cost item that is not within the definition of Future Response Costs, or if it believes EPA incurred excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP.  Such objection shall be made in writing within sixty (60) Days after receipt of the bill and must be sent to the United States pursuant to Section XXV (Notices and Submissions).  Any such objection shall specifically identify the contested Future Response Costs and the basis for

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

objection.  In the event of an objection, Settling Work Defendant shall pay all uncontested Future Response Costs to the United States within thirty (30) Days after Settling Work Defendant's receipt of the bill requiring payment.  Within sixty (60) Days of submitting such objection, Settling Work Defendant shall establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation ("FDIC"), and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs.  Settling Work Defendant shall send to the United States, as provided in Section XXV (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account.  Within sixty (60) Days, with establishment of the escrow account, Settling Work Defendant shall initiate the dispute resolution procedures in Section XIX (Dispute Resolution).  If the United States prevails in the dispute, Settling Work Defendant shall pay the sums due (with accrued Interest) to the United States within thirty (30) Days after the resolution of the dispute.  If Settling Work Defendant prevails concerning any aspect of the contested costs, Settling Work Defendant shall pay that portion of the costs (plus

associated accrued Interest) for which it  does not prevail to the United States within thirty (30) Days after the resolution of the dispute.  Settling Work Defendant shall be disbursed any balance of the escrow account.  All payments to the United States under this Paragraph shall be made in accordance with Paragraph 67 (Instructions for Future Response Cost Payments and Stipulated Penalties).  The dispute resolution procedures set forth in this Paragraph, in conjunction with the procedures set forth in Section XIX (Dispute Resolution), shall be the exclusive mechanisms for resolving disputes regarding Settling Work Defendant's obligation to reimburse the United States for its Future Response Costs.

69.   Interest.  In the event that any payment required under this Section is not made by the date required, Settling Work Defendant shall pay Interest on the unpaid balance.  The Interest to be paid under this Paragraph shall begin to accrue on the date the payment is required.  The Interest shall accrue through the date of Settling Work Defendant's payment.  Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Work Defendant's failure to make timely payments under Section XVI (Establishment of Accounts and Payments) including, but not limited to, payment of stipulated penalties pursuant to Section XX (Stipulated Penalties).

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

## XVII.   INDEMNIFICATION AND INSURANCE

70.   Settling Work Defendant's Indemnification of the United States.  The United States does not assume any liability by entering into this Consent Decree or by virtue of any designation of Settling Work Defendant as EPA's authorized representative under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e).  Settling Work Defendant shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Work Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities required by this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Work Defendant as EPA's authorized representative under Section 104(e) of CERCLA.  Further, Settling Work Defendant agrees to pay the United States all costs it incurs including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Work Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree.  The United

States shall not be held out as a party to any contract entered into by or on behalf of Settling Work Defendant in carrying out activities pursuant to this Consent Decree.  Neither Settling Work Defendant nor any such contractor shall be considered an agent of the United States.

a.     The United States shall give Settling Work Defendant notice of any claim for which the United States plans to seek indemnification pursuant to this Paragraph and shall consult with Settling Work Defendant prior to settling such claim.

b.     Nothing in this Paragraph shall alter any obligations of Settling Federal Agencies set forth elsewhere in this Consent Decree.

71.     Settling Work Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between Settling Work Defendant and any person for performance of Work on or relating to the Locust Avenue Superfund Site, including, but not limited to, claims on account of construction delays.  In addition, Settling Work Defendant shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Settling Work Defendant and any person for

performance of Work on or relating to the Locust Avenue Superfund Site,

including, but not limited to, claims on account of construction delays.

72.    No later than fifteen (15) Days before commencing any on-Site Work,

Settling Work Defendant or Settling Work Defendant's Supervising Contractor

shall secure, and shall maintain, until the first anniversary of EPA's Certification

of Completion of the Work pursuant to Paragraph 52 of Section XIV (Certification

of Completion of the Work), commercial general liability insurance with limits of

two million dollars ($2,000,000), for any one occurrence, and automobile liability

insurance with limits of one million dollars ($1,000,000), combined single limit,

naming the United States as an additional insured with respect to all liability

arising out of the activities performed by or on behalf of Settling Work Defendant

pursuant to this Consent Decree.  In addition, for the duration of this Consent

Decree, Settling Work Defendant shall satisfy, or shall ensure that its contractors

or subcontractors satisfy, all applicable laws and regulations regarding the

provision of worker's compensation insurance for all persons performing the Work

on behalf of Settling Work Defendant in furtherance of this Consent Decree.  Prior

to commencement of the Work under this Consent Decree, Settling Work

Defendant shall provide to EPA certificates of such insurance and a copy of each

insurance policy.  Settling Work Defendant shall resubmit such certificates and

copies of policies each year on the anniversary of the Effective Date, beginning

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

after the OU2/OU3 ROD is signed.  If Settling Work Defendant demonstrates by

evidence satisfactory to EPA that any contractor or subcontractor maintains

insurance equivalent to that described above, or insurance covering the same risks

but in a lesser amount, then, with respect to that contractor or subcontractor,

Settling Work Defendant needs to provide only that portion of the insurance

described above that is not maintained by the contractor or subcontractor.

## XVIII.    FORCE MAJEURE

73.    "Force majeure," for purposes of this Consent Decree, is defined as

any event arising from causes beyond the control of Settling Work Defendant, of

any entity controlled by Settling Work Defendant, or of Settling Work Defendant's

contractors that delays or prevents the performance of any obligation under this

Consent Decree despite Settling Work Defendant's best efforts to fulfill the

obligation.  The requirement that Settling Work Defendant exercises "best efforts

to fulfill the obligation" includes using best efforts to anticipate any potential force

majeure and best efforts to address the effects of any potential force majeure (1) as

it is occurring and (2) following the potential force majeure such that the delay and

any adverse effects of the delay are minimized to the greatest extent possible.

"Force majeure" does not include financial inability to complete the Work or a

failure to achieve the Performance Standards.

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

74.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which Settling Work Defendant intends or may intend to assert a claim of force majeure, Settling Work Defendant shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Superfund Division, EPA Region 9, within forty-eight (48) hours of when Settling Work Defendant first knew that the event might cause a delay.  Within five (5) Days thereafter, Settling Work Defendant shall provide in writing to EPA, with a copy to Rialto, an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Work Defendant's rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of Settling Work Defendant, such event may cause or contribute to an endangerment to public health or welfare, or the environment.  Settling Work Defendant shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure.  Settling Work Defendant shall be deemed to know of any circumstance of which Settling Work Defendant, any entity controlled by Settling Work Defendant, or Settling Work Defendant's

contractors knew or should have known.  Failure to comply with the above requirements regarding an event shall preclude Settling Work Defendant from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late notice, is able to assess to its satisfaction whether the event is a force majeure under Paragraph 73 and whether Settling Work Defendant has exercised its best effort under Paragraph 73, EPA may, in its unreviewable discretion, excuse in writing Settling Work Defendant's failure to submit timely notices under this Paragraph.

75.    If EPA agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation.  If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify Settling Work Defendant in writing of its decision, and provide a copy to Rialto.  If EPA agrees that the delay is attributable to a force majeure, EPA will notify Settling Work Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure, and provide a copy to Rialto.

76.     If Settling Work Defendant elects to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), it shall do so no later than fifteen (15) Days after receipt of EPA's notice.  In any such proceeding, Settling Work Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Work Defendant complied with the requirements of Paragraphs 73 and 74.  If Settling Work Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Work Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX.    DISPUTE RESOLUTION

77.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes regarding this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Settling Work Defendant that have not been disputed in accordance with this Section.

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

78.     Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed twenty (20) Days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

79.     <u>Statement of Position</u>.

a.      In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within thirty (30) Days after EPA issues written notice to Settling Work Defendant that the informal negotiations have terminated, Settling Work Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States, with a copy of Rialto, a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by Settling Work Defendant.  The Statement of Position shall specify Settling Work Defendant's position as to whether formal dispute resolution should proceed under Paragraph 80 or 81.

b.      Within forty (40) Days after receipt of Settling Work Defendant's Statement of Position, EPA will serve on Settling Work Defendant,

with a copy to Rialto, its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA.  EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 80 or 81.  Within thirty (30) Days after receipt of EPA's Statement of Position, Settling Work Defendant may submit a reply, with a copy to Rialto.

        c.     If there is disagreement between EPA and Settling Work Defendant as to whether dispute resolution should proceed under Paragraph 80 or 81, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable.  However, if Settling Work Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 80 and 81.

    80.   <u>Record Review</u>.  Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this

Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree.  Nothing in this Consent Decree shall be construed to:  (a) allow any dispute by Settling Work Defendant regarding the validity of the OU2/OU3 ROD's provisions, or (b) allow Settling Work Defendant to seek review of the selection or adequacy of any response action identified or selected in the OU2/OU3 ROD; provided however, Settling Work Defendant retains all rights pursuant to Section 117 of CERCLA, 41 U.S.C. § 9617 and 40 C.F.R. § 300.430(f)(3) relating to the Proposed Plan for the OU2/OU3 ROD, including its conclusions and directions.

a.      An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.      The Director of the Superfund Division, EPA Region 9, will issue a final administrative decision resolving the dispute based on the administrative record described in this Paragraph.  This decision shall be binding upon Settling Work Defendant, subject only to the right to seek judicial review pursuant to subparagraphs c. and d.

c.      Any administrative decision made by EPA pursuant to

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

subparagraph b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Work Defendant with the Court and served on all parties within thirty (30) Days of receipt of EPA's decision.  The motion shall be filed with this Court, which hereby retains jurisdiction to resolve all disputes as provided in this Consent Decree.  The motion shall be referred in the first instance to Judge Gutierrez.  In the event, Judge Gutierrez is unavailable to hear the motion, the motion shall be assigned by the Central District of California. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  Within thirty (30) Days of the filing of such motion, the United States may file a response to Settling Work Defendant's motion.

        d.     In proceedings on any dispute governed by this Paragraph, Settling Work Defendant shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled pursuant to this Paragraph.

    81.    Unless otherwise provided in this Consent Decree, formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record

under applicable principles of administrative law shall be governed by this Paragraph.

a.    Following receipt of Settling Work Defendant's Statement of Position submitted pursuant to Paragraph 79, the Director of the Superfund Division, EPA Region 9, will issue a final decision resolving the dispute.  The Superfund Division Director's decision shall be binding on Settling Work Defendant unless, within thirty (30) Days of receipt of the decision, Settling Work Defendant files with the Court and serves on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Work Defendant's motion.  The motion shall be filed with this Court, which hereby retains jurisdiction to resolve all disputes as provided in this Consent Decree.  The motion shall be referred in the first instance to Judge Gutierrez.  In the event, Judge Gutierrez is unavailable to hear the motion, the motion shall be assigned by the Central District of California.

b.    Notwithstanding Paragraph 80 (CERCLA Section 113(j) Record Review of OU2/OU3 ROD and Work) of Section I (Background), judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

82.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Settling Work Defendant under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in this Paragraph.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree.  In the event that Settling Work Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).  In the event Settling Work Defendant prevails on any disputed claim, Settling Work Defendant shall not owe any stipulated penalty for such claim.

## XX.     STIPULATED PENALTIES

83.     Settling Work Defendant shall be liable for stipulated penalties in the amounts set forth in Paragraphs 84 – 87 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure).  "Compliance" by a Settling Work Defendant shall include completion of all payments and activities required of that Settling Work Defendant under this Consent Decree, or any plan, report, or other

deliverable approved under this Consent Decree, in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans, reports, or other deliverables approved under this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

84.    Stipulated Penalty Amounts - Work (Including Specifically Enumerated Deliverables).

a.    The following stipulated penalties shall accrue per violation per Day for any noncompliance as described in Paragraph 83:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $2,500 | 1st through 14th Day |
| $5,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

b.    Performance of the Work and Compliance Milestones.

(1)    Failure to perform the Work as set forth in any and all EPA approved plans and/or to submit the following deliverables in a timely and adequate fashion:

(a)    Remedial Design Work Plan

(b)    Sampling & Analysis Plan and Health and Safety Plan for Remedial Design Investigation if required by RD Work Plan

(c)    Remedial Design Investigation Report if required

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

by RD Work Plan

     (d) Preliminary Design

     (e) Prefinal Design

     (f) Final Design

     (g) Construction Quality Assurance Plan;

     (h) Operation and Maintenance ("O&M") Plan if required by RD Work Plan

     (i) Compliance Monitoring Plan if required by RD Work Plan

     (j) Sampling & Analysis Plan and Health and Safety Plan to support O&M and Compliance Monitoring

     (k) Construction Health and Safety Plan

     (l) Remedial Action Work Plan

     (m) Remedial Action Report

     (n) Submittal of Analytical Data

     (o) Submittal of Well Construction Information if required by RD Work Plan

    (2) Failure to comply with the following Work schedule milestones:

     (a) Remedial Design Investigation if required by RD

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

- 112 -

Work Plan

     (b) Providing or arranging for access as set forth in Section IX (Access)

     (c) Start of RA Implementation

     (d) Pre-Certification Inspections

     (e) Completion of all outstanding items identified in the Pre-Certification Inspections

     (f) Start of Operation and Maintenance

  85. <u>Stipulated Penalty Amounts - Plans, Reports, and Other Deliverables Not Specified in Paragraph 84</u>.  The following stipulated penalties shall accrue per violation per Day for failure to comply with all other requirements of this Consent Decree not specifically set forth in Paragraph 84:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $1,250 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $7,500 | 31st Day and beyond |

  86. <u>Stipulated Penalty Amounts - Late Payments</u>.  If Settling Work Defendant makes a payment required by this Consent Decree after it is due, Settling Work Defendant shall be in violation of this Consent Decree and shall pay to the United States, as a stipulated penalty, as follows:

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,250 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $7,500 | 31st Day and beyond |

87.     In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 100 (Work Takeover), Settling Work Defendant shall be liable for a stipulated penalty in the amount of the lesser of two million dollars ($2,000,000) or three (3) times the Response Costs incurred in performance of all such Work.  Stipulated penalties under this Paragraph are in addition to the remedies available under Paragraph 49 (Funding for Work Takeover) and Paragraph 100 (Work Takeover).

88.     All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue:  (a) with respect to a deficient submission under Section XI (EPA Approval of Plans, Reports, and Other Deliverables), during the period, if any, beginning on the thirty-first (31st) Day after EPA's receipt of such submission until the date that EPA notifies Settling Work Defendant of any deficiency; (b) with respect to a decision by the Director of the Superfund Division, EPA Region 9, under Paragraph 80b. or 81a. of Section

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

XIX (Dispute Resolution), during the period, if any, beginning on the twenty-first (21st) Day after the date that Settling Work Defendant's reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the thirty-first (31st) Day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.  Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

89.     Following EPA's determination that Settling Work Defendant has failed to comply with a requirement of this Consent Decree, EPA may give Settling Work Defendant written notification, and provide a copy to Rialto, of the same and describe the noncompliance.  EPA may send Settling Work Defendant a written demand for the payment of the penalties, and provide a copy to Rialto.  However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified Settling Defendants of a violation.  All penalties accruing under this Section shall be due and payable to the United States within thirty (30) Days of Settling Work Defendant's receipt from EPA of a demand for payment of the penalties, unless Settling Work Defendant invokes the dispute

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

resolution procedures under Section XIX (Dispute Resolution) within the thirty

(30) Day period.  All payments to the United States under this Section shall

indicate that the payment is for stipulated penalties, and shall be made in

accordance with Paragraph 67 (Instructions for Future Response Cost Payments

and Stipulated Penalties).

90.    Penalties shall continue to accrue as provided in Paragraph 82 during

any dispute resolution period, but need not be paid until the following:

a.    If the dispute is resolved by agreement of the parties or by a

decision of EPA that is not appealed to this Court, accrued penalties so determined

to be owed shall be paid to EPA within fifteen (15) Days of the agreement or the

receipt of EPA's decision or order;

b.    If the dispute is appealed to this Court and the United States

prevails in whole or in part, Settling Work Defendant shall pay all accrued

penalties determined by the Court to be owed to EPA within sixty (60) Days of

receipt of the Court's decision or order.

91.    If Settling Work Defendant fails to pay stipulated penalties when due,

Settling Work Defendant shall pay Interest on the unpaid stipulated penalties as

follows:  (a) if Settling Work Defendant has timely invoked dispute resolution such

that the obligation to pay stipulated penalties has been stayed pending the outcome

of dispute resolution, Interest shall accrue from the date stipulated penalties are due

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

pursuant to this Paragraph until the date of payment; and (b) if Settling Work Defendant fails to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 89 until the date of payment.  If Settling Work Defendant fails to pay stipulated penalties and Interest when due, the United States may institute proceedings to collect the penalties and Interest against Settling Work Defendant.

92.     The payment of penalties and Interest, if any, shall not alter in any way Settling Work Defendant's obligation to complete the performance of the Work required under this Consent Decree.  Settling Work Defendant shall not count payment of penalties and/or Interest toward Settling Defendant's Initial Funding described in Paragraph 57, nor may it seek reimbursement from the OU2/OU3 Disbursement Special Account for any such penalties and/or Interest or otherwise from the United States.

93.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Work Defendant's violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, 42 U.S.C. § 9622(l), provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

stipulated penalty is provided in this Consent Decree, except in the case of a willful

violation in this Consent Decree. Notwithstanding any other provision of this

Section, the United States may, in its unreviewable discretion, waive any portion of

stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI.  COVENANTS, RELEASES, AND RESERVATIONS OF RIGHTS

A.      COVENANTS AND RESERVATIONS OF RIGHTS BY THE UNITED
        STATES ON BEHALF OF EPA

94.     Covenants for Settling Work Defendant and UTC by the United States

on Behalf of EPA.  In consideration of the actions that will be performed and the

payments that will be made by Settling Work Defendant under this Consent

Decree, and except as specifically provided in Paragraphs 96 and 97 (United States

Pre-Certification and Post-Certification Reservations) and Paragraph 99 (General

Reservation of Rights) of this Section, the United States on behalf of EPA

covenants not to sue or to take administrative action against Settling Work

Defendant and UTC pursuant to Sections 106 and 107(a) of CERCLA and Section

7003 of RCRA for the Locust Avenue Superfund Site.  With respect to future

liability, these covenants shall take effect upon Certification of Completion of

Remedial Action by EPA pursuant to Paragraph 51 of Section XIV (Certification

of Completion of the Work).  These covenants are conditioned upon the

satisfactory performance by Settling Work Defendant and UTC of their obligations

under this Consent Decree.  These covenants extend only to Settling Work Defendant and UTC and do not extend to any other person except as specifically set forth in this Consent Decree.

95.   Covenant for Settling Federal Agencies by EPA.  In consideration of the payments that may be made by the United States on behalf of Settling Federal Agencies under this Consent Decree, and except as specifically provided in Paragraphs 96b., 97b., and 99, EPA covenants not to take administrative action against Settling Federal Agencies pursuant to Sections 106 and 107(a) of CERCLA and Section 7003 of RCRA for the Locust Avenue Superfund Site.  EPA's covenant is conditioned upon the satisfactory performance of the payment obligations by the United States on behalf of Settling Federal Agencies under this Consent Decree.  EPA's covenant extends only to Settling Federal Agencies and does not extend to any other person except as specifically set forth in this Consent Decree.  This covenant is effective upon the execution of this agreement by the United States and shall remain effective if the Court approves this Consent Decree.

96.   United States' Pre-Certification Reservations.

a.   As to Settling Work Defendant and UTC:  Notwithstanding any other provision of this Consent Decree, the United States, on behalf of EPA, reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order,

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

seeking to compel Settling Work Defendant and UTC to perform further response actions relating to OU2 and/or OU3 of the Locust Avenue Superfund Site and/or to pay the United States for additional costs of response if: (1) prior to Certification of Completion of the Remedial Action: (a) conditions at OU2 and/or OU3 of the Locust Avenue Superfund Site, previously unknown to EPA, are discovered, or (b) information, previously unknown to EPA, is received, in whole or in part; and (2) EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment. Except as provided in Paragraph 130 (Res Judicata and Certain Other Defenses), nothing in this Consent Decree precludes Settling Work Defendant or UTC from raising any defense, whether asserted or not in the Consolidated Federal Action, to such new action or order.

b.    As to Settling Federal Agencies: Notwithstanding any other provision of this Consent Decree, the United States, on behalf of EPA, reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order, seeking to compel Settling Federal Agencies to perform further response actions relating to OU2 and/or OU3 of the Locust Avenue Superfund Site and/or to pay the United States for additional costs of response if: (1) prior to Certification of Completion of the Remedial Action: (a) conditions at the OU2 and/or OU3 of the Locust

Avenue Superfund Site, previously unknown to EPA, are discovered, or (b)

information, previously unknown to EPA, is received, in whole or in part; and (2)

EPA determines that these previously unknown conditions or information together

with any other relevant information indicates that the Remedial Action is not

protective of human health or the environment. Except as provided in Paragraph

130 (Res Judicata and Certain Other Defenses), nothing in this Consent Decree

precludes Settling Federal Agencies from raising any defense, whether asserted or

not in the Consolidated Federal Action, to such new action or order.

       97.    United States' Post-certification Reservations.

         a.    As to Settling Work Defendant and UTC:  Notwithstanding any

other provision of this Consent Decree, the United States, on behalf of EPA,

reserves, and this Consent Decree is without prejudice to, the right to institute

proceedings in this action or in a new action, or to issue an administrative order,

seeking to compel Settling Work Defendant and UTC to perform further response

actions relating to OU2 or OU3 of the Locust Avenue Superfund Site and/or to pay

the United States for additional costs of response if, (1) subsequent to Certification

of Completion of the Remedial Action:  (a) conditions at OU2 or OU3 of the

Locust Avenue Superfund Site, previously unknown to EPA, are discovered, or (b)

information, previously unknown to EPA, is received, in whole or in part; and (2)

EPA determines that these previously unknown conditions or information together

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.  Except as provided in Paragraph 130 (Res Judicata and Certain Other Defenses), nothing in this Consent Decree precludes Settling Work Defendant or UTC from raising any defense, whether asserted or not in the Consolidated Federal Action, to such new action or order.

b.      As to Settling Federal Agencies:  Notwithstanding any other provision of this Consent Decree, the United States, on behalf of EPA, reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order, seeking to compel Settling Federal Agencies to perform further response actions relating to the OU2 and/or OU3 of the Locust Avenue Superfund Site and/or to pay the United States for additional costs of response if, (1) subsequent to Certification of Completion of the Remedial Action (a) conditions at the OU2 and/or OU3 of the Locust Avenue Superfund Site, previously unknown to EPA, are discovered, or (b) information, previously unknown to EPA, is received, in whole or in part, and (2) EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.  Except as provided in Paragraph 130 (Res Judicata and Certain Other Defenses), nothing in this Consent Decree precludes Settling Federal Agencies from raising any defense, whether asserted or

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

not in the Consolidated Federal Action, to such new action or order.

98.     For purposes of Paragraph 96 (United States Pre-Certification Reservations), the information and the conditions known to EPA will include only that information and those conditions known to EPA as of the date the OU2/OU3 ROD is signed and set forth in the OU2/OU3 ROD and the administrative record supporting the ROD.  For purposes of Paragraph 97, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the OU2/OU3 ROD, the administrative record supporting the OU2/OU3 ROD, the post-OU2/OU3 ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to the Certification of Completion of the Remedial Action.

99.     General Reservations of Rights.  The United States on behalf of EPA and the federal natural resource trustees reserve, and this Consent Decree is without prejudice to, all rights against Settling Work Defendant, UTC, and Settling Federal Agencies with respect to all matters not expressly included within Plaintiff's covenants in Paragraphs 94 and 95.  Notwithstanding any other provision of this Consent Decree, the United States on behalf of EPA and the federal natural resource trustees reserve all rights against Settling Work Defendant, UTC, and Settling Federal Agencies, with respect to:

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

a.      claims based on a failure by Settling Work Defendant, UTC, or United States on behalf of Settling Federal Agencies to meet their respective requirements under this Consent Decree;

b.      liability arising from the party's past, present, or future disposal, release, or threat of release of Waste Material outside of the Locust Avenue Superfund Site;

c.      liability based on the ownership or operation of any portion of the Locust Avenue Superfund Site by Settling Work Defendant, UTC, or Settling Federal Agencies when such ownership or operation as to Settling Work Defendant, UTC, or a Settling Federal Agency respectively commences after signature of this Consent Decree and does not arise solely out of performance of the Work;

d.      liability based on Settling Work Defendant's, UTC's, or Settling Federal Agencies' respective transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Locust Avenue Superfund Site, other than as provided in the OU2/OU3 ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree;

e.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

f.      criminal liability;

g.      liability for violations of federal or state law which occur during or after implementation of the Work as to the violating party;

h.      liability against Settling Work Defendant and UTC, prior to Certification of Completion of the Work, for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the OU2/OU3 ROD, but that cannot be required pursuant to Paragraph 15 (Modification of SOW or Related Work Plans);

i.      liability against Settling Work Defendant and UTC for costs incurred by the Agency for Toxic Substances and Disease Registry after the Effective Date of the Consent Decree regarding the Locust Avenue Superfund Site; and

j.      its right to institute proceedings in a new action, to issue an administrative order, to recover costs or perform work, or to otherwise take enforcement action against Settling Work Defendant and UTC for work and/or response costs that, taken together, exceed two million dollars ($2,000,000) for OU3.

100.   <u>Work Takeover</u>.

a.      In the event EPA determines that Settling Work Defendant has:

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

- 125 -

(1) ceased implementation of any portion of the Work, or (2) are seriously or repeatedly deficient or late in its performance of the Work, or (3) is implementing the Work in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Work Defendant.  Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Work Defendant a period of ten (10) Days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.      If, after expiration of the ten (10) Day notice period specified in subparagraph a., Settling Work Defendant has not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover").  EPA will notify Settling Work Defendant in writing (which writing may be electronic), and provide a copy to Rialto, if EPA determines that implementation of a Work Takeover is warranted under this Paragraph.  Funding of Work Takeover costs is addressed under Paragraph 49.

c.      Settling Work Defendant may invoke the dispute resolution procedures set forth in Paragraph 80 (Record Review), to dispute EPA's implementation of a Work Takeover under Paragraph 100.  However,

notwithstanding Settling Work Defendant's invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 100 until the earlier of: (1) the date that Settling Work Defendant remedies, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date that a final decision is rendered in accordance with Paragraph 80 (Record Review) requiring EPA to terminate such Work Takeover.

101.    Notwithstanding any other provision of this Consent Decree, the United States on behalf of EPA retains all authority and reserves all rights to take any and all response actions authorized by law.

B.    COVENANTS, RELEASES, AND RESERVATIONS OF RIGHTS BY OTHER PARTIES

102.    <u>Covenants</u>.  Except as specifically provided in Paragraphs 104 and 116, Settling Work Defendant, UTC, and Settling Federal Agencies each release and covenant not to sue or take administrative action against each other, pursuant to Sections 107(a) or 113 of CERCLA, 42 U.S.C. §§ 9607(a) and 9613, Section 7002 of RCRA, 42 U.S.C. § 6972, any other federal or state statute or common law with respect to all claims, of any kind, known and unknown, against Settling Work Defendant, UTC, and/or Settling Federal Agencies in connection with the alleged release or threatened release of any of the Basin Contaminants at, on, or under the RABSP Site.  These covenants and releases are also conditioned upon the

satisfactory performance by Settling Work Defendant, UTC, and United States on behalf of Settling Federal Agencies of their obligations under this Consent Decree.

103.   In releasing all unknown claims as set forth in Paragraph 102, subject to the reservations set forth in Paragraphs 104 and 116 of this Consent Decree, Settling Work Defendant, UTC, and the Settling Federal Agencies each expressly waive the provisions of Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

104.   Notwithstanding the waiver of Section 1542 of the California Civil Code set forth in Paragraph 103, Settling Work Defendant, UTC, and Settling Federal Agencies each reserve, and this Consent Decree is without prejudice to, all rights against Settling Work Defendant, UTC, and Settling Federal Agencies with respect to:

    a.   liability of the breaching party for its failure to meet a requirement of this Consent Decree;

    b.   liability based on the ownership or operation of any portion of the RABSP Site when such ownership or operation commences after the date of lodging this Consent Decree and there is a new release on or related to such property;

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

c.      liability based on transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of a Waste Material at or in connection with the RABSP Site, after the date of lodging this Consent Decree;

d.      liability arising from the past, present, or future disposal, release or threat of release of a Waste Material outside of the RABSP Site;

e.      liability arising from the release, threat of release, or disposal of a Waste Material either within or outside of the RABSP Site, where such release, threat of release, or disposal occurs after the date of lodging this Consent Decree;

f.      liability arising from past, present, or future releases or threatened releases at the RABSP Site, where the Waste Material at issue is not a Basin Contaminant;

g.      liability related to bodily injury; and

h.      claims for contribution whether based on federal or state statutes or common law arising out of:  (1) claims in *City of Riverside v. Black & Decker (U.S.), Inc., et al.*, Case No. BC410878; (2) claims asserted by any person or entity that was not a party to the Consolidated Federal Action on August 24, 2012; or (3) claims for natural resource damages.

For purposes of subparagraphs c., d., and e., of this Paragraph, migration of existing Waste Material is not a new release of Waste Material into soil,

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

groundwater, or atmosphere.

C.     COVENANTS, RELEASES, AND RESERVATIONS OF RIGHTS RELATING TO LGES

105.   Covenants.  Except as specifically provided in Paragraphs 107 and 108, Settling Work Defendant, UTC, and LGEs each release and covenant not to sue or take administrative action against each other, pursuant to Sections 107(a) or 113 of CERCLA, 42 U.S.C. §§ 9607(a) and 9613, Section 7002 of RCRA, 42 U.S.C. § 6972, or any other federal or state statute or common law with respect to all claims, of any kind, known and unknown, against Settling Work Defendant, UTC, and/or LGEs in connection with the alleged release or threatened release of any of the Basin Contaminants at, on, or under the RABSP Site; including any claims or liability in connection with, arising out of, or in any way related to claims that were brought or could have been brought in:  (1) *City of Riverside v. Black & Decker (U.S.), Inc., et al.*, Case No. BC410878; or (2) *Mack P. Willis & Paul Souza v. City of Rialto and Rialto City Council*, California Court of Appeal, Fourth Appellate District, Division Two, Case No. E051792 (appeal from San Bernardino Superior Court Case No. CIVSS 708001/708002).  These covenants and releases are also conditioned upon the satisfactory performance by Settling Work Defendant and UTC of their obligations under this Consent Decree.

106.   In releasing all unknown claims as set forth in Paragraph 105, subject

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

to the reservations set forth in Paragraphs 107 and 108 of this Consent Decree,

Settling Work Defendant, UTC, and LGEs each expressly waive the provisions of

Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

107.   Notwithstanding the waiver of Section 1542 of the California Civil

Code set forth in Paragraph 106, LGEs reserve, and this Consent Decree is without

prejudice to, all rights against Settling Work Defendant and UTC with respect to:

a.     liability of the breaching party for its failure to meet a

requirement of this Consent Decree;

b.     criminal liability;

c.     liability based on the ownership or operation of any portion of

the RABSP Site when such ownership or operation commences after the date of

lodging this Consent Decree and there is a new release of a Waste Material on or

related to such property;

d.     liability based on transportation, treatment, storage, or disposal,

or arrangement for transportation, treatment, storage, or disposal of a Waste

Material at or in connection with the RABSP Site, after the date of lodging this

Consent Decree;

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

e.      liability arising from the past, present, or future disposal, release or threat of release of a Waste Material outside of the RABSP Site;

f.      liability arising from the release, threat of release, or disposal of a Waste Material either within or outside of the RABSP Site, where such release, threat of release, or disposal occurs after the date of lodging this Consent Decree;

g.      liability arising from past, present, or future releases or threatened releases at the RABSP Site, where the Waste Material at issue is not a Basin Contaminant;

h.      liability related to bodily injury;

i.      claims for contribution whether based on federal or state statutes or common law arising out of:  (1) claims for natural resource damages; (2) claims against an LGE asserted by any person or entity that was not a party to the Consolidated Federal Action on August 24, 2012 (provided that the reservation in this Paragraph 107(i)(2) does not apply to contribution claims arising out of claims asserted by the City of Riverside itself in *City of Riverside v. Black & Decker (U.S.), Inc., et al*., Case No. BC410878, even though the City of Riverside was not a party to the Consolidated Federal Action as of that date); and

j.      any rights of Rialto that arise from the exercise and enforcement of its municipal police power regulatory authority over persons, entities, properties, and business transactions within the jurisdiction of the City of

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Rialto.  However, nothing in the foregoing sentence of this subparagraph j. reserves Rialto's rights under any federal, state, or local law to seek enforcement against Settling Work Defendant and/or UTC to remediate soil or groundwater for existing Waste Material unless such right is reserved in other subparagraphs of this Paragraph.

        k.      any rights of Colton that arise from the exercise and enforcement of its municipal police power regulatory authority over persons, entities, properties, and business transactions within the jurisdiction of the City of Colton.  However, nothing in the foregoing sentence of this subparagraph k. reserves Colton's rights under any federal, state, or local law to seek enforcement against Settling Work Defendant and/or UTC to remediate soil or groundwater for existing Waste Material unless such right is reserved in other subparagraphs of this Paragraph.

For purposes of subparagraphs c., d., and f. of this Paragraph, migration of existing Waste Material is not a new release or disposal of Waste Material into soil, groundwater, or atmosphere.

    108.   Notwithstanding the waiver of Section 1542 of the California Civil Code set forth in Paragraph 106, Settling Work Defendant and UTC each reserve, and this Consent Decree is without prejudice to, all rights against LGEs with respect to:

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

a.      liability of the breaching party for its failure to meet a requirement of this Consent Decree;

b.      liability based on the ownership or operation of any portion of the RABSP Site when such ownership or operation commences after the date of lodging this Consent Decree and there is a new release of a Waste Material on or related to such property;

c.      liability based on transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of a Waste Material at or in connection with the RABSP Site, after the date of lodging this Consent Decree;

d.      liability arising from the past, present, or future disposal, release or threat of release of a Waste Material outside of the RABSP Site;

e.      liability arising from the release, threat of release, or disposal of a Waste Material either within or outside of the RABSP Site, where such release, threat of release, or disposal occurs after the date of lodging this Consent Decree;

f.      liability arising from past, present, or future releases or threatened releases at the RABSP Site, where the Waste Material at issue is not a Basin Contaminant;

g.      liability related to bodily injury; and

h.      claims for contribution whether based on federal or state

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

statutes or common law arising out of:  (1) claims for natural resource damages; or (2) claims asserted against Settling Work Defendant or UTC by any person or entity that was not a party to the Consolidated Federal Action on August 24, 2012 (provided that the reservation in this Paragraph 108(h)(2) does not apply to contribution claims arising out of claims asserted by the City of Riverside itself in *City of Riverside v. Black & Decker (U.S.), Inc., et al.*, Case No. BC410878, even though the City of Riverside was not a party to the Consolidated Federal Action as of that date).

For purposes of subparagraphs b., c., and e. of this Paragraph, migration of existing Waste Material is not a new release or disposal of Waste Material into soil, groundwater, or atmosphere.

109.   <u>Existing Settling Parties and Future Settling Parties</u>.  Settling Work Defendant and UTC agree that in the event that:  (a) the United States, on behalf of EPA, reaches or has reached settlement with any other party to the Consolidated Federal Action who is not a signatory to this Consent Decree; and (b) as to Future Settling Parties, the United States, on behalf of EPA, gives notice in accordance with Section XXV (Notices and Submissions) to Settling Work Defendant and UTC that such party has become a Future Settling Party; then upon Court approval of the Existing Settling Parties' settlements and/or any Future Settling Parties' settlement, Settling Work Defendant and UTC commit that they shall extend to any

such Existing Settling Parties and/or Future Settling Parties releases and covenants not to sue and waiver to those set forth in Paragraphs 102 and 103, subject to the reservations of rights in Paragraph 104, and in exchange for mutual releases of claims and appeals by those Existing Settling Parties and/or Future Settling Parties against Settling Work Defendant and UTC substantially identical to the releases, covenants, not to sue, waiver, and reservations set forth in Paragraphs 102 – 104, without further monetary consideration for such covenants and waiver.  The commitments of Settling Work Defendant and UTC to provide such covenants not to sue, subject to the reservation of rights, in the foregoing sentence shall not take effect as to any Existing Settling Parties and/or Future Settling Parties unless and until the settlement with such Existing Settling Parties and/or Future Settling Parties becomes a final judgment following any appeal.  The United States has sole discretion to determine whether a party is to be deemed a Future Settling Party for purposes of this Paragraph.  The Cities of Rialto and Colton as signatories to the OU1 Work Decree have committed that, upon entry of the OU1 Consent Decree, they shall extend to any such Existing Settling Parties and/or Future Settling Parties identical releases and covenants not to sue and waiver to those set forth in Paragraphs 105 and 106, subject to the reservations of rights in Paragraph 107, and in exchange for mutual releases of claims and appeals by those Existing Settling Parties and/or Future Settling Parties against Settling Work Defendant and UTC

identical to the releases, covenants not to sue, waiver, and reservations set forth in Paragraphs 105 – 107, without further monetary consideration for such covenants and waiver.

110.    <u>Covenants Not to Sue the United States on Behalf of EPA by Settling Work Defendant and UTC</u>.  Settling Work Defendant and UTC covenants not to sue and agree not to assert any claims or causes of action against the United States on behalf of EPA, or its contractors or employees, with respect to the Locust Avenue Superfund Site and this Consent Decree, including, but not limited to:

a.    any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, and 113 or any other provision of law;

b.    any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding, the Locust Avenue Superfund Site, the Work, past response actions regarding the Locust Avenue Superfund Site, Past Response Costs, Future Response Costs and this Consent Decree;

c.    any claims arising out of response actions at or in connection with the Locust Avenue Superfund Site relating to the United States, including any

claim under the United States Constitution, the California Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, the Freedom of Information Act ("FOIA") as amended (5 U.S.C. § 552) for any FOIA submitted to the United States prior to the Effective Date, or at common law;

       d.      any claim, whether express or deemed by court order, in the Consolidated Federal Action;

       e.      any direct or indirect claim for disbursement from the OU2/OU3 Special Account, or any special account established pursuant to the OU1 Consent Decree; and

       f.      any direct or indirect claim for disbursement from the OU2/OU3 Disbursement Special Account, except as provided in Paragraphs 62 and 63 (Disbursement of OU2/OU3 Disbursement of Special Account Funds).

     111.  <u>Settling Work Defendant's and UTC's Agreement Regarding Recovery under Federal Contracts</u>.  Settling Work Defendant and UTC hereby agree that it shall not in the future seek or receive any portion of any amount it has agreed to pay in this Consent Decree, through any Federal Contract.  Pursuant to this Paragraph, Settling Work Defendant and UTC expressly acknowledges that they are prohibited from including any portion of the payments made pursuant to this Consent Decree as either direct or indirect costs, or otherwise, in any invoice, claim, or demand associated with any Federal Contract.

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

112.   <u>Covenant by Settling Federal Agencies</u>.  Settling Federal Agencies agree not to assert any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, and 113 or any other provision of law with respect to the Locust Avenue Superfund Site.  The covenant by Settling Federal Agencies described in this Paragraph does not preclude demand for reimbursement from the Superfund of costs incurred by any of Settling Federal Agencies in the performance of its duties (other than pursuant to this Consent Decree) as lead or support agency under the National Contingency Plan (40 C.F.R. Part 300).

113.   Except as provided in Paragraph 119 (Claims Against MSW Generators and Transporters), Paragraph 121 (Claims Against *De Minimis* and Ability to Pay Parties), Paragraph 122 (Claims Against *De Micromis* Parties), and Paragraph 130 (Res Judicata and Certain Other Defenses), the covenants in Paragraph 110 (Covenants Not to Sue the United States on Behalf of EPA by Settling Work Defendant and UTC) shall not apply if the United States brings a cause of action or issues an order pursuant to any of the reservations in Section XXI (Covenants, Releases, and Reservations of Rights), other than in Paragraphs 99a. (claims for failure to meet a requirement of the Decree), 99f. (criminal liability), and 99g. (violations of federal/state law during or after implementation

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

of the Work), but only to the extent Settling Work Defendant's, UTC's, or Settling Federal Agencies' claim arises from the same response action, response costs, or damages that the United States on behalf of EPA is seeking pursuant to the applicable reservation.

114.   <u>Claims Against Other Parties in the Consolidated Federal Action</u>.

a.   Except as stated in subparagraph b., Settling Work Defendant, UTC, and the United States on behalf of Settling Federal Agencies agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) or any other federal or state law that they may have for response costs relating to the Locust Avenue Superfund Site and/or West Side Site against each other or any other person who is or was a party in the Consolidated Federal Action.  This waiver shall not apply with respect to any defense, claim, or cause of action that Settling Work Defendant or Settling Federal Agency may have against any person if such person asserts a claim or cause of action relating to the Locust Avenue Superfund Site and/or West Side Site against Settling Work Defendant, UTC, or Settling Federal Agency after the date of lodging this Consent Decree.

b.   Settling Work Defendant, UTC, and the United States on behalf of Settling Federal Agencies, reserve any and all rights, defenses, claims, demands, and causes of action which they may have with respect to Estate of Hescox; Ken

Thompson, Inc.; General Dynamics; other parties in the Consolidated Federal Action; and the insurers of any parties in the Consolidated Federal Action, that have not entered into lodged Consent Decrees with the United States as of December 31, 2012, for any matter, transaction, or occurrence relating to the Locust Avenue Superfund Site and the West Side Site; provided however, Settling Work Defendant's and UTC's rights, defenses, claims, demands, and causes of action against any such party and its insurers shall terminate and be waived to the extent such party enters into a final settlement agreement with the United States. This waiver shall not apply with respect to any defense, claim, or cause of action that Settling Work Defendant or UTC may have against any person if such person asserts a claim or cause of action relating to the Locust Avenue Superfund Site and/or West Side Site against Settling Work Defendant or UTC after the date of lodging this Consent Decree.

115.   Settling Work Defendant shall terminate its appeals before the Ninth Circuit in *United States of America v. Zambelli Fireworks Manufacturing Co., et al.,* No. 11-56309, and *United States of America v. City of Rialto, and County of San Bernardino, et al.,* No. 12-55342, including associated appeals and each case subject to the Amended Order consolidating Appeals filed on April 16, 2012 (Dkt 12) within thirty (30) Days after the Effective Date of this Consent Decree.

116.   Notwithstanding the waiver of Section 1542 of the California Civil

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Code set forth in Paragraph 103, Settling Work Defendant and Settling Federal Agencies also reserve, and this Consent Decree is without prejudice to, any contribution claims they may have in the event any claim is asserted by the United States against Settling Work Defendant or Settling Federal Agencies pursuant to any of the reservations in Section XXI (Covenants, Releases, and Reservations of Rights) other than in Paragraphs 99a. (claims for failure to meet a requirement of the Decree), 99f. (criminal liability), and 99g. (violations of federal/state law during or after implementation of the Work), but only to the extent that Settling Work Defendant's or Settling Federal Agencies' claim arises from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

117.   Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

118.   EPA will assist Settling Work Defendant and Settling Federal Agencies in obtaining appropriate relief from agencies of the State.

119.   <u>Claims Against MSW Generators and Transporters</u>.  Settling Work Defendant and UTC agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for all matters relating to

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

the Locust Avenue Superfund Site against any person where the person's liability to Settling Work Defendant or UTC with respect to the Locust Avenue Superfund Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of MSW at the Locust Avenue Superfund Site, if the volume of MSW disposed, treated, or transported by such person to the Locust Avenue Superfund Site did not exceed 0.2 percent of the total volume of waste at the Locust Avenue Superfund Site.

120.   The waiver in Paragraph 119 (Claims Against MSW Generators and Transporters) shall not apply with respect to any defense, claim, or cause of action that Settling Work Defendant or UTC may have against any person meeting the criteria in this Paragraph if such person asserts a claim or cause of action relating to the Locust Avenue Superfund Site against Settling Work Defendant or UTC. This waiver also shall not apply to any claim or cause of action against any person meeting the above criteria if EPA determines that:  (a) the MSW contributed significantly or could contribute significantly, either individually or in the aggregate, to the cost of the response action or natural resource restoration at the Locust Avenue Superfund Site; (b) the person has failed to comply with any information request or administrative subpoena issued pursuant to Section 104(e) or 122(e) of CERCLA, 42 U.S.C. § 9604(e) or § 9622(e), or Section 3007 of RCRA, 42 U.S.C. § 6927; or (c) the person impeded or is impeding, through action

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

or inaction, the performance of a response action or natural resource restoration with respect to the Locust Avenue Superfund Site.

121.   Claims Against *De Minimis* and Ability to Pay Parties.  Settling Work Defendant and UTC agree not to assert any claims or causes of action and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for all matters relating to the Locust Avenue Superfund Site against any person that has entered or in the future enters into a final CERCLA Section 122(g) *de minimis* settlement, or a final settlement based on limited ability to pay, with EPA with respect to the Locust Avenue Superfund Site.  This waiver shall not apply with respect to any defense, claim, or cause of action that Settling Work Defendant or UTC may have against any person if such person asserts a claim or cause of action relating to the Locust Avenue Superfund Site against Settling Work Defendant or UTC.

122.   Claims Against *De Micromis* Parties.  Settling Work Defendant and UTC agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for all matters relating to the Locust Avenue Superfund Site against any person where the person's liability to Settling Work Defendant and UTC with respect to the Locust Avenue Superfund Site is based

solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Locust Avenue Superfund Site, or having accepted for transport for disposal or treatment of hazardous substances at the Locust Avenue Superfund Site, if all or part of the disposal, treatment, or transport occurred before April 1, 2001, and the total amount of material containing hazardous substances contributed by such person to the Locust Avenue Superfund Site was less than 110 gallons of liquid materials or 200 pounds of solid materials.

123.   The waiver in Paragraph 122 (Claims Against *De Micromis* Parties) shall not apply with respect to any defense, claim, or cause of action that Settling Work Defendant and UTC may have against any person meeting the criteria in Paragraph 122 if such person asserts a claim or cause of action relating to the Locust Avenue Superfund Site against Settling Work Defendant or UTC.  This waiver also shall not apply to any claim or cause of action against any person meeting the criteria in Paragraph 122 if EPA determines:

a.      that such person has failed to comply with any EPA requests for information or administrative subpoenas issued pursuant to Section 104(e) or 122(e) of CERCLA, 42 U.S.C. § 9604(e) or 9622(e), or Section 3007 of RCRA, 42 U.S.C. § 6927, or has impeded or is impeding, through action or inaction, the performance of a response action or natural resource restoration with respect to the Locust Avenue Superfund Site, or has been convicted of a criminal violation for

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

the conduct to which this waiver would apply and that conviction has not been vitiated on appeal or otherwise; or

b.    that the materials containing hazardous substances contributed to the Locust Avenue Superfund Site by such person have contributed significantly, or could contribute significantly, either individually or in the aggregate, to the cost of response action or natural resource restoration at the Locust Avenue Superfund Site.

## XXII.    EFFECT OF SETTLEMENT CONTRIBUTION

124.   Except as provided in Paragraph 114 (Claims Against Other Parties in the Consolidated Federal Action), Paragraph 119 (Claims Against MSW Generators and Transporters), Paragraph 121 (Claims Against *De Minimis*/Ability to Pay Parties), and Paragraph 122 (Claims Against *De Micromis* Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree.  Except as provided in Paragraph 109 (Existing Settling Parties and Future Settling Parties), Paragraph 119 (Claims Against MSW Generators and Transporters), Paragraph 121 (Claims Against *De Minimis*/Ability to Pay Parties), and Paragraph 122 (Claims Against *De Micromis* Parties), each of the Parties and UTC expressly reserve any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

U.S.C.§ 9613), defenses, claims, demands, and causes of action which each Party or UTC may have with respect to any matter, transaction, or occurrence relating in any way to the Locust Avenue Superfund Site and the RABSP Site against any person not a party hereto.  Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

125.   The Parties and UTC agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that Settling Work Defendant, UTC, Rialto, Colton, County, and the United States on behalf of Settling Federal Agencies are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for "matters addressed" in this Consent Decree.  The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred at or in connection with the Locust Avenue Superfund Site or the West Side Site by the United States or any other person; provided, however, that if the United States, on behalf of EPA, exercises rights against Settling Work Defendant or UTC (or if

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

- 147 -

EPA or the federal natural resource trustees assert rights against Settling Federal Agencies) under the reservations in Section XXI (Covenants, Releases, and Reservations of Rights), other than in Paragraphs 99a. (claims for failure to meet a requirement of the Consent Decree), 99f. (criminal liability), or 99g. (violations of federal/state law during or after implementation of the Work), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation.  Nothing in this Paragraph shall limit or affect the ability of any Settling Work Defendant, UTC, the LGEs, or any Settling Federal Agency from exercising their reservations of rights as to each other in Paragraphs 104, 107, or 108, as applicable.

126.   The Parties and UTC further agree, and by entering this Consent Decree this Court further finds, that the payments and obligations provided for in this Consent Decree represent a good faith compromise of disputed claims and that the compromise represents a fair, reasonable, and equitable resolution.  With regard to any claims for costs, damages, or other claims against the Parties and/or UTC, the Parties and UTC agree and this Court finds that Settling Work Defendant, UTC, and the United States on behalf of Settling Federal Agencies, are entitled to contribution protection pursuant to the California Code of Civil Procedure §§ 877 and 877.6, and any other applicable provision of federal or state law, whether by statute or common law.

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

127.    The Parties and UTC intend the broadest possible protection from

contribution actions provided by law for "matters addressed" in this Consent

Decree.

128.    Settling Work Defendant and/or UTC shall, with respect to any suit or

claim brought by it for matters related to this Consent Decree, notify the United

States in writing no later than sixty (60) Days, if practicable, prior to the initiation

of such suit or claim.  If sixty (60) Days' notice is not practicable, the Settling

Work Defendant and/or UTC shall provide whatever notice is practicable.  This

Paragraph does not apply to suits or claims brought by any Settling Work

Defendant and/or UTC against its contractors.

129.    Settling Work Defendant and/or UTC shall, with respect to any suit or

claim brought against it for matters related to this Consent Decree, notify in

writing the United States, on behalf of EPA, within ten (10) Days of service of the

complaint or claim.  In addition, Settling Work Defendant and/or UTC shall notify

the United States, on behalf of EPA, within ten (10) Days of service or receipt of

any motion for summary judgment and within ten (10) Days of receipt of any order

from a court setting a case for trial.  This Paragraph does not apply to suits or

claims brought by Settling Work Defendant and/or UTC against its contractors or

by any Settling Work Defendant's and/or UTC's contractor against that party.

130.    <u>Res Judicata and Certain Other Defenses</u>.  In any subsequent

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

administrative or judicial proceeding initiated by the United States, on behalf of EPA, for injunctive relief, recovery of response costs, or other appropriate relief relating to the Locust Avenue Superfund Site, Settling Work Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States, on behalf of EPA, in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants, Releases, and Reservations of Rights).

## XXIII.    RETENTION OF RECORDS

131.   Until seven (7) years after the Effective Date, Settling Work Defendant shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site; provided however, Settling Work Defendant need not preserve or retain historical documents that were produced in the Consolidated Federal Action or were produced by other Parties to the Consolidated Federal Action. Until three (3) years after receipt of EPA's notification pursuant to Paragraph 52b.

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

(Completion of the Work), Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to the performance of the Work, provided however, that each Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

132.   After the conclusion of the document retention periods in the preceding Paragraph, Settling Work Defendant shall notify EPA at least one hundred twenty (120) Days prior to the destruction of any Records, and, upon request by EPA, shall deliver the requested Records to EPA.  Settling Work Defendant may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Work Defendant asserts such a privilege in lieu of providing Records, in recognition of the large volume of records that may be requested, Settling Work Defendant and EPA shall seek to reach a reasonable agreement on the information that Settling Work Defendant must provide to EPA to support such a privilege.  In the event

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Settling Work Defendant and EPA cannot reach agreement on the information that must be provided, the dispute shall be resolved pursuant to Section XIX (Dispute Resolution).  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to EPA in redacted form to mask the privileged portion only.  Settling Work Defendant shall retain all Records that it claims to be privileged until EPA has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Work Defendant's favor. The requirements in this Paragraph shall not apply to any Record withheld as privileged in the Consolidated Federal Action and exempted by court order (Case Management Order No. 1, Docket No. 601, February 15, 2011) from the requirement to be listed in a privilege log.

133.   The United States acknowledges that Settling Federal Agencies (a) are subject to all applicable federal record retention laws, regulations, and policies; and (b) hereby confirm that they have produced all relevant non-privileged documents responsive to discovery requests in the Consolidated Federal Action.

## XXIV.   ACCESS TO INFORMATION

134.   <u>Information Related to the Work</u>.  Settling Work Defendant shall provide to EPA, upon request, copies of all Records within its possession or control or that of its contractors or agents relating to sampling, analysis, chain of

custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Work.  Settling Work Defendant shall also make available to EPA, for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

135.   <u>Business Confidential and Privileged Documents</u>.

a.   Any Party or UTC may assert business confidentiality claims covering part or all of the Records submitted to EPA under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Records determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies Records when they are submitted to EPA, or if EPA has notified the Party or UTC that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to the Party or UTC.

b.   Any Party or UTC may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If any Party or UTC asserts such a privilege in lieu of providing Records, it shall provide EPA with the following:  (1) the title of the Record; (2)

the date of the Record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege asserted by any Party or UTC.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to EPA in redacted form to mask the privileged portion only.  Any Party or UTC shall retain all Records that they claim to be privileged until EPA has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in that Party's or UTC's favor.

c.      No Records created or generated that are required by this Consent Decree shall be withheld from the United States on the grounds that they are privileged or confidential.

136.   No claim of confidentiality or privilege shall be made by Settling Work Defendant with respect to the analytical results of any sampling at or around the Locust Avenue Superfund Site.

## XXV.    NOTICES AND SUBMISSIONS

137.   Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the

other parties in writing.  All notices and submissions shall be considered effective

upon receipt, unless otherwise provided.  Written notice as specified in this Section

shall constitute complete satisfaction of any written notice requirement of the

Consent Decree with respect to the United States, EPA, Settling Federal Agencies

Settling Work Defendant, and UTC, respectively.  Notices required to be sent to

EPA, and not to the United States, under the terms of this Consent Decree should

not be sent to the U.S. Department of Justice.

<u>As to the United States</u>:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Re:  DJ # 90-11-2-09952

-and-

Chief, Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Re:  DJ # 90-11-6-17144/1

<u>*As to EPA*</u>:

Remedial Project Manager, Locust Avenue Superfund Site
Wayne Praskins
United States Environmental Protection Agency
Region 9
75 Hawthorne Street
San Francisco, California  94105

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

As to the State of California:

*As to DTSC*:
Rafat A. Abbasi, P.E.
Senior Project Manager
Brownfields and Environmental Restoration Division
5796 Corporate Way
Cypress, California 90630

-and-

*As to the Santa Ana Regional Water Quality Control Board*:
Kurt V. Berchtold
Executive Officer
Santa Ana Regional Water Quality Control Board
3737 Main Street, Suite 500
Riverside, California 92501-3339


As to Rialto:

City Attorney for City of Rialto
12616 Central Avenue
Chino, California  91710
Attn: Jimmy Gutierrez (for notice only)

-and-

Paul Hastings LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, California  94105
Attn: Peter H. Weiner (for notice only)

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

<u>As to Colton</u>:

City Manager
Attn: Rod Foster
City of Colton
650 North La Cadena Dr.
Colton, California  92324

-and-

City Attorney
Best Best & Krieger LLP
3500 Porsche Way, Suite 200
Ontario, California  91764


<u>As to Settling Work Defendant and UTC</u>:

David Platt
Assistant General Counsel
United Technologies Corporation
United Technologies Building
Hartford, Connecticut  06101

-and-

Bruce Amig
Remediation Manager
United Technologies Corporation
2730 West Tyvola Rd
Charlotte, North Carolina  28217

## XXVI.    RETENTION OF JURISDICTION

138.    This Court retains jurisdiction over the subject matter of this Consent

Decree, and over Settling Work Defendant, UTC, and Settling Federal Agencies

for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties and UTC to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution).

## XXVII.    APPENDICES

139.   The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is a map of the 160-Acre Area, County Property, RABSP Area, Stonehurst Property, West Side Area.

"Appendix B" is list of Existing Settling Parties.

"Appendix C" is the SOW.

## XXVIII.    COMMUNITY RELATIONS

140.   If requested by EPA, Settling Work Defendant shall participate in community relations activities pursuant to any community involvement plan developed by EPA for the Locust Avenue Superfund Site.  EPA will determine the appropriate role for Settling Work Defendant under the Plan.  Settling Work Defendant shall also cooperate with EPA in providing information regarding the

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Work to the public.  As requested by EPA, Settling Work Defendant shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Locust Avenue Superfund Site.

## XXIX.    MODIFICATION

141.    Except as provided in Paragraph 15 (Modification of SOW or Work Plans Required by the SOW), material modifications to this Consent Decree, including the SOW, shall be in writing, signed by the United States and Settling Work Defendant, and shall be effective upon approval by the Court.  Except as provided in Paragraph 15 (Modification of SOW or Work Plans Required by the SOW), non-material modifications to this Consent Decree, including the SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States and Settling Work Defendant.  A modification to the SOW shall be considered material if it fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii).  Before providing its approval to any modification to the SOW, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.

142.    Nothing in this Consent Decree shall be deemed to alter the Court's

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

power to enforce, supervise, or approve modifications to this Consent Decree.

## XXX.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

143.  This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Work Defendant and UTC consent to the entry of this Consent Decree without further notice.

144.  If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXI.  SIGNATORIES/SERVICE

145.  The undersigned representative of Settling Work Defendant to this Consent Decree, the Associate Attorney General of the Department of Justice and/or Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice on behalf of the United States, as reflected in

the signature block below, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party and UTC to this document.

146.  Settling Work Defendant, UTC, and Settling Federal Agencies agree not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States, on behalf of EPA, has notified Settling Work Defendant, UTC, and Settling Federal Agencies in writing that it no longer supports entry of the Consent Decree.

147.  Settling Work Defendant and UTC shall identify, on the attached signature pages, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Settling Work Defendant and UTC with respect to all matters arising under or relating to this Consent Decree.  Settling Work Defendant and UTC agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.

## XXXII.    FINAL JUDGMENT

148.  This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties and UTC regarding

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

the settlement embodied in the Consent Decree.  The Parties and UTC acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

149.   Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, Settling Work Defendant, and UTC.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 2nd DAY OF ___July___

_____
HONORABLE PHILIP S. GUTIERREZ
United States District Judge

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

1  FOR THE UNITED STATES OF AMERICA:

2

3

4  Dated: __3/22/13__          By: _____

5                                  IGNACIA S. MORENO
                                    Assistant Attorney General
6                                   Environment and Natural Resources
                                     Division
7                                   United States Department of Justice
8                                   Washington, DC  20530

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

1    FOR THE UNITED STATES OF AMERICA:

2

3

4    Dated: _Morch 25, 2013_    By: _____

5                                    BRADLEY R. O'BRIEN

6                                    Senior Attorney
                                     Environmental Enforcement Section
7                                    Environment and Natural Resources
                                      Division
8                                    United States Department of Justice
                                     301 Howard St., Suite 1050
9                                    San Francisco, California  94105

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

FOR THE UNITED STATES OF AMERICA:

Dated: _3/25/13_          By: _____

                              MICHAEL C. AUGUSTINI
                              MARK A. RIGAU
                              ROBERT FOSTER
                              Environmental Defense Section
                              Environment and Natural Resources
                               Division
                              United States Department of Justice
                              P.O. Box 7611
                              Washington, DC  20044-7611

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

Dated: 3/11/2013            By: _____
                               JANE DIAMOND
                               Director, Superfund Division, Region IX
                               U.S. Environmental Protection Agency
                               75 Hawthorne Street
                               San Francisco, California  94105


Dated: March 4, 2013       By: _____
                               MICHELE BENSON
                               Assistant Regional Counsel
                               U.S. Environmental Protection Agency
                               Region IX
                               75 Hawthorne Street
                               San Francisco, California  94105

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

1 | FOR GOODRICH CORPORATION:

2

3

4 | Dated: __2/20/13__          By: _____

5 | Peter Gutermann

6 | Attorney-in-Fact for Goodrich Corporation
Vice President & General Counsel,

7 | UTC Propulsion and Aerospace Systems
One Financial Plaza

8 | Hartford, Connecticut  06101

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

FOR UNITED TECHNOLOGIES CORPORATION:

3
4

Dated: 2/20/13                    By: _____

5
6
7
8

           Charles D. Gill
           Senior Vice President and General Counsel
           United Technologies Corporation
           United Technologies Building
           Hartford, Connecticut  06101

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    FOR THE COUNTY OF SAN BERNARDINO:

2

3    Dated: 3/25/2013          By: _____

4                                   TIMOTHY V.P. GALLAGHER

5                                   THOMAS A. BLOOMFIELD

6                                   Gallagher & Gallagher

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

1

FOR THE CITY OF RIALTO:

2

3

Dated: _3/12/13_          By: _[signature]_

4

DEBORAH ROBERTSON, MAYOR

5

6

7

8

ATTEST:

9

10

11

12

_[signature]_

13

BARBARA McGEE, CITY CLERK

14

15

16

APPROVED AS TO FORM:

17

18

19

20

_[signature]_

21

PETER WEINER

22

Paul Hastings, LLP

23

24

25

26

27

28

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

FOR THE CITY OF COLTON:

Dated: 3.19.13          By: _____

                 GENE TANAKA
                 DANIELLE G. SAKAI
                 Best Best & Krieger LLP

Dated: 3.14.2013          By: _____

                 ROD FOSTER
                 City Manager
                 City of Colton

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Appendix A

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE



LEGEND

**▪▪▪▪▪▪** **West Side Area**

**▪▪▪▪▪▪** **Rialto Ammunition Backup Storage Point ("RABSP")**

**NOT TO SCALE**

*Appendix B*

APE, Inc.-West and APE, Inc.

Astro Pyrotechnics, Inc.

Broco, Inc. and J.S. Brower & Associates, Inc.

City of Rialto

City of Colton

County of San Bernardino

Emart Industries, Inc.

Emhart Related Parties (Black & Decker Corporation ("BDC"); Black & Decker
Inc. ("BDI"); Kwikset Corporation ("Kwikset"); Kwikset Locks, Inc.
("KLI"); all other parent, subsidiary, and affiliate entities of BDC, BDI,
Kwikset, KLI, and Emhart Industries, Inc.; Fred Skovgard and his
presumptive heirs and estate; and Mildred Wilkens (deceased) and her heirs
and estate.

Ensign-Bickford Co.

Peters Parties (Thomas O. Peters and The 1996 Thomas O. Peters And Kathleen S.
Peters Revocable Trust)

Pyro Spectaculars, Inc.

Raytheon

Robertson's Ready Mix, Inc.

Schulz Parties (Schulz Parties include the following:  Edward Stout; Edward Stout
as the Trustee of the Stout-Rodriquez Trust; Elizabeth Rodriquez; John
Callagy as Trustee of the Fredricksen Children's Trust Under Trust
Agreement Dated February 20, 1985; John Callagy as Trustee of the E.F.
Schulz Trust; Linda Fredricksen; Linda Fredricksen as Trustee of the Walter
M. Pointon Trust Dated 11/19/1991; Linda Fredricksen as Trustee of the
Michelle Ann Pointon Trust Under Trust Agreement Dated February 15,

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

1985; Linda Fredricksen as Trustee of the E.F. Schulz Trust; John Callagy; Mary Callagy; Jeanine Elzie; Stephen Callagy; Michelle Ann Pointon; and Anthony Rodriquez

Stonehurst Site LLC

Trojan Fireworks Company

Whittaker Corporation

Zambelli Parties (Zambelli Fireworks Manufacturing Company, Inc., Zambelli Fireworks Company, aka Zambelli Fireworks International, and Zambelli Fireworks Manufacturing Company

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

1
2
**Appendix C**
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOCUST AVENUE SUPERFUND SITE CONSENT DECREE

Appendix C

# STATEMENT OF WORK
# for
# Remedial Design and Remedial Action
# (RD/RA)

## MID-BASIN AND SOILS OPERABLE UNITS
## LOCUST AVENUE SUPERFUND SITE

## SAN BERNARDINO COUNTY, CALIFORNIA



US EPA Region 9
February 20, 2013

# Statement of Work for Remedial Design/Remedial Action
## Table of Contents

1.   Introduction ................................................................................................... 3
  1.1.   Purpose ............................................................................................... 3
  1.2.   EPA Oversight and Review and State Review....................................... 3
  1.3.   Communication between EPA, Settling Work Defendant, and State Agencies ............. 4
  1.4.   Contractor Personnel and Qualifications............................................... 4
  1.5.   Reporting to EPA and the State............................................................ 4
  1.6.   EPA Guidance and Reference Materials................................................ 5
  1.7.   Modifications ....................................................................................... 5
2.   Background: ____ Superfund Site, Source Area OU, Mid-Basin OU, and Soils OU ............. 6
  2.1.   Source Area Operable Unit (OU 01).................................................... 6
  2.2.   Mid-Basin Operable Unit (OU 02)....................................................... 7
  2.3.   Soils Operable Unit (OU 03)................................................................ 7
3.   List of Deliverables and Other Tasks.................................................................. 7
  3.1.   Remedial Design Work Plan ................................................................. 7
  3.2.   Remedial Design .................................................................................. 9
  3.3.   Remedial Action Planning .................................................................... 11
  3.4.   Remedial Action .................................................................................. 16
4.   Sampling and Analysis Plan(s) and Health and Safety Plan(s) ............................ 18
Attachment 1 to the SOW:  Site Map ...................................................................... 20
Attachment 2 to the SOW.  Due Dates for Major Deliverables and Other Activities .................. 21
Attachment 3 to the SOW.  Selected Guidance and Resources ...................................... 25

# Acronyms

| | |
|---|---|
| CD | Consent Decree |
| CDPH | California Department of Public Health |
| CFR | Code of Federal Regulations |
| DQO | Data Quality Objective |
| DTSC | CA Department of Toxic Substances Control |
| EPA | U.S. Environmental Protection Agency |
| FSP | Field Sampling Plan |
| MBOU | Mid-Basin Operable Unit |
| SAOU | Source Area Operable Unit |
| Soils OU | Soils Operable Unit |
| O&M | Operation and Maintenance |
| OU | Operable Unit |
| QAPP | Quality Assurance Project Plan |
| QMP | Quality Management Plan |
| RA | Remedial Action |
| RAOs | Remedial Action Objectives |
| RD | Remedial Design |
| RD/RA | Remedial Design/ Remedial Action |
| RDI | Remedial Design Investigation |
| ROD | Record of Decision |
| SAP | Sampling and Analysis Plan |
| SOW | Statement of Work |
| Water Board | Regional Water Quality Control Board |

**STATEMENT OF WORK FOR**
**REMEDIAL DESIGN AND REMEDIAL ACTION**
Mid-Basin and Soils Operable Units
Locust Avenue Superfund Site

# 1. Introduction

## 1.1. Purpose

This Statement of Work ("SOW") sets forth the activities to be performed by the Settling Work Defendant (Goodrich Corporation) pursuant to the Consent Decree, dated _____ ("CD"), to design, construct, operate, maintain, monitor, and evaluate the remedial action(s) selected in one or more Record of Decisions (RODs) for the Mid-Basin Operable Unit (MBOU) and Soils Operable Unit (Soils OU) for the Locust Avenue Superfund Site. The Settling Work Defendant shall furnish all necessary and appropriate personnel, materials, and services needed for, or incidental to, performing and completing the remedial action(s) as described and limited herein.

Remedial Design ("RD") includes the development of plans and specifications, general provisions, and specific requirements necessary to implement a remedy and comply with performance standards. Remedial Action ("RA") includes construction and startup of the remedy and is defined in the CD to mean activities required to implement a remedy, excluding performance of the Remedial Design. Operation and maintenance ("O&M") refers to most post-startup activities, including monitoring and evaluation of the remedy.

## 1.2. EPA Oversight and Review and State Review

EPA will provide oversight of the Settling Work Defendant's activities. EPA will review and approve deliverables in accordance with Section XI of the CD. The State may also, at its discretion, review deliverables. Deliverables will either be approved or disapproved by EPA (except for the Health and Safety Plans, which will be reviewed by EPA but neither approved nor disapproved). If EPA disapproves the deliverable and requests modifications, the Settling Work Defendant shall revise the deliverable and resubmit it to EPA and the State, as provided in Section XI of the CD. After Settling Work Defendant's receipt of EPA comments, if any, on a draft document, Settling Work Defendant shall submit for EPA and State review a revised document within 14 days of receipt of such comments, unless specified otherwise in the Consent Decree, in Attachment 2, or in writing by EPA.

EPA will review deliverables to assess the likelihood that the Work will achieve the Remedial

3

Action Objectives, Performance Standards, Applicable or Relevant and Appropriate Requirements (ARARs), and other requirements set forth in any RODs for the MBOU or Soils OU. Notwithstanding any action by EPA or the State, Settling Work Defendant remains fully responsible for satisfying the provisions and requirements of any ROD for the MBOU or Soils OU, the CD, and this SOW. Nothing in the CD, this SOW, or EPA's approval of the RD or any other submission, shall be deemed to constitute a warranty or representation of any kind by EPA or the State that full performance of the RD and RA will achieve the Performance Standards or other requirements. Settling Work Defendant's compliance with submissions approved by EPA does not foreclose EPA from seeking additional work to achieve Performance Standards or other requirements as provided for in the CD.

### 1.3.   Communication between EPA, Settling Work Defendant, and State Agencies

The primary EPA contact for activities to be conducted pursuant to this Statement of Work is the EPA Project Coordinator, Wayne Praskins, praskins.wayne@epa.gov.

The alternate contact is Richard Hiett, Chief of the California Site Cleanup Section 3, hiett.richard@epa.gov.

The California Department of Toxic Substances Control ("DTSC") contact is Rafat Abbasi, Senior Project Manager, rabbasi@dtsc.ca.gov.

The Regional Water Quality Control Board ("Water Board") contact is Kurt Berchtold, Executive Officer, kberchtold@waterboards.ca.gov.

### 1.4.   Contractor Personnel and Qualifications

As required in Section VI of the CD, and in accordance with the schedule included as Attachment 2, Settling Work Defendant shall notify EPA and the State of the name, title, and qualifications of the Supervising Contractor that Settling Work Defendant propose to retain to perform the Work, and a copy of the proposed contractor's Quality Management Plan ("QMP"). EPA will issue a notice of disapproval or an authorization to proceed regarding hiring of the proposed contractor.

### 1.5.   Reporting to EPA and the State

#### 1.5.1. Monthly Progress Report

The Settling Work Defendant shall prepare and submit written Monthly Progress Reports as required by Section X of the CD. The progress reports shall: (a) describe deliverables submitted and actions taken during the previous month on each active task required by this SOW or the approved RD or RA Work Plans; (b) describe problems arising since the

4

previous report and steps planned or underway to mitigate the problems; (c) describe
actions scheduled for the next two months; (d) describe any anticipated changes in the
schedule; (e) describe the nature of, duration of, and response to any noncompliance with
Performance Standards or other requirements; (f) describe any modifications to the work
plans that the Settling Work Defendant has proposed to the EPA or that has been
approved by the EPA and (g) describe any community relations activities completed
during the previous month or planned for the next two months.  Progress reports are due
by the tenth day of every month.  Upon EPA's written approval, Settling Work Defendant
may submit the progress reports described in this subsection on a quarterly basis.

### 1.5.2. Annual Report

After construction and startup of the Remedial Action, the Settling Work Defendant shall
prepare and submit no later than March 30 of each year an Annual Report that provides
information generated by implementation of the Operation and Maintenance Plan and, if
one was prepared, Compliance Monitoring Plan described in Section 3.3 of this SOW.

### 1.5.3. Progress Meetings and Documentation of Critical Decisions

The Settling Work Defendant shall consult with EPA during the design and construction
process as appropriate.  Any critical decisions made in meetings or conversations with
EPA representatives shall be documented in a written submittal submitted by Settling
Work Defendant to EPA and, if appropriate, the State, within seven (7) days of the
discussion.  The submittal shall document the decision and the rationale for the decision.

### 1.5.4. Notification of Non-Compliance

The Settling Work Defendant shall notify EPA of any non-compliance or potential non-
compliance with Performance Standards no more than seventy-two (72) hours after
receipt of information indicating noncompliance or potential noncompliance.

## 1.6.   EPA Guidance and Reference Materials

The Settling Work Defendant shall consider relevant guidance, directives, and policies issued by
EPA for conducting RD/RA and the activities described herein. A list of selected guidance and
reference material is included as Attachment 3.

## 1.7.   Modifications

If EPA determines that modifications to the Work are necessary to achieve and maintain the
Performance Standards, EPA may require that such modifications be incorporated into the
appropriate work plans developed pursuant to this SOW, as set forth in Section VI of the CD.

## 2. Background:  The Locust Avenue Superfund Site, Source Area OU, Mid-Basin OU, and Soils OU

The Locust Avenue Superfund Site ("Site") is located in San Bernardino County, California, approximately 60 miles east of the city of Los Angeles.  The site, formerly known as the B.F. Goodrich Site, was added to the National Priorities List in September 2009.

The Comprehensive Environmental Response, Compensation, and Liability Information System ("CERCLIS") Identification Number for the site is CAN000905945.

The Site includes a 160-Acre Area in Rialto, California where volatile organic compounds (VOCs) and perchlorate have contaminated soil and groundwater, and all areas where contamination from the 160-Acre Area has come to be located, including, but not limited to, groundwater contamination downgradient of the 160-Acre Area. The 160-Acre Area is bounded by West Casa Grande Drive on the north, Locust Avenue on the east, Alder Avenue on the west, and an extension of Summit Avenue on the south.

Most or all of the Site is located in the Rialto-Colton Groundwater Basin, an important source of drinking water to residents and businesses in the cities of Rialto, Colton, and Fontana.

The 160-Acre Area is part of a larger area acquired by the United States Army in 1942 to develop an inspection, consolidation, and storage facility for rail cars transporting ordnance to the Port of Los Angeles, known as the Rialto Ammunition Backup Storage Point ("RABSP"). Since the United States sold the RABSP in 1946, portions of the area were thereafter used by defense contractors, fireworks manufacturers, and other businesses that used perchlorate salts and/or solvents in their manufacturing processes or products. In 1956 and 1957, West Coast Loading Corporation manufactured and tested two products, photoflash flares and "ground-burst simulators," containing potassium perchlorate, and reportedly used solvents in its operations. From about 1957 to 1962, B.F. Goodrich Corporation conducted research, development, testing, and production of solid-fuel rocket propellant containing ammonium perchlorate, and reportedly used solvents in the manufacturing process.  Since the 1960s, the 160-Acre Area has been used by a number of companies that manufactured or sold pyrotechnics that contained perchlorate salts, including Pyrotronics, Pyro Spectaculars, and American Promotional Events.

### 2.1. Source Area Operable Unit (OU 01)

The Source Area Operable Unit (the SAOU or OU 01) addresses a portion of the contaminated groundwater at the Site.  The targeted area, as described in a ROD adopted in September 2010, includes a portion of the 160-Acre area and contaminated groundwater extending approximately 1½ miles to the southeast of the 160-Acre area.

EPA completed an RI/FS for the SAOU in January 2010.  EPA's selected remedy is a groundwater pump and treat system intended to intercept (i.e., "hydraulically control")

6

contaminated groundwater in the targeted area.  EPA lodged a CD in December 2012 requiring Emhart Industries Inc. to implement the remedy.

## 2.2. Mid-Basin Operable Unit (OU 02)

The Mid-Basin Operable Unit (the MBOU or OU 02) refers to the Operable Unit at the Locust Avenue Superfund Site that addresses groundwater contaminated by Basin Contaminants or other contaminants of concern that are identified in the OU2/OU3 ROD at the Locust Avenue Superfund Site downgradient of the Target Area.  OU 02 remedial activities do not include groundwater within the Target Area.  Target Area shall mean the area of contaminated groundwater described in Section 2.11.2 (Description of the Selected Remedy) of the 2010 ROD and/or the OU 01 Emhart CD referenced in subsection 2.1.  The RI/FS for the MBOU is underway.

## 2.3. Soils Operable Unit (OU 03)

The Soils Operable unit (the "Soils" OU, or OU 03) refers to the operable unit at the Locust Avenue Superfund Site that addresses Basin Contaminants or other contaminants of concern that are identified in the OU 02 / OU 03 ROD for the  soils and soil vapor in the vadose zone at the 160-Acre area.  The RI/FS for the Soils OU is underway.

# 3. List of Deliverables and Other Tasks

Settling Work Defendant shall submit plans, specifications, drawings, and other deliverables for EPA and State review.  Major deliverables are specified in Attachment 2.

Settling Work Defendant shall implement quality control procedures to ensure the quality of all reports and submittals to EPA and the State.  These procedures shall include, but are not limited to, internal technical and editorial review; verification of all calculations used in the design; and documentation of all reviews, problems identified, and corrective actions taken.

Pursuant to Section XI of the CD, EPA may approve, disapprove, or modify each deliverable.

## 3.1.   Remedial Design Work Plan

The Settling Work Defendant shall submit a draft RD Work Plan, in accordance with Section VI of the CD.  Settling Work Defendant shall submit a revised RD Work Plan if directed by EPA.  Upon approval by EPA, Settling Work Defendant shall implement the RD Work Plan.  The deliverables and schedule in the RD Work Plan approved by EPA, and any addendums to the RD Work Plan, shall become requirements of this SOW and the CD.  The Work Plan shall include the elements described in Sections 3.1.1 through 3.1.7 of this SOW.

### 3.1.1. Brief Description of the Site and Operable Unit

The RD Work Plan shall include a brief description of the Site and operable unit(s) addressed by the design, including the sources, nature, and extent of contamination; a description of the remedy; and geographic, hydrogeologic, ecological, cultural, or natural resource features relevant to the RD.

### 3.1.2. Remedial Design Investigation

The RD Work Plan shall describe data collection, analysis, and reporting activities, if any, needed to complete a Remedial Design Investigation (RDI).  Possible objectives are:

- provide updated data needed for the remedial design
- provide data to address any concerns about the quantity, quality, completeness, or usability of data upon which the design will be based

If needed, the RDI shall include provisions for submittal of a Sampling and Analysis Plan (or an addendum to a previously approved site-specific SAP).  As described in more detail in Section 4 of this SOW, the RDI SAP, if needed, shall describe planning, field, laboratory, data review and interpretation, and reporting efforts needed to satisfy the RDI objectives.

### 3.1.3. Updated Project Schedule.

The RD Work Plan shall include a schedule consistent with Attachment 2 of this SOW that provides dates for design deliverables and other critical path activities required during design of the remedy.  The schedule shall include dates for all design and remedial action planning activities included in Attachment 2.  Should changes to the schedule presented in Attachment 2 be warranted, these changes will be proposed in the RD Work Plan (or via other written communications) and will be subject to EPA approval.

The schedule shall include time for EPA and State review of written deliverables and for meetings with EPA representatives when appropriate.

### 3.1.4. Roles and Responsibilities of Key Personnel and Organizations.

The RD Work Plan shall describe the roles and responsibilities of individuals and organizations involved in the RD effort, including major subcontractors.

### 3.1.5. RA Contracting and Implementation Strategy

8

The RD Work Plan shall briefly describe the planned strategy for procuring the RA contractor and implementing the RA.

### 3.1.6. Permits, Property Acquisition, Access, Approvals, and Compliance with Substantive Requirements

The RD Work Plan shall list all permits, property, leases, easements, access agreements, and approvals required for implementation of the remedy and summarize actions taken to date, if any. This shall include planning for compliance with the California Department of Public Health (CDPH) 97-005 process if the remedy may result in the use of treated groundwater as drinking water. It should also include a discussion of the relevance of the 1961 Rialto-Colton decree or other water rights agreements or judgments if the remedy may require the extraction of groundwater.

### 3.1.7. Third Parties Necessary for Implementation of the Remedy and Use of Existing Facilities

The RD Work Plan shall describe the roles and responsibilities of, and need for agreements with, cities, county, local water utilities or other third parties needed to implement the remedy. Possible third party roles include lease of equipment or land, operation of the remedy, distribution and potable use of treated groundwater, and discharge of treated groundwater.

The RD Work Plan shall identify existing facilities (e.g., groundwater extraction wells, water treatment systems, pipelines) that may be used as part of the remedy, describe their planned use, and discuss their condition, expected life, and the potential for increased maintenance or reduced lifespan (compared to new facilities).

## 3.2.   Remedial Design

Remedial Design activities shall include the preparation of clear and comprehensive design documents, construction plans and specifications, and other design activities needed to implement the remedy. All plans and specifications shall be developed in accordance with U.S. EPA's Superfund Remedial Design/Remedial Action Handbook (EPA 540/R-95/059), and in accordance with the schedule set forth in Attachment 2 of this SOW.

### 3.2.1.   Sampling and Analysis Plan for RD Investigation

If required by the RD Work Plan, the Settling Work Defendant shall submit a Sampling and Analysis Plan for a RDI in accordance with the approved RD Work Plan.

### 3.2.2.   RD Investigation

If required by the RD Work Plan, the Settling Work Defendant shall conduct the RDI in

9

accordance with an approved Sampling and Analysis Plan and RD Work Plan.

### 3.2.3.   RD Investigation Report

If required by the RD Work Plan, the Settling Work Defendant shall submit a RD Investigation Report in accordance with an approved Sampling and Analysis Plan and RD Work Plan.

### 3.2.4. Preliminary Design

The Settling Work Defendant shall conduct Preliminary Design activities in accordance with the approved RD Work Plan.  The Preliminary Design submittal shall include the following:

- A detailed Design Basis Report that updates information provided in the RD Work Plan and presents and justifies the concepts, preliminary assumptions, design criteria, performance standards, other requirements, and preliminary interpretations and calculations used in the design;

- For remedies requiring groundwater extraction and treatment, the Design Basis Report should include, as appropriate:

> - A description of the targeted area of contamination, including a summary of geologic, water quality, or other data used to delineate the area and an explanation of how the hydraulic control requirements will be met by the planned groundwater extraction;
> - Use of the treated water, recipients of the treated water, treated water delivery rates, pressures, and locations; and locations of major treated water delivery components;
> - Siting criteria for extraction wells, treatment facilities, pipelines, and other facilities;
> - The results of any treatability studies;
> - Assumed treatment plant influent quality over the design life of the treatment systems, with a description of the methodology used to develop the estimate
> - Disinfection, corrosion control, filtration, aeration, or other treatment requirements in addition to removal of COCs, if needed;
> - A description of waste streams, including approximate rates or volumes to be generated (e.g., spent carbon, spent resin, backwash water);
> - Effluent (treated water) quality for all COCs exceeding Performance Standards in the untreated groundwater;
> - The planned level of operator oversight;
> - A description of the system control strategy, including a discussion of how the system is designed to respond to seismic events, power outages, equipment failure, and operator error

10

- An outline of specifications to be used;

- Preliminary plans and drawings of groundwater extraction, treatment, conveyance, and monitoring systems, including a mass balance and process flow diagram.

### 3.2.5. Prefinal/Final Design

Settling Work Defendant shall submit the Prefinal Design when the design effort is approximately 95% complete in accordance with Section VI of the CD and the approved RD Work Plan. The Prefinal Design shall fully address all comments made to the preceding design submittal, and be submitted along with a memorandum indicating how the comments were incorporated into the Prefinal Design. The Prefinal Design shall function as the draft version of the Final Design.

The Prefinal Design shall include an updated schedule for the construction and implementation of the Remedial Action (including, if applicable, startup procedures, startup testing, and any anticipated compliance testing by CDPH) through satisfaction of "Operational and Functional" criteria; a capital and O&M cost estimate; and a complete set of reproducible construction specifications and drawings that conform to Construction Specification Institute (CSI) format suitable for bid advertisement. The drawings shall include an outline or list of drawings, a process flow diagram, a piping and instrumentation diagram with a control logic table, and engineering drawings for all components of the project. This may include, but not necessarily be limited to, all necessary civil, piping, electrical, structural, mechanical, instrumentation and control drawings for the extraction wells and wellheads, conveyance systems, treatment processes, and monitoring systems.

The Final Design shall fully address all comments made on the Prefinal Design and be submitted with a memorandum indicating how the comments were addressed in the Final Design. Both the Prefinal and Final Designs shall be certified by a Professional Engineer registered in the State of California.

### 3.3. Remedial Action Planning

During the design period, in preparation for implementation of the remedial action and in accordance with the schedule included in the approved RD Work Plan, Settling Work Defendant shall submit a Construction Quality Assurance Plan, Construction Health and Safety Plan, Operation and Maintenance Plan, and Compliance Monitoring Plan. The Construction Quality Assurance Plan must be reviewed and approved by EPA prior to the initiation of the Remedial Action.

### 3.3.1. Operation and Maintenance Plan

11

The Settling Work Defendant shall prepare an Operation and Maintenance (O&M) Plan pursuant to Section VI of the CD that describes operation, troubleshooting, training, maintenance, and evaluation activities.

A draft Operation and Maintenance Plan shall be submitted in accordance with the approved RD Work Plan. The Operation and Maintenance Plan shall be updated to incorporate any manufacturer or vendor information and any design modifications implemented during the construction and startup phases of the Remedial Action. The revised Operation and Maintenance Plan will be submitted after startup, as required by the approved Remedial Action Work Plan. The Operation and Maintenance Plan must be reviewed and approved by EPA prior to initiation of Operation and Maintenance activities. The Compliance Monitoring Plan described in the following subsection of this SOW may be incorporated into the Operation and Maintenance Plan or submitted separately.

The Operation and Maintenance Plan shall, if applicable, provide or address the following elements:

- A description of basic system operations and standard operating procedures;
- A description of material and maintenance needs, including maintenance schedules recommended by equipment vendors, and anticipated equipment replacement for significant components;
- A description of recordkeeping, including daily operating logs and maintenance records;
- A summary of O&M staffing needs, including training and certification requirements;
- A description of routine data collection and analysis activities required for O&M and to determine if Performance Standards related to O&M are being met, including:

    - Flow rates and volume of groundwater extracted from each extraction well to compare with groundwater extraction rates required to achieve hydraulic control and to estimate contaminant mass removed;
    - Water quality at remedy extraction wells and treatment plant influent to detect any conditions that may interfere with the proper operation and function of the remedy, and to anticipate conditions that may require modifications to the treatment system (Water quality sampling and analysis at groundwater monitoring wells within the capture zone are addressed in the Compliance Monitoring Plan.);
    - Water quality monitoring at appropriate locations within the treatment plant to determine the effectiveness of the treatment process and need for treatment media replacement (e.g., resin or carbon);
    - Water quality monitoring in treated water to verify compliance with Performance Standards, and any additional testing requirements imposed by CDPH for use of treated water as a drinking water source.

12

- Air emission monitoring to verify that air emissions, if any, comply with Performance Standards;

- Criteria to determine when treatment media replacement is needed, if applicable
- A description of planned routine reporting to EPA and the State, including, monthly and annual reporting to EPA and the State required by Section 1.5 of this SOW.
- Provision for development of a Health and Safety Plan for O&M.
- Description and analysis of potential operating problems (e.g., decline in groundwater elevation, higher than expected COC influent concentrations) and potential control strategies or corrective actions (e.g., additional monitoring, operational modifications, project shutdown, and/or additional design and construction activities);
- A description of the plans for the proper disposal of materials used and wastes generated during the O&M periods (e.g., spent treatment media) in compliance with Section VI of the CD
- Provisions for submittal of a SAP or addendum to an existing SAP to address data collection related to O&M
- Procedures for notification to EPA and the State within 72 hours after receipt of information indicating noncompliance or potential noncompliance with Performance Standards related to O&M

### 3.3.2.  Compliance Monitoring Plan

Settling Work Defendant shall submit a Compliance Monitoring Plan (CMP) to provide for data collection and analysis activities needed to demonstrate that the Work satisfies all Performance Standards related to hydraulic control and evaluates progress toward restoration of the aquifer.  The CMP shall be submitted during the design period as specified in the approved RD Work Plan, and implemented after EPA approval and completion of construction.  The CMP shall be amended as necessary over the life of the remedy.

The CMP shall, if appropriate, include or accomplish the following:

1.  Identify Performance Standards related to hydraulic control and criteria to be used to measure progress toward restoration of the aquifer.

2. Describe the types of data to be collected, sampling and data gathering methods, monitoring locations, sampling and measurement frequencies, and if appropriate, minimum monitoring duration.  The data shall include:

a.  Water quality measurements in one or more depths in groundwater compliance wells downgradient of the capture zone if the remedy requires hydraulic containment of contaminated groundwater.

13

b. The measurement of hydraulic head at multiple locations and multiple depth intervals at new and/or existing wells or piezometer clusters installed adjacent to each extraction well to help define the size of the extraction well capture zone if the remedy requires hydraulic containment of contaminated groundwater.

c. Water quality measurements to provide early warning of conditions that may require changes in remedy operation.

d. Water quality measurements from selected locations throughout the contaminated portion of the aquifer to monitor progress towards groundwater restoration.

4.  Describe how groundwater monitoring and remedy performance data shall be analyzed, interpreted, and reported to EPA and the State to determine compliance with Performance Standards and, if applicable, provide early warning of conditions that may require changes in remedy operation.

5.  A description of the procedures for reporting compliance monitoring information to EPA and the State in the monthly and annual reporting required by Section 1.5 of the SOW.

6.  Provisions for submittal of a Sampling and Analysis Plan and Health and Safety Plan, or addendums to existing plans.

7.  A schedule for the performance of sampling and data gathering activities

8.  Procedures for notification to EPA and the State within 72 hours after receipt of information indicating noncompliance or potential noncompliance with Performance Standards

### 3.3.3. Construction Quality Assurance Plan

Settling Work Defendant shall submit for EPA review a Construction Quality Assurance Plan (CQA Plan).  The CQA Plan shall ensure, with a reasonable degree of certainty, that the completed RA will meet or exceed all design criteria, plans and specifications, relevant Performance Standards, and other relevant requirements. EPA will approve the CQA Plan consistent with Section XI of the CD. The CQA Plan must be approved by EPA prior to the initiation of construction.

The CQA Plan shall include the following elements:

14

- Responsibility and authority of all organizations and key personnel, to the extent known, involved in the remedial action construction (including contractors, subcontractors, and consultants);

- A description of the quality control organization, including a chart showing lines of authority, responsibilities and qualifications, and documentation that the QA team is independent of the construction contractor;

- A description of the observations, inspections, and testing that will be used to assure quality workmanship, verify compliance with the plans and specifications, and verify compliance with health and safety procedures during implementation of the Remedial Action. The Plan shall include documentation of the qualifications of the laboratories performing the testing. If a laboratory is selected after CQA Plan submittal, an addendum to the plan that will include the laboratory's qualifications will be submitted prior to testing.

- Reporting procedures, frequency, and format for CQA activities.

### 3.3.4. Construction Health and Safety Plan

Settling Work Defendant shall prepare a Construction Health and Safety Plan in compliance with U.S. Occupational Safety and Health Administration requirements in Title 29 of the Code of Federal Regulations ("CFR"), sections 1910 and 1926, and any other applicable requirement(s). The Construction Health and Safety Plan shall specify how workers will be protected during site activities through the identification, evaluation, and control of health and safety hazards.

EPA will review but neither approve nor disapprove Settling Work Defendant's Construction Health and Safety Plan.

### 3.3.5. Remedial Action Work Plan

The Settling Work Defendant shall submit a draft Remedial Action Work Plan in accordance with Section VI of the CD. Settling Work Defendant shall submit a revised RA Work Plan if directed by EPA. Upon approval, Settling Work Defendant shall implement the RA Work Plan. The deliverables and schedule in the EPA-approved RA Work Plan, and any addendums to the RA Work Plan, shall become requirements of this SOW and the CD.

The RA Work Plan shall update information in the RD Work Plan and include designation of Settling Work Defendant's on-site Remedial Action Coordinator, Construction Manager, Construction Contractor, Construction Quality Assurance personnel, Resident Engineer and other key project management personnel along with lines of authority and descriptions of duties; a plan for EPA and State review and EPA

approval of significant changes during construction; identification of any outstanding issues regarding property acquisition, regulatory agency approvals, access or use agreements, easements, third party agreements, permitting requirements, or substantive requirements for onsite activities; plans to provide site security; any needed updates to the schedule of major activities and submission of deliverables; any changes in procurement or contracting strategy; and any contractor or equipment availability concerns.

Significant field changes to the Remedial Action as set forth in the RA Work Plan and Final Design shall not be undertaken without the approval of EPA.

### 3.4.    *Remedial Action*

#### 3.4.1. Construction Contractor

Settling Work Defendant shall notify EPA and the State of the selected construction contractor in accordance with the approved RA Work Plan.

#### 3.4.2. Pre-Construction Meeting

A preconstruction meeting shall be held after selection of the construction contractor but before initiation of construction. The meeting shall include the Settling Work Defendant's representatives and interested federal, state and local government agency personnel, and shall define the roles, relationships, and responsibilities of all parties; review work area security and safety protocols; review any access issues; review construction schedule; and review construction quality assurance procedures. The Settling Work Defendant shall ensure that the results of the preconstruction meeting are documented and transmitted to all parties in attendance, including the names of people in attendance, issues discussed, clarifications made, and instructions issued.

#### 3.4.3. Remedial Action Construction

The Settling Work Defendant shall implement the Remedial Action as detailed in the approved Final Design and approved RA Work Plan.

#### 3.4.4. Pre-certification Inspection and Remedial Action Report

After completion of construction and startup activities, Settling Work Defendant shall notify EPA of their completion and propose an inspection date.  Within sixty (60) days after the inspection, Settling Work Defendant shall submit a draft Remedial Action (RA) Report in accordance with the schedule in Attachment 2 and the approved RA Work Plan.  The RA Report shall demonstrate that the Remedial Action satisfies the construction and startup requirements of the CD, is operating and functioning as

16

intended, and shall be prepared in accordance with the EPA guidance document "Close Out Procedures for
National Priorities List Sites," OSWER Directive 9320.2-20 (May 2011).  It shall include:

- a narrative description of the construction;
- a chronology of events;
- the results of operational and compliance monitoring completed to date;
- a determination whether performance standards and other relevant requirements have been met, and the basis for the determination;
- a summary of the findings of any Pre-Certification Inspection(s) that have occurred;
- documentation to substantiate Settling Work Defendant's certification of full satisfaction with Sections XIV of the CD, if such certification has been made before submittal of the RA Report;
- documentation that the construction quality assurance quality control plan was implemented and that construction completion is consistent with the ROD and remedial design plans and specifications;
- an electronic copy of the as-built drawings, signed and stamped by a professional engineer, on a CD or DVD.

The RA Report shall also contain the following statement, signed by a responsible corporate official of Settling Work Defendant or the Settling Work Defendant's Project Coordinator:

> *"I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."*

When Settling Work Defendant believes that the Remedial Action has been fully performed and the Performance Standards achieved, Settling Work Defendant shall schedule and conduct a pre-certification inspection to be attended by EPA and Settling Defendant representatives. After completion of the pre-certification inspection and receipt and review of the draft Remedial Action Report, EPA may provide a Certification of Completion of the Remedial Action, or notify Settling Work Defendant in writing of the activities that must be undertaken to complete the Remedial Action.

17

Alternatively, after the pre-certification inspection, Settling Work Defendant may submit
a written report that outlines outstanding construction items, actions required to resolve
the outstanding items, completion dates, and a proposed date for another pre-certification
inspection.

# 4. Sampling and Analysis Plan(s) and Health and Safety Plan(s)

In accordance with Section VIII of the CD, Settling Work Defendant shall prepare one or
more Sampling and Analysis Plans (SAPs) for field and laboratory activities required to
implement the remedy. SAPs are required for sample collection and analysis as well as
physical measurements such as groundwater levels, borehole geophysics, aquifer
parameters, and geodetic survey data. Field and/or laboratory activities may be needed to
complete the Remedial Design Investigation, conduct O&M, and conduct Compliance
Monitoring.

Each SAP shall include a Field Sampling Plan (FSP), a Quality Assurance Project Plan
(QAPP), and a schedule for implementation of sampling, analysis, and reporting activities.
The FSP and QAPP may be submitted separately or as one document. Each sample and
analysis activity may have a stand-alone SAP or be combined into a comprehensive SAP
which would apply to multiple activities. They shall be consistent with current EPA
guidance. Upon EPA approval of a SAP, the Settling Work Defendant shall implement the
activities described in the SAP.

a. The FSP shall describe sampling and data gathering objectives; planned uses of the data;
sampling and data collection methods; sample locations and frequencies; sampling
equipment and equipment decontamination procedures; sample preservation, packing,
labeling, and shipment procedures; chain-of-custody procedures; numbers and types of
samples (including quality control [QC] samples); use and maintenance of field logs; and
management of investigation-derived wastes. For groundwater wells, the FSP shall also
describe well construction and well development procedures.

The FSP shall be written so that a field sampling team unfamiliar with the project would be
able to gather the samples and field information required. The FSP shall include a schedule
that describes activities that must be completed in advance of sampling, including access
agreements and arrangements for disposal of investigation-derived waste. The FSP shall
include provisions for the collection of split samples by EPA.

b. The QAPP shall describe the project objectives and organization, functional activities,
data quality objectives (DQOs), and quality assurance and quality control (QA/QC)
protocols that will be used to achieve the DQOs. The DQOs shall, at a minimum, reflect use
of analytical methods for obtaining data of sufficient quality to meet National Contingency
Plan requirements as identified at 40 CFR 300.435 (b). In addition, the QAPP shall address
personnel qualifications, sampling procedures, sample custody, analytical procedures,
document control procedures, preservation of records (in accordance with Section XXIII of

18

the CD), and procedures that will be used to enter, store, manage, correct, manipulate, review, validate, transfer (to EPA and others), and analyze data, and ensure that reported data are accurate and defensible.

Respondent shall be prepared to demonstrate to EPA's satisfaction that each laboratory it may use is qualified to conduct the proposed work and meets the requirements specified in Section VIII of the CD. This includes use of methods and analytical protocols for the chemicals of concern in the media of interest at detection and quantification limits consistent with DQOs and requirements specified in the approved QAPP for the work. Settling Defendant shall only use laboratories that have documented Quality Assurance Programs that comply with ANSI/ASQ E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995) and " *EPA Requirements for Quality Management Plans (QA/R-2)*", EPA/240/B-01/002, March 2001, or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements. If the laboratory is not in the EPA Contract Laboratory Program (CLP), Settling Defendant shall submit for EPA review and approval, if EPA requests, a laboratory QA program plan. EPA may require that Settling Defendant submit detailed information to demonstrate that the laboratory is qualified to conduct the work, including information on personnel qualifications, equipment, and material specifications.

Settling Work Defendant shall submit analytical data and any well construction information to EPA and the State in accordance with the schedule included in Attachment 2.

c. Settling Work Defendant shall also prepare a Health and Safety Plan in conformance with U.S. Occupational, Safety, and Health Administration (OSHA) requirements as outlined in 29 CFR 1910 and 1926, and any other applicable requirements. The Health and Safety Plan shall describe health and safety risks, employee training, monitoring and personal protective equipment, medical monitoring, levels of protection, safe work practices and safe guards, contingency and emergency planning, and provisions for site control. EPA will review but will neither approve nor disapprove Settling Work Defendant's Health and Safety Plan.

## Attachment 1 to the SOW:  Site Map



20

# Attachment 2 to the SOW.  Due Dates for Major Deliverables and Other Activities

| Ref SOW Section | Ref CD Section | Activity or Deliverable | Due [1, 2, 3, 4] | EPA Estimated Review period [4, 5] |
|---|---|---|---|---|
| 1.4 | VI | Notification of Proposed Supervising Contractor, including submittal of QMP | Thirty (30) days after EPA provides notice to the Settling Work Defendant  that a ROD for OU02 or OU03 has been signed by EPA | 7 days |
| - | XII | Notification of Project Coordinator and Alternate Project Coordinator | Fourteen (14) days after EPA provides notice to the Settling Work Defendant  that a ROD for OU02 or OU03 has been signed by EPA | - |
| - | XVII | Proof of commercial general liability and automobile liability insurance | Fifteen (15) days before commencing on-Site Work | - |
| **Communications and Reporting** | | | | |
| 1.5.1 | X | Monthly Progress Reports | Tenth (10th) day of each month, beginning thirty (30) Days after EPA provides notice to the Settling Work Defendant that a ROD for OU02 or OU03 has been signed | N/A |
| 1.5.2 | - | Annual Performance Evaluation Report | Annually, by March 30th, after completion of construction and startup of the Remedial Action if remedy requires O&M_ | 90 days |
| 1.5.3 | - | Meeting Notes | Seven (7) days after meetings where critical decision made | N/A |
| 1.5.4 | - | Notification of Noncompliance or Potential Noncompliance | No more than seventy-two (72) hours after receipt of information indicating noncompliance or potential noncompliance | - |
| **Remedial Design** | | | | |
| 3.1 | VI | RD Work Plan | Sixty (60) days after EPA's issuance of an authorization to proceed | 30 days |
| 3.1.2 3.2.2 4 | VI | Sampling & Analysis and Health and Safety Plans for Remedial Design Investigation | Thirty (30) days after EPA approval of the RD Work Plan | 21 days |
| 3.1.2 3.2.2 | VI | Remedial Design Investigation (RDI) | As specified in approved RD Work Plan or RDI Sampling & Analysis Plan  (if required) | N/A |
| 3.1.2 3.2.3 | VI | Remedial Design Investigation Report | As specified in approved RD Work Plan or RDI Sampling & Analysis Plan (if required) | 30 days |
| 3.2.4 | VI | Preliminary Design | As specified in approved RD Work Plan | 30 days |

21

| Ref SOW Section | Ref CD Section | Activity or Deliverable | Due [1,2,3,4] | EPA Estimated Review period [4,5] |
|---|---|---|---|---|
| 3.2.5 | VI | Prefinal Design | One hundred twenty (120) days after EPA approval of the Preliminary Design | 30 days |
| 3.2.5 | VI | Final Design | Thirty (30) days after EPA comments on the Prefinal Design | 21 days |
| - | VI | Other Design Deliverables | As specified in the approved RD Work Plan | - |
| **Remedial Action Planning** | | | | |
| 3.3.1 | VI | Operation and Maintenance (O&M) Plan | Draft due concurrent with the Prefinal Design Submittal if remedy requires O&M (Revised O&M Plan due after construction and startup, as specified in the approved RA Work Plan ) | 21 days |
| 3.3.2 | VI | Compliance Monitoring Plan | Concurrent with the Prefinal Design Submittal | 21 days |
| 3.3.1 3.3.2 4 | VI | Sampling & Analysis and Health and Safety Plans | As specified in approved O&M and Compliance Monitoring Plans | 30 days |
| 3.3.3 | VI | Construction Quality Assurance Plan | Concurrent with the Prefinal Design Submittal | 21 days |
| 3.3.4 | VI | Construction Health And Safety Plan | Concurrent with the Prefinal Design Submittal | 21 days |
| 3.3.5 | VI | Remedial Action Work Plan | Sixty (60) days after EPA approval of the Final Design | 30 days |
| **Remedial Action** | | | | |
| 3.4.1 | - | Notification of selected construction contractor | As specified in approved RA Work Plan | 7 days |
| 3.4.2 | - | Pre-construction Meeting | As specified in approved RA Work Plan | - |
| 3.4.3 | VI | RA Implementation | As specified in approved RA Work Plan | - |
| 3.4.4 | - | Inspection following completion of construction and startup activities | Promptly after notification of completion of startup activities, as specified in approved RA Work Plan | - |
| 3.4.4 | XIV | Notification of precertification inspection for completion of Remedial Action | At least ten (10) days before precertification Inspection | - |

22

| Ref SOW Section | Ref CD Section | Activity or Deliverable | Due [1, 2, 3, 4] | EPA Estimated Review period [4, 5] |
|---|---|---|---|---|
| 3.4.4 | XIV | Precertification inspection for completion of Remedial Action | Ninety (90) days after Settling Work Defendant concludes that the Remedial Action has been fully performed and the Performance Standards are being achieved | - |
| 3.4.4 | - | RA Report | Draft due sixty (60) days after inspection for completion of construction and startup activities | 30 days |
| 3.4.4 | XIV | Request for Certification of Completion of the Remedial Action (or written submittal that identifies actions and a schedule to resolve outstanding construction items) | Draft due thirty (30) days after the precertification inspection | 30 days |
| 3.4.4 | XIV | Additional precertification inspections for completion of Remedial Action (if needed) | As specified or approved by EPA | - |
| - | XIV | Precertification inspection for completion of Work | Ninety (90) days after Settling Work Defendant conclude that the Work has been fully performed | - |
| **Operation and Maintenance** | | | | |
| *See requirements for Communications and Reporting* | | | | |
| **Other** | | | | |
| 4 | - | Submittal of analytical data, whether or not validated, in electronic format only | Forty-two (42) calendar days after sample shipment to the laboratory or 14 days after receipt of analytical results from the laboratory, whichever occurs first. | NA |
| 4 | - | Submittal of validated analytical data | Ninety (90) calendar days after sample shipment to the laboratory | NA |
| | | | | |

[1] Unless otherwise indicated, all deliverables shall be provided in an electronic format (e.g., PDF) to EPA, EPA's contractor, the Water Board, and DTSC.  Paper copies are required for the following:  Preliminary, Prefinal, and Final Design submittals.

23

Consent Decree -200-

[2] All deliverables set forth in Attachment 2 will be reviewed and approved by EPA in accordance with Section XI of the CD, except for the Health and Safety Plan(s), which will be reviewed but neither approved nor disapproved.

[3] Revised versions of documents, if needed, are due 14 days after receipt of EPA comments, unless specified otherwise in the CD, in this Attachment, or in writing by EPA

[4] Estimated time is in calendar days.

[5] Failure to review a deliverable within the estimated time shall not constitute a violation of the CD by the United States.

24

Consent Decree -201-

# Attachment 3 to the SOW.  Selected Guidance and Resources

The following regulations and guidance documents may be relevant during the RD/RA process.

"National Oil and Hazardous Substances Pollution Contingency Plan, Final Rule", Federal Register 40 CFR Part 300, March 8, 1990

*Remedial Design/Remedial Action (RD/RA) Handbook*, U.S. EPA, Office of Solid Waste and Emergency Response (OSWER), 9355.0-04B, EPA 540/R-95/059, June 1995

*Guide to Management of Investigation-Derived Wastes*, U.S. EPA, Office of Solid Waste and Emergency Response, Publication 9345.3-03FS, January 1992

*A Systematic Approach for Evaluation of Capture Zones at Pump and Treat Systems*, EPA/600/R-08/003, January 2008

*Summary of Key Existing EPA CERCLA Policies for Groundwater Restoration*, OSWER Directive 9283.1-33, June 26, 2009

*Superfund Green Remediation Strategy*, September 2010, available at: http://www.epa.gov/superfund/greenremediation/sf-gr-strategy.pdf

*CERCLA Compliance with Other Laws Manual*, Two Volumes, U.S. EPA, Office of Emergency and Remedial Response, (DRAFT), OSWER Directive No. 9234.1-01 and -02, August 1988

*Superfund Community Involvement Handbook*, U.S. EPA, Office of Solid Waste and Emergency Response, EPA-540-K-05-003, April 2005

*Policy Guidance for Direct Domestic Use of Extremely Impaired Sources*, California Department of Public Health Policy Memorandum 97-005

*Clarification of the Role of Applicable, or Relevant and Appropriate Requirements in Establishing Preliminary Remediation Goals Under CERCLA*, EPA 540/F-97/008, OSWER 9200.4-23, August 1997

*Construction Quality Assurance for Hazardous Waste Land Disposal Facilities*, EPA/530-(S) SW-86-031, February 1987

*USEPA Contract Laboratory Program National Functional Guidelines for Superfund Organic Methods Data Review*, USEPA-540-R-08-01, June 2008

25

*USEPA Contract Laboratory Program National Functional Guidelines for Inorganic Superfund Data Review*, EPA 540-R-10-011, January 2010

*EPA Guidance on Systematic Planning Using the Data Quality Objectives Process (QA/G-4)*, February 2006

*EPA Requirements for Quality Management Plans (QA/R-2)*, EPA/240/B-01/002, March 2001

*EPA Requirements for Quality Assurance Project Plans (QA/R-5)*, EPA/240/B-01/003, March 2001

*EPA Region IX Sampling and Analysis Plan Guidance and Template*, R9QA/002.1, April, 2000

*Region 9 Superfund Data Evaluation/Validation Guidance* (Draft), USEPA, Quality Assurance Office, R9QA/006.1, December 2001

*EPA Close Out Procedures for National Priorities List Sites*, OSWER Directive 9320.2-20, May 2011

*EPA Groundwater Road Map, Recommended Process for Restoring Contaminated Groundwater at Superfund Sites*, OSWER 9283.1-34, July 2011.

26

Consent Decree -203-