IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
DEBORAH A. GITIN (CA State Bar #284947)
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California  94105
Telephone:   (415) 744-6488
Facsimile:    (415) 744-6476
deborah.gitin@usdoj.gov


Attorneys for Plaintiff, UNITED STATES OF AMERICA


UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| CITY OF COLTON, a California municipal corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN PROMOTIONAL EVENTS, INC., et al.<br><br>Defendants.<br>AND CONSOLIDATED ACTIONS | CASE NO. ED CV 09-01864 PSG (SSx)<br><br>[Consolidated with Case Nos. CV 09-6630 PSG (SSx), CV 09-06632 PSG (SSx), CV 09-07501 PSG (SSx), CV 09-07508 PSG (SSx), CV 10-824 PSG (SSx) and CV 05-01479 PSG (SSx)]<br><br>**CONSENT DECREE** |

Consent Decree

1

# TABLE OF CONTENTS

2

3    I.      BACKGROUND ........................................................................... 1

4    II.     JURISDICTION ........................................................................... 2

5    III.    PARTIES BOUND........................................................................ 2

6    IV.     DEFINITIONS ............................................................................. 2

7    V.      STATEMENT OF PURPOSE...................................................... 8

8    VI.     SETTLEMENT OF RESPONSE COSTS.................................... 8

9    VII.    ACCESS AND INSTITUTIONAL CONTROLS...................... 10

10   VIII.   NOTICE TO SUCCESSORS-IN-TITLE AND TRANSFERS OF REAL

11           PROPERTY ............................................................................. 14

12   IX.     ACCESS TO INFORMATION.................................................. 15

13   X.      RETENTION OF RECORDS .................................................... 17

14   XI.     DISPUTE RESOLUTION…………………………………………...19

15   XII.    FAILURE TO COMPLY WITH CONSENT DECREE

16           OBLIGATIONS........................................................................ 23

17   XIII.   COVENANTS AND RESERVATIONS OF RIGHTS BY

18           PLAINTIFFS ........................................................................... 25

19   XIV.    COVENANTS AND RESERVATIONS OF RIGHTS BY SETTLING

20           DEFENDANTS AND SETTLING FEDERAL AGENCIES ................. 28

21   XV.     EFFECT OF SETTLEMENT/CONTRIBUTION ....................... 33

22   XVI.    NOTICES AND SUBMISSIONS .............................................. 35

23   XVII.   RETENTION OF JURISDICTION ........................................... 36

24   XVIII.  INTEGRATION/APPENDICES ............................................... 36

25   XVIX.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT .......... 37

26   XX.     FINAL JUDGMENT................................................................ 37

27

28

Consent Decree                                                                                          i

# I.    BACKGROUND

A.     The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9607 ("CERCLA"), and Section 7003 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6973, seeking injunctive relief and reimbursement of response costs incurred by EPA and the United States Department of Justice for response actions at the B.F. Goodrich Superfund Site in Rialto, California.  Other parties have also filed CERCLA and/or state law claims in cases consolidated with the United States' case (collectively, the "Consolidated Federal Action").

B.     Defendants Ken Thompson, Inc.; KTI, Incorporated; Pipeline Carriers, Inc.; and Rialto Concrete Products, Inc. (collectively, "Settling Defendants" as defined in Section IV (Definitions)), are entities which are named as defendants in one or more of the complaints referenced in Paragraph I.A.  Settling Defendants do not admit, and specifically deny:  (1) any liability arising out of the transactions or occurrences alleged in the claims or deemed by the Court in the Consolidated Federal Action; and (2) that the release or threatened release of Waste Material at or from the B.F. Goodrich Superfund Site or the RABSP (as defined in Section IV (Definitions)) constitutes, contributed to, or caused an imminent or substantial endangerment to the public health or welfare or the environment.

C.     Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), any EPA existing or future removal or remedial decision and the actions to be performed by Settling Defendants under this Consent Decree shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED:

## II.        JURISDICTION

1.        This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345; 42 U.S.C. §§ 6973(a), 9607, and 9613(b); and also has personal jurisdiction over Settling Defendants.  Solely for the purposes of this Consent Decree and the underlying complaints, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge entry or the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.        PARTIES BOUND

2.        This Consent Decree is binding upon the United States and upon Settling Defendants and their heirs, successors, and assigns.  Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendants under this Consent Decree.

## IV.        DEFINITIONS

3.        Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

"160-Acre Area" shall mean the area located in San Bernardino County that is bounded by West Casa Grande Drive on the north, Locust Avenue on the east, Alder Avenue on the west, and an extension of Summit Avenue on the south.  The 160-Acre Area is depicted generally on the map included in Appendix A.

"2010 Record of Decision" or "2010 ROD" shall mean the document entitled "USEPA Superfund Interim Action Record of Decision" relating to the Source Area Operable Unit, B.F. Goodrich Superfund Site, San Bernardino County, CA, EPA ID: CAN000905945, dated September 30, 2010, signed by the Assistant Director, Superfund Division, EPA Region 9, and all attachments thereto.

"Basin Contaminants" shall mean any type of perchlorate; trichloroethylene ("TCE"); carbon tetrachloride; chloroform; or methylene chloride; including any breakdown or "daughter" products of the foregoing.

"B.F. Goodrich Superfund Site" shall mean the B.F. Goodrich Superfund Site in San Bernardino County, California, which includes the 160-Acre Area and all areas where contamination from the 160-Acre Area otherwise comes to be located.

"B.F. Goodrich Special Account" shall mean the special account, within the EPA Hazardous Substances Superfund, established for the B.F. Goodrich Superfund Site (Site/Spill ID Number 09JW) by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Certification of Completion of the Final Remedial Action" shall mean the certification of completion of the remedial action associated with the Final Record of Decision for the B.F. Goodrich Superfund Site.

"Consent Decree" shall mean this Consent Decree and all appendices attached hereto.  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Consolidated Federal Action" shall mean *City of Colton v. American Promotional Events, Inc., et al*., Case No. ED CV 09-01864 PSG (SSx); *Goodrich Corporation v. Chung Ming Wong, et al.*, Case No. CV 09-6630 PSG (SSx);

*County of San Bernardino, et al., v. Tung Chun Co., et al.*, Case No. CV 09-06632 PSG (SSx); *City of Rialto and Rialto Utility Authority v. United States Department of Defense, et al*., Case No. CV 09-7501 PSG (SSx); and *Emhart Industries, Inc. v. American Promotional Events, Inc.-West, et al.*, Case No. CV 09-07508 PSG (SSx), all of which were consolidated pursuant to an order issued on January 20, 2010; and *United States of America v. Goodrich Corporation, et al*., Case No. 10-00824 PSG (SSx), which was consolidated with the previously consolidated cases pursuant to an order issued on June 3, 2010; and *City of Colton v. American Promotional Events, Inc., et al.*, Case No. ED CV 05-01479 PSG (SSx).

"County" shall mean the County of San Bernardino and any of its present, former, or future subdivisions, departments, commissions, agencies, or instrumentalities.

"County Property" shall mean the property known as the Mid Valley Sanitary Landfill, which is currently owned by the County of San Bernardino, including those areas currently leased to Robertson's Ready Mix. The County Property is bounded by Summit Avenue on the north, generally by Alder Avenue on the east (until Alder Avenue terminates at or within the Robertson's Ready Mix leasehold), generally by the municipal boundaries of the Cities of Fontana and Rialto on the west except for a strip of land located in the City of Fontana, and by Casmalia Street on the south. The County Property is depicted generally on the map included in Appendix A.

"Day" or "day" shall mean a calendar day unless expressly stated to be a working day. The term "working day" shall mean a day other than a Saturday, Sunday, or federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the United States Department of Justice and its successor

departments, agencies, or instrumentalities.

"Effective Date" shall mean the date upon which this Consent Decree is entered by the District Court as recorded on the District Court docket, or, if the District Court instead issues an order approving the Consent Decree, the date such order is recorded on the District Court docket, whichever occurs first.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Federal Contract" means any prime contract, subcontract, or any other agreement transferring value between a party to this Consent Decree and a department, agency, or instrumentality of the United States, including but not limited to contracts for goods or services, grants, and cooperative agreements.  The term "Federal Contract" does not include this Consent Decree.

"Final Record of Decision" shall mean the final Record of Decision (and all attachments) for the B.F. Goodrich Superfund Site that will be signed by EPA in the future, and after lodging of this Consent Decree.

"Final Remedial Action" shall mean activities associated with implementing the Final Record of Decision.

"Further Settlor" shall mean any party to the Consolidated Federal Action and not a signatory to this Consent Decree, with whom the United States, on behalf of EPA, reaches or has reached a final settlement.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each

year.

"Institutional Controls" or "ICs" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, and/or resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the remedial action; and/or (c) provide information intended to modify or guide human behavior at or in connection with the Site.

"KTI Property" shall mean those parcels of the land located in the 160-Acre Area in the City of Rialto, County of San Bernardino, State of California with the Assessor's Parcel Numbers of APN 0239-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, APN 0239-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, APN 0239-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, APN 0239-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, and APN 0239-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, as more specifically described and depicted in Appendix B to this Consent Decree.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States and the Settling Defendants.

"Plaintiffs" shall mean the United States, on behalf of EPA.

"Proprietary Controls" shall mean easements or covenants running with the land that: (a) limit land, water, or resource use and/or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded by the owner in the appropriate land records office.

"RABSP" shall mean the parcel of land originally containing the former Rialto Ammunition Backup Storage Point, located in San Bernardino County, California. The 160-Acre Area is within the geographic area of the RABSP. The RABSP is depicted generally on the map included in Appendix A.

"RABSP Site" shall mean the RABSP and all areas where contamination

from the RABSP otherwise comes to be located.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean Ken Thompson, Inc.; KTI, Incorporated; Pipeline Carriers, Inc.; and Rialto Concrete Products, Inc. and includes past and current officers and employees of these entities acting in the course and scope of their employment, as well as successors and assigns of these entities.

"Settling Federal Agencies" shall mean any federal agency, department, or instrumentality named or alleged to be liable for contamination in the Consolidated Federal Action, including but not limited to the United States Army, the Department of the Navy, the United States Air Force, the United States Department of Defense, the Farm Credit Administration, the United States Customs and Border Protection, the National Aeronautics and Space Administration, the United States Department of Energy, Lawrence Livermore National Laboratory, the United States Forest Service, and any other federal entity that is alleged to have transported, disposed of, or released any Waste Material within the area encompassed by the RABSP Area, as depicted in Appendix A, and any of their predecessors or successors.

"State" shall mean the State of California.

"Stonehurst Property" shall mean the approximate 5-acre property in the County of San Bernardino, County APNs 1133-07-105, 1133-07-106, and 1133-07-107, collectively, located at 2298 West Stonehurst Drive, Rialto, California. The Stonehurst Property is depicted generally on the map included in Appendix A.

"Transfer" shall mean shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, specifically including EPA and the Settling Federal Agencies.

"Waste Material" shall mean: (a) any hazardous substance under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (b) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (c) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous waste" under California law, including California Health & Safety Code §§ 25100 *et seq*.

"West Side Area" shall mean the County Property and the Stonehurst Property.  The West Side Area is depicted generally on the map included in Appendix A.

"West Side Site" shall mean the West Side Area and all areas where TCE and perchlorate contamination from the West Side Area otherwise comes to be located.

### V.    STATEMENT OF PURPOSE

4.    By entering into this Consent Decree, the mutual objectives of the Parties are to avoid difficult and prolonged litigation and resolve claims as set forth herein.

### VI.    SETTLEMENT OF RESPONSE COSTS

5.    <u>Payments</u>

Settling Defendants shall pay two million eight hundred thousand dollars ($2,800,000) to the United States on behalf of EPA in three payments, on the

following schedule and in accordance with payment instructions as directed in
Paragraph 6, below.  The total amount of each payment to be paid by Settling
Defendants pursuant to this Section shall be deposited by EPA in the B.F.
Goodrich Superfund Site Special Account (Site/Spill ID Number 09JW) to be
retained and used to conduct or finance response actions at or in connection with
the Site, which may include transferring all or some of those payments to a
disbursement special account associated with the Final Remedial Action, and/or to
be transferred by EPA to the EPA Hazardous Substance Superfund.

     a.    Within ten (10) working days after the Effective Date, or ten
(10) working days after receiving payment instructions from the United States on
behalf of EPA, whichever is later, Settling Defendants shall pay nine hundred
thirty-three thousand three hundred thirty-four dollars ($933,334) to the United
States.

     b.    Within one (1) year after the Effective Date, Settling
Defendants shall pay to the United States nine hundred thirty-three thousand three
hundred thirty-three dollars ($933,333), plus Interest on that amount calculated
from the 30th Day after the Effective Date until the date of the payment.  The
United States shall provide Settling Defendants with information on the amount of
Interest due thirty (30) Days before the due date for this payment.

     c.    Within two (2) years after the Effective Date, Settling
Defendants shall pay to the United States nine hundred thirty-three thousand three
hundred thirty-three dollars ($933,333), plus Interest on that amount calculated
from the 30th Day after the Effective Date until the date of the payment.  The
United States shall provide Settling Defendants with information on the amount of
Interest due thirty (30) Days before the due date for this payment.

The payments to be made by Settling Defendants set forth above are for

reimbursement and/or payment of response costs.

6. <u>Payment Instructions</u>

a. Any payments due the United States on behalf of EPA pursuant to Section VI (Settlement of Response Costs) shall be made in accordance with instructions provided to such Settling Defendant(s) by EPA or the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Central District of California.

b. At the time of each installment payment required by Paragraph 5, Settling Defendants shall send notice to DOJ and EPA that payment has been made in accordance with Section XVI (Notices and Submissions), and to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, or by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio  45268

Such notice shall reference the Site/Spill ID Number 09JW, and DOJ Case Number 90-11-2-09952.

c. The total amount to be paid to the United States on behalf of EPA pursuant to Section VI (Settlement of Response Costs) shall be used to conduct or finance response actions at or in connection with the Site, which may include transferring all or some of those payments to a disbursement special account associated with the Final Remedial Action, and/or shall be transferred by EPA to the EPA Hazardous Substance Superfund.

## VII.   ACCESS AND INSTITUTIONAL CONTROLS

7. Settling Defendants shall:

a. commencing on the date of lodging of this Consent Decree, and at no charge, provide the United States and its representatives (including EPA and

Consent Decree                                                                    10

its contractors), and any PRPs conducting response actions at the Site under EPA oversight (including, without limitation, the Settling Work Defendant in any other consent decree the United States on behalf of EPA has entered into or shall enter into the Consolidated Federal Action, as well as their agents and contractors), with access at all reasonable times, and, where feasible, with three (3) working days' notice, to the KTI Property for the purpose of conducting any response actions related to the Site including, but not limited to, the following activities:

(1)     Monitoring of investigation, removal, remedial, or other response actions at the Site;

(2)     Verifying any data or information submitted to the United States;

(3)     Conducting investigations relating to contamination at or near the Site;

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section IX (Access to Information);

(7)     Assessing Settling Defendants' compliance with this Consent Decree;

(8)   Determining whether the Site, the KTI Property, or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

(9)   (a)  Implementing removal or remedial actions as selected by EPA, including but not limited to capping of the KTI Property or Site, or any portion(s) thereof, and implementing, monitoring, maintaining, reporting on, and

enforcing any Institutional Controls; (b) installing, monitoring, and maintaining liquid, groundwater, soil gas and other wells or probes; and (c)installing, monitoring, and operating any monitoring and extraction system, including liquids and gas extraction systems.

b.      commencing on the date of lodging of this Consent Decree, refrain from using the KTI Property in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures implemented pursuant to the 2010 ROD.  Also commencing on the date of lodging of this Consent Decree, Settling Defendants shall provide EPA thirty (30) Days' notice if Settling Defendants intend to disturb subsurface soils or sediments six (6) or more inches below ground surface in the portions of the KTI Property identified in Appendix C.  If, in the future, EPA issues any removal or remedial decision document(s) related to the Site, Settling Defendants hereby agree to refrain from using the KTI Property, or any portion thereof specifically identified in any future removal or remedial decision, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of those future measures to be implemented at the Site.  Settling Defendants also hereby agree to implement any Institutional Control(s), including but not limited to land or water use restrictions, that may be selected by EPA for the Site or the KTI Property, or any portion(s) thereof, in any removal or remedial action affecting the KTI Property, or any portion(s) thereof.

c.      execute and record in the appropriate land records office Proprietary Controls that: (i) grant a right of access to conduct any activity regarding the Consent Decree and any future removal or remedial action concerning the Site including, but not limited to, those activities listed in Paragraph 7.a; and (ii) grant the right to enforce any land/water use restrictions required by Paragraph 7.b, including, but not limited to, any land/water use restrictions listed in

any future Institutional Control Implementation and Assurance Plan, as further specified in this Paragraph 7.c.  The Proprietary Controls shall be granted to one or more of the following persons, as determined by EPA: (i) the United States, on behalf of EPA, and its representatives; (ii) the State and its representatives; (iii) any Settling Work Defendant(s) in any other consent decree the United States on behalf of EPA has entered into or shall enter into in the Consolidated Federal Action and their representatives; and/or (iv) other appropriate grantees.  The Proprietary Controls, other than those granted to the United States, shall include a designation that EPA (and/or the State as appropriate) is a third-party beneficiary, allowing EPA to maintain the right to enforce the Proprietary Controls without acquiring an interest in real property.  If any Proprietary Controls are granted to Settling Defendants pursuant to this Paragraph 7.c, then such Settling Defendants shall monitor, maintain, report on, and enforce such Proprietary Controls.

8.     If EPA determines that Institutional Controls on the KTI Property, including, but not limited to, environmental restriction covenants under state or local laws, regulations, ordinances, or other governmental controls, are needed to implement any removal or remedial action selected by EPA, ensure the integrity and protectiveness thereof, ensure non-interference therewith, or otherwise protect public health or welfare and the environment, Settling Defendants shall cooperate with EPA's efforts to secure such Institutional Controls and/or governmental controls.

9.     Notwithstanding any provision of this Consent Decree, the United States retains all of its information gathering, inspection, and access authorities and rights, as well as all of its rights to require land use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

10.     Modification of the Land Use Restrictions

a.     If EPA determines that modifications or additions to the

land/water use restrictions are necessary to carry out and maintain the effectiveness of any removal or remedial action, EPA may require that such modifications or additions be incorporated in the land/water use restrictions, provided, however, that a modification or addition may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the removal or remedial action selected by EPA.

b.      If Settling Defendants object to any modification or addition determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XI (Dispute Resolution), Paragraph 23 (Record Review).  The land/water use restrictions shall be modified in accordance with final resolution of the dispute.

c.      Settling Defendants shall implement any land/water use restrictions required by any modifications or additions incorporated in the land/water use restrictions in accordance with this Paragraph.

d.      Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

## VIII.   NOTICE TO SUCCESSORS-IN-TITLE AND TRANSFERS OF REAL PROPERTY

11.      Settling Defendant shall, at least sixty (60) days prior to any Transfer of any real property located at the Site, give written notice: (1) to the transferee regarding the Consent Decree and any Institutional Controls regarding the real property; and (2) to EPA and the State regarding the proposed Transfer, including the name and address of the transferee and the date on which the transferee was notified of the Consent Decree and any Institutional Controls.

12.      Settling Defendants may Transfer any real property located at the Site only if: (1) any Proprietary Controls required by Paragraph 7.c have been recorded

with respect to the real property; or (2) Settling Defendants have obtained an agreement from the transferee, enforceable by Settling Defendants and the United States, to (i) allow access and restrict land/water use, consistent with Paragraphs 7.a and 7.b, (ii) record any Proprietary Controls on the real property, consistent with Paragraph 7.c, and (iii) subordinate its rights to any such Proprietary Controls, consistent with Paragraph 7.c, and EPA has approved the agreement in writing.  If, after a Transfer of the real property, the transferee fails to comply with the agreement provided for in this Paragraph 12, Settling Defendants shall take all reasonable steps to obtain the transferee's compliance with such agreement.  The United States may seek the transferee's compliance with the agreement and/or assist Settling Defendants in obtaining compliance with the agreement.  Settling Defendants shall reimburse the United States for all costs incurred, direct or indirect, by the United States regarding obtaining compliance with such agreement, including, but not limited to, the cost of attorney time.

13.    In the event of any Transfer of real property located at the Site, unless the United States otherwise consents in writing, Settling Defendants shall continue to comply with their obligations under the Consent Decree, including, but not limited to, their obligation to provide and/or secure access, to implement, maintain, monitor, and report on Institutional Controls, and to abide by such Institutional Controls.

## IX.    ACCESS TO INFORMATION

14.    Settling Defendants shall provide to EPA and the State, upon request, copies of all records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent

Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the KTI Property or the Site.  Settling Defendants shall also make available to EPA and the State, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the Site.

15.   Business Confidential and Privileged Documents

a.   Settling Defendants may assert business confidentiality claims covering part or all of the Records submitted to Plaintiffs under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Records determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies Records when they are submitted to EPA and the State, or if EPA has notified Settling Defendants that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Defendants.

b.   Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendants assert such a privilege in lieu of providing Records, they shall provide Plaintiffs with the following: (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation (*e.g.*, company or firm), and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege asserted by Settling Defendants.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only.  Settling Defendants shall retain all

Records that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendants' favor.

        c.      No Records created or generated pursuant to the requirements of this Consent Decree shall be withheld from the United States or the State on the grounds that they are privileged or confidential.

        16.     No claim of confidentiality or privilege shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## X.       RETENTION OF RECORDS

        17.     By signing this Consent Decree Settling Defendants hereby severally certify that they have as of February 29, 2012, produced in the Consolidated Federal Action all non-identical and non-privileged copies of records, reports, or information in their possession or control (if any) that relate in any manner to response actions taken at the B.F. Goodrich Superfund Site or the liability of any person under CERCLA with respect to the B.F. Goodrich Superfund Site.  Except for those documents that have been produced in the Consolidated Federal Action as described in the preceding sentence, each Settling Defendant shall preserve and retain all non-identical copies of records, reports, or information (hereinafter referred to as "Records") now in its possession or control, or that come into its possession or control, that relate in any manner to response actions taken at the B.F. Goodrich Superfund Site or the RABSP Site, or its or any other person's liability under CERCLA with respect to the B.F. Goodrich Superfund Site or RABSP Site, until ten (10) years after EPA's Certification of Completion of the Final Remedial Action.  Each Settling Defendant must also retain, and instruct its

contractors and agents to preserve, for the same period of time specified above, all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to the implementation of Institutional Controls, provided, however, that each Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the implementation of Institutional Controls, if any, that are not contained in the aforementioned Records required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

18. After the conclusion of the document retention period in the preceding Paragraph, each Settling Defendant shall notify EPA and DOJ at least ninety (90) days prior to the destruction of any such Records, and, upon request by EPA or DOJ, each Settling Defendant shall deliver any such Records to EPA. Each Settling Defendant may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If a Settling Defendant asserts such a privilege in lieu of providing Records, it shall provide Plaintiffs with the following: (a) the title of the Record; (b) the date of the Record; (c) the name, title, affiliation (*e.g.*, company or firm), and address of the author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege asserted. If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only. Such Settling Defendant shall retain all Records that it claims to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in such Settling Defendant's favor. However, no Records created or generated pursuant to the requirements of this Consent Decree

or any other settlement with EPA pertaining to the RABSP Site shall be withheld from the United States on the grounds that they are privileged or confidential.

19.     Each Settling Defendant certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since the earlier of notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA and State requests for information regarding the Site pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927, and state law.

## XI.     DISPUTE RESOLUTION

20.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes regarding this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Settling Defendants that have not been disputed in accordance with this Section.

21.     Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed twenty (20) days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

22.     Statements of Position

a.     In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within thirty (30) days after the conclusion of

the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by Settling Defendants.  The Statement of Position shall specify Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 23 (Record Review) or 24.

        b.     Within thirty (30) days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 23 (Record Review) or Paragraph 24. Within thirty (30) days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

        c.     If there is disagreement between EPA and Settling Defendants as to whether dispute resolution should proceed under Paragraph 23 (Record Review) or 24, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable.  However, if Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 23 and 24.

       23.    <u>Record Review</u>.  Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures

to implement plans, or any other items requiring approval by EPA under this Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree.  Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's provisions.

a.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.     The Director of the Superfund Division, EPA Region IX, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 23.a.  This decision shall be binding upon Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraphs 23.c and 23.d.

c.     Any administrative decision made by EPA pursuant to Paragraph 23.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Defendants with the Court and served on all Parties within ten (10) days after receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendants' motion.

d.     In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 23.a.

24.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.    Following receipt of Settling Defendants' Statement of Position submitted pursuant to Paragraph 22, the Director of the Superfund Division, EPA Region IX, will issue a final decision resolving the dispute.  The Superfund Division Director's decision shall be binding on Settling Defendants unless, within ten (10) days after receipt of the decision, Settling Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.  The United States may file a response to Settling Defendants' motion.

b.    Notwithstanding Paragraph C (CERCLA Section 113(j) Record Review of Response Actions) of Section I (Background), judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

25.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Settling Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 27.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree.  In the event that Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Paragraph 27 (Stipulated Penalties).

## XII.  FAILURE TO COMPLY WITH CONSENT DECREE OBLIGATIONS

26.    <u>Interest on Payments and Accelerated Payments</u>.  If Settling Defendants fail to make any payment required by Section VI (Settlement of Response Costs) by the required due date, Interest shall accrue on the unpaid balance owed by Settling Defendants from the date payment is due through the date of payment, and all remaining installment payments and all accrued Interest shall become due immediately upon such failure.  Interest and stipulated penalties shall continue to accrue on any unpaid amounts until the total amount due has been received.  However, if Settling Defendants cure a delinquency by making a late payment to EPA within thirty (30) days of the required due date, including all of the then-accrued Interest and stipulated penalties as provided for in Paragraph 27, below, then further stipulated penalties shall cease to run as of the date the late payment is received, and Settling Defendants may make future payments to EPA pursuant to the schedule provided in Section VI (Settlement of Response Costs), above.

27.    <u>Stipulated Penalties</u>

a.    If any amounts due the United States are not paid by their respective required date(s), Settling Defendants shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, in addition to the Interest required by Paragraph 26, five thousand dollars ($5,000) per violation per day to the United States for each day such payment is late.

b.    If Settling Defendants do not comply with the access and/or Institutional Controls provisions of Section VII, Settling Defendants shall be in violation of this Consent Decree and shall pay to the United States, as a stipulated penalty, five thousand dollars ($5,000) per violation per day of such noncompliance.

c.     Stipulated penalties are due and payable within thirty (30) days after the date of the demand for payment of the penalty or penalties.  All payments of stipulated penalties owed to the United States under this Paragraph shall be identified as "stipulated penalties" and shall be made in accordance with instructions provided to such Settling Defendant(s) by the United States.  Such payment shall reference Site/Spill ID Number 09JW, and DOJ Case Number 90-11-2-09952.  At the time of payment of a stipulated penalty for nonpayment to the United States as described in Paragraph 27.a, the non-paying or late-paying Settling Defendant(s) shall send notice to DOJ and EPA that payment has been made in accordance with Section XVI (Notices and Submissions).  Such notice shall reference Site/Spill ID Number 09JW, and DOJ Case Number 90-11-2-09952.

d.     Penalties shall accrue as provided in this Paragraph regardless of whether the United States has notified Settling Defendant(s) of the violation or made a demand for payment, but need only be paid upon demand.  All penalties shall begin to accrue on the day after payment is due and shall continue to accrue through the date of payment.  Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

28.     Payments made under this Section shall be in addition to any other remedies or sanctions available to the United States by virtue of Settling Defendants' failure to comply with the requirements of this Consent Decree.

29.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties due to the United States pursuant to this Consent Decree.  Payment of stipulated penalties shall not excuse Settling Defendants from payment as required by Section VI (Settlement of Response Costs) or from performance of any other

requirements of this Consent Decree.

## XIII.  COVENANTS AND RESERVATIONS OF RIGHTS BY PLAINTIFFS

30.    <u>Covenants by the United States on Behalf of EPA</u>.  Except as specifically provided in Paragraphs 31-34, the United States on behalf of EPA covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a) and Section 7003 of RCRA, 42 U.S.C. § 6973, relating to the B.F. Goodrich Superfund Site.  With respect to present and future response costs, these covenants shall take effect upon receipt by Plaintiffs of all amounts required by Paragraph 5 and any Interest or stipulated penalties due thereon under Section XII (Failure to Comply with Consent Decree Obligations).  These covenants are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree, including but not limited to, payment of all amounts due under Section VI (Settlement of Response Costs), and any Interest or stipulated penalties due thereon under Section XII (Failure to Comply with Consent Decree Obligations).  These covenants extend only to Settling Defendants and do not extend to any other person.

31.    <u>United States' Pre-certification Reservations</u>.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order, seeking to compel Settling Defendant(s):

1)    to perform further response actions relating to the B.F. Goodrich Superfund Site; or

2)    to reimburse the United States for additional costs of response if, prior to Certification of Completion of the Final Remedial Action for

the B.F. Goodrich Superfund Site:

       i.   conditions at the B.F. Goodrich Superfund Site, previously unknown to EPA, are discovered, or

       ii.   information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the B.F. Goodrich Superfund Site Final Remedial Action is not protective of human health or the environment.

   32.  <u>United States' Post-certification Reservations</u>.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order, seeking to compel Settling Defendant(s):

       1)  to perform further response actions relating to the B.F. Goodrich Superfund Site; or

       2)  to reimburse the United States for additional costs of response if, subsequent to Certification of Completion of the Final Remedial Action for the B.F. Goodrich Superfund Site:

       i.   conditions at the B.F. Goodrich Superfund Site, previously unknown to EPA, are discovered, or

       ii.   information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the B.F. Goodrich Superfund Site Final Remedial Action is not protective of human health or the environment.

33.     For purposes of Paragraph 31, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date the Final Record of Decision is signed and set forth in the Final Record of Decision and the administrative record supporting the Final Record of Decision.  For purposes of Paragraph 32, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Final Remedial Action and set forth in the Final Record of Decision, the administrative record supporting the Final Record of Decision, the post-Final Record of Decision administrative record, or in any information required to be submitted to EPA during the conduct of the remedial design and remedial action, prior to the Certification of Completion of the Final Remedial Action.

34.     General Reservations of Rights.  The United States on behalf of EPA and the federal natural resource trustee reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within the Covenants by the United States in Paragraph 30.  Notwithstanding any other provision of this Consent Decree, the United States on behalf of EPA and the federal natural resource trustee reserves all rights against Settling Defendants with respect to:

a.      claims based on a failure by Settling Defendants to meet their requirements under this Consent Decree;

b.      liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the B.F. Goodrich Superfund Site;

c.      liability based on the ownership or operation of any portion of the B.F. Goodrich Superfund Site by Settling Defendants when such ownership or operation commences after signature of this Consent Decree and does not arise

solely out of performance of the Work;

        d.     liability based on Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the B.F. Goodrich Superfund Site, other than as provided in the 2010 ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree;

        e.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

        f.     criminal liability;

        g.     liability for violations of federal or state law which occur during or after implementation of the Work.

## XIV.  COVENANTS AND RESERVATIONS OF RIGHTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL AGENCIES

35.     Except as provided in Paragraph 36, Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States on behalf of EPA, or its contractors or employees, with respect to the B.F. Goodrich Superfund Site and this Consent Decree, including, but not limited to:

        a.     any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113, or any other provision of law;

        b.     any claims against the United States, including any department, agency, or instrumentality of the United States under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding, the B.F. Goodrich Superfund Site, response actions at the Site, response costs incurred at the Site, and this Consent Decree;

c.    any claims arising out of response actions at or in connection with the B.F. Goodrich Superfund Site relating to the United States, including any claim under the United States Constitution, the California Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law;

d.    any claim, whether express or deemed by court order, in the Consolidated Federal Action; and

e.    any direct or indirect claim for disbursement from the B.F. Goodrich Superfund Site Special Account.

36.    These covenants and releases shall not apply to the United States in the event the United States brings a cause of action or issues an order pursuant to any of the reservations set forth in Paragraphs 31-34, other than in Paragraph 34.a (liability for failure to meet a requirement of the Consent Decree) or 34.f (criminal liability), but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

37.    Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. §300.700(d).

38.    Except as provided in Paragraph 40, each of the Settling Defendants releases and covenants not to sue or take administrative action against any of the Settling Federal Agencies, and each of the Settling Federal Agencies releases and covenants not to sue or take administrative action against any of the Settling Defendants, pursuant to Sections 107(a) or 113 of CERCLA, 42 U.S.C. §§ 9607(a) and 9613, Section 7002 of RCRA, 42 U.S.C. § 6972, or any other state or federal statute or state or federal common law with respect to all claims of any kind,

known and unknown, in connection with the alleged release or threatened release of any of the Basin Contaminants at, on, or under the RABSP Site.  With respect to present and future liability, these covenants and releases shall take effect upon receipt by Plaintiffs of all payment amounts required by Paragraph 5 and any Interest or stipulated penalties due thereon under Section XII (Failure to Comply with Consent Decree Obligations).

39.     In releasing all unknown claims, each of the Settling Defendants and the Settling Federal Agencies waives the provisions of Section 1542 of the California Civil Code which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

40.     Each of the Settling Defendants and Settling Federal Agencies reserves, and this Consent Decree is without prejudice to, all rights against the Settling Defendants and Settling Federal Agencies with respect to:

a.     liability of the breaching Party for its failure to meet a requirement of this Consent Decree;

b.     liability based on the ownership or operation of any portion of the RABSP Site when such ownership or operation commences after lodging of this Consent Decree and there is a new release of a Waste Material on or related to such property;

c.     liability based on transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of a Waste Material at or in connection with the RABSP Site, after lodging of this Consent Decree;

d.      liability arising from the past, present, or future disposal, release, or threat of release of a Waste Material outside of the RABSP Site;

e.      liability arising from the release, threat of release, or disposal of a Waste Material either within or outside of the RABSP Site, where such release, threat of release, or disposal occurs after the lodging of this Consent Decree;

f.      liability arising from past, present, or future releases or threatened releases at the RABSP Site, where the Waste Material at issue is not a Basin Contaminant;

g.      liability related to bodily injury; and

h.      claims for contribution whether based on federal or state statutes or common law arising out of: (1) claims in *City of Riverside v. Black & Decker (U.S.), Inc.*, et al., Case No. BC410878; (2) claims asserted by any person or entity that was not a party to the Consolidated Federal Action on August 24, 2012; or, (3) claims for natural resource damages.

For purposes of subparagraphs b., c., and e. of this Paragraph, migration of existing Waste Material is not a new release or disposal of Waste Material into soil, groundwater, or atmosphere.

41.      <u>Further Settlors</u>.  Settling Defendants agree that in the event that: (a) the United States, on behalf of EPA, reaches or has reached settlement with any other party to the Consolidated Federal Action who is not a signatory to this Consent Decree ("Further Settlor"); and (b) the United States, on behalf of EPA, gives notice in accordance with Section XVI (Notices and Submissions) to Settling Defendants that such party has become a Further Settlor; then upon Court approval of that Further Settlor's settlement, Settling Defendants commit that they shall extend to any such Further Settlor identical releases and covenants not to sue and waiver to those set forth in Paragraphs 38 and 39, without further monetary

consideration for such covenants and waiver, subject to the reservations of rights in Paragraph 40, and in exchange for mutual releases of claims and appeals by that Further Settlor against Settling Defendants substantially similar to the releases and covenants not to sue and waiver set forth in Paragraphs 38 and 39.  The commitments of Settling Defendants to provide such covenants not to sue, subject to the reservation of rights, in the foregoing sentence shall not take effect as to any Future Settlor unless and until the settlement with such Future Settlor becomes a final judgment following any appeal.  The United States, on behalf of EPA, has sole discretion to determine whether a party is to be deemed a "Further Settlor" for purposes of this Paragraph.

42.   <u>Claims Against Other Parties in the Consolidated Federal Action</u>. Settling Defendants agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) or any other federal or state law that they may have for response costs relating to the B.F. Goodrich Superfund Site and/or the West Side Site against each other or any other person who is or was a party in the Consolidated Federal Action.  This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the B.F. Goodrich Superfund Site and/or the West Side Site against such Settling Defendant.

43.   <u>Settling Defendants' Agreement Regarding Recovery Under Federal Contracts</u>.  Each Settling Defendant hereby agrees that it shall not in the future seek or receive any portion of any amount it has agreed to pay in this Consent Decree, through any Federal Contract.  Pursuant to this Paragraph, each Settling Defendant expressly acknowledges that it is prohibited from including any portion of the payments made pursuant to this Consent Decree as either direct or indirect

costs, or otherwise, in any invoice, claim, or demand associated with any Federal Contract.

## XV.        EFFECT OF SETTLEMENT/CONTRIBUTION

44.    Except as provided in Paragraph 42, nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  Except as provided in Section XIV (Covenants and Reservations of Rights by Settling Defendants and Settling Federal Agencies), each of the Parties expressly reserves any and all rights (including, but not limited to, under Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action which it may have with respect to any matter, transaction, or occurrence relating in any way to the RABSP Site against any person not a Party hereto.  Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

45.    The Parties agree, and by entering this Consent Decree this Court finds, that this settlement constitutes a judicially approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that Settling Defendants are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for "matters addressed" in this Consent Decree.  The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred at or in connection with the B.F. Goodrich Superfund Site or the West Side Site by the United States or any other person; provided, however, that if the United States on behalf of EPA

exercises any of the reservations in Section XIII (Covenants and Reservations of Rights by Plaintiffs), other than in Paragraphs 34.a (liability for failure to meet a requirement of Consent Decree) or 34.f (criminal liability), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation.  Nothing in this Paragraph shall limit or affect the ability of any Settling Defendant and/or Settling Federal Agency to exercise their reservations of rights as to each other in Paragraph 40.

46.    The Parties further agree, and by entering this Consent Decree this Court further finds, that the payments and obligations provided for in this Consent Decree represent a good faith compromise of disputed claims and that the compromise represents a fair, reasonable, and equitable resolution.  With regard to any claims for costs, damages, or other claims against the Parties, the Parties agree and this Court finds that Settling Defendants are entitled to contribution protection pursuant to the California Code of Civil Procedure §§ 877 and 877.6, and any other applicable provision of federal or state law, whether by statute or common law.

47.    The Parties intend the broadest possible protection from contribution actions provided by law for "matters addressed" in this Consent Decree.

48.    Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree after the date the Consent Decree is lodged with the Court, notify EPA and DOJ in writing no later than sixty (60) days prior to the initiation of such suit or claim.  Each Settling Defendant also shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify EPA and DOJ in writing within ten (10) days after service of the complaint or claim upon it.  In addition, each Settling Defendant shall notify EPA and DOJ within ten (10) days after service or receipt of any motion for

summary judgment, and within ten (10) days after receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

49.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the B.F. Goodrich Superfund Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Sections XIII and XIV (Covenants and Reservations of Rights).

## XVI.     NOTICES AND SUBMISSIONS

50.     Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, and each Settling Defendant, respectively.

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Re:  DJ # 90-11-2-09952

-and-

Chief, Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Re:  DJ # 90-11-6-17144/1

As to EPA:

Remedial Project Manager, B.F. Goodrich Site
Wayne Praskins
United States Environmental Protection Agency
Region 9
75 Hawthorne St.
San Francisco, CA  94105

As to Ken Thompson, Inc.; KTI, Incorporated; Pipeline Carriers, Inc.; and Rialto Concrete Products, Inc:

Ralph Delorea
KTI, Incorporated
3011 N. Laurel Ave.
Rialto, CA  92377
Telephone: (909) 434-1888
Email: rdeloera@ktipipe.com

-and-

Keith A. Kelly, Esq.
Law Offices of Keith A. Kelly
7095 Indiana Ave., Ste. 200
Riverside, CA  92506
Telephone: (951) 684-7066
Email: keith.kelly@kakellylaw.com

## XVII.        RETENTION OF JURISDICTION

51.    This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVIII.        INTEGRATION/APPENDICES

52.    This Consent Decree and its appendices constitute the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.  The following

appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the map of the RABSP, including the 160-Acre Area, the Stonehurst Property, and the County Property.

"Appendix B" includes the legal descriptions and assessor's map of the parcels comprising the KTI Property.

"Appendix C" is a map depicting the portions of the KTI Property for which EPA will require thirty (30) Days' notice from Settling Defendants if Settling Defendants intend to disturb the subsurface soils or sediments six (6) or more inches below ground surface.

## XXIV.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

53.   This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate.  Settling Defendants consent to the entry of this Consent Decree without further notice.

54.   If for any reason this Court's entry of the Consent Decree is reversed on appeal, in whole or material part, this Consent Decree is voidable at the sole discretion of any Party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XX.      FINAL JUDGMENT

55.   The United States and Settling Defendants agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

56.     The Court finds that there is no just reason for delay of entry of this Consent Decree, and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 2nd DAY OF ___July___, 2013.

_____

HONORABLE PHILIP S. GUTIERREZ
United States District Judge

1 | FOR THE UNITED STATES OF AMERICA:

2

3

4 | Dated: _3/22/13_     By _[signature]_

5 | IGNACIA S. MORENO

6 | Assistant Attorney General
Environment and Natural Resources

7 | Division
United States Department of Justice

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Consent Decree                                        39

FOR THE UNITED STATES OF AMERICA:

Dated: March 26, 2013          By: _____

DEBORAH A. GITIN
Senior Counsel
United States Department of Justice
Environment and Natural Resources
   Division
Environmental Enforcement Section
301 Howard St., Suite 1050
San Francisco, CA 94105

1   FOR THE UNITED STATES OF AMERICA:

2

3

4   Dated: _3/25/13_      By: _____

5                         MARK A. RIGAU

6                         Senior Trial Counsel

                        United States Department of Justice

7                         Environmental and Natural Resources

8                          Division

                        Environmental Defense Section

9                         301 Howard St., Suite 1050

10                       San Francisco, CA 94105

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Consent Decree                                                         40a

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


Dated: _3/22/2013_          By: _____
                                JANE DIAMOND
                                Director, Superfund Division, Region IX
                                U.S. Environmental Protection Agency
                                75 Hawthorne St.
                                San Francisco, California  94105



Dated: _March 8, 2013_       By: _____
                                THOMAS B. BUTLER
                                Assistant Regional Counsel
                                U.S. Environmental Protection Agency
                                Region IX
                                75 Hawthorne St.
                                San Francisco, California  94105


Consent Decree                                              41

FOR KEN THOMPSON, INC.; KTI, INCORPORATED; PIPELINE CARRIERS, INC.; AND RIALTO CONCRETE PRODUCTS:

Dated: 2/5/13                By: _____
                                 RALPH DELOERA
                                 Chief Financial Officer
                                 KTI, Incorporated
                                 3011 N. Laurel Ave.
                                 Rialto, CA  92377

CONSENT DECREE

42

# Appendix A



LEGEND

▪▪▪▪▪▪▪▪ **West Side Area**

▬ ▬ ▬ **Rialto Ammunition Backup Storage Point ("RABSP")**

**NOT TO SCALE**

# Appendix B

**APN 0239-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**

*Legal Description*
The following real property in the City of Rialto, San Bernardino County, State of California, described as:
Parcel 12 of the Parcel Map No. 7173, City of Rialto, County of San Bernardino, State of California, as per map recorded in Book 77, Page(s) 64 to 68 of Maps, in the office of the County Recorder of said County.

**APN 0239-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**

*Legal Description*
The following real property in the City of Rialto, San Bernardino County, State of California, described as:
Parcel 6 of the Parcel Map No. 7173, City of Rialto, County of San Bernardino, State of California, as per map recorded in Book 77, Page(s) 64 to 68 of Maps, in the office of the County Recorder of said County.

**APN 0239-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**

*Legal Description*
The following real property in the City of Rialto, San Bernardino County, State of California, described as:
Parcel 11 of the Parcel Map No. 7173, City of Rialto, County of San Bernardino, State of California, as per map recorded in Book 77, Page(s) 64 to 68 of Maps, in the office of the County Recorder of  said County, TOGETHER WITH the Westerly 136.00 feet of Parcel 10 of Parcel Map 7173.

**APN 0239-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**

*Legal Description*
The following real property in the City of Rialto, San Bernardino County, State of California, described as:
Parcel 10 of the Parcel Map No. 7173, City of Rialto, County of San Bernardino, State of California, as per map recorded in Book 77, Page(s) 64 to 68 of Maps, in the office of the County Recorder of said County, EXCEPTING THEREFROM the Westerly 136.00 feet thereof.

**APN 0239-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**

*Legal Description*
The following real property in the City of Rialto, San Bernardino County, State of California, described as:
Parcel 8 of the Parcel Map No. 7173, City of Rialto, County of San Bernardino, State of California, as per map recorded in Book 77, Page(s) 64 to 68 of Maps, in the office of the County Recorder of said County.

# Ptn. S.1/2 Sec.21 T.1N.,R.5W., S.B.B.&M.

City of Rialto
Tax Rate Area
6015 6113

0239-19



1"=400'



Ptn. Parcel Map No. 7173, P.M. 77/64-68
Ptn. Parcel Map No. 7064, P.M. 68/22
Ptn. Parcel Map No. 6918, P.M. 66/36
Ptn. Parcel Map No. 1139, P.M. 9/66

Parcel Map No. 16339, P.M. 201/70-71
Ptn. Parcel Map No. 11723, P.M. 139/40
Parcel Map No. 9230, P.M. 99/58-60

December 2003

Assessor's Map
Book 0239 Page 19
San Bernardino County

47

REVISED
06/12/12 BK-MC

# Appendix C

Appendix C to the Consent Decree by and between the United States and Ken Thompson, Inc., et al.



Aerial image © Google Earth, 2013. Annotation by CH2M HILL, 2013.



North

| 0 | 300 | 600 |

Approximate scale in feet

Areas where Settling Defendants should provide EPA notice if they intend to disturb subsurface soils.

ES022113223559SCO385219.DE.01   BFG_Historic_disposal_sites.ai  2/13

CH2MHILL.