1  ROBERT G. DREHER
2  Acting Assistant Attorney General
3  Environment and Natural Resources Division          E-FILED 04/04/14
   United States Department of Justice
4  BRADLEY R. O'BRIEN (CA State Bar #189425)  LINK #1855
   Environmental Enforcement Section     Term motion #1865(04/21 hrg off)
5  Environment and Natural Resources Division
   United States Department of Justice
6  301 Howard Street, Suite 1050
7  San Francisco, California  94105
   Telephone:  (415) 744-6484
8  Facsimile:   (415) 744-6476
9  brad.obrien@usdoj.gov

10
11 Attorneys for Plaintiff, UNITED STATES OF AMERICA

12
13                    UNITED STATES DISTRICT COURT
14      CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

15
16 CITY OF COLTON, a California          CASE NO. ED CV 09-01864 PSG (SSx)
   municipal corporation,
17                                       [Consolidated with Case Nos. CV 09-
                                         6630 PSG (SSx), CV 09-06632 PSG
18              Plaintiff,               (SSx), CV 09-07501 PSG (SSx), CV 09-
                                         07508 PSG (SSx), CV 10-824 PSG
19      v.                               (SSx) and CV 05-01479 PSG (SSx)]

20 AMERICAN PROMOTIONAL               **CONSENT DECREE**
21 EVENTS, INC., et al.,

22              Defendants.

23
24 AND CONSOLIDATED ACTIONS

25
26
27
28

HESCOX CONSENT DECREE

1
2

# TABLE OF CONTENTS

3  I.       BACKGROUND ........................................................................... 1
4  II.      JURISDICTION .......................................................................... 6
5  III.     PARTIES BOUND ...................................................................... 6
6  IV.      DEFINITIONS ............................................................................ 6
7  V.       STATEMENT OF PURPOSE ................................................... 14
8  VI.      SETTLEMENT OF RESPONSE COSTS ............................... 14
9  VII.     FAILURE TO COMPLY WITH PAYMENT OBLIGATIONS ............. 16
10 VIII.    COVENANTS BY UNITED STATES AND LOCAL
11         GOVERNMENT ENTITIES ................................................... 18
12 IX.      RESERVATION OF RIGHTS BY UNITED STATES AND
13         LOCAL GOVERNMENT ENTITIES .................................... 22
14 X.       COVENANTS BY SETTLING DEFENDANTAND RESERVATION
15         OF RIGHTS BY SETTLING DEFENDANT AND SETTLING
16         FEDERAL AGENCIES ........................................................... 26
17 XI.      EFFECT OF SETTLEMENT/CONTRIBUTION ..................... 35
18 XII.     ACCESS ...................................................................................... 38
19 XIII.    RECORD RETENTION AND CERTIFICATION ................... 39
20 XIV.     NOTICES AND SUBMISSIONS ............................................. 42
21 XV.      RETENTION OF JURISDICTION .......................................... 44
22 XVI.     INTEGRATION/APPENDICES ............................................... 44
23 XVII.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT .......... 45
24 XVIII.   TERMINATION ......................................................................... 46
25 XIX.     FINAL JUDGMENT ................................................................. 46

26
27
28

# I.   BACKGROUND

A.     The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed, on February 4, 2010, a complaint (Case No. CV 10-0824 PSG (SSx)) pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607 and Section 7003 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6973, seeking injunctive relief and reimbursement of response costs incurred by EPA and the United States Department of Justice for response actions at the B.F. Goodrich Superfund Site in Rialto, California.

B.     The Local Government Entities (as defined in Section IV (Definitions)) filed complaints in this matter pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, and/or state law seeking injunctive relief, declaratory relief, reimbursement of response costs and other damages.  Rialto also filed claims pursuant to Section 7002 of RCRA, 42 U.S.C. § 6972, against certain parties.

C.     The United States' complaint, this Consent Decree, and the history of the B.F. Goodrich Superfund Site, exist within a larger context of litigation and a larger context of activities in and around the B.F. Goodrich Superfund Site, as follows:

(1)     During and immediately after World War II, certain United States agencies owned a tract known as the RABSP in San Bernardino County, California;

(2)     The RABSP sits atop the Rialto-Colton Groundwater Basin ("Rialto Basin");

(3)     After World War II, the United States agencies sold the RABSP property off in different parcels, including a 160 acre parcel ("160-Acre Area") bounded by Casa Grande Park Avenue on the north, Locust Avenue on the east, an extension of Alder Avenue on the west, and an extension of Summit Avenue on the south.  Other parties to the Consolidated Federal Action owned and/or operated businesses within the area formerly occupied by the RABSP;

(4)     The United States on behalf of EPA, asserts that there are two source areas within the area formerly occupied by the RABSP (the "RABSP Area") from which contaminated groundwater is emanating.  These two source areas are known as the West Side Area and the 160-Acre Area;

(5)     The West Side Area is in the western portion of the former RABSP Area.  For purposes of this Consent Decree, it consists of property currently owned by San Bernardino County, otherwise known as the Mid Valley Sanitary Landfill ("County Property"), and the Stonehurst Property, which is located adjacent to the County Property;

(6)     The State of California's Water Resources Control Board and its Santa Ana Regional Water Quality Control Board have assumed jurisdiction over, among other things, the cleanup of the County Property and the Stonehurst Property, and San Bernardino County has assumed responsibility for implementing cleanup of releases from the County Property pursuant to a Cleanup and Abatement Order, Regional Water Quality Control Board Order No. R8-2003-0013, as amended by R8-2004-0072;

(7)     Certain claims in the Consolidated Federal Action are the subject of consent decrees lodged in the Central District of California under case number ED CV 09-1864 (SSx); and

(8)     The 160-Acre Area is in the eastern portion of the former RABSP and is the source area encompassed in the Rockets, Fireworks, and Flares Superfund Site.

D.     In response to a release or a substantial threat of a release of a hazardous substance(s) at or from the B. F. Goodrich Superfund Site, EPA commenced on January 15, 2009, a Remedial Investigation ("RI") and Feasibility Study ("FS") for the B.F. Goodrich Superfund Site pursuant to 40 C.F.R. § 300.430.  In 2013, EPA proposed a rulemaking that would change the name of the B.F. Goodrich Superfund Site.  *See* Proposed Rule No. 58, Docket ID No. EPA-HQ-SFUND-2008-0574.  Because this rule making has not been completed,

solely for purposes of this Consent Decree, the Parties will identify this site as the Rockets, Fireworks, and Flares Superfund Site.

E.    Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Rockets, Fireworks, and Flares Superfund Site on the National Priorities List, set forth at 40 C.F.R. Part 300, by publication in the Federal Register on September 23, 2009, 74 Fed. Reg. 48412.  By placing the Rockets, Fireworks, and Flares Superfund Site on the National Priorities List, U.S. EPA assumed jurisdiction over its cleanup.

F.    In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the U.S. Fish and Wildlife Service and the California Department of Fish and Game on November 15, 2010, of negotiations with PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustees to participate in the negotiation of this Consent Decree.

G.    Defendant the Estate of Hescox ("Hescox" or "Settling Defendant") is a named as defendant in one or more of the complaints referenced in the foregoing paragraphs.  Settling Defendant does not admit, and specifically denies:  (1) any liability arising out of the transactions or occurrences alleged in the claims or deemed by the Court in the Consolidated Federal Action; and (2) that the release or threatened release of Waste Material at or from the Rockets, Fireworks, and Flares

Superfund Site or the RABSP (as defined in Section IV (Definitions)) constitutes, contributed to or caused an imminent or substantial endangerment to the public health or welfare or the environment.  The Local Government Entities and the Settling Federal Agencies also do not admit, and specifically deny, any liability arising out of the transactions or occurrences alleged in the claims or deemed by the Court in the Consolidated Federal Action.

H.    The United States has requested and reviewed financial information and insurance information from Hescox to determine whether it is financially able to pay response costs incurred and to be incurred in connection with the Rockets, Fireworks, and Flares Superfund Site.  Based upon such financial information and insurance information, the United States has determined that Hescox's payment specified in Section VI (Settlement of Response Costs) of this Consent Decree is a fair and reasonable resolution of this claim and is in the public interest.

I.    The Parties recognize and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that implementation of this Consent Decree will expedite the cleanup of the Rockets, Fireworks, and Flares Superfund Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED:

HESCOX CONSENT DECREE

## II.    JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345; 42 U.S.C. §§ 6973(a), 9607, and 9613(b); and also has personal jurisdiction over Settling Defendant.  Solely for the purposes of this Consent Decree and the underlying complaints, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District.  Settling Defendant shall not challenge entry or the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.    PARTIES BOUND

2.      This Consent Decree is binding upon the United States, the Local Government Entities, and upon Settling Defendant and its heirs, successors and assigns.  Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendant under this Consent Decree.

## IV.    DEFINITIONS

3.      Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent

Decree or in any appendix attached hereto, the following definitions shall apply:

"160-Acre Area" shall mean the area located in San Bernardino County that is bounded by West Casa Grande Drive on the north, Locust Avenue on the east, Alder Avenue on the west, and an extension of Summit Avenue on the south.  The 160-Acre Area is depicted generally on the map included in Appendix A.

"2010 Record of Decision" or "2010 ROD" shall mean the document entitled "USEPA Superfund Interim Action Record of Decision" relating to the Source Area Operable Unit, Rockets, Fireworks, and Flares Superfund Site, San Bernardino County, California, EPA ID:  CAN000905945, dated September 30, 2010, signed by the Assistant Director, Superfund Division, EPA Region 9, and all attachments thereto.

"2010 ROD Response Costs" shall mean:  (1) all costs, including but not limited to, direct and indirect costs, in connection with the Rockets, Fireworks, and Flares Superfund Site that the United States incurred before the signing of the 2010 Record of Decision;  (2) all costs, including but not limited to direct and indirect costs that the United States incurred or will incur after the 2010 Record of Decision to perform or oversee the work required to implement the 2010 Record of Decision; and (3) costs that were otherwise identified and sought by the United States in the Consolidated Federal Action.

"Basin Contaminants" shall mean any type of perchlorate; trichloroethylene

("TCE"); carbon tetrachloride; chloroform; or methylene chloride; including any breakdown or "daughter" products of the foregoing.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"Colton" shall mean the City of Colton and any of its present, former, or future subdivisions, departments, commissions, agencies, or instrumentalities.

"Consent Decree" or "Decree" shall mean this Consent Decree and all Appendices attached hereto listed in Section XVI (Integration/Appendices).  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Consolidated Federal Action" shall mean *City of Colton v. American Promotional Events, Inc., et al.*, Case No. ED CV 09-01864 PSG (SSx); *Goodrich Corporation v. Chung Ming Wong, et al.*, Case No. CV 09-6630 PSG (SSx); *County of San Bernardino, et al., v. Tung Chun Co., et al*., Case No. CV 09-06632 PSG (SSx*); City of Rialto and Rialto Utility Authority v. United States Department of Defense, et al*., Case No. CV 09-7501 PSG (SSx); and *Emhart Industries, Inc. v. American Promotional Events, Inc.-West, et al.*, Case No. CV 09-07508 PSG (SSx), all of which were consolidated pursuant to an order issued on January 20, 2010; *United States of America v. Goodrich Corporation, et al*., Case No. 10-00824 PSG (SSx), which was consolidated with the previously consolidated cases

pursuant to an order issued on June 3, 2010; *and City of Colton v. American Promotional Events, Inc., et al*., Case No. ED CV 05-01479 PSG (SSx), which was consolidated with the previously consolidated cases pursuant to an order issued on March 24, 2011.

"County" shall mean the County of San Bernardino and any of its present, former, or future subdivisions, departments, commissions, agencies, or instrumentalities.

"County Property" shall mean the property known as the Mid Valley Sanitary Landfill, which is currently owned by the County of San Bernardino, including those areas currently leased to Robertson's Ready Mix.  The County Property is bounded by Summit Avenue on the north, generally by Alder Avenue on the east, (until Alder Avenue terminates at or within the Robertson's Ready Mix leasehold), generally by the municipal boundaries of the Cities of Fontana and Rialto on the west except for a strip of land located in the City of Fontana, and by Casmalia Street on the south.  The County Property is depicted generally on the map included in Appendix A.

"Day" or "day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or state holiday, the period shall run until the close of business of the next working day.

HESCOX CONSENT DECREE

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall be the earlier of the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Federal Contract" means any prime contract, subcontract, or any other agreement transferring value between a party to this Consent Decree and a department, agency, or instrumentality of the United States, including but not limited to, contracts for goods or services, grants, and cooperative agreements. The term "Federal Contract" does not include this Consent Decree.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each

year.

"Local Government Entities" or "LGEs" shall mean the County, Rialto, and Colton, which includes their past and current officers and employees acting in the course and scope of their employment.

"OU2/OU3 Consent Decree" shall mean the Consent Decree involving the United States, Goodrich Corporation, and United Technologies Corporation that was lodged on March 26, 2013.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States and the Settling Defendant.

"Plaintiff" shall mean the United States, on behalf of EPA, and the Local Government Entities.

"Pyrotronics" shall mean Pyrotronics Corporation (State of California, Secretary of State Corporate No. C0540302), and includes past and current officers, directors, and employees acting in the course and scope of their employment.

"RABSP" shall mean the parcel of land originally containing the former Rialto Ammunition Backup Storage Point, located in San Bernardino County, California.  The 160-Acre Area is within the geographic area of the RABSP.  The RABSP is depicted generally on the map included in Appendix A.

"RABSP Area" shall mean the approximately 2,800 acre parcel of land originally containing the former Rialto Ammunition Backup Storage Point, located in San Bernardino County, California.  The 160-Acre Area is within the geographic area of the RABSP Area.  The RABSP Area is depicted, generally, in the map identified in Appendix A.

"RABSP Site" shall mean the RABSP and all areas where contamination from the RABSP otherwise comes to be located.

"Resource Conservation and Recovery Act" or "RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901, *et seq.*

"Rialto" shall mean the City of Rialto and any of its present, former, or future subdivisions, departments, commissions, agencies, or instrumentalities, including, but not limited to, the Rialto Utility Authority and the Rialto Redevelopment Agency.

"Rockets, Fireworks, and Flares Superfund Site" also heretofore known as the B.F. Goodrich Superfund Site, shall mean the 160-Acre Area and all areas where Basin Contaminants or other contaminants of concern that are identified in the OU2/OU3 ROD that originated from the 160-Acre Area come to be located.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" shall mean the Estate of Hescox.

"Settling Federal Agencies" shall mean any federal agency, department, or instrumentality named or alleged to be liable for contamination in the Consolidated Federal Action, including but not limited to the United States Department of the Army and United States Army Corps of Engineers, the United States Department of the Navy, the United States Department of the Air Force, the United States Department of Defense, the Farm Credit Administration, the United States Customs and Border Protection, the National Guard Bureau, the National Aeronautics and Space Administration, the United States Department of Energy, Lawrence Livermore National Laboratory, the United States Forest Service, and any other federal entity that is alleged to have transported, disposed of, or released any Waste Material within the area encompassed by the RABSP Area, as depicted in Appendix A, and any of their predecessors or successors.

"State" shall mean the State of California.

"Stonehurst Property" shall mean the approximate 5-acre property in the County of San Bernardino, County APNs 1133-07-105, 1133-07-106, and 1133-07-107, collectively, located at 2298 West Stonehurst Drive, Rialto, California. The Stonehurst Property is depicted generally on the map included in Appendix A.

"Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

HESCOX CONSENT DECREE

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA and the Settling Federal Agencies.

"Waste Material" shall mean (a) any hazardous substance under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (b) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (c) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (d) any "hazardous material" under all applicable or relevant and appropriate State statutory authority.

"West Side Area" shall mean the County Property and the Stonehurst Property.  The West Side Area is depicted generally on the map included in Appendix A.

"West Side Site" shall mean the West Side Area and all areas where perchlorate and TCE contamination from the West Side Area comes to be located.

## V.    STATEMENT OF PURPOSE

4.    By entering into this Consent Decree, the mutual objectives of the Parties are to avoid difficult and prolonged litigation and resolve claims as set forth herein.

## VI.    SETTLEMENT OF RESPONSE COSTS

5.    <u>Payment</u>.  The Settling Defendant shall pay a total of eleven million dollars ($11,000,000) in settlement of response costs pursuant to this Consent

Decree.

6.    <u>Escrow for Payment</u>.  No later than twenty (20) business days after Settling Defendant receives notice that this Consent Decree has been lodged with the Court, Settling Defendant or its insurers shall deposit Settling Defendant's payment  into an interest-bearing escrow account at a bank that is insured by the Federal Deposit Insurance Corporation.  Within thirty (30) days after the Effective Date, the funds placed in the Escrow Account together with interest thereon, shall be disbursed as described in Paragraph 7.

7.    <u>Payment Instructions</u>.  The payment to be paid by Settling Defendant pursuant to this Consent Decree shall be paid as follows:  In the event the OU2/OU3 Consent Decree is entered by the Court:  (a) twenty-five percent (25%) of such payment shall be deposited into the OU2/OU3 Disbursement Special Account as set forth in the OU2/OU3 Consent Decree; (b) fifty percent (50%) of such payment shall be deposited to the OU2/OU3 Locust Avenue Superfund Site Special Account as set forth in the OU2/OU3 Consent Decree; and (c) twenty-five percent (25%) shall be paid directly to the Goodrich Corporation to be used as funding for the work required by the OU2/OU3 Consent Decree.  In the event the OU2/OU3 Consent Decree is not entered by the Court, one hundred percent (100%) of such payment shall be deposited to the OU2/OU3 Locust Avenue Superfund Site Special Account.  Any payment due EPA pursuant to Section VI

(Settlement of Response Costs) shall be made in accordance with instructions provided to Settling Defendant by EPA or the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Central District of California.

     a.    At the time of payment required by this Paragraph, Settling Defendant shall send notice to DOJ and EPA that the payment has been made in accordance with Section XIV (Notices and Submissions), and to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, or by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

Such notice shall reference the Site/Spill ID Number 09JW, and DOJ Case Number 90-11-2-09952.

     b.    The total amount to be paid to the EPA OU2/OU3 Locust Avenue Superfund Site Special Account pursuant to Section VI (Settlement of Response Costs) shall be retained and used to conduct or finance response actions at or in connection with the Rockets, Fireworks, and Flares Superfund Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

## VII.   FAILURE TO COMPLY WITH PAYMENT OBLIGATIONS

     8.    <u>Interest on Payment</u>.  If Settling Defendant fails to make its payment required by Section VI (Settlement of Response Costs) by the required due date,

Interest shall accrue on the unpaid balance owed by Settling Defendant from the date payment is due through the date of payment.  Interest shall continue to accrue on any unpaid amounts until the total amount due has been received.

9.      Stipulated Penalty.  If any amounts due the United States are not paid by its required date, Settling Defendant shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, in addition to the Interest required by Paragraph 8, five thousand dollars ($5,000) per violation per day each day such payment is late.  Stipulated penalties are due and payable within thirty (30) days after the date of the demand for payment of the penalty or penalties.

10.     All payments of stipulated penalties owed to the United States under Paragraph 9 shall be identified as "stipulated penalties" and shall be made in accordance with instructions provided to Settling Defendant by the United States. Such payment shall reference Site/Spill ID Number 09JW, and DOJ Case Number 90-11-2-09952.

11.     At the time of payment of a stipulated penalty to the United States, Settling Defendant shall send notice to DOJ and EPA that payment has been made in accordance with Section XIV (Notices and Submissions).  Such notice shall reference Site/Spill ID Number 09JW, and DOJ Case Number 90-11-2-09952.

12.     Penalties shall accrue as provided in this Paragraph regardless of whether the United States has notified Settling Defendant of the violation or made

HESCOX CONSENT DECREE

a demand for payment, but need only be paid upon demand.  All penalties shall begin to accrue on the day after payment is due and shall continue to accrue through the date of payment.  Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

13.     Payment made under this Section shall be in addition to any other remedies or sanctions available to Plaintiff by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree.

14.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties due to the United States pursuant to this Consent Decree.  Payment of stipulated penalties shall not excuse Settling Defendant from payment as required by Section VI (Settlement of Response Costs) or from performance of any other requirements of this Consent Decree.

## VIII.  COVENANTS BY UNITED STATES AND LOCAL GOVERNMENT ENTITIES

15.     <u>United States' Covenants on behalf of EPA</u>.  Except as specifically provided in Section IX (Reservation of Rights by United States and Local Government Entities), the United States, on behalf of EPA, covenants not to sue or to take administrative action against Settling Defendant and Pyrotronics pursuant

to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), and Section 7003 of RCRA, 42 U.S.C. § 6973, relating to the Rockets, Fireworks, and Flares Superfund Site, including but not limited to the 2010 ROD Response Costs and all response costs incurred or that will be incurred in connection with the Rockets, Fireworks, and Flares Superfund Site.  With respect to present and future liability, these covenants shall take effect upon receipt by the United States of all amounts required by Paragraphs 5 – 7 and any Interest or stipulated penalties due thereon under Section VII (Failure to Comply with Payment Obligations).  These covenants are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree, including but not limited to, payment of all amounts due under Section VI (Settlement of Response Costs), and any Interest or stipulated penalties due thereon under Section VII (Failure to Comply with Payment Obligations).  These covenants are also conditioned upon the veracity and completeness of the financial information and the insurance information provided to EPA by Settling Defendant, to the best of its knowledge and belief, after thorough inquiry, and the financial, insurance, and indemnity certifications made by Settling Defendant, as described in Paragraph 41.  If the financial information or the insurance information provided by Settling Defendant, or the financial, insurance, or indemnity certification made by Settling Defendant, in Paragraph 41, is subsequently determined by EPA to be materially false or, in

HESCOX CONSENT DECREE

- 19 -

any material respect, inaccurate, Settling Defendant shall forfeit all payments made pursuant to this Consent Decree and these covenants and the contribution and other protections in this Consent Decree, including Paragraphs 15 and 33 – 35, shall be null and void as to Settling Defendant and Pyrotronics.  Such forfeiture shall not constitute liquidated damages and shall not in any way foreclose the United States' right to pursue any other causes of action arising from Settling Defendant's materially false or materially inaccurate information.  These covenants extend only to Settling Defendant and Pyrotronics and do not extend to any other person.

16.   Local Government Entities' Covenants and Releases.  Except as specifically provided herein and in Section IX (Reservation of Rights by United States and Local Government Entities), each of the Local Government Entities releases and covenants not to sue or take administrative action against Settling Defendant and Pyrotronics, pursuant to Sections 107(a) or 113 of CERCLA, 42 U.S.C. §§ 9607(a) and 9613, Section 7002 of RCRA, 42 U.S.C. § 6972, or any state or federal statute or state or federal common law with respect to all claims of any kind, known and unknown, against Settling Defendant and Pyrotronics in connection with the alleged release or threatened release of any of the Basin Contaminants at, on, or under the RABSP Site.  With respect to present and future liability, these covenants and releases shall take effect upon receipt by the United States of all amounts required by Paragraphs 5 – 7 and any Interest or stipulated

penalties due thereon under Section VII (Failure to Comply with Payment Obligations).  These covenants and releases are also conditioned upon the satisfactory performance by Settling Defendant of its obligation under this Consent Decree, and the veracity and completeness of the financial information and the insurance information provided to EPA by Settling Defendant, to the best of its knowledge and belief, after thorough inquiry, and the financial, insurance, and indemnity certifications made by Settling Defendant, as described in Paragraph 41. If the financial information or the insurance information provided by Settling Defendant, or the financial, insurance, or indemnity certification made by Settling Defendant in Paragraph 41, is subsequently determined by EPA to be materially false or, in any material respect, inaccurate, these covenants and releases in Paragraph 16 shall be null and void as to Settling Defendant and Pyrotronics. These covenants and releases shall not apply to Settling Defendant and Pyrotronics in the event Settling Defendant brings a cause of action pursuant to any of the reservations set forth in Paragraph 29 or Pyrotronics otherwise brings a cause of action, but only to the extent that LGE's claims arise from the same response action, response costs, or damages that Settling Defendant is seeking pursuant to the applicable reservation or that Pyrotronics is otherwise seeking.

In releasing all unknown claims, each of the Local Government Entities expressly waives the provisions of Section 1542 of the California Civil Code, which

provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

## IX. RESERVATION OF RIGHTS BY UNITED STATES AND LOCAL GOVERNMENT ENTITIES

17. The United States, on behalf of EPA and the federal natural resource trustees, reserves and this Consent Decree is without prejudice to, all rights against Settling Defendant and Pyrotronics with respect to all matters not expressly included within the Covenants by the United States on behalf of in Paragraph 15. Notwithstanding any other provision of this Consent Decree, the United States, on behalf of EPA and the federal natural resource trustees, reserves all rights against Settling Defendant and Pyrotronics with respect to:

a. liability for failure of Settling Defendant to meet a requirement of this Consent Decree;

b. criminal liability;

c. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

d. liability based on the ownership or operation of any portion of the Rockets, Fireworks, and Flares Superfund Site by Settling Defendant or Pyrotronics when such ownership or operation commences after signature of this

HESCOX CONSENT DECREE

Consent Decree by Settling Defendant and there is a new release on or related to such property;

e.     liability based on a Settling Defendant's or Pyrotronics' transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of a Waste Material at or in connection with the Rockets, Fireworks, and Flares Superfund Site, after signature of this Consent Decree by Settling Defendant;

f.     liability arising from the past, present, or future disposal, release or threat of release of a Waste Material outside of the Rockets, Fireworks, and Flares Superfund Site; and

g.     liability for costs incurred by EPA, if any, with respect to the West Side Site.

For purposes of subparagraphs d. – e. above, migration of previously released Waste Material is not a new release or disposal of Waste Material.

18.     Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the financial information or the insurance information provided by Settling Defendant, or the financial, insurance, or indemnity certification made by Settling Defendant in Paragraph 41, is materially

false or, in any material respect, inaccurate.

19.     Each of the Local Government Entities reserves and this Consent Decree is without prejudice to, all rights against Settling Defendant and Pyrotronics with respect to:

a.     liability for failure of Settling Defendant to meet a requirement of this Consent Decree;

b.     criminal liability;

c.     liability based on the ownership or operation of any portion of the RABSP Site by Settling Defendant or Pyrotronics when such ownership or operation commences after signature of this Consent Decree by Settling Defendant and there is a new release on or related to such property;

d.     liability based on Settling Defendant's or Pyrotronics' transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of a Waste Material at or in connection with the RABSP Site, after signature of this Consent Decree by Settling Defendant;

e.     liability arising from the past, present, or future disposal, release or threat of release of a Waste Material outside of the RABSP Site;

f.     liability arising from past, present or future releases or threatened releases at the RABSP Site, where the Waste Material at issue is not a Basin Contaminant;

g.    liability of Settling Defendant or Pyrotronics arising from a new release, threat of release, or disposal of a Waste Material either within or outside of the RABSP Site, where such release, threat of release, or disposal occurs after signature of this Consent Decree by Settling Defendant;

h.    liability related to bodily injury;

i.    claims for contribution whether based on federal or state statutes or common law arising out of:  (a) claims in *City of Riverside v. Black & Decker (U.S.), Inc., et al.*, Case No. BC410878; (b) claims asserted by any person or entity that was not a party to the Consolidated Federal Action as of August 24, 2012; or, (c) claims for natural resource damages;

j.    any rights of the Local Governmental Entities to enforce the land use covenant on the Stonehurst Property, pursuant to the terms of that document;

k.    any rights of Rialto that arise from the exercise and enforcement of its municipal police power regulatory authority over persons, entities, properties and business transactions within the jurisdiction of Rialto. However, nothing in the foregoing sentence of this subparagraph reserves Rialto's rights under any federal, state, or local law to seek enforcement against Settling Defendant or Pyrotronics to remediate soil or groundwater for existing Waste Material unless such right is reserved in other subparagraphs of this Paragraph.

HESCOX CONSENT DECREE

For purposes of subparagraphs c., d., and g., above, migration of existing Waste Material is not a new release or disposal of Waste Material into soil, groundwater or atmosphere; and

l.   any rights of Colton that arise from the exercise and enforcement of its municipal police power regulatory authority over persons, entities, properties, and business transactions within the jurisdiction of the City of Colton.  However, nothing in the foregoing sentence of this subparagraph reserves Colton's rights under any federal, state, or local law to seek enforcement against Settling Defendant or Pyrotronics to remediate soil or groundwater for existing Waste Material unless such right is reserved in other subparagraphs of this Paragraph.

For purposes of subparagraphs c., d., and g. of this Paragraph, migration of existing Waste Material is not a new release or disposal of Waste Material into soil, groundwater, or atmosphere.

## X.   COVENANTS BY SETTLING DEFENDANTAND RESERVATION OF RIGHTS BY SETTLING DEFENDANT AND SETTLING FEDERAL AGENCIES

20.   Except as provided in Paragraph 21, Settling Defendant releases, covenants not to sue and agree not to assert any claims or causes of action against the United States on behalf of EPA, or its contractors or employees, with respect to the Rockets, Fireworks, and Flares Superfund Site and this Consent Decree,

HESCOX CONSENT DECREE

including, but not limited to:

      a.    any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113, or any other provision of law;

      b.    any claims against the United States, including any department, agency, or instrumentality of the United States under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding, the Rockets, Fireworks, and Flares Superfund Site, response actions at the Rockets, Fireworks, and Flares Superfund Site, response costs incurred at the Rockets, Fireworks, and Flares Superfund Site, and this Consent Decree;

      c.    any claims arising out of response actions at or in connection with the Rockets, Fireworks, and Flares Superfund Site relating to the United States, including any claim under the United States Constitution, the California Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law;

      d.    any claim, whether express or deemed by court order, in the Consolidated Federal Action; and

      e.    any direct or indirect claim for disbursement from the Locust Avenue Superfund Site Special Account.

HESCOX CONSENT DECREE

21.     These covenants and releases shall not apply to the United States in the event the United States brings a cause of action or issues an order pursuant to any of the reservations set forth in Paragraphs 17 and 18, other than in Paragraph 17a. (liability for failure to meet a requirement of the Consent Decree) or 17b. (criminal liability), but only to the extent that Settling Defendant's claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

22.     Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

23.     Except as provided in Paragraph 25, Settling Defendant releases and covenants not to sue or take administrative action against any of the Settling Federal Agencies, and each of the Settling Federal Agencies releases and covenants not to sue or take administrative action against Settling Defendant and Pyrotronics, pursuant to Sections 107(a) or 113 of CERCLA, 42 U.S.C. §§ 9607(a) and 9613, Section 7002 of RCRA, 42 U.S.C. § 6972, or any other state or federal statute or state or federal common law with respect to all claims of any kind, known and unknown, in connection with the alleged release or threatened release of any of the Basin Contaminants at, on, or under the RABSP Site.  With respect to present and future liability, these covenants and releases shall take effect upon

HESCOX CONSENT DECREE

receipt by the United States of all payment amounts required by Paragraphs 5 – 7 and any Interest or stipulated penalties due thereon under Section VII (Failure to Comply with Payment Obligations).

24.    In releasing all unknown claims, Settling Defendant and the Settling Federal Agencies waive the provisions of Section 1542 of the California Civil Code which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

25.    Settling Defendant and Settling Federal Agencies reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendant, Pyrotronics, and Settling Federal Agencies with respect to:

a.    liability of the breaching party for its failure to meet a requirement of this Consent Decree;

b.    criminal liability;

c.    liability based on the ownership or operation of any portion of the RABSP Site when such ownership or operation commences after lodging of this Consent Decree and there is a new release of a Waste Material on or related to such property;

d.    liability based on transportation, treatment, storage, or disposal,

or arrangement for transportation, treatment, storage, or disposal of a Waste Material at or in connection with the RABSP Site, after lodging of this Consent Decree;

e.      liability arising from the past, present, or future disposal, release, or threat of release of a Waste Material outside of the RABSP Site;

f.      liability arising from the release, threat of release, or disposal of a Waste Material either within or outside of the RABSP Site, where such release, threat of release, or disposal occurs after the lodging of this Consent Decree;

g.      liability arising from past, present, or future releases or threatened releases at the RABSP Site, where the Waste Material at issue is not a Basin Contaminant;

h.      liability related to bodily injury; and

i.      claims for contribution whether based on federal or state statutes or common law arising out of: (1) claims in *City of Riverside v. Black & Decker (U.S.), Inc., et al.*, Case No. BC410878; (2) claims asserted by any person or entity that was not a party to the Consolidated Federal Action on August 24, 2012; or, (3) claims for natural resource damages.

For purposes of subparagraphs c., d., and f. of this Paragraph, migration of existing Waste Material is not a new release or disposal of Waste Material into soil, groundwater, or atmosphere.

26.     <u>Settling Defendant's Agreement Regarding Recovery under Federal Contracts</u>.  Settling Defendant hereby agrees that it shall not in the future seek or receive any portion of any amount it has agreed to pay in this Consent Decree, through any Federal Contract.  Pursuant to this Paragraph, Settling Defendant expressly acknowledges that it is prohibited from including any portion of the payments made pursuant to this Consent Decree as either direct or indirect costs, or otherwise, in any invoice, claim, or demand associated with any Federal Contract.

27.     Except as provided in Paragraph 28, Settling Defendant releases and covenants not to sue or take administrative action against any of the Local Government Entities, pursuant to Sections 107(a) or 113 of CERCLA, 42 U.S.C. §§ 9607(a) and 9613, Section 7002 of RCRA, 42 U.S.C. § 6972, or any other state or federal statute or state or federal common law with respect to all claims of any kind, known and unknown, against the LGEs in connection with the alleged release or threatened release of any of the Basin Contaminants at, on, or under the RABSP Site.  With respect to present and future liability, these covenants and releases shall take effect upon receipt by United States of all amounts required by Paragraphs 5 – 7 and any Interest or stipulated penalties due thereon under Section VII (Failure to Comply with Payment Obligations).

In releasing all unknown claims, Settling Defendant waives the provisions of Section 1542 of the California Civil Code which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

28.     These covenants and releases shall not apply to LGEs in the event LGEs brings a cause of action or issues an order pursuant to any of the reservations set forth in Section IX (Reservation of Rights by United States and Local Government Entities), other than in Paragraph 19a. (liability for failure to meet a requirement of the Consent Decree) or 19b. (criminal liability), but only to the extent that Settling Defendant's claims arise from the same response action, response costs, or damages that LGEs is seeking pursuant to the applicable reservation.

29.     Settling Defendant reserves, and this Consent Decree is without prejudice to, all rights against the LGEs with respect to:

a.     liability based on the ownership of any portion of the RABSP Site by LGEs when such ownership commences after signature of this Consent Decree by such LGEs and there is a new release on or related to such property;

b.     liability based on LGEs' transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of a Waste Material at or in connection with the RABSP Site, after signature of this Consent Decree by such LGE;

c.      liability arising from the past, present, or future disposal, release or threat of release of a Waste Material outside of the RABSP Site;

d.      liability arising from past, present or future releases or threatened releases at the RABSP Site, where the Waste Material at issue is not a Basin Contaminant;

e.      liability of LGEs arising from a new release, threat of release, or disposal of a Waste Material either within or outside of the RABSP Site, where such release, threat of release, or disposal occurs after signature of this Consent Decree by such LGE;

f.       liability related to bodily injury; and

g.      claims for contribution whether based on federal or state statutes or common law arising out of:  (a) claims in C*ity of Riverside v. Black & Decker (U.S.), Inc., et al.*, Case No. BC410878; (b) claims asserted by any person or entity that is not or was not a party to the Consolidated Federal Action as of August 24, 2012; or, (c) claims for natural resource damages.

For purposes of this subparagraphs a., b., and e. above, migration of existing Waste Material is not a new release or disposal of Waste Material into soil, groundwater or atmosphere.

30.    Further Settlors and Future Settling Party.

a.      Settling Defendant agrees that in the event that:  (a) the United

HESCOX CONSENT DECREE

States, on behalf of EPA, reaches or has reached settlement with any other party to the Consolidated Federal Action who is not a signatory to this Consent Decree ("Further Settlor"); and (b) the United States, on behalf of the EPA, gives notice in accordance with Section XIV (Notices and Submissions) or pursuant to the Court's Case Management/Electronic Case filing system to Settling Defendant that such party has become a Further Settlor; then upon Court approval of that Further Settlor's settlement, Settling Defendant commits that it shall extend to any such Further Settlor substantially similar releases and covenants not to sue and waiver to those set forth in Paragraphs 27 and 28, without further monetary consideration for such covenants and waiver, subject to the reservations of rights in Paragraph 29, and in exchange for mutual releases of claims and appeals by that Further Settlor against Settling Defendant substantially similar to the releases and covenants not to sue and waiver set forth in Paragraphs 27 and 28.  The commitments of Settling Defendant to provide such covenants not to sue, subject to the reservation of rights, in the foregoing sentence shall not take effect as to any Future Settlor unless and until the settlement with such Future Settlor becomes a final judgment following any appeal.  The United States, on behalf of EPA, has sole discretion to determine whether a party is to be deemed a "Further Settlor" for purposes of this Paragraph.

      b.      Upon entry of this Consent Decree, the United States determines that Hescox is a Future Settling Party for purposes of the OU2/OU3

Consent Decree.

31. <u>Claims Against Other Parties in the Consolidated Federal Action</u>. Settling Defendant agrees not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) or any other federal or state law that they may have for response costs relating to the RABSP Site against any other person who is or was a party in the Consolidated Federal Action. This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the RABPSP Site against Settling Defendant.

## XI. EFFECT OF SETTLEMENT/CONTRIBUTION

32. Except as provided in Paragraphs 30 and 31, nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Except as provided in Section X (Covenants by Settling Defendant and Reservation of Rights by Settling Defendant and Settling Federal Agencies), each of the Parties expressly reserves any and all rights (including, but not limited to, under Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action which it may have with respect to any matter, transaction, or occurrence relating in any way to the RABSP Site against any person not a Party hereto. Nothing in this Consent Decree

diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

33.    The Parties agree, and by entering this Consent Decree this Court finds, that this settlement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that Settling Defendant and Pyrotronics are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred at or in connection with the Rockets, Fireworks, and Flares Superfund Site or the West Side Site by the United States or any other person, except for the State, including the 2010 ROD Response Costs; provided however, that if the United States, or Local Government Entities exercise rights under the reservations in Section IX (Reservation of Rights by United States and Local Government Entities), other than in Paragraphs 17a. and/or 19a. (liability for failure to meet a requirement of Consent Decree) or 17 b. and/or 19b. (criminal liability), or Paragraph 18 with respect to the United States, the "matters addressed" in this Consent Decree will no longer include those future

response costs or response actions that are within the scope of the exercised reservation.

34.     The Parties further agree, and by entering this Consent Decree this Court further finds, that the payments and obligations provided for in this Consent Decree represent a good faith compromise of disputed claims and that the compromise represents a fair, reasonable, and equitable resolution.  With regard to any claims for costs, damages, or other claims against the Parties, the Parties agree and this Court finds that Settling Defendant and Pyrotronics are entitled to contribution protection pursuant to the California Code of Civil Procedure §§ 877 and 877.6, and any other applicable provision of federal or state law, whether by statute or common law.

35.     The Parties intend the broadest possible protection from contribution actions provided by law for "matters addressed" in this Consent Decree.

36.     Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree after the date the Consent Decree is lodged with the Court, notify EPA and DOJ in writing no later than sixty (60) days prior to the initiation of such suit or claim.  Settling Defendant also shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify EPA and DOJ in writing within ten (10) days after service of the complaint or claim upon it.  In addition, Settling Defendant shall notify EPA and

DOJ within ten (10) days after service or receipt of any motion for summary judgment, and within ten (10) days after receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

37.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Rockets, Fireworks, and Flares Superfund Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenants by Plaintiff set forth in Section VIII (Covenants by United States and Local Government Entities).

## XII.   ACCESS

38.     For any part of the Rockets, Fireworks, and Flares Superfund Site that is or becomes owned or controlled by Settling Defendant, Settling Defendant shall, commencing on the date of lodging of the Consent Decree, provide the United States and their representatives, contractors, and subcontractors, with access at reasonable times to the Rockets, Fireworks, and Flares Superfund Site, or such other real property, to conduct any activity regarding the Rockets, Fireworks, and

HESCOX CONSENT DECREE

- 38 -

Flares Superfund Site or Consent Decree including, but not limited to, the following activities:

      a.    verifying any data or information submitted to the United States;

      b.    conducting investigations regarding contamination at or near the Rockets, Fireworks, and Flares Superfund Site;

      c.    obtaining samples;

      d.    assessing the need for, planning, or implementing additional response actions at or near the Rockets, Fireworks, and Flares Superfund Site;

      e.    assessing implementation of quality assurance and quality control practices;

      f.    implementing the Rockets, Fireworks, and Flares Superfund Site work; and

      g.    inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents.

## XIII.  RECORD RETENTION AND CERTIFICATION

39.    By signing this Consent Decree the Settling Defendant hereby certifies that it has as of February 29, 2012, produced in the Consolidated Federal Action all non-identical and non-privileged copies of records, reports, or information in its possession or control (if any) that relate in any manner to

response actions taken at the Rockets, Fireworks, and Flares Superfund Site or the liability of any person under CERCLA with respect to the Rockets, Fireworks, and Flares Superfund Site.  Except for those documents that have been produced in the Consolidated Federal Action as described in the preceding sentence, until ten (10) years after the entry of this Consent Decree, Settling Defendant shall preserve and retain all non-identical copies of records, reports, or information (hereinafter referred to as "Records") now in its possession or control, or that come into its possession or control, that relate in any manner to response actions taken at the Rockets, Fireworks, and Flares Superfund Site, RABSP Site, or the liability of any person under CERCLA with respect to the Rockets, Fireworks, and Flares Superfund Site, or RABSP Site regardless of any corporate retention policy to the contrary.

40.     After the conclusion of the document retention period in the preceding Paragraph, Settling Defendant shall notify EPA and DOJ and the Local Government Entities at least ninety (90) days prior to the destruction of any such Records, and, upon request by EPA or DOJ, Settling Defendant shall deliver any such Records to EPA.  Settling Defendant may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If a Settling Defendant asserts such a privilege in lieu of providing Records, it shall provide Plaintiff with the following:  (a) the title of the Record;

HESCOX CONSENT DECREE

(b) the date of the Record; (c) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege asserted.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only.  Settling Defendant shall retain all Records that it claims to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendant's favor.  However, no Records created or generated pursuant to the requirements of this or any other settlement with EPA pertaining to the RABSP Site shall be withheld from the United States on the grounds that they are privileged or confidential.

41.   Settling Defendant certifies that, to the best of its knowledge and belief, after thorough inquiry, it has:

a.   not altered, mutilated, discarded, destroyed or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Rockets, Fireworks, and Flares Superfund Site since the earlier of notification of potential liability by the United States or the State or the filing of suit against it regarding the Rockets, Fireworks, and Flares Superfund Site, and that it has fully complied with any and all EPA requests (or requests by

the United States on behalf of EPA) for information regarding the Rockets, Fireworks, and Flares Superfund Site and Settling Defendant's financial circumstances, including but not limited to insurance and indemnity information, pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927;

       b.    submitted to EPA financial information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the financial information was submitted to EPA (or submitted to the United States on behalf of EPA) and the time Settling Defendant executes this Consent Decree; and

       c.    fully disclosed any insurance information regarding the existence of any insurance policies or indemnity agreements that may cover claims relating to cleanup of the Rockets, Fireworks, and Flares Superfund Site and/or other locations in the RABSP Site, and submitted to EPA (or submitted to the United States on behalf of EPA) and the Local Governmental Entities upon request such insurance policies, indemnity agreements, and information.

## XIV.  NOTICES AND SUBMISSIONS

42.    Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those

HESCOX CONSENT DECREE

individuals or their successors give notice of a change to the other Parties in writing.  Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to EPA, DOJ, each of the Local Government Entities, and Settling Defendant, respectively.

As to DOJ:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-11-2-09952

As to EPA:

Remedial Project Manager, Rockets, Fireworks, and Flares Superfund Site
Attn:  Wayne Praskins
U.S. Environmental Protection Agency, Region IX
75 Hawthorne St.
San Francisco, California  94105

As to Colton:

City Manager
Attn:
City of Colton
650 North La Cadena Dr.
Colton, California  92324

-and-

City Attorney
Attn:
Best Best & Krieger LLP
3500 Porsche Way, Suite 200
Ontario, California  91764

As to Rialto:

City Attorney for City of Rialto
Attn: Jimmy Gutierrez
12616 Central Avenue
Chino, California  91710

As to the County:

County of San Bernardino County Counsel
385 North Arrowhead Avenue, 4th Floor
San Bernardino, California  92415-0140

-and-

The Gallagher Law Group, P.C.
1875 Century Park East, Suite 1550
Los Angeles, California  90067

As to Hescox:

David R. Isola
Isola Law Group, LLP
405 West Pine Street
Lodi, California  95240

## XV.   RETENTION OF JURISDICTION

43.    This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVI.   INTEGRATION/APPENDICES

44.    This Consent Decree and its appendices constitute the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree.  The Parties acknowledge that there

are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.  The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the map of the RABSP, including the 160-Acre Area, the Stonehurst Property, and the County Property;

"Appendix B" is a list of the insurance documents submitted to EPA by Hescox; and

"Appendix C" is a list of the financial documents submitted to EPA by Hescox.

## XVII.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

45.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate.  Settling Defendant consents to the entry of this Consent Decree without further notice.

46.    If for any reason this Court's entry of the Consent Decree is reversed on appeal, in whole or material part, this Consent Decree is voidable at the sole discretion of any Party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

# XVIII. TERMINATION

47.     This Consent Decree shall be terminated when the United States and

the Local Government Entities determine that Settling Defendant has satisfactorily

completed performance of its obligations required by this Consent Decree.  Upon

such termination, the parties shall file with the Court an appropriate stipulation

reciting that the requirements of the Consent Decree have been met.  Termination

of this Consent Decree shall not affect any remaining obligations under this

Consent Decree including, but not limited to, those obligations described in

Section VIII (Covenants by United States and Local Government Entities), Section

IX (Reservation of Rights by United States and Local Government Entities),

Section X (Covenants by Settling Defendant and Reservation of Rights by Settling

Defendant and Settling Federal Agencies), Section XI (Effect of

Settlement/Contribution), Section XII (Access), and Section XIII (Record

Retention and Certification).

# XIX.  FINAL JUDGMENT

48.     The United States, the Local Government Entities, and Settling

Defendant agree, and this Court by entering this Consent Decree finds, that this

Consent Decree has been negotiated by the Parties in good faith, that settlement of

this matter will avoid prolonged and complicated litigation between the Parties,

and that this Consent Decree is fair, reasonable, and in the public interest.

49.   The Court finds that there is no just reason for delay of entry of this Consent Decree, and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS __3rd__ DAY OF __April__ , __2014__

_____
HONORABLE PHILIP S. GUTIERREZ
United States District Judge

HESCOX CONSENT DECREE

- 47 -

1   FOR THE UNITED STATES OF AMERICA:

2

3

4

5

6   Dated: _12/24/13_          By: _____

7                                   ROBERT G. DREHER
                                    Acting Assistant Attorney General
8                                   Environment and Natural Resources
                                        Division
9                                   United States Department of Justice

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HESCOX CONSENT DECREE

- 48 -

1   FOR THE UNITED STATES OF AMERICA:

2

3

4

5   Dated: _1/39/14_          By: _____

6                             BRADLEY R. O'BRIEN

7                             Senior Attorney
                              United States Department of Justice

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HESCOX CONSENT DECREE

1  FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

2

3

4

5

6  Dated: JAN 23, 2014          By: _____

7                                    ENRIQUE MANZANILLA

8                                    Director, Superfund Division, Region IX
                                     U.S. Environmental Protection Agency

9                                    75 Hawthorne St.
                                     San Francisco, California  94105

10

11

12

13

14 Dated: Jan 23, 2014          By: _____

15                                    MICHELE BENSON
                                     Assistant Regional Counsel

16                                    U.S. Environmental Protection Agency
                                     Region IX

17                                    75 Hawthorne St.

18                                    San Francisco, California  94105

19

20

21

22

23

24

25

26

27

28

HESCOX CONSENT DECREE

- 50 -

1    FOR THE COUNTY OF SAN BERNARDINO:

2

3

4

5

6    Dated: ___1/8/14___         By: _____
                                     TIMOTHY V.P. GALLAGHER
7                                    THOMAS A. BLOOMFIELD
8                                    The Gallagher Law Group, P.C.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOR THE CITY OF COLTON:

Dated: 1/28/14          By: _____
                            GENE TANAKA
                            DANIELLE G. SAKAI
                            Best Best & Krieger LLP

Dated: 1/21/2014        By: _____
                            STEPHEN COMPTON
                            City Manager
                            City of Colton

1   FOR THE CITY OF RIALTO:

2

3

4                                                   DEBORAH ROBERTSON, Mayor

5

6   **ATTEST:**

7

8

9

10  BARBARA A. McGEE, City Clerk

11

12  **APPROVED AS TO FORM:**

13

14

15

16  JIMMY L. GUTIERREZ, City Attorney

17

18

19

20

21

22

23

24

25

26

27

28

HESCOX CONSENT DECREE

1    FOR ESTATE OF HESCOX:

2

3

4

5

6

7    Dated: _11/20/13_          By: _____

8                                    JAMES HESCOX

9

10

11   Defendant JAMES HESCOX in his capacity as Trustee of the Harry Hescox Trust

12   and as Executor of the Estate of HARRY HESCOX

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Appendix A

*(Map of the RABSP, including the 160-Acre Area, the Stonehurst Property, and the County Property)*

**APPENDIX A**



160-Acre Area

FORMER STORAGE BUNKERS

County Property

Stonehurst Property

LEGEND

**N**

- - - - - - -   **West Side Area**

- - - - - - -   **Rialto Ammunition Backup Storage Point ("RABSP")**

**NOT TO SCALE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Appendix B

(*Insurance Information*)

HESCOX CONSENT DECREE

| Insurer/Policy No. | Policy Period | Policy Type/Limits |
|---|---|---|
| Travelers Insurance Co./ KSLG 6538607 | 1/1/71 - 3/1/71 | 250K occ. / 250 agg. |
| Travelers Insurance Co./ T NSL 951981 | 3/1/71 – 3/1/72<br>3/1/72 – 3/1/73<br>3/1/73 – 9/30/73 | 250K occ. / 250 agg. |
| Travelers Insurance Co./ T NSL 106T0173 | 9/30/73 – 9/30/74<br>9/30/74 – 9/30/75<br>9/30/75 – 9/30/76<br>9/30/76 – 11/1/77<br>11/1/77 – 11/1/78<br>11/1/78 – 11/1/79 | 300K occ. / 300K agg.<br>250K occ. / 250K agg.<br>500K occ. / 500K agg.<br>250K occ. / 250K agg.<br>250K occ. / 250K agg.<br>250K occ. / 250K agg. |
| Alliance Insurance Co./ JWT 1270<br>ANR 10024<br>ANA 2174 | 9/30/76 – 11/1/77<br>11/1/77 – 11/1/78<br>11/1/78 – 11/1/79 | 250K excess |
| ICSP 419-4177<br><br>ICSP 419-4178<br>ICSP 411-4795<br>ICSP 4175 -6630<br>ICSP 4176-7251<br>ICSP 4177-8401<br>GSIC 6178-0838 | 1/1/69 – 1/1/70<br><br>1/1/69 – 3/1/71<br>3/1/71 – 3/1/74<br>10/16/75 – 9/30/76<br>9/30/76 – 10/77 approx.[1]<br>11/30/77 – 11/1/78[2]<br>11/1/78 – 11/1/79 | 500K occ. / 500K agg.<br><br>Umbrella $500K occ. / 500K agg.[3]<br>Umbrella - $5M occ. / 5M agg.<br>Umbrella - $5M occ. / 5M agg.<br>Umbrella - $5M occ. / 5M agg.<br>Umbrella – $4.5M occ. / 4.5M agg.<br>Umbrella - $5M occ. / 5M agg. |
| Unigard<br>1-1187 | 9/30/73 – 9/30/75 | Umbrella - $5M occ./ 5M agg. |
|  |  |  |

---

[1] Effective dates uncertain due to illegibility and/or incompleteness
[2] Effective dates uncertain due to illegibility and/or incompleteness
[3] Limits at inception; later raised by endorsement

HESCOX CONSENT DECREE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Appendix C

(*Financial Documents*)

HESCOX CONSENT DECREE

| ABILITY TO PAY - - RESPONSE AND DOCUMENTATION | |
|---|---|
| 2008 Income Tax Returns | Hescox Family Perpetual Trust |
| 2009 Income Tax Returns | Hescox Family Perpetual Trust |
| 2010 Income Tax Returns | Hescox Family Perpetual Trust |
| | |
| 2008 Income Tax Returns | Harry A. and Doris M. Hescox |
| 2009 Income Tax Returns | Harry A. and Doris M. Hescox |
| 2010 Income Tax Returns | Harry A. and Doris M. Hescox |
| | |
| 2009 Income Tax Returns  (Page 1 not available) | Hestwo LLC |
| 2010 Income Tax Returns | Hestwo LLC |
| | |
| Certification Statement for Ability to Pay Information | Estate of Harry Hescox |
| | |
| Balance Sheet | Harry A. Hescox |
| | |

| | |
|---|---|
| Tax Information Authorization | Harry Hescox |
| | |
| October 2006 "Hescox Family Perpetual Trust" | |
| | |
| June 1991 "Hescox Family Trust" | |
| | |