BRUCE GELBER
Deputy Assistant Attorney General
Environment and Natural Resources Division
JAMES R. MacAYEAL (D.C. Bar # 474664)
jamie.macayeal@usdoj.gov
BRADLEY R. O'BRIEN (CA Bar # 189425)
brad.obrien@usdoj.gov
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 616-8777
Facsimile: (202) 514-2583

E-FILED 12/5/17

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| CITY OF COLTON, a California municipal corporation, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> AMERICAN PROMOTIONAL EVENTS, INC., et al., <br><br> Defendants. <br> _____ <br><br> AND CONSOLIDATED ACTIONS <br> _____ | Case No. ED CV 09-01864 PSG (SSx) <br><br> [Consolidated with Case Nos. CV 09-6630 PSG (SSx), CV 09-6632 PSG (SSx), CV 09-07501 PSG (SSx), CV 09-07508 PSG (SSx), CV 10-00824 PSG (SSx), CV 05-01479 PSG (SSx)] <br><br> **CONSENT DECREE** |

# TABLE OF CONTENTS

I. BACKGROUND ............................................................- 1 -

II. JURISDICTION ........................................................- 3 -

III. PARTIES BOUND ......................................................- 3 -

IV. DEFINITIONS .........................................................- 3 -

V. STATEMENT OF PURPOSE ...........................................- 9 -

VI. SETTLEMENT OF RESPONSE COSTS ...........................- 9 -

VII. FAILURE TO COMPLY WITH PAYMENT OBLIGATIONS .......- 12 -

VIII. ACCESS AND INSTITUTIONAL CONTROLS............................- 13 -

IX. NOTICE TO SUCCESSORS-IN-TITLE AND TRANSFERS

OF REAL PROPERTY ...........................................- 18 -

X. RELEASE OF EPA LIEN ..........................................- 19 -

XI. ACCESS TO INFORMATION.....................................- 19 -

XII. RETENTION OF RECORDS ........................................- 20 -

XIII. DISPUTE RESOLUTION .........................................- 22 -

XIV. COVENANTS AND RESERVATIONS OF RIGHTS BY

PLAINTIFF ....................................................- 25 -

XV. COVENANTS AND RESERVATIONS OF RIGHTS

BETWEEN GOODRICH AND SETTLING DEFENDANT.......- 27 -

XVI. COVENANTS AND RESERVATIONS OF RIGHTS BY

SETTLING FEDERAL AGENCIES AND SETTLING

DEFENDANT ..................................................- 29 -

XVII. EFFECT OF SETTLEMENT/CONTRIBUTION ....................- 33 -

WONG CONSENT DECREE

- i -

XVIII. NOTICES AND SUBMISSIONS ..........................................................- 35 -

XIX. RETENTION OF JURISDICTION .....................................................- 37 -

XX. INTEGRATION/APPENDICES...........................................................- 37 -

XXI. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT......- 37 -

XXII. TERMINATION .................................................................................- 38 -

XXIII. FINAL JUDGMENT ............................................................................- 38 -

# I.    BACKGROUND

A.    The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9607, and Section 7003 of the Resource Conservation and Recovery Act, 42 U.S.C. § 6973, seeking injunctive relief and response costs incurred by the United States relating to the Rockets, Fireworks, and Flares Superfund Site in Rialto, California.  Other parties filed CERCLA and/or state law claims in cases consolidated with the United States' case (collectively, the "Consolidated Federal Action").

B.    On April 15, 2014, the Court ordered that Jimmy Chi Ho Wong, as legal trustee for the estate of Chung Ming Wong for decedent Chung Ming Wong be substituted in this action in place of the deceased Mr. Wong.  (Dkt. No. 1872).

C.    On June 15, 2015, the United States filed its second amended complaint (Dkt. No. 1959) asserting a CERCLA Section 107 claim against the Estate of Wong, as a successor and as an owner of part of the Site, as defined below, as well as an *in rem* claim under 42 U.S.C. § 9607(l) against the property owned by the Estate of Wong within the Site.  In addition, the second amended complaint seeks a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that the Estate of Wong and the property subject to the United States' *in rem* action are jointly and severally liable to the United States for response costs and damages and that the finding will be binding on any subsequent action or actions to recover further response costs or damages incurred by the United States in connection with the Site.

D.    Goodrich Corporation filed an amended complaint under CERCLA and state law against the Estate of Wong for:  (1) contribution and cost recovery pursuant to CERCLA Sections 9607 and 9613; (2) indemnification and

WONG CONSENT DECREE

- 1 -

contribution pursuant to California Health & Safety Code Section 25363; (3) declaratory relief pursuant to CERCLA Sections 9607 and 9613; (4) equitable indemnification; (5) declaratory relief for equitable indemnification; (6) contribution under state common law; (7) private nuisance; and (8) trespass. On February 10, 2010, the case was transferred to this Court, and was assigned case number CV 10-00824 PSG (SSx).

E.     Prior to the entry of any consent decrees in the Consolidated Action, on March 26, 2012, the Court found that the City of Colton "properly served" Wong Chung Ming and Tung Chun Company and entered a default (vacated) against those parties. (Dkt. No. 1410). In February 2014, Goodrich personally served Jimmy Chi Ho Wong. (Dkt. No. 1860). Jimmy Chi Ho Wong, as the representative of the Estate of Wong Chung Ming, was subsequently substituted for all purposes in place of the deceased Chung Ming Wong. (Dkt. Nos. 1872, 1895, 1896). On June 20, 2014, the Estate of Wong Chung Ming waived personal service of process solely as to the United States under the procedures set forth in Rule 4 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 4. Wong Chung Ming (now the Estate of Wong) is and has been a party to the Consolidated Action. (Dkt. No. 1896).

F.      Settling Defendant as defined below, does not admit and specifically denies: (1) any liability arising out of the transactions or occurrences alleged in the claims or deemed by the Court in the Consolidated Federal Action; and (2) the release or threatened release of Waste Material at or from the Site or the RABSP (as defined in Section IV (Definitions)) constitutes, contributed to, or caused an imminent or substantial endangerment to the public health or welfare or the environment.

G.     The United States, Goodrich, and the Estate of Wong recognize and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties, as defined below, in good faith, that implementation of

this Consent Decree will expedite the cleanup of the Site, will avoid prolonged and complicated litigation, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED:

## II.    JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345; 42 U.S.C. §§ 6973(a), 9607, and 9613(b); and also has personal jurisdiction over Settling Defendant.  Solely for the purposes of this Consent Decree and the underlying complaints, Settling Defendant waives all objections and defenses that it may have to the jurisdiction of the Court or to venue in this District.  Settling Defendant, Goodrich, and United Technologies shall not challenge entry or the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.    PARTIES BOUND

2.      This Consent Decree is binding upon the United States, Goodrich, United Technologies, and Settling Defendant.  Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendant under this Consent Decree.

## IV.    DEFINITIONS

3.      Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

"160-Acre Area" shall mean the area located in San Bernardino County that is bounded by West Casa Grande Drive on the north, Locust Avenue on the east, Alder Avenue on the west, and an extension of Summit Avenue on the south. The 160-Acre Area is depicted generally on the map included in Appendix A.

"2010 Record of Decision" or "2010 ROD" shall mean the document entitled "USEPA Superfund Interim Action Record of Decision" relating to the Source Area Operable Unit, Rockets, Fireworks, and Flares Superfund Site, San Bernardino County, CA, EPA ID: CAN000905945, dated September 30, 2010, signed by the Assistant Director, Superfund Division, EPA Region 9, and all attachments thereto.

"Basin Contaminants" shall mean any type of perchlorate; trichloroethylene ("TCE"); carbon tetrachloride; chloroform; or methylene chloride; including any breakdown or "daughter" products of the foregoing.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Certification of Completion of the Final Remedial Action" shall mean the certification of completion of the remedial action associated with the Final Record of Decision for the Site.

"Consent Decree" or "Wong Consent Decree" shall mean this Consent Decree and all appendices attached hereto. In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Consolidated Federal Action" shall mean *City of Colton v. American Promotional Events, Inc., et al.*, Case No. ED CV 09-01864 PSG (SSx); *Goodrich Corporation v. Chung Ming Wong, et al.*, Case No. CV 09-6630 PSG (SSx); *County of San Bernardino, et al., v. Tung Chun Co., et al.*, Case No. CV 09-06632 PSG (SSx); *City of Rialto and Rialto Utility Authority v. United States Department of Defense, et al.*, Case No. CV 09-7501 PSG (SSx); and *Emhart Industries, Inc. v. American Promotional Events, Inc.-West, et al.*, Case No. CV

09-07508 PSG (SSx), all of which were consolidated pursuant to an order issued on January 20, 2010; and *United States of America v. Goodrich Corporation, et al.*, Case No. 10-00824 PSG (SSx), which was consolidated with the previously consolidated cases pursuant to an order issued on June 3, 2010; and *City of Colton v. American Promotional Events, Inc., et al.*, Case No. ED CV 05-01479 PSG (SSx).

"County" shall mean the County of San Bernardino and any of its present, former, or future subdivisions, departments, commissions, agencies, or instrumentalities.

"County Property" shall mean the property known as the Mid Valley Sanitary Landfill, which is currently owned by the County of San Bernardino, including those areas currently leased to Robertson's Ready Mix. The County Property is bounded by Summit Avenue on the north, generally by Alder Avenue on the east (until Alder Avenue terminates at or within the Robertson's Ready Mix leasehold), generally by the municipal boundaries of the Cities of Fontana and Rialto on the west except for a strip of land located in the City of Fontana, and by Casmalia Street on the south. The County Property is depicted generally on the map included in Appendix A.

"Day" or "day" shall mean a calendar day unless expressly stated to be a working day. The term "working day" shall mean a day other than a Saturday, Sunday, or federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall mean the date upon which this Consent Decree is entered by the District Court as recorded on the District Court docket, or, if the District Court instead issues an order approving the Consent Decree, the date such

order is recorded on the District Court docket, whichever occurs first.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Final Record of Decision" shall mean the final Record of Decision (and all attachments) for the Site that will be signed by EPA in the future, and after lodging of this Consent Decree.

"Final Remedial Action" shall mean activities associated with implementing the Final Record of Decision.

"Goodrich" shall mean Goodrich Corporation and its officers, directors and employees acting in their official capacity.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Institutional Controls" or "ICs" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, and/or resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the remedial action; and/or (c) provide information intended to modify or guide human behavior at or in connection with the Site.

"Modification" shall mean the United States' and Goodrich's modification of the OU2/OU3 Consent Decree, which the United States and Goodrich are jointly submitting to the Court for approval.

"OU2/OU3 Consent Decree" shall mean the Consent Decree involving the United States, Goodrich, and United Technologies Corporation that was entered on July 2, 2013. (Dkt. No. 1821).

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States, Goodrich, and Settling Defendant.

"Plaintiff" shall mean the United States.

"Proprietary Controls" shall mean easements or covenants running with the land that: (a) limit land, water, or resource use and/or provide access rights, and (b) are created pursuant to common law or statutory law by an instrument that is recorded by the owner in the appropriate land records office.

"RABSP" shall mean the parcel of land originally containing the former Rialto Ammunition Backup Storage Point, located in San Bernardino County, California. The 160-Acre Area is within the geographic area of the RABSP. The RABSP is depicted generally on the map included in Appendix A.

"RABSP Site" shall mean the RABSP and all areas where contamination from the RABSP otherwise comes to be located.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901, *et seq.*

"Rockets, Fireworks, and Flares Superfund Site" or "Site" formerly known as the Locust Avenue Superfund Site or the B.F. Goodrich Superfund Site in San Bernardino County, California, which includes the 160-Acre Area and all areas where contamination from the 160-Acre Area otherwise comes to be located.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" or "Estate of Wong" shall mean Jimmy Chi Ho Wong, as representative of the Estate of Chung Ming Wong, as well as the Estate of Wong's heirs, successors and assigns.

"Settling Federal Agencies" shall mean any federal agency, department, or instrumentality named or alleged to be liable for contamination in the Consolidated Federal Action, including but not limited to the United States Army, the Department of the Navy, the United States Air Force, the United States Department of Defense, the Farm Credit Administration, the United States Customs and Border Protection, the National Aeronautics and Space Administration, the United States Department of Energy, Lawrence Livermore National Laboratory, the United States Forest Service, and any other federal entity that is alleged to have transported, disposed of, or released any Waste Material within the area encompassed by the RABSP Area, as depicted in Appendix A, and any of their predecessors or successors.

"State" shall mean the State of California.

"Stonehurst Property" shall mean the approximate 5-acre property in the County of San Bernardino, County APNs 1133-07-105, 1133-07-106, and 1133-07-107, collectively, located at 2298 West Stonehurst Drive, Rialto, California. The Stonehurst Property is depicted generally on the map included in Appendix A.

"Transfer" shall mean shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, specifically including EPA and Settling Federal Agencies.

"United Technologies" shall mean the United Technologies Corporation and its officers, directors and employees acting in their official capacity.

"Waste Material" shall mean:  (a) any hazardous substance under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (b) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (c) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous waste" under California law, including California Health & Safety Code §§ 25100, *et seq*.

"West Side Area" shall mean the County Property and the Stonehurst Property.  The West Side Area is depicted generally on the map included in Appendix A.

"West Side Site" shall mean the West Side Area and all areas where TCE and perchlorate contamination from the West Side Area otherwise comes to be located.

"Wong Estate Parcel" shall mean those parcels of land comprising approximately 62 acres with the Assessor's Parcel Numbers ("APNs") of:  0239-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, 0239-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, 0239-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, 0239-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, and 0239-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 commonly known as 3196 North Locust, Rialto, California, which is part of the Site.  The Wong Estate Parcel is depicted on a map included in Appendix B.

## V.    STATEMENT OF PURPOSE

4.    By entering into this Consent Decree, the mutual objectives of the Parties are to avoid difficult and prolonged litigation and resolve claims as set forth herein.

## VI.    SETTLEMENT OF RESPONSE COSTS

5.    <u>Payments</u>.  The Estate of Wong shall pay a total of five million nine hundred thousand dollars ($5,900,000) to resolve the litigation.  Of the total amount paid by the Estate of Wong, Plaintiff shall receive two million nine hundred fifty thousand dollars ($2,950,000).  Subject to the Court's approval of the Modification of the OU2/OU3 Consent Decree, Goodrich shall receive two

million nine hundred fifty thousand dollars ($2,950,000) and any accrued interest shall be shared equally by Plaintiff (50 percent) and Goodrich (50 percent). All dollar amounts described in the Consent Decree are in United States Dollars ("USD").

      a.    On August 14, 2015, the Estate of Wong paid two million nine hundred fifty thousand dollars ($2,950,000) into the Registry of the Court for the Central District of California ("Registry"). (Dkt. No. 1963). In the event that the Consent Decree and Modification of the OU2/OU3 Consent Decree are finalized and entered by the Court, within thirty (30) days of the Effective Date, the two million nine hundred fifty thousand dollars ($2,950,000) plus interest shall be disbursed from the Registry and shared equally between Plaintiff (50 percent) and Goodrich (50 percent). If the Modification is not approved by the Court within twenty-one (21) days of the Effective Date of the Consent Decree, the Estate of Wong's settlement payments shall not be made directly to Goodrich but shall be made in accordance with the terms of the existing OU2/OU3 Consent Decree.

      b.    On March 3, 2016, the Estate of Wong paid two million nine hundred fifty thousand dollars ($2,950,000) into the Registry. (Dkt. No. 1990). In the event that the Consent Decree and Modification of the OU2/OU3 Consent Decree are finalized and entered by the Court, within thirty (30) days of the Effective Date, this additional two million nine hundred fifty thousand dollars ($2,950,000) plus interest shall be disbursed from the Registry and shared equally between Plaintiff (50 percent) and Goodrich (50 percent). If the Modification is not approved by the Court within twenty-one (21) days of the Effective Date of the Consent Decree, the Estate of Wong's settlement payments shall not be made directly to Goodrich but shall be made in accordance with the terms of the existing OU2/OU3 Consent Decree.

      c.    Nothing in this Consent Decree shall be construed to require Goodrich or United Technologies to undertake any additional obligations, over

and above those included in the OU2/OU3 Consent Decree or the Administrative Order on Consent dated February 26, 2013.

6. <u>Payment Instructions</u>.

a. Any payments due Plaintiff pursuant to Section VI (Settlement of Response Costs) shall be made in accordance with instructions provided Settling Defendant by EPA or the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Central District of California for disbursement from the Registry.

b. Any payments due to Goodrich pursuant to Section VI (Settlement of Response Costs), subject to the Court's approval of the Modification, shall be made in accordance with instructions provided to Settling Defendant by Goodrich for disbursement from the Registry.

c. At the time of the final payment required by Subparagraphs 5a. and 5b. after the Effective Date, Settling Defendant shall send notice to DOJ, EPA, Settling Federal Agencies, and Goodrich that disbursement from the Registry has been requested in accordance with Section XVIII (Notices and Submissions), and to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, or by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

Such notice shall reference the Site/Spill ID Number 09JW, and DOJ Case Number 90-11-2-09952.

d. The total amount of each disbursement to be made from the Registry to Plaintiff shall be deposited by EPA into a Site Special Account (Site/Spill ID Number 09JW) to be retained and used to conduct or finance response actions at or in connection with the Site, and/or to be transferred by EPA to the EPA Hazardous Substance Superfund.

# VII. FAILURE TO COMPLY WITH PAYMENT OBLIGATIONS

7. <u>Interest on Payment</u>.  If Settling Defendant fails to request any disbursement from the Registry required by Section VI (Settlement of Response Costs) by the required due date, Interest shall accrue on the unpaid balance owed by Settling Defendant from the date payment is due through the date of payment. Interest and stipulated penalties shall continue to accrue on any unpaid amounts until the total amount due has been received.

8. <u>Stipulated Penalties</u>.

a. If any amounts due Plaintiff are not requested for disbursement from the Registry by their respective required date(s), Settling Defendant shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, in addition to the Interest required by Paragraph 7, five thousand dollars ($5,000) per violation per day to the United States for each day such payment is late.

b. If Settling Defendant does not comply with the access and/or Institutional Controls provisions of Section VIII (Access and Institutional Controls), Settling Defendant shall be in violation of this Consent Decree and shall pay to the United States, as a stipulated penalty, five thousand dollars ($5,000) per violation per day of such noncompliance.

c. Stipulated penalties are due and payable within thirty (30) days after the date of the United States' demand for payment of the penalty or penalties.  All payments of stipulated penalties owed to the United States under this Paragraph shall be identified as "stipulated penalties" and shall be made in accordance with instructions provided Settling Defendant by the United States. Such payment shall reference Site/Spill ID Number 09JW, and DOJ Case Number 90-11-2-09952.  At the time of payment of a stipulated penalty for nonpayment to the United States as described in Subparagraph 8a., Settling Defendant shall send notice to DOJ and EPA that payment has been made in accordance with Section XVIII (Notices and Submissions).  Such notice shall reference Site/Spill ID

Number 09JW and DOJ Case Number 90-11-2-09952.

d. Penalties shall accrue as provided in this Paragraph regardless of whether the United States has notified Settling Defendant of the violation or made a demand for payment, but need only be paid upon demand. All penalties shall begin to accrue on the day after payment is due and shall continue to accrue through the date of payment. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

9. Payments made under this Section shall be in addition to any other remedies or sanctions available to the United States by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree.

10. Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties due to the United States pursuant to this Consent Decree. Payment of stipulated penalties shall not excuse Settling Defendant from payment as required by Section VI (Settlement of Response Costs) or from performance of any other requirements of this Consent Decree.

## VIII. ACCESS AND INSTITUTIONAL CONTROLS

11. Settling Defendant shall:

a. Commencing on the date of lodging of this Consent Decree, and at no charge, provide the United States and its representatives (including EPA and its contractors), and any potential responsible party conducting response actions at the Site under EPA oversight (including, without limitation, the settling work defendant in any other consent decree the United States has entered into or shall enter into the Consolidated Federal Action, as well as their agents and contractors), with access at all reasonable times, and, where feasible, with five (5) working days' notice, to the Wong Estate Parcel for the purpose of conducting any response actions related to the Site including, but not limited to, the following

activities:

(1)     Monitoring of investigation, removal, remedial, or other response actions at the Site;

(2)     Verifying any data or information submitted to the United States;

(3)     Conducting investigations relating to contamination at or near the Site;

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents, consistent with Section XI (Access to Information);

(7)     Assessing Settling Defendant's compliance with this Consent Decree;

(8)     Determining whether the Site, Wong Estate Parcel, or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

(9)     Implementing removal or remedial actions as selected by EPA, including but not limited to any potential capping of the Wong Estate Parcel or Site, or any portion(s) thereof and implementing, monitoring, maintaining, reporting on, and enforcing any Institutional Controls; (a) installing, monitoring, and maintaining liquid, groundwater, soil gas and other wells or probes; and (b) installing, monitoring, and operating any monitoring and extraction system, including liquids and gas extraction systems.

b.     Commencing on the date of lodging of this Consent Decree, refrain from using the Wong Estate Parcel in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial

measures implemented pursuant to the 2010 ROD or to be implemented pursuant to the Final Record of Decision.

c. Commencing on the date of lodging of this Consent Decree, Settling Defendant shall provide EPA thirty (30) days notice if Settling Defendant intends to disturb subsurface soils or sediments ten (10) or more inches below ground surface in the portions of the Wong Estate Parcel identified in Appendix B. If, in the future, EPA issues any removal or remedial decision document(s) related to the Site, Settling Defendant hereby agrees to refrain from using the Wong Estate Parcel, or any portion thereof specifically identified in any future removal or remedial decision, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of those future measures to be implemented at the Site.

d. Settling Defendant also hereby agrees to implement any Institutional Control(s), including but not limited to land or water use restrictions, that may be selected by EPA for the Site or the Wong Estate Parcel, or any portion(s) thereof, in any removal or remedial action affecting the Wong Estate Parcel, or any portion(s) thereof.

e. Settling Defendant shall execute and record in the appropriate land records office Proprietary Controls that: (i) grant a right of access to conduct any activity regarding the Consent Decree and any future removal or remedial action concerning the Site including, but not limited to, those activities listed in Subparagraphs 11a. – c.; and (ii) grant the right to enforce any land/water use restrictions required by Subparagraph 11d., including, but not limited to, any land/water use restrictions listed in any future Institutional Control Implementation and Assurance Plan. The Proprietary Controls shall be granted to one or more of the following persons, as determined by EPA: (i) the United States (ii) the State and its representatives; (iii) any settling work defendant in any other consent decree the United States has entered into or shall enter into in the

Consolidated Federal Action and their representatives; and/or (iv) other appropriate grantees. The Proprietary Controls, other than those granted to the United States, shall include a designation that EPA (and/or the State as appropriate) is a third-party beneficiary, allowing EPA to maintain the right to enforce the Proprietary Controls without acquiring an interest in real property. If any Proprietary Controls are granted to Settling Defendant pursuant to this Paragraph, then Settling Defendant shall monitor, maintain, report on, and enforce such Proprietary Controls.

    f.  Settling Defendant has informed EPA that Settling Defendant may seek to develop the Wong Estate Parcel and future development may include, but is not limited to, greenbelts, park areas, landscaping, and attendant irrigation, or other uses. If Settling Defendant seeks to develop the Wong Estate Parcel, Settling Defendant must comply with this Consent Decree, including the provisions of this Section. If Settling Defendant notifies EPA that Settling Defendant intends to develop the Wong Estate Parcel, EPA may reasonably meet with the Settling Defendant to discuss the impact of any Institutional Controls upon future uses of the Wong Estate Parcel. The Parties acknowledge that it is EPA's policy to support appropriate redevelopment and reuse of formerly contaminated sites, and EPA will, in its discretion and in accordance with its policies, provide technical information to affected decision-makers seeking to understand the scope and protectiveness of the selected remedy as set forth in the appropriate decision documents. It is understood that any removal or remedial measures, including, but not limited to any capping to be imposed on all or part of the Wong Parcel by EPA, will be selected in accordance with CERCLA and not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

  12. If EPA determines that Institutional Controls on the Wong Estate Parcel, including, but not limited to, environmental restriction covenants under state or local laws, regulations, ordinances, or other governmental controls, are

needed to implement any removal or remedial action selected by EPA, ensure the integrity and protectiveness thereof, ensure non-interference therewith, or otherwise protect public health or welfare and the environment, Settling Defendant shall cooperate with EPA's efforts to secure such Institutional Controls and/or governmental controls.

13.     Notwithstanding any provision of this Consent Decree, the United States retains all of its information gathering, inspection, and access authorities and rights, as well as all of its rights to require land use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

14.     <u>Modification of the Land Use Restrictions</u>.

a.     If EPA determines that modifications or additions to the land/water use restrictions are necessary to carry out and maintain the effectiveness of any removal or remedial action, EPA may require that such modifications or additions be incorporated in the land/water use restrictions, provided, however, that a modification or addition may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the removal or remedial action selected by EPA.

b.     If Settling Defendant objects to any modification or addition determined by EPA to be necessary pursuant to this Paragraph, it may seek dispute resolution pursuant to Section XIII (Dispute Resolution), Paragraph 27. The land/water use restrictions shall be modified in accordance with final resolution of the dispute.

c.     Settling Defendant shall implement any land/water use restrictions required by any modifications or additions incorporated in the land/water use restrictions in accordance with this Paragraph.

# IX. NOTICE TO SUCCESSORS-IN-TITLE AND TRANSFERS OF REAL PROPERTY

15.     Settling Defendant shall, at least sixty (60) days prior to any Transfer of any real property located at the Site, give written notice:  (a) to the transferee regarding the Consent Decree and any Institutional Controls regarding the real property; and (b) to EPA and the State regarding the proposed Transfer, including the name and address of the transferee and the date on which the transferee was notified of the Consent Decree and any Institutional Controls.

16.     Settling Defendant may Transfer any real property located at the Site only if:  (a) any Proprietary Controls required by Subparagraph 11e. have been recorded with respect to the real property; or (b) Settling Defendant has obtained an agreement from the transferee, enforceable by Settling Defendant and the United States, to:  (i) allow access and restrict land/water use, consistent with Subparagraphs 11a. – d., (ii) record any Proprietary Controls on the real property, consistent with Subparagraph 11e., and (iii) subordinate its rights to any such Proprietary Controls, consistent with Subparagraph 11e., and EPA has approved the agreement in writing.  If, after a Transfer of the real property, the transferee fails to comply with the agreement provided for in this Paragraph, Settling Defendant shall take all reasonable steps to obtain the transferee's compliance with such agreement.  The United States may seek the transferee's compliance with the agreement and/or assist Settling Defendant in obtaining compliance with the agreement.  Settling Defendant shall reimburse the United States for all costs incurred, direct or indirect, by the United States regarding obtaining compliance with such agreement, including, but not limited to, the cost of attorney time.

17.     In the event of any Transfer of real property located at the Site, unless the United States otherwise consents in writing, Settling Defendant shall continue to comply with its obligations under the Consent Decree, including, but not limited to, its obligation to provide and/or secure access, to implement,

maintain, monitor, and report on Institutional Controls, and to abide by such Institutional Controls.

## X.     RELEASE OF EPA LIEN

18.     Upon the Effective Date and upon receipt by EPA and Goodrich of all amounts required by Section VI (Settlement of Response Costs) and any amounts due under Section VII (Failure to Comply with Payment Obligations), EPA will file a release of all liens perfected on the Wong Estate Parcel pursuant to Section 107(l) of CERCLA, 42 U.S.C. § 9607(l).

## XI.     ACCESS TO INFORMATION

19.     Settling Defendant shall provide to EPA and the State, upon request, copies of all records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within its possession or control or that of its contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Wong Estate Parcel or the Site. Settling Defendant shall also make available to EPA and the State, for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the Site.

20.     <u>Business Confidential and Privileged Documents.</u>

a.     Settling Defendant may assert business confidentiality claims covering part or all of the Records submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Records determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies Records when they are submitted to EPA and the State, or if EPA has notified Settling Defendant that

the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Defendant.

b. Settling Defendant may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendant asserts such a privilege in lieu of providing Records, it shall provide Plaintiff with the following: (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation (*e.g.*, company or firm), and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege asserted by Settling Defendant. If a claim of privilege applies only to a portion of a Record, the Record shall be provided to Plaintiff in redacted form to mask the privileged portion only. Settling Defendant shall retain all Records that it claims to be privileged until Plaintiff has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved.

c. No Records created or generated pursuant to the requirements of this Consent Decree shall be withheld from Plaintiff on the grounds that they are privileged or confidential.

## XII. RETENTION OF RECORDS

21. Except for those documents that have been produced in the Consolidated Federal Action, Settling Defendant shall preserve and retain all non-identical copies of records, reports, or information now in its possession or control, or that come into its possession or control, that relate in any manner to response actions taken at the Site or the RABSP Site, or its or any other person's liability under CERCLA with respect to the Site or RABSP Site, until ten (10) years after EPA's Certification of Completion of the Final Remedial Action. Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above, all non-identical copies of

the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to the implementation of Institutional Controls, provided, however, Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the implementation of Institutional Controls, if any, that are not contained in the aforementioned Records required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

22. After the conclusion of the document retention period in the preceding Paragraph, Settling Defendant shall notify EPA and DOJ at least ninety (90) days prior to the destruction of any such Records, and, upon request by EPA or DOJ, Settling Defendant shall deliver any such Records to EPA. Settling Defendant may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendant asserts such a privilege in lieu of providing Records, it shall provide Plaintiff with the following: (a) the title of the Record; (b) the date of the Record; (c) the name, title, affiliation (*e.g.*, company or firm), and address of the author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege asserted. If a claim of privilege applies only to a portion of a Record, the Record shall be provided to Plaintiff in redacted form to mask the privileged portion only. Settling Defendant shall retain all Records that it claims to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendant's favor. However, no Records created or generated pursuant to the requirements of this Consent Decree or any other settlement with EPA pertaining to the RABSP Site shall be withheld from the United States on the grounds that they are privileged or confidential.

23. Settling Defendant certifies individually that, to the best of its

knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since the earlier of notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA and State requests for information regarding the Site pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), Section 3007 of RCRA, 42 U.S.C. § 6927, and state law.

## XIII. DISPUTE RESOLUTION

24.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes regarding this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Settling Defendant that have not been disputed in accordance with this Section.

25.     Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed twenty (20) days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

26.     Statements of Position.

a.      In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within thirty (30) days after the conclusion of the informal negotiation period, Settling Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not

limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by Settling Defendant. The Statement of Position shall specify Settling Defendant's position as to whether formal dispute resolution should proceed under Paragraph 27 or 28.

      b.    Within thirty (30) days after receipt of Settling Defendant's Statement of Position, EPA will serve on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 27 or 28. Within thirty (30) days after receipt of EPA's Statement of Position, Settling Defendant may submit a Reply.

      c.    If there is disagreement between EPA and Settling Defendant as to whether dispute resolution should proceed under Paragraph 27 or 28, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 27 and 28.

      27.   <u>Record Review</u>. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be

construed to allow any dispute by Settling Defendant regarding the validity of the 2010 ROD's or the Final Record of Decision's provisions.

a. An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b. The Director of the Superfund Division, EPA Region IX, will issue a final administrative decision resolving the dispute based on the administrative record described in Subparagraph 27a. This decision shall be binding upon Settling Defendant, subject only to the right to seek judicial review pursuant to Subparagraphs 27c. and 27d.

c. Any administrative decision made by EPA pursuant to Subparagraph 23b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Defendant with the Court and served on all Parties within ten (10) days after receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendant's motion.

d. In proceedings on any dispute governed by this Paragraph, Settling Defendant shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Subparagraph 27a.

28. Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law,

shall be governed by this Paragraph.

a. Following receipt of Settling Defendant's Statement of Position submitted pursuant to Paragraph 26, the Director of the Superfund Division, EPA Region IX, will issue a final decision resolving the dispute. The Superfund Division Director's decision shall be binding on Settling Defendant unless, within ten (10) days after receipt of the decision, Settling Defendant files with the Court and serves on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendant's motion.

b. Notwithstanding Subparagraph 27d., judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

29. The invocation of formal dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Settling Defendant under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 27. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Paragraph 8.

## XIV. COVENANTS AND RESERVATIONS OF RIGHTS BY PLAINTIFF

30. <u>Covenants by Plaintiff</u>. Except as specifically provided in Paragraph 31, Plaintiff covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606

and 9607(a) and Section 7003 of RCRA, 42 U.S.C. § 6973, relating to the Site. With respect to present and future response costs, these covenants shall take effect upon receipt by Plaintiff of all amounts required by Section VI (Settlement of Response Costs) and any Interest or stipulated penalties due thereon under Section VII (Failure to Comply with Payment Obligations). These covenants are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree, including but not limited to, payment of all amounts due under Section VI (Settlement of Response Costs), Section VII (Failure to Comply with Payment Obligations), Section VIII (Access and Institutional Controls), and Section IX (Notice to Successors-in-Title and Transfers of Real Property). These covenants extend only to Settling Defendant and do not extend to any other person.

31. <u>General Reservations of Rights</u>. Plaintiff and the federal natural resource trustee reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within the Covenants by Plaintiff in Paragraph 30. Notwithstanding any other provision of this Consent Decree, Plaintiff and the federal natural resource trustee reserve all rights against Settling Defendant with respect to:

a. claims based on a failure by Settling Defendant to meet its requirements under this Consent Decree;

b. liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c. liability based on the ownership or operation of any portion of the RABSP Site by Settling Defendant when such ownership or operation commences after October 15, 2016, and there is a new release on or related to such property;

d. liability based on Settling Defendant's transportation, treatment, storage, or disposal, or the arrangement for the transportation,

treatment, storage, or disposal of Waste Material at or in connection with the Site after lodging of this Consent Decree;

e. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

f. criminal liability; and

g. liability for violations of federal or state law which occur after lodging of this Consent Decree.

32. EPA has determined, and the Court finds, that upon the Effective Date, the Estate of Wong is a Further Settlor, Future Settlor, and Future Settling Party as defined in the OU1 Consent Decree (Dkt. No. 1820) (*see, e.g.*, the definition of Further Settlor and Paragraphs 120 and 125); the OU2/OU3 Consent Decree (Dkt. No. 1821) (*see, e.g.*, the definition of Future Settling Party, and Paragraphs 56, 60, 66, 109); and the Estate of Hescox Consent Decree (Dkt. No. 1869) (*see, e.g.*, Paragraphs 30 and 31).

33. The Parties further find, and the Court finds, that the Estate of Wong "is or was a party," "any party," and "any other party" in or to the Consolidated Action as described in the OU1 Consent Decree (Dkt. No. 1820) (*see, e.g.*, Paragraphs 120 and 125); the OU2/OU3 Consent Decree (Dkt. No. 1821) (*see, e.g.*, Paragraphs 109 and 114); and the Estate of Hescox Consent Decree (Dkt. No. 1869) (*see, e.g.*, Paragraphs 30 and 31).

## XV. COVENANTS AND RESERVATIONS OF RIGHTS BETWEEN GOODRICH AND SETTLING DEFENDANT

34. Except as specifically provided in Paragraph 36, Settling Defendant, Goodrich, and United Technologies each release and covenant not to sue or take administrative action against each other, pursuant to Sections 107(a) or 113 of CERCLA, 42 U.S.C. §§ 9607(a) and 9613, Section 7002 of RCRA, 42 U.S.C. § 6972, or any other federal or state statute or common law with respect to all claims, of any kind, known and unknown, against Settling Defendant, Goodrich,

or United Technologies in connection with the alleged release or threatened release of any of the Basin Contaminants at, on, or under the RABSP Site. These covenants and releases are also conditioned upon the satisfactory performance by Settling Defendant and Goodrich of their obligations under this Consent Decree.

35. In releasing all unknown claims as set forth in Paragraph 34, Settling Defendant, Goodrich, and United Technologies each expressly waive the provisions of Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

36. Settling Defendant, Goodrich, and United Technologies each reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendant, Goodrich, and United Technologies with respect to:

a. liability of the breaching party for its failure to meet a requirement of this Consent Decree;

b. liability based on the ownership or operation of any portion of the RABSP Site when such ownership or operation commences after lodging of this Consent Decree and there is a new release of a Waste Material on or related to such property;

c. liability based on transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of a Waste Material at or in connection with the RABSP Site, after lodging of this Consent Decree;

d. liability arising from the past, present, or future disposal, release or threat of release of a Waste Material outside of the RABSP Site;

e. liability arising from the release, threat of release, or disposal of a Waste Material either within or outside of the RABSP Site, where such

release, threat of release, or disposal occurs after the lodging of this Consent Decree;

        f.     liability arising from past, present, or future releases or threatened releases at the RABSP Site, where the Waste Material at issue is not a Basin Contaminant;

        g.     liability related to bodily injury; and

        h.     claims for contribution whether based on federal or state statutes or common law arising out of: (1) claims in *City of Riverside v. Black & Decker (U.S.), Inc., et al.*, Case No. BC410878; (2) claims asserted by any person or entity that was not a party to the Consolidated Federal Action on August 24, 2012; or, (3) claims for natural resource damages.

For purposes of Subparagraphs b., c., and e. of this Paragraph, migration of existing Waste Material is not a new release or disposal of Waste Material into soil, groundwater, or atmosphere.

## XVI.    COVENANTS AND RESERVATIONS OF RIGHTS BY SETTLING FEDERAL AGENCIES AND SETTLING DEFENDANT

A.    <u>Covenants and Reservations of Rights by Settling Defendant as to Plaintiff</u>.

    37.    Except as provided in Paragraph 38, Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against Plaintiff, or its contractors or employees, with respect to the Site and this Consent Decree, including, but not limited to:

        a.     any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113, or any other provision of law;

        b.     any claims against the United States, including any department, agency, or instrumentality of the United States under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law

regarding the Site, response actions at the Site, response costs incurred at the Site, and this Consent Decree;

c. any claims arising out of response actions at or in connection with the Site relating to the United States, including any claim under the United States Constitution, the California Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law;

d. any claim, whether express or deemed by court order, in the Consolidated Federal Action; and

e. any direct or indirect claim for disbursement from the Site Special Account.

38. These covenants and releases shall not apply to the United States in the event the United States brings a cause of action or issues an order pursuant to any of the reservations set forth in Paragraph 31, other than in Paragraph 31a. (liability for failure to meet a requirement of the Consent Decree) or 31f. (criminal liability), but only to the extent Settling Defendant's claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

39. Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

B. Covenants and Reservations of Rights between Settling Defendant and Settling Federal Agencies.

40. Except as provided in Paragraph 42, Settling Defendant releases and covenants not to sue or take administrative action against any of Settling Federal Agencies, and each of Settling Federal Agencies releases and covenants not to sue or take administrative action against Settling Defendant, pursuant to Sections 107(a) or 113 of CERCLA, 42 U.S.C. §§ 9607(a) and 9613, Section 7002 of

RCRA, 42 U.S.C. § 6972, or any other state or federal statute or state or federal common law with respect to all claims of any kind, known and unknown, in connection with the alleged release or threatened release of any of the Basin Contaminants at, on, or under the RABSP Site. With respect to present and future liability, these covenants and releases shall take effect upon receipt by Plaintiff of all payment amounts required by Paragraph 5 and any Interest or stipulated penalties due thereon under Section VII (Failure to Comply with Payment Obligations).

41. In releasing all unknown claims, Settling Defendant and Settling Federal Agencies waive the provisions of Section 1542 of the California Civil Code which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

42. Settling Defendant and Settling Federal Agencies reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendant and Settling Federal Agencies with respect to:

a. liability of the breaching party for its failure to meet a requirement of this Consent Decree;

b. liability based on the ownership or operation of any portion of the RABSP Site when such ownership or operation commences after lodging of this Consent Decree and there is a new release of a Waste Material on or related to such property;

c. liability based on transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of a Waste Material at or in connection with the RABSP Site, after lodging of this Consent Decree;

d.      liability arising from the past, present, or future disposal, release, or threat of release of a Waste Material outside of the RABSP Site;

e.      liability arising from the release, threat of release, or disposal of a Waste Material either within or outside of the RABSP Site, where such release, threat of release, or disposal occurs after the lodging of this Consent Decree;

f.      liability arising from past, present, or future releases or threatened releases at the RABSP Site, where the Waste Material at issue is not a Basin Contaminant;

g.      liability related to bodily injury; and

h.      claims for contribution whether based on federal or state statutes or common law arising out of:  (1) claims in *City of Riverside v. Black & Decker (U.S.), Inc*., et al., Case No. BC410878; (2) claims asserted by any person or entity that was not a party to the Consolidated Federal Action on August 24, 2012; or, (3) claims for natural resource damages.

For purposes of Subparagraphs b., c., and e. of this Paragraph, migration of existing Waste Material is not a new release or disposal of Waste Material into soil, groundwater, or atmosphere.

43.     Claims against Other Parties in the Consolidated Federal Action.

Settling Defendant agrees not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) or any other federal or state law that it may have for response costs relating to the Site and/or the West Side Site against any other person who is or was a party in the Consolidated Federal Action, or has otherwise reached a settlement with the United States relating to the Site.  This waiver shall not apply with respect to any defense, claim, or cause of action Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site and/or the West Side Site against Settling

Defendant.

44.  Contribution Claims Arising from the Estate of Wong's Claims.

Except as otherwise provided in this Consent Decree, Goodrich, United Technology and Settling Federal Agencies mutually release and covenant not to sue or take administrative action against each other, pursuant to Sections 107(a) or 113 of CERCLA, 42 U.S.C. §§ 9607(a) and 9613, Section 7002 of RCRA, 42 U.S.C. § 6972, or any other state or federal statute or state or federal common law with respect to all claims of any kind, known and unknown, in connection with the alleged release or threatened release of any of the Basin Contaminants at, on, or under the RABSP Site arising from or that were or could have been asserted by the Estate of Wong in this Consolidated Action.

## XVII.  EFFECT OF SETTLEMENT/CONTRIBUTION

45.  Except as provided in Paragraph 43, nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  Except as provided in Section XV (Covenants and Reservations of Rights between Goodrich and Settling Defendant) and Section XVI (Covenants and Reservations of Rights by Settling Federal Agencies and Settling Defendant), each of the Parties expressly reserves any and all rights (including, but not limited to, under Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action which it may have with respect to any matter, transaction, or occurrence relating in any way to the RABSP Site against any person not a Party hereto.  Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2), (3) of CERCLA, 42 U.S.C. § 9613(f)(2), (3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

46.  The Parties agree, and by entering this Consent Decree this Court finds, that this settlement constitutes a judicially approved settlement for purposes

of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that Settling Defendant, Goodrich, and Settling Federal Agencies are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred at or in connection with the Site or the West Side Site by the United States or any other person; provided, however, that if Plaintiff exercises any of the reservations in Section XIV (Covenants and Reservations of Rights by Plaintiff), other than in Paragraphs 31a. (liability for failure to meet a requirement of Consent Decree) or 31f. (criminal liability), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation. Nothing in this Paragraph shall limit or affect the ability of any Settling Defendant and/or Settling Federal Agency to exercise their reservations of rights as to each other in Paragraph 42.

47.     The Parties further agree, and by entering this Consent Decree this Court further finds, that the payments and obligations provided for in this Consent Decree represent a good faith compromise of disputed claims and that the compromise represents a fair, reasonable, and equitable resolution. With regard to any claims for costs, damages, or other claims against the Parties, the Parties agree and this Court finds that Settling Defendant, Goodrich, and Settling Federal Agencies are entitled to contribution protection pursuant to the California Code of Civil Procedure §§ 877 and 877.6, and any other applicable provision of federal or state law, whether by statute or common law.

48.     The Parties intend the broadest possible protection from contribution actions provided by law for "matters addressed" in this Consent Decree.

49.     Settling Defendant shall, with respect to any suit or claim brought by

it for matters related to this Consent Decree after the date the Consent Decree is lodged with the Court, notify EPA and DOJ in writing no later than sixty (60) days prior to the initiation of such suit or claim.  Settling Defendant also shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify EPA and DOJ in writing within ten (10) days after service of the complaint or claim upon it.  In addition, Settling Defendant shall notify EPA and DOJ within ten (10) days after service or receipt of any motion for summary judgment, and within ten (10) days after receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

50.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XIV (Covenants and Reservations of Rights by Plaintiff), Section XV (Covenants and Reservations of Rights between Goodrich and Settling Defendant), and Section XVI (Covenants and Reservations of Rights by Settling Federal Agencies and Settling Defendant).

## XVIII.     NOTICES AND SUBMISSIONS

51.     Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect

to EPA, DOJ, Settling Federal Agencies, Goodrich, and Settling Defendant, respectively.

As to DOJ:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-11-2-09952

As to EPA:

Remedial Project Manager, Rockets, Fireworks, and Flares Superfund Site
Attn:  Wayne Praskins
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, California  94105

As to Settling Federal Agencies:

Chief, Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-11-6-17144/1

As to Goodrich Corporation:

David Platt
Assistant General Counsel
United Technologies Corporation
United Technologies Building
Hartford, Connecticut  06101

As to the Estate of Wong:

Mark Riera
Akerman LLP
725 South Figueroa Street, 38th Floor
Los Angeles, California 90017

Richard F. Bulger
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

## XIX.     RETENTION OF JURISDICTION

52.     This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XX.     INTEGRATION/APPENDICES

53.     This Consent Decree and its appendices constitute the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree. The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the map of the RABSP, including the 160-Acre Area, the Stonehurst Property, and the County Property.

"Appendix B" is the Wong Estate Parcel.

## XXI.     LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

54.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate. Goodrich, United Technologies,

and Settling Defendant consent to the entry of this Consent Decree without further notice.

55.     If for any reason this Court's entry of the Consent Decree is reversed on appeal, in whole or material part, this Consent Decree is voidable at the sole discretion of any Party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XXII.     TERMINATION

56.     This Consent Decree shall be terminated when the United States determines Settling Defendant has satisfactorily completed performance of its obligations required by this Consent Decree.  Upon such termination, the Parties shall file with the Court an appropriate stipulation reciting that the requirements of the Consent Decree have been met.  Termination of this Consent Decree shall not affect any remaining obligations under this Consent Decree including, but not limited to, those obligations described in Section VIII (Access and Institutional Controls), Section IX (Notice to Successors-in-Title and Transfers of Real Property), Section XIV (Covenants and Reservation of Rights by Plaintiff), Section XV (Covenants and Reservations of Rights between Goodrich and Settling Defendant), Section XVI (Covenants and Reservations of Rights by Settling Federal Agencies and Settling Defendant), Section XVII (Effect of Settlement/Contribution), and Section XII (Retention of Records).

## XXIII.     FINAL JUDGMENT

57.     The United States, Goodrich, and Settling Defendant agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

58.     The Court finds that there is no just reason for delay of entry of this Consent Decree, and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS _5th_ DAY OF December, 2017

_____
HONORABLE PHILIP S. GUTIERREZ
United States District Judge

WONG CONSENT DECREE

Respectfully submitted,

FOR THE UNITED STATES:


Dated: 7/17/17                          _Ben A Gen_
                                        BRUCE S. GELBER
                                        Deputy Assistant Attorney General
                                        Environment & Natural Resources Division


Dated: _____                       _____
                                        JAMES R. MacAYEAL
                                        BRADLEY R. O'BRIEN
                                        U.S. Department of Justice
                                        Environmental Enforcement Section

Of Counsel:
MICHELE BENSON
United States Environmental Protection Agency
Region IX
San Francisco, California

Attorneys for Plaintiff UNITED STATES OF AMERICA

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


Dated: **5/22/2017**     By: _____

ENRIQUE MANZANILLA
Director, Superfund Division, Region IX
U.S. Environmental Protection Agency
75 Hawthorne St.
San Francisco, California 94105




Dated: **5/15/2017**     By: _____

MICHELE BENSON
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region IX
75 Hawthorne St.
San Francisco, California 94105

FOR GOODRICH CORPORATION:

Dated: May 5, 2017        _____

Attorney for GOODRICH CORPORATION

FOR JIMMY CHI HO WONG, Representative of the ESTATE OF CHUNG MING WONG:

> Akerman LLP
> Mayer Brown LLP

Dated: April 18, 2017

_____
By MARK RIERA
Akerman LLP

Attorneys for Defendant JIMMY CHI HO WONG, Representative of the ESTATE OF CHUNG MING WONG

# Appendix A



LEGEND

▪▪▪▪▪▪▪ **West Side Area**

▬ ▬ ▬ **Rialto Ammunition Backup Storage Point ("RABSP")**

**NOT TO SCALE**

# Appendix B



Area where Settling Defendants shall provide EPA notice if they intend to disturb subsurface soils or sediments